RICHARD P. LASTING, SBN 53950
1717 Fourth Street 3rd Floor
Santa Monica, California 9040-3319
Telephone:    (310) 576-6242
Facsimile:    (310) 576-6247
e-mail:        rplasting@aol.com

SONIA E. CHAHIN, SBN 136604
2222 Foothill Boulevard, #E-278
La Canada, California 91011
Telephone:    (818) 549-0149
Facsimile:    (818) 549-0990
e-mail:        sechahin@aol.com

Attorneys for Defendant
JURIJUS KADAMOVAS

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JURIJUS KADAMOVAS,<br><br>Defendant. | CR. No. 02-220(B)-DT<br><br>DEFENDANT JURIJUS KADAMOVAS' MOTION FOR A MISTRIAL OR ALTERNATIVELY FOR A CONTINUANCE TO PERMIT HIM TO INVESTIGATE THE TWO FOREIGN UNADJUDICATED MURDERS |

Defendant JURIJUS KADAMOVAS, by and through his counsel of record, Richard P. Lasting and Sonia E. Chahin, hereby renews and supplements the motion for a mistrial which he has raised orally raised during the trial in this matter.

Mr. JURIJUS KADAMOVAS submits that the following several factors have combined to deprive Mr. KADAMOVAS of his right to a fair trial and Due Process in this matter:  1)  his prejudicial joinder to co-defendant IOURI MIKHEL who has opened the door to previously excluded testimony regarding

two foreign unadjudicated murders which Mr. KADAMOVAS is not prepared to defend, 2) his prejudicial joinder to co-defendant IOURI MIKHEL, who rested his case, and later was permitted to testify after Mr. KADAMOVAS had completed presentation of his defense, 3) his prejudicial joinder with co-defendant IOURI MIKHEL who has raised an inconsistent and antagonistic defense, 4) the prejudicial spillover effect and taint of the jury caused by the disintegration of the attorney client-relationship between co-defendant IOURI MIKHEL and his attorneys, and 5) the effect and taint of the jury caused by comments of the Court conveying disbelief in the testimony co-defendant IOURI MIKHEL.  Mr. KADAMOVAS submits that based on these factors, a mistrial should be declared and an order should be entered severing the trial of defendant JURIJUS KADAMOVAS from that of co-defendant IOURI MIKHEL and that he be ordered to proceed to a new trial together with co-defendant Petro Krylov, before the Honorable James Otero.

Alternatively, Mr. KADMOVAS requests that this Court grant a six week continuance of this trial to conduct investigation in Cyprus and Turkey , and thereafter permit Mr. KADAMOVAS to re-open his defense case so he can present a defense to the two unadjudicated foreign murders which the Court previously ordered excluded.

/
/
/
/
/
/
/
/

This request is based upon the attached memorandum of points and authorities, all files and records in this case, and such evidence and argument as may be presented to the court at the hearing on this motion.

DATED: January 9, 2007          Respectfully submitted,

RICHARD P. LASTING
Attorney for Defendant
JURIJUS KADAMOVAS

SONIA E. CHAHIN
Attorney for Defendant
JURIJUS KADAMOVAS

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## THE COURT SHOULD GRANT MR. KADAMOVAS A MISTRIAL UNDER THE CIRCUMSTANCES OF THIS CASE

### 1.   The Law

The law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes; and, in capital cases especially, Courts should be extremely careful how they interfere with any of the chances of life, in favour of the prisoner. But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound, and conscientious exercise of this discretion, rests, in this, as in other cases, upon the responsibility of the Judges, under their oaths of office.

