GEORGE S. CARDONA
Acting United States Attorney
THOMAS P. O'BRIEN
Assistant United States Attorney
Chief, Criminal Section
ROBERT E. DUGDALE (California State Bar No. 167258)
Deputy Chief – Organized Crime and Terrorism Section
SUSAN J. DEWITT (California State Bar No. 132462)
KAREN I. MEYER (California State Bar No. 220554)
Assistant United States Attorneys
Organized Crime and Terrorism Section
     1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone:  (213) 894-4685/4496/8559
     Facsimile:  (213) 894-3713
     e-mail:  robert.dugdale@usdoj.gov
              susan.dewitt@usdoj.gov
              kim.meyer@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR 02-220(B)-DT |
| | ) | |
| Plaintiff, | ) | **GOVERNMENT'S MOTION IN LIMINE** |
| | ) | **REQUESTING LIMITATIONS ON THE** |
| v. | ) | **PRESENTATION OF CERTAIN** |
| | ) | **MITIGATING FACTORS TO THE JURY** |
| IOURI MIKHEL and JURIJUS KADAMOVAS, | ) | |
| | ) | |
| Defendants. | ) | Courtroom of the Honorable |
| | ) | Dickran Tevrizian |
| | ) | |

The United States of America, by and through it counsel of record, Assistant United States Attorneys Robert E. Dugdale, Susan J. De Witt and Karen I. Meyer, hereby files this motion in limine requesting that limitations be placed on the proposed mitigating factors to be presented by defendants Iouri Mikhel

("Mikhel") and Jurijus Kadamavos ("Kadamavos") to the jury following the completion of the penalty phase in this case.  The government also requests that certain mitigating factors proposed by defendant Mikhel be consolidated as set forth in this motion, as several of the factors are duplicative.  Finally, the government requests that defense counsel be prohibited during argument from using the terms "kill" or "murder" in referring to the death penalty or the jurors' act of returning a verdict of death.  This motion is based upon the attached memorandum of points and authorities, the files and records of this case, and such argument and evidence as may be presented at any hearing related to this notice.

Dated: February 5, 2007

                         Respectively submitted,

                         GEORGE S. CARDONA
                         Acting United States Attorney

                         THOMAS P. O'BRIEN
                         Assistant U.S. Attorney
                         Chief, Criminal Division


                         _____
                         ROBERT E. DUGDALE
                         SUSAN J. DE WITT
                         KAREN I. MEYER
                         Assistant United States Attorneys
                         Organized Crime and Terrorism Section

                         Attorneys for Plaintiff
                         United States of America

TABLE OF CONTENTS

PAGE

Table of Authorities . . . . . . . . . . . . . . . . . . . . . ii

MEMORANDUM OF POINTS AND AUTHORITIES . . . . . . . . . . . . . 1

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . 1

II.   ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . 2

       A.    THIS COURT MAY PLACE APPROPRIATE LIMITS ON
             MITIGATING EVIDENCE OFFERED DURING THE PENALTY
             PHASE OF THE TRIAL . . . . . . . . . . . . . . . . 2

       B.    THE FOLLOWING "MITIGATING" FACTORS SHOULD BE
             PRECLUDED BY THE COURT  . . . . . . . . . . . . . . 5

             1.    The "Mitigating Factor" of Being Raised in a
                   Culture That Devalues Human Life Absent
                   Evidence Showing How A Defendant Was Impacted
                   By Such a Culture  . . . . . . . . . . . . . . 5

             2.    The "Mitigating Factor" That A Sentence of
                   Life In Prison Protects Society and Show
                   Proper Respect for Life  . . . . . . . . . . . 6

             3.    "Mitigating Factors" That Assert the Impact of
                   Mikhel's Death on His Family Members . . . . . 6

       C.    CERTAIN MITIGATING FACTORS PROPOSED BY BOTH
             DEFENDANTS SHOULD BE REWRITTEN TO REFLECT THE
             LANGUAGE IN THE FEDERAL DEATH PENALTY ACT RELATED
             TO SUCH MITIGATING FACTORS  . . . . . . . . . . . . 9

       D.    CERTAIN MITIGATING FACTORS PROPOSED BY DEFENDANT
             MIKHEL ARE REDUNDANT AND SHOULD BE CONSOLIDATED  . 10

       E.    THE DEFENSE SHOULD NOT BE PERMITTED TO REFER TO
             THE DEATH PENALTY AS "MURDER" OR ARGUE THAT A BY
             RETURNING A VERDICT OF DEATH THE JURORS WILL BE
             "KILLING" A DEFENDANT . . . . . . . . . . . . . . . 11

