GEORGE S. CARDONA
Acting United States Attorney
THOMAS P. O'BRIEN
Assistant United States Attorney
Chief, Criminal Section
ROBERT E. DUGDALE (California State Bar No. 167258)
Deputy Chief - Organized Crime and Terrorism Section
SUSAN J. DE WITT (California State Bar No. 132462)
KAREN I. MEYER (California State Bar No. 220554)
Assistant United States Attorneys
Organized Crime and Terrorism Section
    1500 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone:  (213) 894-4685/4496/8559
    Facsimile:  (213) 894-3713
    e-mail:   robert.dugdale@usdoj.gov
            susan.dewitt@usdoj.gov
            kim.meyer@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 02-220(B)-DT |
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANT JURIJUS KADAMOVAS' MOTION FOR A NEW TRIAL |
| v. | |
| IOURI MIKHEL and JURIJUS KADAMOVAS, | Hearing Date:   TBD<br>Time:            TBD |
| Defendants. | Courtroom of the Honorable Dickran Tevrizian |

Plaintiff, United States of America, by and through its attorneys of record, hereby files its opposition to defendant Jurijus Kadamovas' Motion for a New Trial. The government's opposition is based upon the attached Memorandum of Points and Authorities, the complete files and records in this case, and any argument that may be presented at the hearing on this motion.

DATED: February 12, 2007

Respectfully submitted,

GEORGE S. CARDONA
Acting United States Attorney

THOMAS P. O'BRIEN
Assistant United States Attorney
Chief, Criminal Division

ROBERT E. DUGDALE
SUSAN J. DE WITT
KAREN I. MEYER
Assistant United States Attorney
Organized Crime and Terrorism Section

Attorneys for Plaintiff
United States of America

2

I.

INTRODUCTION

Defendant Jurijus Kadamovas ("defendant") was convicted of each charge alleged against him in the Second Superseding Indictment after a jury trial spanning more than four months. The evidence at trial established in completely overwhelming fashion that defendant was intimately involved in a series of hostage-takings resulting in the deaths of five Los Angeles residents, Meyer Muscatel, Rita Pekler, Alexander Umansky, George Safiev, and Nick Kharabadze, whose bodies the defendant and his co-conspirators discarded into the New Melones Reservoir after murdering them. The evidence further established that defendant conspired with defendants Iouri Mikhel and Petro Krylov to escape from the Metropolitan Detention Center following their arrests to avoid the trial in this case.

Near the conclusion of the guilt phase of the trial, defendant Mikhel testified in his own defense.[1] While testifying on direct examination, defendant Mikhel denied that he was involved in the abductions or murders of any of the victims in this case. Moreover, he exculpated defendant from involvement in

---

[1] In his motion, defendant Kadamovas points out the purported unfairness of allowing defendant Mikhel to testify after initially resting his defense case. As the Ninth Circuit has recognized on numerous occasions, a district court is afforded wide discretion when deciding whether to permit a party to reopen his case after resting. United States v. Tisor, 96 F.3d 370, 380 (9th Cir. 1996); Fernandez v. United States, 329 F.2d 899, 903 (9th Cir. 1964). Moreover, when this occurred in this case, defendant Kadamovas did not object to defendant Mikhel's request to reopen his case to allow him an opportunity to testify until after his testimony commenced.

1

these crimes as well.  For instance, in his testimony, defendant Mikhel claimed that (1) Ainar Altmanis was solely responsible for the abduction and murder of Meyer Muscatel; (2) Altmanis murdered Rita Pekler after he and defendant lured her to the Weslin Avenue residence to talk to her about George Safiev; (3) he and defendant had nothing to do with and no knowledge of victim Alexander Umansky's disappearance; and (4) victims Safiev and Nick Kharabadze were complicit in their own disappearance and were alive when defendant Mikhel and defendant left them at the Colombia Inn near Sonora, California.

When defendant Mikhel refused to submit to cross-examination from either counsel for defendant or counsel for the government, the Court struck defendant Mikhel's testimony and ordered the jury to disregard it in its entirety.  In fact, the Court instructed the jury to disregard defendant Mikhel's testimony in its entirety twice -- first, immediately after defendant Mikhel's testimony concluded and, later, in its final instructions to the jury.[2]

---

[2]    On January 9, 2007, upon striking defendant Mikhel's testimony, this Court informed the jury: "Ladies and gentlemen, I'm going to grant the motion to strike all of the testimony of Mr. Mikhel.  You are not to consider it in any matter against Mr. Mikhel or against Mr. Kadamovas in this case.  The entire testimony will be struck."

