

**ORIGINAL**

FILED
CLERK, U.S. DISTRICT COURT

FEB 13 2007

CENTRAL DISTRICT OF CALIFORNIA
BY                           DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR 02-220(B)-DT |
| Plaintiff, | ) ) ) | COURT'S JURY INSTRUCTIONS NO. 2 - PENALTY PHASE |
| v. | ) | |
| IOURI MIKHEL and JURIJUS KADAMOVAS, | ) ) ) | |
| Defendants. | ) ) ) | |

COURT'S INSTRUCTION NO. 1

Members of the jury, you have unanimously found the defendants guilty of the hostage-taking offenses alleged in Counts One, Two, Three, and Four of the Second Superseding Indictment and unanimously concluded that the deaths of victims Meyer Muscatel, Rita Pekler, Alexander Umansky, George Safiev, and Nick Kharabadze resulted from the defendants' criminal activity alleged in Counts One, Two, Three, and Four. You must now consider whether imposition of a sentence of death is justified, or whether the defendants should be sentenced to life imprisonment without the possibility of release, for commission of these crimes.

This decision is left exclusively to you, the jury. If you determine that a defendant should be sentenced to death, or to life imprisonment without the possibility of release, the Court is required to impose that sentence.

As to each defendant, before you consider whether to impose a sentence of death, you must make each of the following three findings unanimously and beyond a reasonable doubt:

1. First, you must find unanimously and beyond a reasonable doubt that the defendant was at least 18 years of age at the time of the offenses.

2. Second, you must find unanimously and beyond a reasonable doubt that the defendant either:

    a.   Intentionally killed Meyer Muscatel, Rita Pekler, Alexander Umansky, Nick Kharabadze, and/or George Safiev; or

    b.   Intentionally participated in an act, contemplating that the life of a person would be taken or

2

intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and Meyer Muscatel, Rita Pekler, Alexander Umansky, Nick Kharabadze, and/or George Safiev died as a direct result of the act.

3.    Third, you must find unanimously and beyond a reasonable doubt that the government has proved the existence of at least one statutory aggravating factor.  I will define the term "aggravating factor" for you shortly.

If, after fair and impartial consideration of all the evidence in this case, any one of you does not make the three required findings beyond a reasonable doubt, your deliberations will be over.  If you do unanimously make these three findings beyond a reasonable doubt, you will then proceed to determine whether you unanimously find that the government has proved the existence of any non-statutory aggravating factors beyond a reasonable doubt, and whether you find that the defendants have proved any mitigating factors by a preponderance of the evidence. You must then engage in a weighing process.  If you unanimously find that the aggravating factor or factors, which you all found to exist, sufficiently outweigh any mitigating factors, which any of you found to exist, to justify imposition of a sentence of death, or if, in the absence of any mitigating factors, you find that the aggravating factor or factors alone are sufficient to justify imposition of a sentence of death, and therefore that death is the appropriate sentence in this case, the law provides that the defendant may be sentenced to death.

Again, whether or not the circumstances in this case justify a sentence of death is a decision that is _entirely_ yours.  You

must not take anything I have said or did during this phase of the trial as indicating what I think of the evidence or what I think your verdict should be.

Two terms that you have already heard and will hear throughout these instructions are "aggravating factors" and "mitigating factors." These factors concern the circumstances of the crimes or the personal traits, character, or background of the defendant.

The word "aggravate" means "to make worse or more offensive" or "to intensify." The word "mitigate" means "to make less severe" or "to moderate." An aggravating factor, then, is a fact or circumstance which would tend to support imposition of the death penalty. A mitigating factor is any aspect of a defendant's character or background, any circumstance of the offenses, or any other relevant fact or circumstance which might indicate that the defendants should not be sentenced to death.

In the death penalty statute, a number of aggravating factors are listed. These are called "statutory aggravating factors." As I instructed you earlier, before you can consider imposition of the death penalty, you must find that the government proved at least one of these aggravating factors specifically listed in the death penalty statute, and your finding must be unanimous and beyond a reasonable doubt. In addition, there also may be aggravating factors not specifically set out in the death penalty statute. Again, your finding that any non-statutory aggravating factor exists must be unanimous and beyond a reasonable doubt.

The defendant has the burden of proving any mitigating

4

factors. However, there is a different standard of proof as to mitigating factors. You need not be convinced beyond a reasonable doubt about the existence of a mitigating factor; you need only be convinced that it is more likely true than not true in order to find that it exists. A unanimous finding is not required. Any one of you may find the existence of a mitigating factor, regardless of the number of other jurors who may agree.

If you have unanimously found that at least one statutory aggravating factor exists, you then must weigh the aggravating factors you have found to exist against any mitigating factors that a particular juror has found to exist to determine the appropriate sentence. Any juror may also weigh a mitigating factor found by another juror, even if he or she did not also find that factor to be mitigating. I will give you detailed instructions regarding the weighing of aggravating and mitigating factors before you begin your deliberations. However, I instruct you now that you must not simply count the number of aggravating and mitigating factors and reach a decision based on which number is greater; you must consider the weight and value of each factor.

