RICHARD M. CALLAHAN, JR.
230 East Colorado Blvd., Suite 1200
Pasadena, CA 91101
Phone: (626) 202-4060
Telecopier: (626) 794-4676
Bar No. 100446
rmcallahanjr@earthlink.net

DALE MICHAEL RUBIN
2275 Huntington Drive, Suite 902
San Marino, CA 91108
Phone: (800) 695-3717
Telecopier: (413) 228-0521
Bar No. 68595
drubin@socal.rr.com

Attorneys for Defendant
IOURI MIKHEL

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Case No. CR 02-220(B)-DT |
| ) | |
| Plaintiff, ) | **MOTION FOR NEW PENALTY** |
| ) | **PHASE TRIAL PURSUANT TO** |
| vs. ) | **RULE 33 OF THE FEDERAL** |
| ) | **RULES OF CRIMINAL** |
| IOURI MIKHEL, *et al.*, ) | **PROCEDURE** |
| ) | |
| Defendants. ) | Date/time: TBA |
| ) | Place: Courtroom of the Honorable |
| ) | Dickran Tevrizian |
| ) | |

Defendant Iouri Mikhel, by and through his counsel of record, hereby moves this Honorable Court for a new penalty phase trial, pursuant to Federal Rule of Criminal Procedure 33. This motion is based upon the files and records in this

case, the attached points and authorities, and any argument that may be heard on this motion.

Dated:  February 20, 2007                    Respectfully submitted,

By: _____
RICHARD M. CALLAHAN, JR.
Attorney for Defendant
IOURI MIKHEL

- 2 -

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................ 3

II. ARGUMENT .................................................................. 3

A. FEDERAL RULE OF CRIMINAL PROCEDURE 33 PROVIDES FOR A NEW PENALTY PHASE TRIAL TO AVOID AN UNJUST VERDICT ..................................... 3

B. THE JURY COMMITTED MISCONDUCT BY IGNORING THE COURT'S INSTRUCTIONS AND REFUSING TO WEIGH THE AGGRAVATING AND MITIGATING FACTORS IN DETERMINING THE PROPER SENTENCE ........ 4

   1. Altmanis avoids capital punishment ................................... 6

   2. Mikhel's childhood and upbringing in Soviet Union .............. 6

   3. Mikhel's life in prison ................................................. 6

C. MR. MIKHEL WAS NOT ALLOWED TO PROPERLY PRESENT HIS MITIGATING EVIDENCE TO THE JURY .......... 7

   1. Edits from defense videos for pleas of compassion ............... 7

   2. Video of wife Marina Karagodina .................................... 8

   3. Failure to allow expert Dr. Craig Haney to review new evidence ............................................................... 8

   4. Edits to taped interview of defendant Mikhel's cousin, Edward Mikhel ......................................................... 8

D. MR. MIKHEL WAS DENIED DUE PROCESS BY THE COURT'S DENIAL OF SEQUENTIAL PENALTY PHASE HEARINGS ................................................................ 9

## TABLE OF CONTENTS

| | Page |
|---|---|
| E. THE COURT SHOULD HAVE RECUSED ITSELF FROM THE PENALTY PHASE IN THIS CASE TO AVOID THE APPEARANCE OF IMPROPRIETY, SO A NEW PENALTY PHASE IS WARRANTED .................................................. | 10 |
| 1. Background ..................................................... | 10 |
| 2. Authorities ..................................................... | 12 |
| CONCLUSION ........................................................ | 14 |

## I

## INTRODUCTION

Defendant Mikhel comes before this Court after the penalty phase of this case, in which the jury returned a verdict of death after less than two hours of actual deliberation.

