UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO(s): 02-0313-M-2 |
| | ) | CR-02-220 |
| Plaintiff, | ) | |
| | ) | CRIMINAL |
| vs. | ) | |
| | ) | Los Angeles, California |
| JURIJUS KADAMOVAS, | ) | |
| | ) | Tuesday, February 26, 2002 |
| Defendant. | ) | |

DETENTION HEARING

BEFORE THE HONORABLE STEPHEN J. HILLMAN,
UNITED STATES MAGISTRATE JUDGE

<u>APPEARANCES:</u>

For the United States:    KAREN MEYERS, ESQ
                          Assistant United States Attorney
                          312 North Spring Street
                          Los Angeles, CA 90012

For the Defendant:        JEFFREY WEISS, ESQ
                          Murphy & Gold
                          4640 Lankershim Blvd., Suite 699
                          North Hollywood, CA 91602

Courtroom Deputy:         Sandra Butler

Court Reporter:           Taped; #02-21

Transcribed by:           Exceptional Reporting Services, Inc.
                          14493 S. Padre Island Drive
                          Suite A-400
                          Corpus Christi, TX 78418-5940
                          361 949-2988

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

2

**Los Angeles, California; Tuesday, February 26, 2002**

**(Official interpreter utilized for translation)**

**(Call to Order)**

**THE CLERK:**  Calling Case Number 02-313-M, *United States of America versus Kadamovas*.  Counsel, please enter your appearance.

**MS. MEYER:**  Good afternoon, your Honor, again, Karen Meyer for the United States.

**MR. WEISS:**  Yes, good afternoon, your Honor, Jeffrey Weiss substituting in for defendant.

**THE COURT:**  All right.  This matter is also on calendar for a detention hearing.  I have read the complaint and affidavit and the government's motion for detention and the pretrial services reports.

Is the government's motion opposed at this time?

**MR. WEISS:**  Yes, it is, your Honor.

**THE COURT:**  All right.  What does the government proffer?

**MS. MEYER:**  Your Honor, the government proffers the affidavit in support of the complaint, as well as the pretrial services reports and the recommendation contained therein.

**THE COURT:**  Okay, Mr. Weiss?

**MR. WEISS:**  Thank you, your Honor.  Your Honor, looking at the pretrial services report that is denying it, when you look at the report and look at the affidavit, there's

3

a lot of inconsistencies in that.  There is a mention at page 5 of the pretrial services report of a tape involving the defendant; yet when you look at the affidavit, the only tape that really applied, or appears to apply, was on a defendant that was already, you know -- the other defendant -- and does not apply to my client.  There's no mention whatsoever in the affidavit regarding a taped conversation of my client.

There's also mention of a million dollars in ransom that was taken that involved my client and, again, there's no mention whatsoever in the affidavit.

The pretrial services report also says that he's a ringleader.  Again, when you look at the affidavit, there's nothing whatsoever that links him to this.  The only thing that links him to any involvement is that he has a business; that in the business there's some money, there's checks written to him and that appears to be the whole allegation by the government for his involvement or receiving, you know, this ransom money.

There's no showing whatsoever in the affidavit of any knowledge on the part of this defendant.  They just have money in an account and money going out.  His name is not mentioned in any conversation.  His name is not mentioned by any other persons.  And that's their whole case.

We're requesting, you know, during the pendency of this matter, that he be allowed home on detention.  The government already has his passport.  His wife and child is

here.  He has a business that is successful.  If he's not released on home detention during the pendency of this case, his business will be destroyed.  And he just purchased a house. He's going to lose the house.

And again, having a very small child, it just appears that what they have in pretrial services report is just not substantiated and going ahead and making the defendant report to probation, having him on home detention, having his passport, should be enough to ensure that he'll be here at all proceedings and there's really nothing to show that he is a threat, especially when you look at the affidavit.

I know this is a very serious charge, but there's nothing in the affidavit that has him linked to this kidnapping whatsoever, except money going into his account and him writing some checks on that.  I submit.

**THE COURT**:  Thank you.

**MS. MEYER**:  Thank you, your Honor.  I believe in the affidavit there is a reference to monies for victim Umansky being wired to a bank account in Dubai United Emirates.

