UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO:  CR-02-220(B)-DT |
| | ) | |
| Plaintiff, | ) | CRIMINAL |
| | ) | |
| vs. | ) | Los Angeles, California |
| | ) | |
| IOURI MIKHEL, | ) | Tuesday, August 1, 2006 |
| JURIJUS KADAMOVAS, | ) | |
| | ) | (9:40 a.m. to 10:03 a.m.) |
| Defendants. | ) | |

STATUS CONFERENCE

BEFORE THE HONORABLE DICKRAN TEVRIZIAN,
UNITED STATES DISTRICT JUDGE

Appearances:                See next page

Courtroom Deputy:           Debra L. O'Neill

Court Recorders:            Lori Muraoka, Rose Yapundjian

Transcribed by:             Exceptional Reporting Services, Inc.
                            14493 S. Padre Island Drive
                            Suite A-400
                            Corpus Christi, TX 78418-5940
                            361 949-2988

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

2

**APPEARANCES FOR:**

| | |
|---|---|
| The United States: | ROBERT DUGDALE, ESQ<br>Assistant United States Attorney<br>312 North Spring Street<br>Los Angeles, CA 90012 |
| Iouri Mikhel: | RICHARD M. CALLAHAN, JR, ESQ<br>230 E. Colorado Blvd., Suite 1200<br>Pasadena, CA 91101 |
| | DALE MICHAEL RUBIN, ESQ<br>2275 Huntington Dr., Suite 902<br>San Marino, CA 91108 |
| Jurijus Kadamovas: | SONIA E. CHAHIN, ESQ<br>2222 Foothill Blvd., Suite E-278<br>La Canada, CA 91011 |
| | RICHARD P. LASTING, ESQ<br>1717 Fourth Street, Third Floor<br>Santa Monica, CA 90401 |
| Russian Interpreters: | Ludmilar Genn, Alex Levoff |

**Los Angeles, California; Tuesday, August 1, 2006; 9:40 a.m.**

**(Interpreter Utilized for Translation)**

**(Call to Order)**

**THE CLERK:**  All rise.  This United States District Court is now in session, the Honorable Dickran Tevrizian presiding.

**THE COURT:**  Good morning.  Please be seated.

**(Counsel greet the Court)**

**THE COURT:**  Okay, Clerk will call the case.

**THE CLERK:**  Criminal Docket Number 03-220(B)-DT, *United States of America versus Iouri Mikhel and Jurijus Kadamovas.*

Counsel, please state your appearances.

**MR. DUGDALE:**  Good morning, your Honor.  Robert Dugdale on behalf of the United States.

**MS. CHAHIN:**  Good morning, your Honor.  Sonia Chahin on behalf of Jurijus Kadamovas, who is present assisted by a Russian language interpreter.

**MR. CALLAHAN:**  Good morning, your Honor.  Richard Callahan and Dale Rubin on behalf of Iouri Mikhel, who is present.

**MR. RUBIN:**  Good morning, your Honor.

**THE COURT:**  Good morning.

All right, I asked that you come into court today for a status conference to figure out what you've been doing with

4

regard to the review of the jury questionnaires.  Have you had any discussions between the Prosecution and Defense counsel with regard to jurors that you feel can be excused without the necessity of bringing them in?

**MR. DUGDALE:**  Your Honor, the Government's gone through all the questionnaires and we propose 19 jurors from the first group of 100 that we felt should be excused for various reasons, either because they had health issues, because they had language issues, because they had some sort of hardship they expressed, like a work conflict that seemed irreconcilable, or because they had extreme views on the death penalty.  We proposed that list on Thursday and Mr. Callahan informed me afterward that they would not be prepared by today's date to even discuss that first group of hundred.

We have 19 from the second group of hundred as well, but since we can't even get to the first group of hundred we haven't proposed those numbers yet, although we could do so today.

Basically, when we went through the questionnaires there are some jurors, and I think they fit in one of five categories, who should potentially not be called back.  First of all, jurors who have something specific as to them that doesn't allow them to serve on this case.

For instance, Juror Number 263 is an IRS analyst who actually worked on this case.  He says on the questionnaire "I

worked on this case as an analyst."  That would seem to be a juror who maybe the Government would like a lot on the case but I don't think that we're going to get that juror.