**United States v. Bates**, 917 F.2d 388, 392 (9th Cir. 1991)

/

/

/

/

- 4 -

## II.

## MR. KADAMOVAS SUBMITS THAT THE FACTORS IDENTIFIED BELOW HAVE CUMULATIVELY SERVED TO DEPRIVE MR. KADAMOVAS OF DUE PROCESS AND A FAIR TRIAL IN THIS MATTER AND THAT MANIFEST NECESSITY REQUIRES THAT A MISTRIAL BE ORDERED

A) A Mistrial Should be Ordered Based on JURIJUS KADAMOVAS' Prejudicial Joinder to Co-defendant IOURI MIKHEL Whose Testimony Has Opened the Door to Previously Excluded Testimony Regarding Two Foreign Unadjudicated Murders Which Mr. KADAMOVAS Is Not Prepared to Defend

Based on a Motion filed by the defendants, on May 22, 2006, this Court held a hearing and ruled that all evidence of (1) the abduction and murder in Turkey of Anton Popsuy-Shapko, and (2) the abduction and murder in Cyprus of Valery Papov would be excluded in both the guilt and penalty phases of the trial. In reliance on the Court's ruling, defendant KADAMOVAS ceased all preparation of a defense of the two foreign unadjudicated abductions and murders, and has conducted his complete trial strategy, including voir dire and jury selection, and the presentation of his defense case in reliance on the Court's May 22, 2006, ruling.[1]

---

[1] Although the Court has indicated that Mr. KADAMOVAS had substantial time prior to the Court's ruling precluding this evidence to investigate these matters, this statement is not accurate. As noted by Mr. Lasting in his oral argument to the Court, Judge Manella did not give the defendants any ability to prepare for a penalty trial until the Government filed its Notice of Intent to seek Death. The Notice was filed in the beginning of August of 2004. Further, for reasons explained in a prior Under Seal filing, there was a change of counsel for Mr. KADAMOVAS in November 2005. New Counsel and Capital Counsel for Mr. KADAMOVAS filed repeated motions to continue the trial date based on their need to prepare and conduct investigation related to all the

After the Government rested, and completed the presentation of evidence in their case. IOURI MIKHEL presented his defense case. He called witnesses to testify and decided to forego providing his own testimony in his defense. On December 13, 2006, defendant MIKHEL rested and defendant KADAMOVAS presented his case. Mr. MIKHEL then requested permission to use the Christmas break to prepare his testimony with his attorneys so that he could testify in his own defense on return from the Christmas break. The Court granted this request.

Mr. MIKHEL testified over the course of 3 days, January 3rd, 4th and 5th, 2007. His testimony prejudiced Mr. KADAMOVAS substantially, and undermined his right to a fair trial. Initially, over Mr. KADAMOVAS' objection, the Court ruled that defendant MIKHEL's testimony opened the door to the introduction of the previously excluded evidence of the two foreign abductions and murders. This ruling, at this time was particularly problematic, because Mr. KADAMOVAS' had already completed his entire trial presentation and his strategy relied on the Court's ruling excluding this evidence. Based on Courts ruling permitting the use of this evidence against him, he is now subject to the introduction of this inflammatory and prejudicial evidence, even though he did not undertake any actions justifying the admission of this evidence against him. He has done nothing to open the door, and this evidence would not be admitted at trial against him, if he was being tried alone.

The prejudice caused by the presentation of this evidence, at this late date, cannot be understated. Unlike the Government, Mr. KADAMOVAS does not

---

murders including those in Cyprus and Turkey. When the Court entered its ruling on May 22, 2005, precluding this evidence, Counsel for Mr. KADAMOVAS ceased all preparations and investigations related to those foreign unadjudicated murders and concentrated their efforts solely on the remaining five murders alleged in the indictment. As a result, Mr. KADAMOVAS is not prepared to present defense to these charges at this time.

have the resources or ability to conduct investigation and gather the necessary witnesses while the trial remains in progress. Indeed, even though Mr. KADAMOVAS has already identified witnesses whose testimony he would have sought to present to the jury had he been on notice that he might have to defend himself against these charges, he is presently unable to conduct the necessary investigation or secure the presence of these witnesses at trial.[2]

Additionally, now that Mr. KADAMOVAS has heard defendant MIKHEL's testimony, it is apparent that a severance and mistrial is also required based on mutually antagonistic defenses. See Zafiro v. United States, 506 U.S. 534, 539 (1993) . While Mr. KADAMOVAS has defended these charges on the theory that he did not participate in these acts, Mr. MIKHEL's testimony has directly placed him as a direct participant, and conspirator.