III.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . 12

**TABLE OF AUTHORITIES**

**FEDERAL CASES**                                                    **PAGE(S)**

Eddings v. Oklahoma,
    455 U.S. 104 (1982) . . . . . . . . . . . . . . . . . . 3

Graham v. Collins,
    506 U.S. 461 (1993) . . . . . . . . . . . . . . . . . . 3

Johnson v. Texas,
    509 U.S. 350 (1993) . . . . . . . . . . . . . . . . . . 3

Lockett v. Ohio,
    438 U.S. 586 (1978) . . . . . . . . . . . . . . . . 3, 10

Oregon v. Guzek,
    ___ U.S. ___, 126 S. Ct. 1226,
    163 L. Ed. 2d 1112 (2006) . . . . . . . . . . . . . . . 4

Payne v. Tennessee,
    501 U.S. 808 (1991) . . . . . . . . . . . . . . . . . . 2

Penry v. Lynaugh,
    492 U.S. 302 (1989) . . . . . . . . . . . . . . . . . . 3

Roper v. Simmons,
    ___U.S.___, 125 S. Ct. 1183 (2005) . . . . . . . . . . 3

Skipper v. South Carolina,
    476 U.S. 1 (1986) . . . . . . . . . . . . . . . . . . . 3

United States v. Caro,
    433 F. Supp. 2d 726 (W. Dist. Va 2006) . . . . . . . . 8

United States v. McVeigh,
    153 F.3d 1166 (10th Cir. 1998) . . . . . . . . . . . 5, 6

United States v. Purkey,
    428 F.3d 738 (8th Cir. 2005) . . . . . . . . . . . . 4, 5

United States v. Taveras,
    436 F. Supp. 2d 493 (E.D.N.Y. 2006) . . . . . . . . . 10

**STATE CASES**

People v. Ochoa,
    19 Cal. 4th  353, 79 Cal. Rptr. 2d 408,
    966 P.2d 442 (Cal. 1998) . . . . . . . . . . . . . . 7, 8

State v. Loftin,
    146 N.J. 295, 680 A.2d 677 (N.J. 1996) . . . . . . . . 7

**TABLE OF AUTHORITIES**

**STATE CASES**                                                    **PAGE(S)**

State v. Reddish,
        859 A.2d 1173 (N.J. 2004) . . . . . . . . . . . . . 11, 12

**FEDERAL STATUTES**

18 U.S.C. § 3592(a)(4) . . . . . . . . . . . . . . . . 10

18 U.S.C. § 3593© . . . . . . . . . . . . . . . . . . 3

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

**INTRODUCTION**

On February 2, 2007, defendant Jurijus Kadamovas served the government with a proposed special verdict form that contains a revised list of the mitigating factors he expects to present to the jury during the penalty phase in this case.  (A copy of this proposed special verdict form is attached hereto as Exhibit A). On February 1, 2007, counsel for defendant Mikhel provided the government with a proposed special verdict form that lists the mitigating factors he expects to present to the jury during the penalty phase in this case.  (A copy of this proposed special verdict form is attached hereto as Exhibit B).

As explained in detail below, this Court retains broad discretion to admit or exclude information during the defendants' penalty phase and the mitigating factors it may argue to a jury. Here, the government believes that several of the factors defendants seek to present are not appropriate for the jury's consideration in this case.

As set forth in more detail below, with regard to defendant Kadamavos specifically, the government objects to the following mitigating factor:

"2.   Jurijus Kadamovas was raised under a communist system of government that devalued the life of the individual."

With regard to defendant Mikhel, the government objects to

1

the following mitigating factors:

"15. Imposing a sentence of life imprisonment without the possibility of release yet preserving IOURI MIKHEL's life, protects society and at the same time show a proper respect for life itself.

18. IOURI MIKHEL's family and friends, including the young and elderly, will be adversely affected if he is executed.

19. IOURI MIKHEL is the father of a daughter, and step-father of a son, both of whom will suffer greatly if he is executed."

The Government further requests that certain mitigating factors proposed by the defendants be consolidated, as several of them are redundant, and that the language in certain mitigating factors they propose be altered to mirror the language, when applicable, of the statutory mitigating factors in the Federal Death Penalty Act. Finally, the government requests that the defense be prohibited, particularly in closing arguments, from using the terms "kill" or "murder" in referring to the death penalty or the jurors' act of returning a verdict of death.