During the final charge to the jury, this Court instructed the jury in the following manner concerning defendant Mikhel's testimony:

> Due to defendant Iouri Mikhel's refusal to subject himself to cross examination, the Court struck all of the testimony of defendant Iouri Mikhel on his direct examination.  You are, therefore, specifically - you

2

Through the instant motion, defendant asserts that he should be granted a new trial because he was denied a fair trial in light of defendant Mikhel's decision to testify.  Defendant further argues that the Court's act of instructing the jury to disregard defendant Mikhel's testimony after the Court struck it was ineffective in remedying the purported problems raised as a result of defendant Mikhel's testimony because there was an "overwhelming probability" that the jury was unable to follow this instruction provided by the Court.  Defendant's argument has no merit.  Indeed, defendant's motion for a new trial adds nothing more to earlier motions for a mistrial that were raised by defendant during the trial and which were rejected by this Court.

Ordering a new trial is an exceptional remedy, and defendant has done nothing to show that the rare invocation of this remedy is appropriate in this case.  Defendant Mikhel's testimony was not directly antagonistic to defendant Kadamovas.  Instead, it

---

are, therefore, specifically instructed that you are not to consider or discuss any statement made by defendant Iouri Mikhel here in Court for any purpose whatsoever.

You are instructed as a matter of law that defendant Iouri Mikhel should be considered as not testifying in this matter.  A defendant in a criminal case has a Constitutional right not to testify.  No presumption of guilt may be raised and no inference of any kind may be drawn from the fact that defendant Iouri Mikhel did not testify.

You are further instructed that you are not to draw any inference or inferences about the guilt or innocence of any other defendant from the testimony which was struck by the Court.

3

appears that it was a pathetic effort by defendant Mikhel to assist himself and defendant Kadamovas by providing alternative explanations to particularly damning pieces of evidence introduced during the case.  Moreover, in light of the fact this Court struck defendant Mikhel's testimony and indicated to the jury on multiple occasions it could not consider it, any harm that was theorhetically inflicted upon defendant Kadamovas' case as a result of defendant Mikhel's testimony was completely ameliorated and rendered moot by the Court's instructions to the jury.

II.

ARGUMENT

A.    THE LAW GOVERNING MOTIONS FOR A NEW TRIAL

A decision to grant a defendant a new trial in the wake of a guilty verdict is an exceptional remedy limited to extraordinary cases.  As the Ninth Circuit has recognized on a number of occasions, a motion for a new trial "should be granted only in exceptional cases in which the evidence preponderates highly against the verdict."  See, e.g., United States v. Pimentel, 654 F.2d 538, 545 (9th Cir. 1981) (emphasis added); United States v. Rush, 749 F.2d 1369, 1371 (9th Cir. 1984).[3]  The evidence is sufficient to support a conviction if, after reviewing the evidence in the light most favorable to the prosecution, any

_____

[3]    See also, United States v. Mack, 868 F. Supp. 207, 209 (E.D. Mich. 1994) (recognizing that "[m]otions for new trials are not favored and should be granted only with great caution and in the 'most extraordinary of circumstances'" (citing United States v. Graner, 529 F.2d 962, 969 (6th Cir. 1976)).

rational trier of fact could have found the essential elements of the offenses charged beyond a reasonable doubt, with conflicting evidence resolved in favor of the verdict.  Rush, 749 F.2d at 1372 (citing United States v. Marabelles, 724 F. 2d 1374, 1377 (9th Cir. 1984)); United States v. Davis, 728 F. Supp. 1437, 1441 (N.D. Cal. 1989), rev'd on other grounds, 932 F.2d 752 (9th Cir. 1991)).  In general, a verdict may be set aside and a new trial granted only if a court reaches the firm conclusion that a miscarriage of justice has occurred during the trial.  United States v. Parelius, 83 F. Supp. 617 (D.C. Haw. 1949).

Defendant Kadamovas has failed to meet the heavy burden that he must meet in order to be granted the extraordinary remedy of a new trial, and therefore his motion must be denied.

B.    A DEFENDANT IS NOT NECESSARILY ENTITLED TO A SEVERENCE IN A CASE WHERE A CODEFENDANT PRESENTS AN ANTAGONISTIC DEFENSE TO HIS OWN DEFENSE, AND THE TESTIMONY OFFERED BY DEFENDANT MIKHEL WAS NOT ANTAGONISTIC TO DEFENDANT KADAMOVAS

A central premise behind defendant's motion is that this Court erred when it failed to grant defendant the severance he requested once defendant Mikhel took the stand and testified because defendant Mikhel provided testimony that was inconsistent with theories he purportedly intended to offer to the jury.  This argument fails to appreciate and properly account for the showing a defendant must make to justify a severance based on a conflicting defense offered by a codefendant.