COURT'S INSTRUCTION NO. 2

Members of the jury, it is again my duty to instruct you as to the law applicable to the sentencing phase of this case. The sole question before you is whether defendant Mikhel or defendant Kadamovas should be sentenced for their capital offenses to either (1) the death penalty or (2) life imprisonment without the possibility of release. The selection between these very serious choices is yours and yours alone to make. If you determine that a defendant should be sentenced to death, or instead to life imprisonment without the possibility of release, the Court is required to impose whichever sentence you choose. There is no parole in the federal system.

Remember that you have previously found the defendants guilty of capital counts One through Four in the Indictment. You must still approach the sentencing decision before you with an open mind. I cannot stress to you enough the importance of your giving careful and thorough consideration to all the evidence. And regardless of any opinion you may have as to what the law may be or should be, it would be a violation of your oaths as jurors to base your sentencing decision upon any view of the law other than that which is given to you in these instructions.

The instructions I am giving you now are a complete set of instructions on the law applicable to the sentencing decision for each defendant. During your deliberations you should thus rely on these instructions. I have also prepared a special verdict form that you must complete. The form details the special findings you must make and will aid you in properly performing your deliberative duties.

6

Now, although Congress has left it wholly to you, the jury, to decide each defendant's proper punishment, it has narrowed and channeled your discretion in specific ways, particularly by making you consider and weigh any "aggravating" and "mitigating" factors present in this case. As I explained previously, these factors have to do with the circumstances of the crime, or the personal traits, character, or background of each defendant, or anything else relevant to the sentencing decision. Aggravating factors are those that would tend to support imposition of the death penalty. By contrast, mitigating factors are those that suggest that life in prison without the possibility of release is an appropriate sentence in this case.

Of course, your task is not simply to decide what aggravating and mitigating factors exist here, if any. Rather, you are called upon to evaluate any such factors and to make a unique, individualized choice between the death penalty and life in prison without the possibility of release. In short, the law does not assume that every defendant found guilty of committing murder should be sentenced to death. Nor does the law presume that either of these defendants, in particular, should be sentenced to death. Rather, your decision on the question of punishment is a uniquely personal judgment which the law, in the final analysis, leaves up to each of you.

COURT'S INSTRUCTION NO. 3

The instructions which I am now giving to you will be made available in written form if you so request for your deliberations.

You will find that the instructions may be typed, printed, or handwritten. Portions may have been added or deleted. You must disregard any deleted part of an instruction and not speculate as to what it was or to the reasons for its deletion. You are not to be concerned with the reasons for any modifications.

Every part of the text of an instruction, whether typed, printed, or handwritten, is of equal importance. You are to be governed only by the instruction in its final wording.

COURT'S INSTRUCTION NO. 4

If any rule, direction or idea in these instructions is repeated or stated in varying ways, no emphasis is intended and you must not draw any inference because of its repetition.  You are not to single out any certain sentence or any individual point or instruction and ignore the others.  You are to consider all the instructions as a whole and are to regard each in the light of all the others.

The order in which the instructions are given has no significance as to their relative importance.

9

COURT'S INSTRUCTION NO. 5

It is proper to add the caution that nothing said in these instructions and nothing in any form of verdict prepared for your convenience is meant to suggest or convey in any way or manner any intimation as to what verdict I think you should find.  What the verdict shall be is your sole and exclusive duty and responsibility.

COURT'S INSTRUCTION NO. 6

If any reference by the Court or by counsel to matters of testimony or exhibits does not coincide with your own recollection of that evidence, it is your recollection which should control during your deliberations and not the statements of the Court or of counsel.

You are the sole judges of the evidence received in this case.

COURT'S INSTRUCTION NO. 7

During the course of a trial, I may occasionally ask questions of a witness.  Do not assume that I hold any opinion on the matters to which my questions may relate.  The Court may ask a question simply to clarify a matter -- not to help one side of the case or hurt another side.

Remember at all times that you, as jurors, are the sole judges of the facts of this case.

COURT'S INSTRUCTION NO. 8

It is the duty of the Court to admonish an attorney, witness or party who, out of zeal for his or her cause, does something which is not in keeping with the rules of evidence or procedure.

You are to draw no inference against the side to whom an admonition of the Court may have been addressed during the trial of this case.

Nothing the Court may have said or done during the course of the trial was intended to indicate nor should be taken by you as indicating what your verdict or verdicts should be. No statement, ruling, remark or comment which I may have made during the course of the trial was intended to indicate my opinion as to how you should decide the case or to influence you in any way in your determination of the facts and the credibility of the witnesses.

If I have said or done anything during the course of this trial to so indicate, you are expressly instructed that you must disregard and reject my comments and form your own opinion.

Remember, at all times you, the jury, are the sole judges of the facts, evidence and credibility of the witnesses.

COURT'S INSTRUCTION NO. 9

Defendant Iouri Mikhel has played segments of videotaped interviews conducted by his investigators of individuals who reside in Russia and are unavailable for trial. The statements made by these witnesses were not given under oath. As a result of the manner this evidence was presented by defendant Mikhel, the government has not had an opportunity to cross-examine the individuals questioned in these videotaped interviews to test the truthfulness of their statements. You may consider both of these factors when deciding whether or not to believe these witnesses who were interviewed and when deciding what weight, if any, to give to these videotaped interviews.