Mr. Mikhel seeks a new penalty phase in this case due to 1) the fact that the jury did not follow the Court's instruction that they were to weigh aggravating and mitigating factors in determining the just verdict, 2) defendant Mikhel was not allowed to properly present his mitigation evidence to the jury, 3) Mr. Mikhel was denied due process by the Court's failure to allow for sequential penalty phase hearings; and 4) the Court should have recused itself for the penalty phase in order to avoid an "appearance of impropriety." [1]

## II

## ARGUMENT

**A.    FEDERAL RULE OF CRIMINAL PROCEDURE 33 PROVIDES FOR A NEW PENALTY PHASE TRIAL TO AVOID AN UNJUST VERDICT**

Federal Rule of Criminal Procedure 33(a) states that upon the defendant's motion, "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Although routinely utilized to overturn an unjust finding of guilt in both capital and non-capital cases, this rule has also been specifically applied to analyzing the validity of a penalty phase verdict in death penalty cases. *See United States v. Lee,* 274 F.3d 485 (8th Cir. 2000) (while reversing the granting

---

[1] On February 15, 2007, the Court informed the parties that it had previously invested in a start-up company owned by the husband of Rachel Hoisman, the daughter of victim Meyer Muscatel. Since this matter is still being investigated, it is impossible to know whether this situation will become another ground for a new trial motion in this case. The Court indicated to counsel that the deadline for filing any motions based upon this revelation would be extended, and defendant Mikhel formally requests that additional time, in order to comply with the time constraints of Federal Rule of Criminal Procedure 33.

-3-

of new sentencing hearing, assumes without discussion that Rule 33 is appropriate rule to invoke for new penalty trial); *United States v. Sampson*, 335 F. Supp. 2d 166, 199-200 (D. Mass. 2004) (detailed discussion of propriety of Rule 33 for penalty phase relief).

**B.    THE JURY COMMITTED MISCONDUCT BY IGNORING THE COURT'S INSTRUCTIONS AND REFUSING TO WEIGH THE AGGRAVATING AND MITIGATING FACTORS IN DETERMINING THE PROPER SENTENCE**

The jury in this case completely ignored or misunderstood the explicit instructions of this Court before rendering its death sentence. The jury paid no heed to the Court's directive mandating that they first determine whether Mr. Mikhel had proven each or any mitigating factor by a preponderance of the evidence, and then compounded the error by conducting absolutely no weighing of aggravating and mitigating factors before returning a death sentence after a hasty two hours of deliberation. The failure to properly follow the Court's instructions on these critical issues mandates a new penalty phase trial.

Title 18, United States Code, Section 3593 sets forth the guidelines for jury deliberations in the penalty phase of a capital case, which were encapsulated into the jury instructions that provided the framework for the jury's sentencing deliberations. With respect to determining whether defendant Mikhel had proven any or all of the proposed mitigating factors, the Court instructed the jury as follows:

> Before you may consider the appropriate punishment, you must consider whether the defendant has established the existence of any mitigating factors. A mitigating factor is a fact about the defendant's life or character, or about the circumstances surrounding the offenses that would suggest, in fairness, that a sentence of death is not the most appropriate punishment, or that a sentence of life without the possibility of release is the most appropriate punishment.

- 4 -

[Final Jury Instructions at 35.] The Court then told the jury how mitigating factors should be considered:

> Unlike aggravating factors, which you must unanimously find proved beyond a reasonable doubt in order to consider them in your deliberations, the law does not require unanimous agreement with regard to mitigating factors. *Any* juror persuaded of the existence of a mitigating factor *must* consider it in this case. Further, *any* juror *may* consider a mitigating factor found by another juror, even if he or she did not find that factor to be mitigating.

*Id.* (emphasis in original.) Finally, the Court instructed on the appropriate burden of proof for the mitigating factors:

> It is the defendant's burden to establish any mitigating factors, but only by a preponderance of the evidence. This is a lesser standard of proof under the law than proof beyond a reasonable doubt. A factor is established by a preponderance of the evidence if its existence is shown to be more likely so than not so. In other words, a preponderance of evidence means such evidence as, when considered and compared with what opposed it, produces in your mind the belief that what is sought to be established is, more likely than not, true.