**THE COURT**:  Yes.

**MS. MEYER**:  Some of that money was then wired to Latvia and $32,000 of the money that was wired to the bank accounts in Latvia found its way to Designed Water World here in the Central District.  The defendant Kadamovas was, in fact, the president and owner of Designed Water World and was a

signatory on that particular account.

Also in the affidavit is reference to checks written on that account, signed with Kadamovas' name, as well as Mikhel's name.

So, as put in the face sheet of the complaint, Section 1202(b) indicates that he just has to be in receipt of ransom proceeds, or receipt of proceeds from a state law kidnapping, knowing the proceeds to have been unlawfully obtained.

In addition to the information contained in the affidavit, the government would also proffer the following from Agent Perez; that is, that pretrial services report makes reference to a Mercedes and defendant requested that that Mercedes be returned to his family.  In fact, a search warrant was executed on that Mercedes, and there was blood found both in the front seat and the back seat of that vehicle. Presumptive tests on that blood shows it to be human.  I do not know if any further testing of that blood has been done at this time.

Secondly, the government would also proffer by way of testimony of Agent Perez that they retrieved a taped conversation between Kadamovas and Mikhel where the two of them are discussing photographing an ear to provide some proof of a body -- possession of a body.

Thirdly, the government would proffer that in a

search warrant of Mikhel's house a note was found that appeared to list individuals who are involved in this kidnapping and next to those names were monetary amounts.  And on that list were the initials JK, which the government believes to be, or would proffer, stand for Jurijus Kadamovas, the defendant.

Thank you, your Honor.

**THE COURT**:  Anything further?

**MR. WEISS**:  Your Honor, I'm concerned about that tape that was mentioned.  This is the first time that we, obviously, have learned about that tape and if that's going to obviously hinge on the Court's decision as far as home detention, then I would request that this matter be put over so that we can look back at that tape and review it, because this is the first time that we've ever heard of that.  It's not even what was described by pretrial services as far as what tape refers to.  Now, all of a sudden out of the clear blue sky, we're hearing now of another conversation that's just popped up for the very first time.

As far as the blood in the Mercedes, and again as a proffer, we would proffer that that vehicle was purchased three days before he was arrested.  The alleged kidnapping had taken place far before that time period and this is just a brand new car that's just recently purchased some three days ago -- or, I'm sorry, three days prior to his arrest.

I submit except for the issue --

THE COURT:  If you want the matter put over until Friday, there's no problem with that.

MR. WEISS:  I don't know if the tape would be ready by that date.

MS. MEYER:  Just one moment, your Honor.  That's no problem, your Honor.

THE COURT:  All right.  Ten o'clock on Friday.

MR. WEISS:  Ten o'clock, your Honor?

THE COURT:  Yes.

MR. WEISS:  I would also request that he may remain -- we were going to request that he remain at MDC if he was not given home detention, but I would request that he remain at MDC until Friday.

THE COURT:  Any objection to that?  Any objection to the defendant's being housed in the same facility for a couple of days?

MS. MEYER:  Your Honor, the only objection is the standard objection that the government cannot agree to have the defendant housed at MDC.

THE COURT:  Well, my comments are somewhere between a strong request and an order and I hesitate to order the warden to do anything, but I would very much like both of these defendants to be available in Los Angeles until the Friday hearings.

MS. MEYER:  Your Honor, could you also put in there

8

that if, in fact, the Bureau of Prisons accommodates the Court's request, that these two defendants be segregated from each other?

**THE COURT:**  Yes.

**MS. MEYER:**  Thank you, your Honor.

**THE COURT:**  All right.  Thank you.

**MR. WEISS:**  Your Honor, if I may?

**THE COURT:**  Yeah.

**MR. WEISS:**  Would it be at all possible if I could be here at 10:30 on Friday.  I have a state matter at 8:30 sharp.

**THE COURT:**  That's fine.

**MR. WEISS:**  Thank you, your Honor.

**MS. MEYER:**  Thank you, your Honor.

**THE COURT:**  Thank you.

**(Proceeding was adjourned)**

## CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_____          April 14, 2009
        Signed                            Dated


                    *TONI HUDSON, TRANSCRIBER*

EXCEPTIONAL REPORTING SERVICES, INC