The second category are jurors who have language issues who indicate on the questionnaire that they don't understand English.  There's one juror who wrote on the front page of the questionnaire "I don't understand" and proceeded to answer very few questions after that.  There are other jurors who specifically said at the end of the questionnaire "I don't think I'd make a good juror because I don't understand English very well."  Those include Jurors 139, 92, and 157.

There are some jurors that have hardship issues. There is one who has a work project.  He works in the movie industry and is supervising somewhere in the neighborhood of a hundred people for a film project that has to be done by the 1st of October.  That is Juror Number 89.  There is one who is a professor who is only available until September 1st and then has to start teaching classes at a college; that's Juror 174. There's one who's a student who is 21 years old or so and is going back to college starting in September; that's 189.

There are some with health issues.  There's a juror who's awaiting surgery because she's been in an automobile accident.  There is a juror who -- there are several jurors who say they have to go to the bathroom every 20 to 30 minutes.  If we have jurors like that, this trial will never end.

6

So -- and then the last group is people who have extreme views on the death penalty, people who say that they are automatic jurors one way or the other, they either won't impose capital punishment under any circumstances or who will always impose capital punishment under any circumstances, and indicate on the questionnaire they can't set aside those beliefs because they're so strongly held.

So we tried to do our part in getting these numbers to the Defense, but -- and I understand the process may be a little more cumbersome for the Defense, but at least we've worked towards getting this started.  And if we can eliminate --

**THE COURT:**  Well, I want to make something very clear:  We are in trial and so the Defense should not be out in other courtrooms, you know, trying cases or making appearances. You're working on this case, which means, you know, you're going through and culling the jury questionnaires, just as the Prosecution is doing, and, you know, you should have a list as well to be exchanged with the Prosecution.

One of the reasons that I continued this matter over, in addition to accommodating Ms. Chahin because of Judge Anderson's trial, was to allow you to use this time, you know, efficiently.  And I am a little disturbed that, you know, there hasn't been a response from the Defense with regard to the first hundred jurors.  I'm trying to streamline this case

and the jury selection process and, you know, it takes two sides for this thing to work.

I also have some information that I wanted to share with you with regard to jurors that are unable to participate for various reasons that they've sent to the Jury Commissioner, who's then transmitted it to me.

But why haven't you been responding to the Prosecution?  Especially in view of the fact that one juror indicated that they worked on this case in an investigatory manner.

**MR. RUBIN:**  Your Honor, Dale Rubin on behalf of Mr. Mikhel.

First of all I'd like to respond to the Court by thanking the Central District and all the Judges in the Central District.  I have no other cases right now other than this case to work on.  Any case that this case would have interfered with I have been relieved by all the other Judges so that I am assured of being retired at the end of this case.  So I have no other cases that I'm appearing on and no other cases that I'm working on.

**THE COURT:**  Both you and I are going to be retired.

**MR. RUBIN:**  Well, I hope we both have a good time.

The second problem, your Honor, is that although I have been working and am probably I would guess the farthest along.  I am almost done with all of the questionnaires.  I am

not in the position to make any decisions for the Defense team on my own. One thing that I have to do as a member of the Defense team is not only confer with the members of my team who have reviewed the questionnaires and go through them to make sure that my opinion of each questionnaire and each juror is adequate. I mean I could be wrong and they may point out something in the questionnaire that I overlooked. So that's the first step that we have to go through.

The second step that we have to go through is we have to get together with cocounsel and go through the questionnaires and make sure that we are all on the same page as far as stipulations before we can respond to the Government. Ms. Chahin has not been able to be in a position to do that as of yet --

THE COURT: Well, that case went to the jury across the hall last week, so they're just waiting for the verdict to come in, as I understand it.

MR. RUBIN: That's right. And we have a meeting calendared for this Friday to go over the first hundred jurors. So I think that that's about as quick --

THE COURT: August 15th is going to approach and what I'm trying to do is not have those jurors that both sides agree don't have to come here.

MR. RUBIN: I understand exactly what the Court has to do --

9

THE COURT:  Okay.