1.    Prejudicial Effects Flowing From Testimony of Co-defendant MIKHEL

Mr. KADAMOVAS has identified the following prejudicial effects which have served to deprive him of his Due Process right to a fair Trial and which have resulted from defendant's MIKHEL's testimony

a.    Spillover Effect of Mr. MIKHEL's Problematic Relationship With His Defense Counsel

As the Court is aware, Mr. MIKHEL has had a problematic relationship

---

[2]    An example of the investigation he would have conducted or the witnesses who testimony he would have sought to obtain will be identified below.

with his attorneys for some time. This fact, although previously known by the Court and counsel, was communicated to the jury during defendant MIKHEL's examination. The direct examination began with defense counsel eliciting testimony that defendant MIKHEL had "tremendous disagreements" with his counsel. Defendant MIKHEL also testified that his counsel had very vocally advised him against testifying and that he was doing so over his counsel's objections and advise. [RT 1/3/07, 44] Over the course of MIKHEL's testimony, defense counsel repeatedly made comments to the Court and the jury implying that he wanted to complete this examination as quickly as possible and that he wasn't happy doing it. Counsel stated, on at least several occasions, that he was just trying to get through this. [RT 1/3/07, 109, 186] [RT 1/4/07, 166] In another instance, when the Court accused counsel coaching the witness and attempting to rehabilitate his answer, defense counsel responded that he was just trying to figure out what his testimony is. [RT, 1/4/07, 173]

In context of a joint trial, the problematic relationship between defendant MIKHEL and his attorneys has prejudiced Mr. KADAMOVAS right to a fair trial. Counsel for co-defendant MIKHEL communicated to the jury, by words and by conduct, that he was no longer an advocate for his client, and that the testimony of defendant MIKHEL was given over counsel's objection, from which the jury may have inferred that it was unworthy of belief. Mr. KADAMOVAS submits that under these circumstances he was prejudiced by a joint trial with defendant MIKHEL. The jury may draw a similar inference that Mr. KADAMOVAS' witnesses and evidence are not worthy of belief. This is but another factor warranting a mistrial in this case.

     b.    Comments by the Court Before the Jury Implying Disbelief In Mr. MIKHEL's Trial Testimony

In addition to the comments and conduct of counsel for co-defendant MIKHEL, the Court also made statements in commenting on Mr. MIKHEL's testimony which were prejudicial to defendant KADAMOVAS in the context of a joint trial. The jury likely inferred based on the Court's comments that the Court questioned the veracity of the testimony presented by defendant MIKHEL. Specifically, the Court stated that Mr. Rubin was "coaching" the witness [RT 1/4/07, 166] and in overruling an objection directed defendant MIKHEL that he should continue with his "story". [RT 1/5/07, 20] Finally, in reference to an answer given by defendant MIKHEL, the Court stated, "This is total nonsense". [RT 1/7/07, 89]

It is well settled that a judge presiding at a trial in federal court may make comments on the evidence. He must carefully avoid prejudging the defendant, however, concentrating instead on making a fair effort to clear unanswered issues and point out inconsistencies. United States v. Stephens,  486 F.2d 915, 917 (9th Cir. 1973); Bursten v. United States, 395 F.2d 976, 982 (5th Cir. 1968). Judicial comments must be aimed at aiding the jury's fact finding duties, rather than usurping them.

The comments by the Court regarding defendant MIKHEL's testimony also communicated to the jury, that the testimony was unworthy of belief. Mr. KADAMOVAS submits that the jury may draw an inference that the Court's comments apply to all defendants and that therefore Mr. KADAMOVAS' witnesses and evidence are not worthy of belief. This is another factor warranting a mistrial in this case.

/

/

/

B) Alternatively, If the Court Denies defendant JURIJUS KADAMOVAS' Request for a Mistrial, the Court Should Grant a Six Week Continuance of the Trial Proceedings to Afford the defendant an Opportunity to Investigate, Obtain Witnesses and Present a Defense.