## II.

### ARGUMENT

**A. THIS COURT MAY PLACE APPROPRIATE LIMITS ON MITIGATING EVIDENCE OFFERED DURING THE PENALTY PHASE OF THE TRIAL**

A capital defendant is entitled to submit any <u>relevant</u> mitigating evidence in support of a sentence less than death. <u>Payne v. Tennessee</u>, 501 U.S. 808, 822 (1991). The Constitution

2

requires that a death penalty statute must permit the defendant to raise any aspect of his character or background and the circumstances of the offense as a mitigating factor. Penry v. Lynaugh, 492 U.S. 302, 319-28 (1989); Lockett v. Ohio, 438 U.S. 586, 604 (1978). In any capital case sentencing phase, a defendant has wide latitude to raise as a mitigating factor any aspect of his or her character or record, and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death. Roper v. Simmons, ___U.S.___, 125 S. Ct. 1183, 1194 (2005); see, e.g., Johnson v. Texas, 509 U.S. 350, 365-68 (1993) (lack of maturity and underdeveloped sense of responsibility); Graham v. Collins, 506 U.S. 461, 473-77 (1993) (family background and positive character traits); Penry v. Lynaugh, 492 U.S. 302, 328 (1989) (mental retardation and childhood abuse); Skipper v. South Carolina, 476 U.S. 1, 4 (1986) (good conduct in jail between arrest and trial); Eddings v. Oklahoma, 455 U.S. 104, 115 (1982) (youth and susceptibility to influence); Lockett v. Ohio, 438 U.S. at 607-08 (victim involvement, impaired capacity, and substantial duress, coercion, or provocation).

At the same time, under the Federal Death Penalty Act, the admission of mitigation evidence and information is not an unlimited "free-for-all." Section 3593(c) provides that "information may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury." 18 U.S.C. § 3593(c).

3

Several cases have served to define the limitations that may be imposed on mitigation evidence.  In Oregon v. Guzek, ___ U.S. ___, 126 S.Ct. 1226, 163 L.Ed.2d 1112 (2006), the defendant sought to present testimony by his mother at his re-sentencing hearing which would support his alibi.  The Court rejected the argument that Lockett supported a right to present such evidence, and held that the state's limitation barring such evidence did not violate the Constitution.  Id. at 1233.  The Court explained that the evidence at issue in Lockett and other prior cases involved how, and not whether, the defendant committed the crime and was therefore not inconsistent with the jury's finding of guilt.  Id. at 1231.

In United States v. Purkey, 428 F.3d 738 (8th Cir. 2005), the court upheld several evidentiary rulings during the penalty phase restricting mitigation evidence that the defendant's wife had poisoned him and that an expert believed the defendant was exposed to alcohol as a fetus.  The right to present mitigation evidence, according to the Purkey court "does not mean that the defense has *carte blanche* to introduce any and all evidence that it wishes.  The trial court retains its traditional authority 'to exclude, as irrelevant, evidence not bearing on the defendant's character, prior record, or the circumstances of his offense.'"  Purkey, 428 F.3d at 756 (citations omitted).  The Purkey court viewed Section 3593(c) as "invest[ing] the judge with the authority to exclude probative information during the penalty phase."  Id.  As to the specific evidence in Purkey, the Eighth

4

Circuit held that the trial court had properly excluded evidence of rat poisoning, because the defense offered no evidence of the psychological effects of the poison.  Moreover, "the scandalous and perplexing nature of the claim had significant potential to confuse or mislead the jury."  Id.  The Court held that it was error to exclude the circumstantial evidence of fetal alcohol exposure, but also found the error harmless.  Id. at 758.

**B.   THE FOLLOWING "MITIGATING" FACTORS SHOULD BE PRECLUDED BY THE COURT**

The government requests that the Court exercise its ample discretion to exclude the following mitigating factors that defendants intend to present to the jury in this case:

**1.   The "Mitigating Factor" of Being Raised in a Culture That Devalues Human Life Absent Evidence Showing How A Defendant Was Impacted By Such a Culture**

Defendant Kadamavos apparently intends to present as a mitigating factor that he was raised in a culture and under a system of government that devalues human life.  (See Exhibit A at p. 9).  Defendant Kadamovas has not proffered any evidence, however, to demonstrate how he personally was impacted by this culture, or how this culture should mitigate his culpability for the charged offenses.  In United States v. McVeigh, 153 F.3d 1166 (10th Cir. 1998), the trial court admitted evidence of the defendant's views on Waco based on information to which he had been exposed, but excluded evidence about Waco to which he had not been exposed.  The Court reasoned that information that could not logically have had any impact on forming his views and beliefs was not relevant and was properly excluded under Section

3593.  Id. at 1214.

The government submits that unless defendant Kadamovas demonstrates how his own value system was impacted by the culture in which he was raised, the evidence regarding that culture and the priority it placed on human life is simply not relevant.