To warrant severance on the basis of antagonistic defenses, codefendants must show that their defenses are irreconcilable and mutually exclusive.  See United States v. Angwin, 271 F.3d 786,

5

795 (9th Cir. 2001); <u>United States v. Sherlock</u>, 962 F.2d 1349, 1363 (9th Cir. 1992).  Defenses are mutually exclusive when "acquittal of one codefendant would necessarily call for the conviction of the other."  <u>United States v. Tootick</u>, 952 F.2d 1078, 1081 (9th Cir. 1991); <u>see</u> <u>United States v. Throckmorton</u>, 87 F.3d 1069, 1072 (9th Cir. 1996) (noting that "a defendant must show that the core of the codefendant's defense is so irreconcilable with the core of his own defense that the acceptance of the codefendant's theory by the jury precludes acquittal of the defendant").  Moreover, even when defendants present antagonistic defenses, such defenses "are not prejudicial <i>per se</i>."  <u>Zafiro v. United States</u>, 506 U.S. 534, 538 (1993) (recognizing that "a district court should grant a severance under [Federal] Rule [of Criminal Procedure] 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent a jury from making a reliable judgment about guilt or innocence.")

Here, defendant Mikhel's testimony was not antagonistic to defendant Kadamovas in the manner that would have justified his requests for a severance at trial.  This was not a case in which the jury's acceptance of defendant Mikhel's testimony would have led to the acquittal of one defendant at the necessary expense of the conviction of the other.  Indeed, the testimony offered by defendant Mikhel, insofar as it concerned defendant Kadamovas, went at lengths to exculpate defendant Kadamovas from the most serious conduct charged in this case.  Accordingly, the

"prejudice" defendant purports he experienced as a result of defendant Mikhel's trial testimony did not meet the standard necessary to justify the severance he claims he was entitled to receive.

C.    ANY THEORHETICAL HARM THAT WAS DONE TO DEFENDANT KADAMOVAS' DEFENSE AS A RESULT OF HIS CODEFENDANT'S EFFORTS TO EXCULPATE HIMSELF AND DEFENDANT KADAMOVAS THROUGH HIS TESTIMONY WAS AMELIORATED BY THIS COURT WHEN IT STRUCK DEFENDANT MIKHEL'S TESTIMONY AND ORDERED THE JURY TO DISREGARD IT

More importantly, the testimony offered by defendant Mikhel did not prejudice defendant in any way because his testimony was struck by this Court, the jury was instructed on multiple occasions to disregard it, and this Court took steps to insure that defendant's case received individual consideration by the jury.   These facts are fatal to defendant's motion.

As the Supreme Court has recognized, and the Ninth Circuit has frequently echoed, courts are to "normally presume that a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it, unless there is an 'overwhelming probability' that the jury [was] unable to follow the court's instructions." Greer v. Miller, 483 U.S. 756, 766 n.8 (1987); see also Zafiro, 506 U.S. at 939 (recognizing how the risk of prejudice resulting from trying defendants jointly can be eliminated through the court's instructions, which juries "are presumed to follow"); Angwin, 271 F.3d at 796 (holding that prejudice apparently experienced as a result of the alleged improper joinder of two defendants who purported to offer antagonistic defenses at trial was minimized by having the Court

7

issue limiting instructions and separate verdict forms for each defendant to the jury).  Defendant attempts to turn this frequent pronouncement by the courts on its head by arguing that the jury completely ignored the instructions given by this Court and instead improperly considered the striken testimony of defendant Mikhel after two direct admonitions not to do so.

This argument lacks any legal or factual underpinning and should be rejected.  Any theoretical harm that defendant suffered as a result of defendant Mikhel's testimony was thoroughly ameliorated by the actions taken by this Court.  These actions included not only giving the two instructions referenced above concerning defendant Mikhel's stricken testimony; it also included several other steps to make sure that defendant Kadamovas' case received individualized consideration by the jurors.  These steps included instructing the jury to consider the evidence against each defendant separately, and having the jury consider defendant's guilt separately from defendant Mikhel's guilt through use of distinct special verdict forms.  As a result of these measures taken by this Court, defendant received a fair trial, and there is nothing that this Court or the government did that substantiates a claim to the contrary.

III.

CONCLUSION

For each of the foregoing reasons, defendant Kadamovas' motion for a new trial should be denied.

8