COURT'S INSTRUCTION NO. 10

Regardless of any opinion you may have as to what the law may be -- or should be -- it would be a violation of your oaths as jurors to base your verdict upon any view of the law other than that given to you in these instructions.

Some of the legal principles that you must apply to this sentencing decision duplicate those you followed in reaching your verdict as to guilt or innocence. Others are different. The instructions I am giving you now are a complete set of instructions on the law applicable to the sentencing decision. I have prepared them to ensure that you are clear in your duties at this extremely serious stage of the case. I have also prepared a Special Verdict Form that you must complete. The form details special findings you must make in this case and will help you perform you duties properly.

COURT'S INSTRUCTION NO. 11

You are instructed that you must separately consider the evidence as to each defendant and that you are required to individually determine the penalty for each defendant separately.

16

COURT'S INSTRUCTION NO. 12

Earlier, during the trial of defendants' guilt, I instructed you on the definition of the phrase "proof beyond a reasonable doubt." That same definition applies in this penalty phase of the case. Let me repeat that definition as it applies to the government's burden of proving the existence of any aggravating factors beyond a reasonable doubt.

Proof beyond a reasonable doubt is proof that leaves you firmly convinced that an aggravating factor exists. It is not required that the government prove the existence of an aggravating factor beyond all possible doubt.

A reasonable doubt is a doubt based upon reason and common sense and is not based purely on speculation. It may arise from a careful and impartial consideration of all the evidence, or from a lack of evidence.

COURT'S INSTRUCTION NO. 13

The Government, at all times, has the burden of proving beyond a reasonable doubt that the appropriate sentence for each defendant is in fact the death penalty.  Specifically, that means that the Government must prove beyond a reasonable doubt: (1) that a defendant was at least 18 years of age at the time of the offenses and the existence of at least one gateway factor; (2) the existence of at least one statutory aggravating factor; (3) the existence, if any, of non-statutory aggravating factors; and (4) that all the aggravating factors found to exist sufficiently outweigh all the mitigating factors found to exist so as to make a sentence of death appropriate, or, in the absence of any mitigating factor, that the aggravating factors found to exist alone make a sentence of death appropriate.

A defendant never has the burden of disproving the existence of anything which the Government must prove beyond a reasonable doubt.  The burden is wholly upon the Government; the law does not at all require a defendant to produce evidence that a particular aggravating factor does not exist or that death is not an appropriate sentence.

As such, a defendant is not required to assert or establish any mitigating factors.  However, if one or more mitigating factors are asserted, it is a defendant's burden to establish any mitigating factors by a preponderance of the evidence.  To prove something by a preponderance of the evidence is a lesser standard of proof than proof beyond a reasonable doubt.  To prove something by a preponderance of the evidence is to prove that it is more likely true than not true.  It is determined by

18

considering all of the evidence and deciding what evidence is more believable.  If, however, the evidence is equally balanced, you cannot find that the mitigating factor has been proved.

The preponderance of the evidence is not determined by the greater number of witnesses or exhibits presented by the Government or a defendant.  Rather, it is the quality and persuasiveness of the information which controls.

COURT'S INSTRUCTION NO. 14

In making all the determinations you are required to make in this phase of the trial, you may consider any information presented during this penalty phase and the guilt phase, but excluding any evidence that was introduced solely against another defendant. Also, recall that for our purposes here the terms "evidence" and "information" have the same meaning.

In deciding what the facts are, you may have to decide what testimony you believe and what testimony you do not believe. You may believe all of what a witness said, or only part of it, or none of it. In deciding what testimony of any witness to believe, consider the witness' intelligence, the opportunity the witness had to see or hear the things testified about, the witness' memory, any motives that witness may have for testifying, whether that witness said something different at an earlier time, the general reasonableness of the testimony, and the extent to which the testimony is consistent with other evidence that you believe.

Additionally, because the law does not permit any witness to state whether he or she personally favors or opposes the death penalty in this case, you should draw no inference either way from the fact that no witnesses have testified as to their views on this subject.

COURT'S INSTRUCTION NO. 15

Neither defendant Mikhel nor defendant Kadamovas testified in this case. A defendant has a right not to do so and there is no burden upon any defendant to prove that he should not be sentenced to death. Instead, the burden is entirely on the prosecution to prove, beyond a reasonable doubt, that a sentence of death is in fact justified. Accordingly, that a defendant did not testify must not be considered by you in any way, or even discussed, in arriving at any aspect of your sentencing decision, including the existence or non-existence of an alleged aggravating or mitigating factor.

COURT'S INSTRUCTION NO. 16

Before you may consider the imposition of the death penalty, you must first unanimously agree beyond a reasonable doubt that the defendant was eighteen years of age or older at the time of the offenses charged in Counts One, Two, Three, and Four of the Second Superseding Indictment.

If you unanimously make that finding, you should so indicate on the appropriate page of Section I of the Special Verdict Form and continue your deliberations. If you do not unanimously make that finding, you should so indicate on the appropriate page of the Special Verdict Form and follow the instructions on the remainder of the form. No further deliberations will be necessary.