*Id.* Finally, the Court instructed on the requirement that the jury weigh the aggravating factors against the mitigating factors:

> In determining the appropriate sentence, all of you must weigh the aggravating factor or factors that you unanimously found to exist . . . and *each of you must weigh any mitigating factors that you individually found to exist, and may weigh any mitigating factors that another of your fellow jurors found to exist.* In engaging in this weighing process, you must avoid any influence of passion,

- 5 -

prejudice, or undue sympathy. However, any juror may consider any compassion for a defendant. Your deliberations should be based upon the evidence you have seen and heard and the law on which I have instructed you.

[*Id.* at 40] (emphasis added).

After review of the completed Special Verdict form, it is beyond dispute that the jury did not follow a single one of these pivotal instructions. The proof of this misconduct is evidenced by the fact that the Special Verdict form for defendant Mikhel indicated that the jury did not find a single mitigating factor to have been proven by a preponderance of the evidence, notwithstanding that the prosecution openly admitted in its closing argument that *many of these mitigators were true.* A brief review of the relevant mitigating factors is enlightening:

### 1. Altmanis avoids capital punishment [mitigating factor No. 1]

The government admitted that Altmanis was avoiding capital punishment, thus conceding this factor [2.09.07 Transcript at 47-48.] Notwithstanding this concession, not *a single juror* indicated that this factor was proven by a preponderance of the evidence.

### 2. Mikhel's childhood and upbringing in Soviet Union [factors 2-10]

The prosecution admitted in closing argument that the defense had proven a number of the mitigating factors regarding defendant Mikhel's upbringing in Russia. [2.09.07 Transcript at 50.] Regardless, *not a single juror* voted that *any* of these factors had been proven by a preponderance of the evidence.

### 3. Mikhel's life in prison [factors 11-12]

The government again conceded in closing argument that it was indeed true that defendant Mikhel would suffer in a prison environment. [2.09.07 Transcript at 52-53.] Regardless, *not a single juror* voted that *any* of these factors had been demonstrated by a preponderance of the evidence.

-6-

In its rebuttal argument, the prosecution reaffirmed that defendant Mikhel had proven a number of factors in mitigation:

> And I'll submit to you to the extent the Defense has proved any mitigation in this case, make no doubt -- there's no doubt about it, some of the things they say in mitigation are true. There's no doubt about that at all.

[2.09.07 Transcript at 137.]

Whether this clear disregard for both the Court's instructions and the prosecution's concessions was because of a desire for revenge against the defendant, or simply due to fatigue, the result is clear:  The jury did not abide by the Court's instructions, and a new penalty phase must therefore be ordered.

## C.   MR. MIKHEL WAS NOT ALLOWED TO PROPERLY PRESENT HIS MITIGATING EVIDENCE TO THE JURY

In addition to the constitutional violation stated above, defendant Mikhel should also receive a new penalty phase trial in light of the erroneous rulings made by the Court regarding the admissibility of evidence in his penalty defense.

### 1.   Edits from defense videos for pleas of compassion

Although the prosecution was allowed to present evidence of sympathy and compassion for the victims, defendant Mikhel was not allowed the same privilege. The defense was forced to make cuts in its videos.

For example, at the end of cousin Edward Mikhel's interview, he asked for mercy for his cousin, concluding, "Be merciful."  It was quite touching and both an appropriate and mitigating plea at the penalty stage of the proceedings.

In addition, Mr. Mikhel's lifelong friend, Natasha Alifanova, also provided a lengthy taped interview, in which she described many phases and turning points in Mr. Mikhel's life over the 20 years she knew him.  Based on this, Ms. Alifanova expressed disbelief and shock that Mr. Mikhel could have engaged in the violent

acts alleged in this case. These edited statements were mitigating and should have been admitted as well.

Considering that the Court instructed the jury that it could consider compassion for the defendant in its penalty deliberations, it seems incongruous that the defense was precluded from presenting evidence on that very issue.