MR. RUBIN:  -- and it may be that no matter how hard we work at going through them and coming up with stipulations we still might come in the morning of that specific 24 and give a list to the Government and the Government will give a list to us of individuals they think should be stipulated to.  We are doing the best we can in a situation where we can't do it individually.

THE COURT:  Yeah, but I have a difficult time buying on to that because of the fact that you have cell phones now, you have fax machines, you have email, you have regular telephones.

MR. RUBIN:  There is nothing -- with these questionnaires we have to finally -- and again if I responded to Mr. Dugdale's list by myself we would still be in the same position we are now.

THE COURT:  I understand that this is going to be --

MR. RUBIN:  So we need to sit down -- if there are arguments -- there may be a situation where a juror that I think should be excused, Mr. Lasting thinks that juror can be saved, or vice versa, and we have to sit down and have the questionnaires in front of us and look at them.  And there's not only four of us, there is the additional mitigation expert.

I just want the Court to realize we have been working hard on this and we will do the best that we can.

10

THE COURT:  Now, with Ms. Chahin, that case across the hall before Judge Anderson I understand went to the jury either last Thursday or last Friday.  So your grace period now, you're on your grace period.  So you've got to get up to speed because, you know, as I said earlier, opening statements in this case will probably take place sometime near the end of the week of September the 5th, after the jury is impaneled -- or paneled.

Now with regard to certain jurors, I've got a letter here from the Jury Commissioner regarding Juror Number 124 requesting to be excused from the panel.  She writes:

"I am writing this letter regarding my jury services. I am Juror Number 124 who reported on July 11th, 2006.  The day before, July 10th, 2006, I went to the doctor.  At that time he put me in for authorization for surgery on my knee and hip.  When I reported on July 11th and received questionnaire I put an answer to one of the questions that I was waiting for approval for surgery.  The approval came through on July 19th, 2006.  I am scheduled to have surgery August 3rd, 2006.  I would very much like to be excused from the case so that I can have my physical therapy and have the time to heal properly.  I am also faxing over a letter from my doctor."

And I received the letter and she's scheduled for

orthopedic surgery in this matter.

Any problem if I excuse Juror Number 124 for medical reasons, Mr. Dugdale?

**MR. DUGDALE:**  No, it's one of the jurors we mentioned, your Honor.

**THE COURT:**  Mr. Lasting?

**MR. LASTING:**  Your Honor, there's no objection to excusing her.

**THE COURT:**  Ms. Chahin?

**MS. CHAHIN:**  No, your Honor.

**THE COURT:**  Mr. Callahan?

**MR. CALLAHAN:**  No, your Honor, no objection.

**THE COURT:**  And Mr. Rubin?

**MR. RUBIN:**  No, sir.

**THE COURT:**  All right, 124 then will be excused.

I also received another piece of correspondence from the Jury Commissioner regarding it appears to be Juror Number 25 that has a vacation from August 17th through August 18th.  And what I would do is schedule that person for August 15th.

And then I have another piece of correspondence from Juror Number 24 indicating that that person has a scheduled vacation the week of August 28th through the 4th of September, so we'd have to reschedule that person for earlier than August the 28th.

12

All right, Mr. Dugdale, I know that you have scheduled some motions to be heard I believe on September the -- I'm sorry, on August the 15th?

**MR. DUGDALE:**  Next Monday, your Honor, yes.

**THE COURT:**  Okay.

**MR. DUGDALE:**  I'm sorry, a week from Monday, yes.

**THE COURT:**  All right.

**THE CLERK:**  Is that the 14th or the 15th, your Honor?

**THE COURT:**  14th, because we're coming back with the jurors starting on August the 15th.

All right, anything else, Mr. Dugdale, you want to bring up at this status conference today?

**MR. DUGDALE:**  No, your Honor, thank you.

**THE COURT:**  Mr. Lasting?

**MR. LASTING:**  Yes, your Honor, I have a matter to bring up.

**THE COURT:**  All right, let me hear what you have to say.

**MR. LASTING:**  Your Honor, I know that the formalities in the Court are that when the jurors come in that all parties rise and --

**THE COURT:**  You don't -- no, once we have the jury in place it's remain seated, come to order -- remain seated, come to order, Court is now again in session.