As noted above, defendant KADAMOVAS ceased all preparation and investigation related to the Cyprus and Turkey abductions and murders based on the Court's May 22, 2006, ruling. Nevertheless, Mr. KADAMOVAS has identified several witnesses who he would seek to interview, and whose testimony he would attempt to seek to present at trial in this matter, if he were afforded the opportunity to do so. Mr. KADAMOVAS submits the following two examples of the investigation which remains to be done, and which he seeks to do, if the Court grants the requested continuance. With regard to Anton Popsuy-Shapko, the discovery materials contain a statement of a Col. Martinov who states that in the 1990s, Anton Popsuy-Shapko was involved in an organized crime group. [3] Defense Counsel would seek to investigate any ties that Anton Popsuy-Shapko had to organized crime, and whether those ties might provide some motive for his wanting to disappear and/or leave the country. Further, based on discussions with counsel for co-defendant MIKHEL, and the investigation they conducted in Turkey, counsel for defendant KADAMOVAS would seek to obtain the testimony of Ogrun Toprak, Chief of Personnel for the Istanbul Police Department with respect to the allegations in Turkey. Mr. Toprak was interviewed by the investigator for co-defendant MIKHEL, and informed the investigator that his office never investigated Anton Popsuy-Shapko's case as a murder, or even as a missing persons case. His office was never asked to use their investigative skills

---

[3] See page one page statement of Col. Martinov attached as Exhibit A

- 10 -

to locate Anton Popsuy-Shapko or to find out if he had been kidnaped and murdered. He advised the investigator that there was no evidence that any crime ever occurred in Turkey or that any complaint of this crime had ever been made. Toprak identified several areas that he would have investigated if asked to do so. Mr. KADAMOVAS submits that this information warrants further investigation which Mr. KADAMOVAS has been unable to complete to date. Similarly, there is also substantial additional investigation which remains to be done into the allegations involving Cyprus, which Mr. KADAMOVAS has not conducted to date.

If the Court denies his request for a mistrial, he alternatively requests that this Court grant a six week continuance of this trial to conduct investigation in Cyprus and Turkey , and thereafter permit Mr. KADAMOVAS to re-open his defense case so he can present a defense to the two unadjudicated foreign murders which the Court previously ordered excluded.

/
/
/
/
/
/
/
/
/
/
/
/
/

## III.

## CONCLUSION

For the foregoing reasons, JURIJUS KADAMOVAS hereby requests that this Honorable Court enter an order severing the trial of defendant JURIJUS KADAMOVAS from that of co-defendant IOURI MIKHEL and that he be ordered to proceed to a new trial together with co-defendant Petro Krylov, before the Honorable James Otero.

Alternatively, Mr. KADMOVAS requests that this Court grant a six week continuance of this trial to conduct investigation in Cyprus and Turkey , and thereafter permit Mr. KADAMOVAS to re-open his defense case so he can present a defense to the two unadjudicated foreign murders which the Court previously ordered excluded..

DATED: January 9, 2007

RICHARD P. LASTING
Attorney for Defendant
JURIJUS KADAMOVAS

DATED: January 9, 2007

SONIA E. CHAHIN
Attorney for Defendant
JURIJUS KADAMOVAS

281H-LA-2297.4-302

2

Col. Martinov discussed briefly a Moscow investigation involving Georgy Safiev, one of the kidnapping victims. Col. Martinov said that prior to Safiev's abduction, a fraud investigation had been open concerning a $10,000.00 fraud involving Safiev. Col. Martinov said the investigation had not been completed and no conclusions had been drawn. Col. Martinov did not discuss any further details of the fraud investigation.

Col. Martinov provided a summary of the Popsuy-Shapko investigation conducted by Investigator Belogordov who was with the RUBOP. The RUBOP has since disbanded and Investigator Belogordov is currently assigned to the GUBOP. Input by the other Russian representatives were minimal.