**2.  The "Mitigating Factor" That A Sentence of Life In Prison Protects Society and Show Proper Respect for Life**

The government objects generally to the use of a mitigating factor that states, as proposed by defendant Mikhel, "Imposing a sentence of life imprisonment without the possibility of release yet preserving IOURI MIKHEL's life, protects society and at the same time show a proper respect for life itself."

First, as worded, this factor implies that a sentence other than life in prison without the possibility of parole does not show a proper respect for life.  Second, this factor is an impermissible commentary on the death penalty itself.  Rather than focus on an individual characteristic of defendant Mikhel, his record or background, this factor would forestall the application of the death penalty in any case.

**3.  "Mitigating Factors" That Assert the Impact of Mikhel's Death on His Family Members**

In the form of two separate proposed mitigating factors, defendant Mikhel seeks to argue as a mitigator the impact his execution will have on his family and friends.  The government submits this impact, whether submitted as one or two factors, is inappropriate to be submitted to the jury as stated.  The government has not opposed defendant Mikhel's desire to offer

6

third party impact evidence so long as it relates to his background, record, or character.  Third party impact testimony could and has shed light on defendant Mikhel's background and character by providing testimony about his "positive qualities," "his capacity to be of emotional value to others" and the nature of his interpersonal relationships.  However, this Court has appropriately limited testimony regarding the effect of Mikhel's execution will have on others to the extent it relates to his background, record, or character.  Sympathy for a defendant's family or friends should not be considered by the jury in mitigation and evidence or mitigation factors introduced solely to elicit jury sympathy towards third parties impacted by defendant Mikhel's execution should be precluded.

There are a number of well-reasoned state court opinions that have addressed this issue.  In State v. Loftin, 146 N.J. 295, 680 A.2d 677, 712-713 (N.J. 1996), for instances, the defendant sought to introduce several mitigating factors that alleged his execution would cause hardship to his family. Although the New Jersey Supreme Court affirmed the trial court's exclusion of these factors because they did not relate to the defendant's character, record or the circumstances of his offense, it recognized that the trial court allowed a considerable amount of character evidence regarding the defendant's relationship with his wife and children, sufficient to cure any error that might have resulted due to the exclusion of these factors.  Id. at 713.  In People v. Ochoa, 19 Cal.4th

7

353, 79 Cal.Rptr.2d 408, 966 P.2d 442 (Cal. 1998), the defendant contended that the trial court violated his rights when it refused to give an instruction stating that the jury could consider sympathy for his family as a mitigating factor.  <u>Id.</u> at 506.  The California Supreme Court held "sympathy for a defendant's family is not a matter that a capital jury can consider in mitigation, but that family members may offer testimony of the impact of an execution on them if by so doing they illuminate some positive quality of the defendant's background or character."  <u>Id.</u>  In other words, a defendant may present evidence "that he or she is loved by family members or others, and that these individuals want him or her to live ... because it constitutes indirect evidence of the defendant's character."  <u>Id.</u> at 505-506.

Presented in this manner, the mitigating factor does not directly invite the jury to consider sympathy for a defendant's loved ones.  "In other words, a jury may take into account testimony from the defendant's mother that she loves her son if it believes that he must possess redeeming qualities to have earned his mother's love.  But the jury may not spare the defendant's life because the jury feels sorry for the defendant's mother, or believes that the impact of the execution would be devastating to other members of the defendant's family."  <u>Id.</u> at 506.  <u>But</u> <u>see</u> <u>United States v. Caro</u>, 433 F. Supp 2d 726, 727-28 (W. Dist. Va 2006) (district court denied government motion to prohibit defendant from presenting evidence regarding the effect

his execution would have on his family and loved ones).

**C.    CERTAIN MITIGATING FACTORS PROPOSED BY BOTH DEFENDANTS SHOULD BE REWRITTEN TO REFLECT THE LANGUAGE IN THE FEDERAL DEATH PENALTY ACT RELATED TO SUCH MITIGATING FACTORS**

In his proposed special verdict form, defendant Kadamovas sets forth two mitigating factors addressing the potential punishment that Ainar Altmanis faces: (1) mitigating factor #5, which asserts "AINAR ALTMANIS, who is guilty of five hostage takings resulting in death, will not be sentenced to death"; and (2) mitigating factor #6, which asserts "AINAR ALTMANIS has an agreement with the State of California, that as punishment for five murders, his term of imprisonment will not exceed twenty years." (Exhibit A at pp. 9-10). Similarly, defendant Mikhel asserts as his first mitigating factor that "Ainar Altmanis was intimately involved in each of the murders for which Iouri Mikhel faces the death penalty, but Altmanis has made deals with both the state and federal authorities to avoid capital punishment. He faces a maximum of twenty years for state conviction." (Exhibit B).