COURT'S INSTRUCTION NO. 17

Before you may consider the imposition of the death penalty, you must also unanimously find beyond a reasonable doubt that the defendant intentionally killed or committed acts resulting in the deaths of Meyer Muscatel, Rita Pekler, Alexander Umansky, Nick Kharabadze, and/or George Safiev in one of the manners described below. If you unanimously make that finding as to the murder of a particular victim, you should so indicate on the appropriate page of Section II of the Special Verdict Form and continue your deliberations. If you do not unanimously make that finding as to the murder of a particular victim, you should so indicate on the appropriate page of the Special Verdict Form, and follow the directions that follow. No further deliberations will be necessary as to that murder.

As to each defendant, the government alleges that the murders of Meyer Muscatel, Rita Pekler, Alexander Umansky, Nick Kharabadze, and George Safiev were committed in the following manner:

1.    The defendant intentionally killed the victims, Meyer Muscatel, Rita Pekler, Alexander Umansky, George Safiev, and Nick Kharabadze by suffocating them or, in the case of Nick Kharabadze, by strangling him. To establish that the defendant intentionally killed a victim, the government must prove that the defendant killed the victim with a conscious desire to cause the victim's death.

2.    The defendant intentionally participated in an act, contemplating that the life of a person would be taken and intending that lethal force would be used in connection with a

23

person, other than the participants in the offenses, and the victims died as a direct result of the act, by directing and ordering others, including Ainar Altmanis and/or Petro Krylov, to assist them in killing the victims. The government must prove that the defendant deliberately gave those directions and orders with a conscious desire that a person be killed or that lethal force be employed against a person. The phrase "lethal force" means an act or acts of violence capable of causing death.

Intent or knowledge may be proved like anything else. You may consider any statements made and acts done by the defendants, and all the facts and circumstances in evidence which may aid in a determination of the defendant's knowledge or intent.

You may, but are not required to, infer that a person intends the natural and probable consequences of acts knowingly done or knowingly omitted.

COURT'S INSTRUCTION NO. 18

As to each defendant, if you unanimously find beyond a reasonable doubt that the defendant intentionally committed the murder of Meyer Muscatel, Rita Pekler, Alexander Umansky, Nick Kharabadze, and/or George Safiev, or committed acts resulting in the deaths of Meyer Muscatel, Rita Pekler, Alexander Umansky, Nick Kharabadze, and/or George Safiev in the manner described, you must then proceed to determine whether the government has proved beyond a reasonable doubt the existence of any of the following alleged statutory aggravating factors with respect to these same murders. If you unanimously make that finding in the affirmative as to the murder of a particular victim, you should so indicate on the appropriate page of Section III of the Special Verdict Form and continue your deliberations. If you do not unanimously make that finding in the affirmative as to the murder of a particular victim, you should so indicate on the appropriate page of the Special Verdict Form and follow the directions that follow. No further deliberations will be necessary as to that murder.

As to both defendants Mikhel and Kadamovas, the government has alleged the following statutory aggravating factors:

1. Death During the Commission of Another Crime

The deaths of Meyer Muscatel, Rita Pekler, Alexander Umansky, Nick Kharabadze, and George Safiev occurred during the commission of another crime, in this case violations of 18 U.S.C. § 1203, conspiracy to commit hostage takings resulting in death and hostage takings resulting in death, as you have previously determined in finding the defendants guilty of Counts One, Two,

25

Three, and Four of the Second Superseding Indictment.

2.    Procurement of the Offense by Payment

The defendants procured the commission of the offenses charged in Counts One, Two, Three, and Four by payment, and/or the promise of payment, of anything of pecuniary value, in this case by enlisting the assistance of others, including Ainar Altmanis, Petro Krylov, and/or Alexsejus Markovskis in the hostage-takings and killings of victims Meyer Muscatel, Rita Pekler, Alexander Umansky, George Safiev, and Nick Kharabadze in return for the payment and the promise of payment of money collected as a result of the abductions of their victims.  To establish that the defendant procured the commission of the offense by payment or the promise of payment of anything of pecuniary value, the government must prove, in essence, that the defendant arranged to have someone else commit the offense or assist in committing it.  There is no requirement that the government prove that something of pecuniary value actually changed hands.  To "procure commission of the offense" means to obtain it or bring it about.  The words "payment or promise of payment" should be given their ordinary, everyday meaning which includes giving or offering compensation in return for services.  "Anything of pecuniary value" means anything in the form of money, property, or anything else having some economic value, benefit, or advantage.

3.    Substantial Planning and Premeditation

The defendant committed the offenses charged in Counts One, Two, Three, and Four of the Second Superseding Indictment, for which you have found them guilty, after substantial planning and

premeditation to cause the deaths of Meyer Muscatel, Rita Pekler, Alexander Umansky, George Safiev, and Nick Kharabadze. "Planning" means mentally formulating a method for doing something or achieving some end. "Premeditation" means thinking or deliberating about something and deciding to do it beforehand. "Substantial" planning and premeditation means a considerable or significant amount of planning and premeditation.