### 2. Video of wife Marina Karagodina

Not only were friends and family videos edited, but the video of Mr. Mikhel's wife was totally excluded by this Court. Notwithstanding that she knew the defendant better than anyone, her video was precluded because this Court felt it was not mitigating.

### 3. Failure to allow expert Dr. Craig Haney to review new evidence

Defendant's expert Craig Haney was provided with 700 pages of operative penalty phase documents from the Metropolitan Detention Center on the eve of his testimony. Notwithstanding that the belated disclosure was in no way caused by the defendant, the court denied the defense motion to allow Dr. Haney adequate time to review the new documents so that his expert opinion on prison adjustment was based on all available information. As a result, Dr. Haney should be allowed to testify again in a new penalty hearing after becoming acquainted with these new documents.

### 4. Edits to taped interview of defendant Mikhel's cousin, Edward Mikhel

In addition to the edits regarding compassion, edits were also ordered by this Court to the taped interview of defendant Mikhel's cousin, Edward Mikhel, which eliminated all verifiable proof of Iouri's paternal life history covering many generations. As a result, the government was able to impeach the testimony of defense expert Dr. Elena Zdravomyslova, implying her testimony was guesswork and undocumented. This redacted evidence was intended to describe the history of defendant Mikhel, and was purely mitigation.

- 8 -

Taken in combination, these rulings prevented defendant Mikhel from being able to adequately present his mitigating factors to the jury for their consideration. As a result, a new penalty phase should be ordered by this Court.

## D. MR. MIKHEL WAS DENIED DUE PROCESS BY THE COURT'S DENIAL OF SEQUENTIAL PENALTY PHASE HEARINGS

Notwithstanding earlier favorable comments on the issue of conducting sequential penalty hearings in this case by both Judge Manella and this Court [*see* Defendant Mikhel's Motion Re Proposed Penalty Phase Procedures, filed January 22, 2007], the Court changed its opinion shortly before commencing the penalty phase in this case and ordered that both defendants would be joined in the penalty proceedings. As forewarned, conducting the penalty phase jointly allowed counsel for codefendant Kadamovas to act as a "second prosecutor" in his penalty phase summation, therefore warranting a new penalty phase for Mr. Mikhel.

As the Court is well aware, numerous courts have allowed for sequential penalty hearings, which would have avoided the precise situation that occurred here. *See United States v. Catalan-Roman*, 376 F.Supp. 2d 96, 104-05 (D. Puerto Rico 2005); *United States v. Ortiz*, 315 F.3d 873 (8th Cir. 2003); *United States v. Peoples*, 250 F.3d 630 (8th Cir. 2001); *United States v. Lee*, 274 F.3d 485, 488 (8th Cir. 2001); *United States v. McCullah*, 76 F.3d 1087, 1097 (10th Cir. 1996). As the court in *Catalan-Roman* succinctly noted:

> When there is a real risk that one co-defendant will become the other's prosecutor, the Court should favorably consider proceeding separately.

*Id.* at 105-06.

As feared, during his penalty phase summation to the jury, counsel for defendant Kadamovas took the opportunity to point the finger at defendant Mikhel. Specifically:

1) noting that Mr. Kadamovas does not pose a threat of "future

dangerousness," since he could never have concocted the escape plan on his own, and once defendant Mikhel was transferred to San Bernardino Jail, defendant Kadamovas never tried to escape again [2.09.07 Transcript at 106];

2) Mr. Kadamovas was a hard-working man, working several jobs, until he became influenced by defendant Mikhel [2.09.07 Transcript at 111];

As warned of in *Catalan-Roman*, Mr. Mikhel was essentially faced with two prosecutors in the penalty phase of this case. Due to this denial of due process, a new penalty trial for Mr. Mikhel is required.