**MR. LASTING:**  That's fine.  My only concern was

because Mr. Kadamovas and Mr. Mikhel can't rise it would appear that they're being disrespectful to the jurors.

**THE COURT:**  No, it's going to be --

**MR. LASTING:**  All right, thank you.

**THE COURT:**  -- remain seated, come to order.  It's only the first day that everybody stands, but after that it's different.

**MR. LASTING:**  I just didn't want to have a situation, and it sounds like we won't, where everyone is standing expect Mr. Kadamovas --

**THE COURT:**  I will do my best and we will do it that way --

**MR. LASTING:**  Thank you.

**THE COURT:**  -- that I just mentioned.

Ms. Chahin, anything?

**MS. CHAHIN:**  No, thank you, your Honor.

**THE COURT:**  Mr. Callahan?

**MR. CALLAHAN:**  Nothing, your Honor.  Thank you.

**THE COURT:**  And Mr. Rubin?

**MR. RUBIN:**  Nothing, your Honor.

**THE COURT:**  I'm impressed.

**(Laughter)**

**UNIDENTIFIED SPEAKER:**  I'm amazed.

**MR. RUBIN:**  If you would like I could make the transcript much longer.

Your Honor, there is one matter real quick.

(Laughter)

I am going to be submitting to the Court an order for a daily transcript. The only thing that I need, because the CJA office needs an order, physical order, from the bench --

THE COURT: I have no problem with that. Once the jury is selected then I will -- you know, I will order it from that day forward. I don't think you need a daily during the jury selection.

MR. RUBIN: That's fine. That's fine, your Honor. I appreciate it.

THE COURT: All right. Do you need a daily for opening statements?

MR. RUBIN: Yes.

THE COURT: All right, I'll give you from the time that we make opening statements.

MR. RUBIN: Thank you very much, and I'll put that in the order. The only thing I'm worried about is I'm not sure how the charges are done in this kind of case.

THE COURT: You talk to Mr. Schnack, I believe his name is.

MR. RUBIN: Mr. Schnack is not aware either. I'm waiting for a call from the reporter --

THE COURT: All right.

MR. RUBIN: -- who is going to tell me that

information.

Thank you.

MR. DUGDALE:  I'm sorry; there is one issue I'd like to raise with the Court.  It's something that the Government would ask the Court to consider prior to the next time we come here.  And that's to set a start date for the presentation of the evidence, the opening statement and the beginning of the witnesses.

The reason why we ask this is because our second witness is an out of town civilian witness who we don't necessarily want to have sit around here for days waiting to testify.

THE COURT:  No, and I don't like that either.  But when you say a start date, it's too early right now to give you a start date.  Once we're in the jury selection process and I have a better feel of it I will give you a date.

For example, if we pick a jury let's say before 12:00 o'clock then we'll come back that afternoon and opening statements.  I don't believe your opening statement's going to take more than an hour, is it?

MR. DUGDALE:  Your Honor, I believe it may take two hours.

THE COURT:  You know, you lose a jury after 25 to 30 minutes.

MR. DUGDALE:  After 25 to 30 seconds sometimes,

16

your Honor.  I realize it is --

THE COURT:  That's maybe you, but --

(Laughter)

MR. DUGDALE:  It is a voluminous case with quite a bit of evidence, your Honor.  And we're trying to cut down as much as possible; we're not trying to waste anybody's time or lose the jurors' attention or bore anybody or anything like that.  In fact, I think this is going to be a very interesting case.  But two hours for a case that's likely to last a while is probably a fair assessment.

THE COURT:  Well, like I said, if we finish like before 12:00 o'clock then you would be prepared to give your opening statement at 1:30.  If the jury selection is getting close to 2:30/3:00 o'clock then we'd recess that day and we'd come back the next day.

MR. DUGDALE:  That's fine, your Honor.  That's fine. I believe -- the jury's coming back on September 5th for general voir dire.  After this individual voir dire process, that process will probably only take a day in our experience in penalty cases, where you've had so much time with the jurors and the questionnaires and everything else, it's really a matter of just picking off the jurors you don't want at that point in time; you have a pretty good idea of who you do want.

So if I had to guess I would guess that we could start as soon as September 6th or September 7th.  It's not going

17

to take an entire three or four days to go through general voir dire after we've gone through three weeks of individual voir dire.