Col. Martinov said that in the 1990s, Popsuy-Shapko was involved in an organized crime group. Popsuy-Shapko was the founder of his company, Diamont. Ivan Nikolaevich Mytnik was the Security Officer of the company and was present at Popsuy-Shapko's office when the ransom calls were received as was Popsuy-Shapko's bookkeeper (accountant), Alexander Nekrasov, who had transferred the ransom money.

Col. Martinov said Popsuy-Shapko traveled via commercial airlines to Turkey to meet with Iouri Mikhel to negotiate a business deal. Popsuy-Shapko's air travel was scheduled to leave Moscow for Turkey on November 5, 2000 and scheduled to return to Moscow on November 6. The day after Popsuy-Shapko left, Popsuy-Shapko's Deputy Security Officer Mytnik received telephone calls from Popsuy-Shapko asking that $20,000.00 and 75,000.00 Euro be wire transferred to a specific bank account.

After the first Money transfer was completed, Nekrasov received a fax from A. Mikhailov asking for two specific amounts of money to be transferred to two different bank accounts: $239,857.00 was to be transferred to I.C.M. Enterprises, Bank of Cyprus; and other amount, $328,285.00, was to be transferred to ANZ Bank Samoa Ltd.. Investigator Belogorodov provided a copy of the above fax received by Nekrasov. The fax showed that the $239,857.00 was to be transferred to Bank of Cyprus account number, 0155-40-012471-06, and the $328,285.00 was to be transferred to ANZ Bank Samoa Ltd., account name, Expotech Company Ltd., account number, 2360541.

Nekrasov told Investigator Belogorodov that Popsuy-Shapko requested the money be wired from his Switzerland

046639



## CERTIFICATE OF SERVICE

I, Sonia E. Chahin hereby state and declare:

That I am employed in the County of Los Angeles, State of California; that my business address is 2222 Foothill Blvd., #E-278, La Canada, California 91011; that I am over the age of eighteen and not a party to the within entitled action; that I am a member of the bar of this Court.   On January 9, 2007, I served a copy of:

DEFENDANT JURIJUS KADAMOVAS' MOTION FOR A MISTRIAL OR ALTERNATIVELY FOR A CONTINUANCE TO PERMIT HIM TO INVESTIGATE THE TWO FOREIGN UNADJUDICATED MURDERS

Service was:
[ ]   Placed in a sealed envelope and mailed via United States Mail, addressed as follows:
[x]   By hand delivery addressed as follows:
[ ]   By facsimile as follows:
[ ]   By messenger as follows:

AUSA Robert E. Dugdale                [SERVED IN COURT]
AUSA Susan Dewitt
AUSA Kim Meyer
1500 United States Courthouse
312 North Spring Street
Los Angeles, CA 90012

Service was:
[ ]   Placed in a sealed envelope and mailed via United States Mail, addressed as follows:
[ ]   By hand delivery addressed as follows:
[ ]   By facsimile as follows:
[x]   By e-mail as follows

Richard Callahan, Esq.
230 E. Colorado Blvd., Suite 1200        [SERVED IN COURT]
Pasadena, CA  91101
(626) 202-4060 Office
(626) 794-4676 FAX
rmcallahanjr@earthlink.com

SEE ATTACHED SERVICE LIST
   This Certificate is executed on January 9, 2007,  at

Glendale, California.  I certify under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

SONIA E. CHAHIN

<u>United States v. Iouri Mikhel et al.</u>

CR No. 02-220(B)-DT

Richard Lasting (Capital Counsel)          [SERVED IN COURT]
1717 4th Street, Suite 300
Santa Monica, CA 90401
(310) 576-6242 Office
(310) 576-6247 FAX
richardplasting@sbcglobal.net

Dale M. Rubin, Esq. (Capital Counsel)      [SERVED IN COURT]
Law Offices
2275 Huntington Drive, Suite 902
San Marino, CA 91108
(800) 695-3717 Office
(413) 228-0521 FAX
drubin@socal.rr.com