These mitigating factors proposed by defendants are, in fact, reflective of one mitigating factor set forth in the Federal Death Penalty Act as a statutory mitigating factor. Title 18, United States Code, Section 3592(a)(4), recognizes that it is a mitigating factor in a death penalty case for a particular defendant if "[a]nother defendant or defendants, equally culpable in the crime, will not be punished by death."

The mitigating factors proposed by defendants that address

the punishment Altmanis faces should be rewritten to reflect the language at 18 U.S.C. § 3592(a)(4) that makes the scenario posited by defendants a proper mitigating factor. Specifically, these mitigating factors should be rewritten to allege: "Ainar Altmanis was an equally culpable participant in the criminal activities making defendants Mikhel and Kadamovas eligible for the death penalty and will not be punished by death."

**D. CERTAIN MITIGATING FACTORS PROPOSED BY DEFENDANT MIKHEL ARE REDUNDANT AND SHOULD BE CONSOLIDATED**

In his proposed instructions, defendant Mikhel has set forth 19 mitigating factors for the jury to consider in its deliberations. The government submits that many of these factors are repetitive and confusing. Therefore, the government requests that defendant Mikhel be ordered to consolidate several of his proposed mitigating factors. If consolidated as set forth below, or in some other acceptable framework, the mitigating factors will better frame and control jury deliberations. See United States v. Taveras, 436 F.Supp.2d 493, 503 (E.D.N.Y. 2006). Defendant Mikhel, of course, will remain free to prove any fact and make any argument he believes to be mitigating within the general parameters of his list. See Lockett, 438 U.S. at 604-608.

Set forth below is the government's proposed list of consolidated mitigating factors for defendant Mikhel:

1. Factors 3 and 4 can be consolidated to read: "IOURI MIKHEL was neglected and abandoned for the first 18 years of his life, living in orphanage-like boarding schools, and for

10

the first 12 years of his live, had extended stays in hospitals for physical problems that included chronic respiratory illnesses and pneumonia."

2.   Factors 5 and 8 can be consolidated to read: "IOURI MIKHEL grew up in communist Russia, in an economic system that kept its citizens at the poverty level, and he was impacted by the socio-economic changes, poverty and political turmoil in his formative years."

3.   Factors 6, 7, and 9 can be consolidated to read: "IOURI MIKHEL was raised in a politically bankrupt system in which little value was placed on human life, economic crimes received greater punishment than violent crimes, and citizens were forced to perform acts criminalized by the government to survive."

4.   Factors 11, 12 and 16 can be consolidated to read: "Should the jury so direct, if he is not executed, defendant MIKHEL will be sentenced to life imprisonment without any possibility of release, which would be substantial punishment for defendant MIKHEL."

**E.   THE DEFENSE SHOULD NOT BE PERMITTED TO REFER TO THE DEATH PENALTY AS "MURDER" OR ARGUE THAT A BY RETURNING A VERDICT OF DEATH THE JURORS WILL BE "KILLING" A DEFENDANT**

The Government requests that the defense be prohibited from using the terms "kill" or "murder" in referring to the death penalty or the jurors' act of returning a verdict of death.  In State v. Reddish, 859 A.2d 1173, 1229 (N.J. 2004), the Supreme Court of New Jersey reviewed a trial court's granting of a state

11

motion in limine to bar the defense from using the words "kill," "murder," or similar terminology when referring to the death penalty.  The Court upheld the trial court's order, stating:

> [W]e find that the court properly precluded the use of the word "murder" to describe the imposition of the death penalty.  That word carries with it the opprobrium of an illegal act.  As such, it is an utterly inapt characterization of the state-sanctioned punishment of death.  Similarly, the court appropriately prevented the use of the word "kill" in reference to the jurors' role in a death penalty proceeding.  It is not the jurors who "kill" a defendant when a verdict of death is returned.  Their role is limited to a determination of the proper sentence.  Accordingly, the use of the inflammatory term "kill" would only distract the members from the dispassionate discharge of their duty to evaluate and weigh the statutory aggravating and mitigating factors.

Id.  The Government seeks a similar prohibition in this case.

## III.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court limit the mitigation factors presented by defendants as requested herein, and also prohibit defense counsel from using the terms "kill" or "murder" in referring to the death penalty or the jurors' act of returning a verdict of death.

The government reserves the right to make additional arguments regarding defendants' proposed mitigating factors following the presentation of both defendants' mitigation cases and their closing arguments in the penalty phase.

12