    4.   Multiple Killings

The defendant intentionally killed more than one person in a single criminal episode. "More than one person" means one or more other people in addition to killing any single victim named in Count One of the Second Superseding Indictment. In this case, the government alleges that the defendant intentionally killed five individuals, victims Meyer Muscatel, Rita Pekler, Alexander Umansky, George Safiev, and Nick Kharabadze. "Intentionally killing" a person means killing a person on purpose, that is: willfully, deliberately, or with a conscious desire to cause a person's death (and not just accidentally or involuntarily). "A single criminal episode" is an act or series of related criminal acts which occur within a relatively limited time and place, or are directed at the same persons, or are part of a continuous course of conduct related in time, place, or purpose. A person of sound mind and discretion may be presumed to have intended the ordinary, natural, and probable consequences of his knowing and voluntary acts. However, this presumption is not required. Thus, you may infer from the defendant's conduct that the defendant intended to kill a person if you find: (1) that the defendant was a person of sound mind and discretion; (2) that

27

person's death was an ordinary, natural, and the probable consequence of the defendant's acts; and (3) that the defendant committed these acts knowingly and voluntarily.  But once again, you are not required to make such an inference.

COURT'S INSTRUCTION NO. 19

If you have found the existence of one or more statutory aggravating factors unanimously and beyond a reasonable doubt, you must then consider whether the government has proved any non-statutory aggravating factors. As in the case of statutory aggravating factors, you must unanimously agree that the government has proved beyond a reasonable doubt the existence of any of the non-statutory aggravating factors before you may consider such factors in your deliberations on the appropriate punishment for the defendants in this case.

In addition to any statutory aggravating factors you have found, you are permitted to consider and discuss only the non-statutory aggravating factors specifically claimed by the government and listed below. You must not consider any other facts in aggravation which you think of on your own.

**For defendant Mikhel:**

The following are the non-statutory aggravating factors alleged by the government as to defendant Mikhel:

1. Future Dangerousness of the Defendant if Confined to a Federal Prison for Life Without the Possibility of Release

Defendant Mikhel is likely to commit criminal acts of violence in the future that would constitute a continuing and serious threat to the lives and safety of others, as evidenced by, at least, one or more of the following:

a. Continuing Pattern of Violence

Defendant Mikhel has engaged in a continuing pattern of violence, attempted violence, and threatened violence, including, at least, the crimes alleged against him in the Second

29

Superseding Indictment.

b.   Escape Risk and Institutional Misconduct

Defendant Mikhel poses a future danger to the lives and safety of other persons, as demonstrated by his escape risk and institutional misconduct, including, at least:  (1) defendant Mikhel's participation in a conspiracy to escape from the Metropolitan Detention Center -- Los Angeles, California, which was detected by the government on or about March 7, 2003, and charged as Count Six in the Second Superseding Indictment; and (2) defendant Mikhel's attempt to escape from the San Bernardino County Jail, which was detected by the government on or about January 19, 2004.

c.   Lack of Remorse

Defendant Mikhel has demonstrated a lack of remorse for the capital offenses committed in this case, as indicated by his statements and actions during the course of and following the offenses alleged in the Second Superseding Indictment.

2.   Contemporaneous Convictions

Defendant Mikhel faces contemporaneous convictions for multiple murders and other serious acts of violence.

3.   Witness Elimination

Defendant Mikhel killed the victims of his crimes, including Meyer Muscatel, Rita Pekler, Alexander Umansky, Nick Kharabadze, and George Safiev, in order to eliminate these victims as possible witnesses to his crimes.

4.   Emotional Suffering of the Victims

Defendant Mikhel displayed an indifference to the emotional suffering of the victims of his crimes, including Meyer Muscatel,

30

Rita Pekler, Alexander Umansky, Nick Kharabadze, and George Safiev, as demonstrated by the extended period of time between the time he initially seized his victims and the time he ultimately killed them.

5.    Victim Impact Evidence

a.    Defendant Mikhel caused injury, harm, and loss to the family, friends, and co-workers of Meyer Muscatel as evidenced by his personal characteristics as a human being and the impact of his death on his family, his friends, and his co-workers.

b.    Defendant Mikhel caused injury, harm, and loss to the family, friends, and co-workers of Rita Pekler as evidenced by her personal characteristics as a human being and the impact of her death on her family, her friends, and her co-workers.

c.    Defendant Mikhel caused injury, harm, and loss to the family, friends, and co-workers of Alexander Umansky as evidenced by his personal characteristics as a human being and the impact of his death on his family, his friends, and his co-workers.

d.    Defendant Mikhel caused injury, harm, and loss to the family, friends, and co-workers of Nick Kharabadze as evidenced by his personal characteristics as a human being and the impact of his death on his family, his friends, and his co-workers.

e.    Defendant Mikhel caused injury, harm, and loss to the family, friends, and co-workers of George Safiev as evidenced by his personal characteristics as a human being and the impact of his death on his family, his friends, and his co-workers.