**E.    THE COURT SHOULD HAVE RECUSED ITSELF FROM THE PENALTY PHASE IN THIS CASE TO AVOID THE APPEARANCE OF IMPROPRIETY, SO A NEW PENALTY PHASE IS WARRANTED**

**1.    Background**

In early January, this Court advised the parties in open court that it had been approached by a hiring committee regarding being considered as the next United States Attorney for the Central District of California. The Court indicated that it had allowed its name to be placed in consideration, but that little had happened since that time.

Following this advisement, a number of newspaper articles began appearing, including in the Los Angeles Times and in the Los Angeles Daily Journal, which named this Court among the finalists, if not the frontrunner, for the position.

Because of these developments, on January 29, 2007, defendant Mikhel filed a Motion for Recusal of this Court in order to Avoid Any "Appearance of Impropriety" Pursuant to 28 U.S.C. § 455(a), and a Motion for Mistrial of Penalty Phase. The government did not file written opposition.

On January 30, 2007, the Court ruled that "I have no intention of

- 10 -

continuing this phase of the trial or recusing myself at this time." [1.30.07 Transcript at 5.]   The court commented that none of the parties made any objection in early January when he informed the parties that he "was contacted by a representative of the local screening committee to apply for the position the position of United States Attorney", but the court nevertheless ruled that the objections were "noted for the record and preserved for appeal." *Id.*   The Court then ruled that "[t]he Motion for Recusal will be processed like any other recusal motion, but the trial will continue." *Id.*   The Court then proceeded to address the merits of the motion, commenting that he "submitted a form application and was interviewed by the screening committee only", and that "I have never been interviewed by anyone of the Department of Justice of White House counsel's office." *Id.* at 6.  The Court indicated that "I never intended to apply for this position for financial gain, to enhance my resume, or for political purposes." *Id.*  The Court then stated that "[y]esterday I withdrew my name for consideration for the position of United States Attorney by notifying the local committee. The only personal contact I had with either the Department of Justice or the White House counsel's office was over the telephone, yesterday, to inform them that I had withdrawn my name from consideration." *Id.* at 8-9.  The Court then repeated that "[y]ou have preserved your objections and legal issues for appeal, and trial will go forward." *Id.* at 9.

The parties never received any further information regarding the status of the pending motion for recusal, including the judge, if any, who had been assigned the matter.  Due to the concerns that the penalty phase could conclude without the matter being resolved, on February 2, 2007, defendant Mikhel filed a Petition for Writ of Mandamus and Emergency Request for Stay of the Proceedings in the Ninth Circuit.  On February 8, 2007, after all of the evidence in the penalty phase had been presented, the Ninth Circuit held that mandamus relief was not warranted since it was not clear that the district court had ever made a final ruling

on the issue; the request for a stay was denied as moot. As a result, the issues raised by Mr. Mikhel's motion for recusal have yet to be addressed at either the district or appellate level.

## 2.    **Authorities**

The idea of a sitting judge being considered for a position with one of the parties in a lawsuit creates a myriad of issues. Title 28, U.S.C., Section 455(a) states in pertinent part:

> Any justice, judge, or magistrate . . . of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

Disqualification is required under Section 455(a) even absent evidence of actual bias. *Mangini v. United States*, 314 F.3d 1158, 1161 (9th Cir. 2003). The standard for recusal under Section 455(a) is not whether impartiality actually exists, but rather "whether the judge's impartiality could be questioned by a reasonable, well-informed observer." *In re Hatcher*, 150 F.3d 631, 637 (7th Cir. 1998). *See also In re Continental Airlines Corp.*, 901 F.2d 1259, 1262 (5th Cir. 1990) (the test is if "a reasonable man, were he to know all the circumstances, would harbor doubts about the judge's impartiality").