THE COURT:  I would agree with you there.  The only difficulty is, because there are 28 peremptory challenges that each side has, that may take a little longer than normal.

In addition, since you're going to have eight alternate jurors, I believe under the Code you get six -- let me check it one more time.

(Pause)

MR. DUGDALE:  It's Rule 24, your Honor.

THE COURT:  I know.

MR. DUGDALE:  Okay.

THE COURT:  That I know.

MR. DUGDALE:  Sorry.

THE COURT:  You get three additional peremptory challenges when five or six alternates are impaneled.  So that's three, and then we're going to have eight, so that you would get one more.  So you have four alternate -- four peremptories for the alternates.

MR. DUGDALE:  Okay, your Honor.  That's fine.  Thank you.

MR. RUBIN:  That wouldn't be five because there's two (indiscernible)?

THE COURT:  No.

18

MR. RUBIN:  Thank you.

THE COURT:  Mr. Lasting?

MR. LASTING:  Yes, your Honor.  I just wanted to raise one other matter, and that's with regard to Mr. Kadamovas's access to a laptop computer at the MDC.

THE COURT:  I told you when the trial starts.  And the trial -- by that I mean when opening statements are made.

He's getting time Monday through Friday; it's the weekends.  And then you indicated to me that when he's here in the courtroom he will not be able to have any time at the computer.  And so when opening statements are made and he's here on a regular basis in trial then he will have the weekend time.

MR. LASTING:  That's actually going to start on the 15th, your Honor, because as of the 15th he's going to be here every day.

THE COURT:  Let me see how it goes on the 15th, and if it needs to be moved up I'll move it up.

MR. LASTING:  I appreciate that.  Thank you.

THE COURT:  Now, when we bring the jurors in on the 15th it's not going to be in the way that they are randomly selected because I put the jury questionnaires by number.  So it will be like Number 1 through 24 and if we have to call one out of turn then that person will come in here.  So when you prepare to start examining the jurors make sure that it's by

19

alphabetic number and not random number.  Oh, I'm sorry, by jury number and not by alphabetic number.

MR. RUBIN:  I'm sorry, I don't understand.

THE COURT:  All right --

THE CLERK:  We don't have the alphabetical list.

THE COURT:  No, you don't have the alphabetical list. So what I have is I put them in order, 1 through how many we have, so you'll have the first group starting with Number 1.

MR. RUBIN:  Okay.

THE COURT:  But there may be some called out of turn because of their vacations.

MR. RUBIN:  Just so that we don't have to carry in all of the questionnaires every day, I'm assuming the first 24 would come the first day and the second 24 would come the next day.

THE COURT:  Well, see, that I can't guarantee you -- I have a separate set up here, so if you need to look at my set you may look at my set.  But what I'm trying to do is when the jurors come in, and assuming it's 1 through 24, I will show them, you know, the questionnaire, ask them is this your questionnaire that you filled out, so that we make sure that it's their questionnaire.  Now, it may happen that Juror Number 58 is going to be on vacation so we may have to move Number 58 to the first group.  So it would be 1 through 23 and Number 58.

MR. RUBIN:  Right.  We just did that this morning for

20

Number 25.

THE COURT:  Yes.

MR. RUBIN:  Okay, I assume that we would know that ahead of time.

THE COURT:  I don't know.  I'm trying my best to do that.

MR. RUBIN:  But still the numbers -- the numeric numbers that they put on every page of the questionnaire is the number that they're being called by.

THE COURT:  Correct.

MR. RUBIN:  Okay.

(Clerk confers with Court)

THE COURT:  All right, anything further?

MR. RUBIN:  No.  No.

MR. DUGDALE:  Thank you, your Honor.

(Clerk confers with Court)

THE COURT:  All right, now, again, I'm going to admonish you to sit down collectively and disqualify those jurors that you can all mutually agree to, so that we don't have to bring them in.

All right, there being nothing further we'll stand in recess.

(Counsel thank the Court)

(This proceeding was adjourned at 10:03 a.m.)

## CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_____                      April 14, 2009

        Signed                                                    Dated

*TONI HUDSON, TRANSCRIBER*