31

**For defendant Kadamovas:**

The following are the non-statutory aggravating factors alleged by the government as to defendant Kadamovas:

1.    Future Dangerousness of the Defendant if Confined to a Federal Prison for Life Without the Possibility of Release

Defendant Kadamovas is likely to commit criminal acts of violence in the future that would constitute a continuing and serious threat to the lives and safety of others, as evidenced by, at least, one or more of the following:

a.    Continuing Pattern of Violence

Defendant Kadamovas has engaged in a continuing pattern of violence, attempted violence, and threatened violence, including, at least, the crimes alleged against him in the Second Superseding Indictment.

b.    Escape Risk and Institutional Misconduct

Defendant Kadamovas poses a future danger to the lives and safety of other persons, as demonstrated by his escape risk and institutional misconduct, including, at least, his participation in a conspiracy to escape from the Metropolitan Detention Center -- Los Angeles, California, which was detected by the government on or about March 7, 2003, and charged as Count Six in the Second Superseding Indictment.

c.    Lack of Remorse

Defendant Kadamovas has demonstrated a lack of remorse for the capital offenses committed in this case, as indicated by his statements and actions during the course of and following the offenses alleged in the Second Superseding Indictment.

2.    Contemporaneous Convictions

32

Defendant Kadamovas faces contemporaneous convictions for multiple murders and other serious acts of violence.

   3.   Witness Elimination

Defendant Kadamovas killed the victims of his crimes, including Meyer Muscatel, Rita Pekler, Alexander Umansky, Nick Kharabadze, and George Safiev, in order to eliminate these victims as possible witnesses to his crimes.

   4.   Emotional Suffering of the Victims

Defendant Kadamovas displayed an indifference to the emotional suffering of the victims of his crimes, including Meyer Muscatel, Rita Pekler, Alexander Umansky, Nick Kharabadze, and George Safiev, as demonstrated by the extended period of time between the time he initially seized his victims and the time he ultimately killed them.

   5.   Victim Impact Evidence

       a.   Defendant Kadamovas caused injury, harm, and loss to the family, friends, and co-workers of Meyer Muscatel as evidenced by his personal characteristics as a human being and the impact of his death on his family, his friends, and his co-workers.

       b.   Defendant Kadamovas caused injury, harm, and loss to the family, friends, and co-workers of Rita Pekler as evidenced by her personal characteristics as a human being and the impact of her death on her family, her friends, and her co-workers.

       c.   Defendant Kadamovas caused injury, harm, and loss to the family, friends, and co-workers of Alexander Umansky as evidenced by his personal characteristics as a human being and

33

the impact of his death on his family, his friends, and his co-workers.

d.    Defendant Kadamovas caused injury, harm, and loss to the family, friends, and co-workers of Nick Kharabadze as evidenced by his personal characteristics as a human being and the impact of his death on his family, his friends, and his co-workers.

e.    Defendant Kadamovas caused injury, harm, and loss to the family, friends, and co-workers of George Safiev as evidenced by his personal characteristics as a human being and the impact of his death on his family, his friends, and his co-workers.

At this point you must record your findings regarding whether you unanimously find that the government has proven beyond a reasonable doubt the existence of any of these non-statutory aggravating factors.  Please enter your findings on the appropriate page of Section III of the Special Verdict Form, and continue your deliberations.

COURT'S INSTRUCTION NO. 20

Before you may consider the appropriate punishment, you must consider whether the defendant has established the existence of any mitigating factors. A mitigating factor is a fact about the defendant's life or character, or about the circumstances surrounding the offenses that would suggest, in fairness, that a sentence of death is not the most appropriate punishment, or that a sentence of life without the possibility of release is the most appropriate punishment.

Unlike aggravating factors, which you must unanimously find proved beyond a reasonable doubt in order to consider them in your deliberations, the law does not require unanimous agreement with regard to mitigating factors. Any juror persuaded of the existence of a mitigating factor must consider it in this case. Further, any juror may consider a mitigating factor found by another juror, even if he or she did not find that factor to be mitigating.

It is the defendant's burden to establish any mitigating factors, but only by a preponderance of the evidence. This is a lesser standard of proof under the law than proof beyond a reasonable doubt. A factor is established by a preponderance of the evidence if its existence is shown to be more likely so than not so. In other words, a preponderance of evidence means such evidence as, when considered and compared with what opposed it, produces in your mind the belief that what is sought to be established is, more likely than not, true.

In the Special Verdict Form relating to mitigating factors, you are asked but not required to report the total number of

35

jurors that find a particular mitigating factor established by a preponderance of the evidence.

COURT'S INSTRUCTION NO. 21

The mitigating factors which defendant Mikhel asserts he has proved by a preponderance of the evidence are:

1.    Ainar Altmanis was intimately involved in each of the murders for which Iouri Mikhel faces the death penalty, but Altmanis has made deals with both the state and federal authorities to avoid capital punishment.  He faces a maximum of twenty years in custody for his state conviction.

2.    Iouri Mikhel has suffered catastrophic loss of close family members at a young age.  His father died when Mr. Mikhel was eleven years old, his grandmother died when Mr. Mikhel was thirteen, his mother passed away when Mr. Mikhel was 27 years old.  In addition, Mr. Mikhel's brother died at the age of 46.