Indistinguishable from the situation that was presented in the current litigation is *Pepsico, Inc. v. McMillen*, 764 F.2d 458 (7th Cir. 1985), in which the judge in an antitrust case had decided to resign from the bench and practice law, and instructed his "headhunter" not to contact law firms that had business before the judge's court. However, two law firms representing parties in the instant case were contacted; one firm did not return the call. The other firm, which realized it was the judge's representative who was making the call, stated that the firm was not interested in hiring the judge. The judge eventually accepted an offer with his old law firm, not related to either of the two prospective suitors.

Notwithstanding the fact that there was no actual impropriety demonstrated,

and that the problematic situation had been alleviated by the judge accepting a position with a firm unrelated to the litigation, the judge was still ordered to recuse himself:

> [W]e think recusal is required when, at the very time a case is about to go to trial before a judge, he is in negotiation -- albeit preliminary, tentative, indirect, unintentional, and ultimately unsuccessful -- with a lawyer or law firm or party in the case over his future employment. . . . The appearance of equal justice requires that the judge not be exploring the prospects of employment with one lawyer or all lawyers appearing in a case before him. The dignity and independence of the judiciary are diminished when the judge comes before the lawyers in the case in the role of a suppliant for employment. The public cannot be confident that a case tried under such conditions will be decided in accordance with the highest traditions of the judiciary.

*Id*. at 460 (citations omitted).

In the present case, this Court continued to preside over this death penalty case after it was announced that the Court was a leading candidate for the office that was prosecuting this capital case. The fact that this Court continued to decide critical matters in this case created an "appearance of impropriety" and an actual conflict of interest that can only be excised by the Court recusing itself and ordering a new penalty phase trial.

Unfortunately, the fact that the Court withdrew its candidacy for the position after the motion for recusal and mistrial is of no benefit here, since as the *Pepsico* opinion suggests, once the appearance of impropriety exists, it cannot be undone merely by resolving the underlying conflict. The specter of impropriety has already occurred, and that bell simply cannot be unrung.

To compound the problem, the fact that this Court unfortunately, and

- 13 -

unnecessarily, removed his name from consideration for the position of United States Attorney the day after the recusal motion was filed by defendant Mikhel only adds to the argument that an appearance of impropriety exists. A reasonable person, were he or she to know all the circumstances, could harbor doubts about the Court's impartiality toward the party that was responsible for causing the Court not to be considered for such a coveted position.

Based upon the mere "appearance" of impropriety during the penalty phase of this case, a new penalty phase is warranted.

## CONCLUSION

For the reasons stated, the motion for a new penalty phase trial in this matter should be granted.

Dated:  February 20, 2007.                          Respectfully submitted,

By: _____

RICHARD M. CALLAHAN, JR.
Attorney for Defendant
IOURI MIKHEL

- 14 -

## PROOF OF SERVICE

## STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen, and am not a party to the within action. My business address is 230 East Colorado Blvd., Suite 1200, Pasadena, California, 91101.

On February 20 2007, I served the foregoing document described as **MOTION FOR NEW PENALTY PHASE TRIAL PURSUANT TO RULE 33 OF THE FEDERAL RULES OF CRIMINAL PROCEDURE** on all interested parties in this action by the means of service stated below, unless otherwise noted:

✓ hand delivery, addressed as follows:

____ mail, by placing true copies thereof enclosed in a sealed envelope, postage prepaid, addressed as follows:

____ fax/email, addressed as follows:

Robert Dugdale, Esq.
Susan DeWitt, Esq.
Kim Meyer, Esq.
Assistant United States     Attorneys
1500 United States Courthouse
312 N. Spring Street
Los Angeles, CA  90012

Sonia Chahin, Esq.
2222 Foothill Blvd., #E 278
La Canada, CA 91011

Dale Rubin, Esq.
2275 Huntington Drive, Suite 902
San Marino, CA  91108

Richard Lasting, Esq.
1717 Fourth Street
Third Floor
Santa Monica, CA  90401

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct to the best of my knowledge.

Executed on February 20 2007, at Pasadena, California.

RICHARD M. CALLAHAN, JR.

- 15 -