3.    Iouri Mikhel was neglected and abandoned for the first 18 years of his life, living in orphanage-like boarding schools, along with extended stays in hospitals for physical problems.

4.    Iouri Mikhel suffered chronic respiratory illnesses, including pneumonia for the first twelve years of his life.

5.    Iouri Mikhel grew up in communist Russia, and was impacted by the socio-economic changes, poverty, and political turmoil during his formative years.

6.    Iouri Mikhel was raised in a politically bankrupt system in which little value was placed on human life.

7.    Iouri Mikhel was raised in a political system in which citizens were forced to perform acts criminalized by the government in order to survive.

8.    Iouri Mikhel was raised in an economic system which kept its citizens at the poverty level.

9.    Iouri Mikhel was raised in a political system that punished economic crimes greater than violent crimes.

10.    Iouri Mikhel was raised in a family that was dysfunctional by Russian society standards.

11.    Should the jury so direct, defendant Mikhel will be sentenced to life imprisonment without any possibility of release if he is not executed.

12.    A sentence of life in prison would be substantial punishment for Mr. Mikhel.

13.    Iouri Mikhel has not engaged in any violent behavior in almost five years of federal custody.

14.    Iouri Mikhel's likelihood for future dangerousness in federal maximum security prison is extremely low.

15.    A sentence of life imprisonment without the possibility of release is severe and extracts both significant and physical restraints and hardship as well as great psychological pain, particularly because defendant Iouri Mikhel is left for years to contemplate his wrongdoing and to feel the loss of his children, friends, and family.

16.    A sentence of life imprisonment without the possibility of release is an adequately harsh alternative punishment that will protect society from any further risk of criminal conduct by defendant Iouri Mikhel.

17.    Iouri Mikhel's family and friends, including the young and elderly, will be adversely affected if he is executed.

18.    Iouri Mikhel is the father of a daughter, and step-father of a son, both of whom will suffer if he is executed.

The mitigating factors which defendant Kadamovas asserts he has proved by a preponderance of the evidence are:

1.    If Jurijus Kadamovas is not put to death, he will spend every day of the rest of his life locked up in a Federal Prison.  He will die in a Federal Prison without ever enjoying freedom again.

2.    Jurijus Kadamovas was raised under a communist system of government that devalued the life of the individual.

3.    Jurijus Kadamovas performed honorable military service in the Soviet Union.

4.    Prior to the offenses for which he has been convicted, Jurijus Kadamovas had a history of hard work.

5.    Ainar Altmanis, who is guilty of the same five killings, will not be sentenced to death.

6.    Ainar Altmanis has an agreement with the State of California, that as punishment for the killing of the same individuals, his term of imprisonment will not exceed twenty years.

7.    Jurijus Kadamovas has no prior criminal record.

8.    Jurijus Kadamovas has not engaged in violent or assaultive behavior in almost five years of federal custody.

9.    Jurijus Kadamovas' likelihood for future violence in federal prison is low.

COURT'S INSTRUCTION NO. 22

If you find unanimously and beyond a reasonable doubt that the defendant was 18 years of age or older when he committed the offenses charged in Counts One, Two, Three, and Four; that he acted with the requisite intent; and that the government proved the existence of at least one statutory aggravating factor; and after you then determine whether the government proved the existence of the non-statutory aggravating factors submitted to you, and whether the defendant proved the existence of any mitigating factors, you will then engage in a weighing process.

In determining the appropriate sentence, all of you must weigh the aggravating factor or factors that you unanimously found to exist -- whether statutory or non-statutory -- and each of you must weigh any mitigating factors that you individually found to exist, and may weigh any mitigating factors that another of your fellow jurors found to exist. In engaging in this weighing process, you must avoid any influence of passion, prejudice, or undue sympathy. However, any juror may consider any compassion for a defendant. Your deliberations should be based upon the evidence you have seen and heard and the law on which I have instructed you.

Again, whether or not the circumstances in this case justify a sentence of death is a decision that the law leaves entirely to you.

The process of weighing aggravating and mitigation factors against each other in order to determine the proper punishment is not a mechanical process. In other words, you should not simply count the number of aggravating and mitigating factors and reach

40

a decision based on which number is greater; you should consider the weight and value of each factor.

The law contemplates that different factors may be given different values and different weights by different jurors. Thus, you may find that one mitigating factor outweighs all aggravating factors combined, or that the aggravating factors proved do not, standing alone, justify imposition of a sentence of death. If one or more of you so find, you must return a sentence of life in prison without the possibility of release. Similarly, you may find that a particular aggravating factor sufficiently outweighs all mitigating factors combined to justify a sentence of death. You are to decide what weight or value is to be given to a particular aggravating or mitigating factor in your decision-making process.

If you unanimously conclude that the aggravating factor or factors found to exist sufficiently outweigh any mitigating factors which any of you found to exist to justify a sentence of death, or in the absence of any mitigating factors, that the aggravating factor or factors alone are sufficient to justify a sentence of death, and that therefore death is the appropriate sentence in this case, you may record on Section VI of the Special Verdict Form your determination that a sentence of death shall be imposed.

If you determine that death is not justified, you must record on Section VI of the Special Verdict Form your determination that the defendant be sentenced to life imprisonment without the possibility of release.

41

COURT'S INSTRUCTION NO. 23

At the end of your deliberations, if you unanimously determine that the defendant should be sentenced to death, or to life imprisonment without the possibility of release, the Court is required to impose that sentence.

If you cannot unanimously agree whether the defendant should be sentenced to death or life imprisonment without the possibility of release, the Court will sentence the defendant to life without the possibility of release.  There is no parole in the federal system.

COURT'S INSTRUCTION NO. 24

You are instructed as a matter of law that you must never decide to impose a sentence of death for the purpose of vengeance or to seek revenge.  This should never be discussed or considered by you in arriving at your verdicts.

43

COURT'S INSTRUCTION NO. 25

You are instructed as a matter of law that you are never to discuss or consider the economic cost of imposing a sentence of life without the possibility of release in arriving at your verdicts.

COURT'S INSTRUCTION NO. 26

As in the guilt phase of the trial, you the jury are the sole judges of the facts in this part of the case. You may decide issues of the credibility of witnesses and whether or not to accept any piece of evidence as true or what amount of weight to give it, if any. At this phase of the trial, the evidence consists of all the evidence received at the guilt phase of the trial to the extent it is relevant to your inquiry regarding the existence of any threshold eligibility factors, aggravating factors or mitigating factors. You may also consider any information received at the penalty phase of the trial, including testimony, documents and stipulations between the parties. You may only consider evidence received in this courtroom in making your determination.

As in the guilt phase, the arguments of the attorneys and the comments and rulings of the Court are not evidence. You may consider both direct and circumstantial evidence at this phase of the trial in determining whether aggravating or mitigating factors are established.

The weighing process you are called upon to undertake in this portion of the trial is different from the fact finding process. Once you have found the threshold eligibility factors, aggravating factors and mitigating factors, if any, you must use your experience, judgment, and sense of justice in weighing the aggravating and mitigating factors to arrive at your ultimate decision in this case.

In your deliberations you are instructed that a sentence of death means that the defendant will be executed. A sentence of

45

life imprisonment without possibility of release means that the defendant will spend the remainder of his life in prison.

COURT'S INSTRUCTION NO. 27

In making all the determinations you are required to make in this phase of the trial, you may consider any evidence that was presented during the guilt phase of the trial as well as evidence that is presented at this sentencing phase of the trial.

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account the same factors I instructed you about at the guilt phase, including, but not limited to, such matters as whether the witness received benefits from the government, had prior felony convictions, was an accomplice, had pled guilty, or had lied about material facts.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify.

47

COURT'S INSTRUCTION NO. 28

Your verdict must be based solely on the evidence presented in this courtroom in accordance with my instructions. You must completely disregard any report which you may have read in the press, seen on television, or heard on the radio. Indeed, it would be unfair to consider such reports, since they are not evidence and the parties have had no opportunity of contradicting their accuracy or otherwise explaining them away. In short, it would be a violation of your oath as jurors to allow yourselves to be influenced in any manner by such publicity. You must also continue to be mindful of my earlier admonitions to avoid reading about the case in the newspapers, watching any news concerning the case on television or listening to any radio accounts of the case. As stated above, you must limit the information you get about the case to what came to you in the courtroom through the rules of evidence.

COURT'S INSTRUCTION NO. 29

In your consideration of whether the death penalty is justified, you must not consider the race, color, religious beliefs, national origin (except as it may bear on mitigation), or sex of either the defendants or the victims.  You are not to return a sentence of death unless you would return a sentence of death for the crimes in question without regard to race, color, religious beliefs, national origin, or sex of either the defendants or the victims.

To emphasize the importance of this consideration, the Special Verdict Form contains a certification statement.  Each juror should carefully read the statement, and sign in the appropriate place if the statement accurately reflects the manner in which you reached your decision.

COURT'S INSTRUCTION NO. 30

I have a prepared a form entitled Special Verdict Form to assist you during your deliberations.  You are required to record your decisions on this form.

Section I of the Special Verdict Form contains space to record your findings on the defendant's age.  Section II contains space to recording your findings on the requisite mental state.  Section III contains space to record your findings on statutory aggravating factors.  Section IV contains space to record your findings on non-statutory aggravating factors.  Section V contains space to record you findings on mitigating factors.  Section VI contains space to record your determination of each defendant's sentence.  Section VII is the jurors' certification of the manner in which they reached their decision.

You are each required to sign the Special Verdict Form.

50

COURT'S INSTRUCTION NO. 31

If you want to communicate with me at any time during your deliberations, please write down your message or question and pass the note to the marshal, who will bring it to my attention.

I will respond as promptly as possible, either in writing or by having you return to the courtroom so that I can address you orally.

I caution you, however, with any message or question you might send, that you should not tell me the details of your deliberations or how many of you are voting in a particular way on any issue.

Let me remind you again that nothing I have said in these instructions -- and nothing that I have said or done during the trial -- has been said or done to suggest to you what I think your decision should be.  The decision is your exclusive responsibility.