UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO:  CR-02-220(B)-DT |
| | ) | |
| Plaintiff, | ) | CRIMINAL |
| | ) | |
| vs. | ) | Los Angeles, California |
| | ) | |
| IOURI MIKHEL, | ) | Friday, October 27, 2006 |
| JURIJUS KADAMOVAS, | ) | |
| | ) | (9:41 a.m. to 9:48 a.m.) |
| Defendants. | ) | |


** PARTIAL TRANSCRIPT **
PROCEEDINGS FROM 9:41 A.M. TO 9:48 A.M.



JURY TRIAL (33rd DAY)
(VOLUME XXXIII)


BEFORE THE HONORABLE DICKRAN TEVRIZIAN,
UNITED STATES DISTRICT JUDGE


Appearances:                See next page

Courtroom Deputy:           Debra L. O'Neill

Court Recorder:             Tanya Durant

Transcribed by:             Exceptional Reporting Services, Inc.
                            14493 S. Padre Island Drive
                            Suite A-400
                            Corpus Christi, TX 78418-5940
                            361 949-2988




Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

EXCEPTIONAL REPORTING SERVICES, INC

2

**APPEARANCES FOR:**

The United States:      DEBRA W. YANG, ESQ
                        United States Attorney
                        JACKIE CHOOLJIAN, ESQ
                        Assistant United States Attorney
                        Chief, Criminal Division
                        SUSAN DeWITT, ESQ
                        KIM MEYER, ESQ
                        ROBERT DUGDALE, ESQ
                        Assistant United States Attorney
                        312 North Spring Street
                        Los Angeles, CA 90012

FBI:                    James S. Davidson, Louis Perez

Iouri Mikhel:          DALE MICHAEL RUBIN, ESQ
                        2275 Huntington Dr., Suite 902
                        San Marino, CA 91108

                        RICHARD M. CALLAHAN, JR, ESQ
                        230 E. Colorado Blvd., Suite 1200
                        Pasadena, CA 91101

Jurijus Kadamovas:     SONIA E. CHAHIN, ESQ
                        2222 Foothill Blvd., Suite E-278
                        La Canada, CA 91011

                        RICHARD P. LASTING, ESQ
                        1717 Fourth Street, Third Floor
                        Santa Monica, CA 90401

Also present:          Christina Larson Gits, Paralegal

Russian Interpreters:  Ludmilla Genn
                        Alex J. Levoff
                        Zoya Spivakovsky
                        Varvara Olson

3

**Los Angeles, California; Friday, October 27, 2006; 9:41 a.m.**

**(Entire Proceeding Recorded; Partially Transcribed)**

**(Interpreter Utilized for Translation)**

**(Call to Order)**

**(Outside the presence of the jury)**

**THE CLERK:**  Please remain seated and come to order. This United States District Court is again in session, the Honorable Dickran Tevrizian presiding.

**THE COURT:**  All right, outside the presence of the jury, the record will indicate all parties and counsel are present.

Anything the Government wishes to bring up?

**MR. DUGDALE:**  No, your Honor.

**MS. DeWITT:**  Yes, your Honor.

**MR. DUGDALE:**  Yes, your Honor.

**MS. DeWITT:**  Your Honor, after Special Agent Pauley (phonetic) is done I'm going to be calling Special Agent James Davidson.  Special Agent Davidson is going to testify about some basic background information about the information about the Umanski investigation just to set the context and then primarily he's going to be testifying about a summary chart, which is a summary chart of ransom calls that were made to and from Alexander Umanski and his family members during the time that they were attempting to get a ransom paid for his release. Following that I'm going to be calling three witnesses that

4

were involved in either making or receiving those ransom calls. And what we're going to do in order to play the ransom calls is we're going to put them up on the screen with subtitles so that the jury can follow along, because a significant portion of them are in the Russian language.

The way that we've done this, in order to make it both efficient and so that the jury can understand it, there's an underlying exhibit that is a CD copy of the call, there's an underlying exhibit that we'll move into evidence that's the transcript, but what's actually going to be played is the amalgamation of the two on the screen with the subtitles.

Special Agent Davidson will testify that he's confirmed that the subtitles match the transcripts.

THE COURT:  I have no problem with that.

MS. DeWITT:  And I believe that the sound system is now working properly to work with the Court's sound system over here, so I think that the jury will be able to hear it okay.

THE COURT:  All right, anything Defense wishes to bring up?

MR. RUBIN:  Yes, if I can, your Honor, just briefly. Yesterday afternoon during the cross examination of I think it was Mr. Owen the Court asked me regarding an issue of relevancy --

THE COURT:  Yes.

MR. RUBIN:  -- and I asked to go to sidebar.  I

5

wanted to bring this up yesterday afternoon after we broke and I forgot.  I didn't want to say it in front of the jury.  And one of the things that I think that we have to understand is that at this point we've had several witnesses who have been asked by the Government to describe the character of the victims involved.  We've had testimony about someone being a good mother or a good business person or a good sweet person or a religious person or whatever.  I think at this point the character of the victims has now become an issue and I think that the Defense should be able to respond to that.

The second issue is that --

**THE COURT:**  Wait.  But the problem is some of the questions you were asking yesterday had really nothing to do with anything --

**MR. RUBIN:**  Well, I was laying --

**THE COURT:**  -- going to the issue --

**MR. RUBIN:**  I'm sorry.

**THE COURT:**  -- going to the issue that you just brought up.

**MR. RUBIN:**  I was laying -- I was trying to lay a foundation for insurance forms in the computer that the Prosecution had actually asked what programs were in the computer.  And -- but it was foundational to going forward on that.

The second thing is is that I think that we have

6

established that there is an active investigation into insurance fraud that is going on by other agencies into certain individuals who ended up as victims in this case. And we have information also from Mr. Altmanis about his activities in insurance fraud and his meeting people and meeting his criminal buddies at --

THE COURT: Yeah, but let's assume that Rita Peckler was a money launderer. Let's just assume that --

MR. RUBIN: Okay.

THE COURT: -- for purposes of discussion. What relevancy is that to the fact that she was killed; unless you can show that the people that she was doing money laundering for were the persons who committed the killing and not the Defendants that have been charged.

MR. RUBIN: Well, and again what we have is we have Mr. Altmanis, who is connected to Ms. Peckler because he admits that he met her at the Russian Roulette restaurant, where he has met others. We know that he's involved in insurance fraud.

THE COURT: Well, wait --

MR. RUBIN: We know --

THE COURT: -- let's take -- that's a big, big leap, because he's a waiter or busboy at that restaurant and his wife utilized the services of Peckler I believe before he married his wife. It's so remote.

MR. RUBIN: And he claimed to never have met her and

he claimed to never have been to her office and then that changed.

I don't see that I have a burden of proof at this point.  I have --

**THE COURT:**  You have no burden of proof at all.

**MR. RUBIN:**  -- I have to raise a reasonable doubt. And I think that it's impeachment and that's the reason that it would come in.

But again, if the Prosecution is allowed to ask the witnesses in order to garner some kind of sympathy, you know, what kind of a wife was she, what kind of a mother was she, what kind of business person was he, then that's putting their character into evidence and at this point I think that we are allowed to go into it.  That's what I was going to tell the Court at sidebar.  I didn't want to do it in front of the jury.

**THE COURT:**  All right, I understand that and you told me today --

**MR. RUBIN:**  Thank you.

**THE COURT:**  -- and I would still make the same ruling.

**MR. RUBIN:**  Thank you.

**MS. DeWITT:**  Your Honor, I just want to add one thing, as I think this is important for the record.  I think the only time that the Government has ever elicited anything that even begins to become close to a question about character

8

has been on redirect when the door has been opened.  For example with respect with Ms. Muscatel, Ms. Shapiro, those questions were only -- any questions at all about her husband were only asked on redirect after they were bringing these ridiculous questions about road rage and what kind of temperament he had; they opened the door to those.  So we've been very careful not to ask those kinds of questions for exactly that reason.

THE COURT:  I understand.

MR. RUBIN:  Excuse me, but as far as with Ms. Peckler's husband, they elicited on direct what kind of mother she was, the fact that they had a child with Down's syndrome, the fact that she would -- she was a good business person and she was a sweet lady, all of that was on direct --

THE COURT:  Well --

MR. RUBIN:  -- so….

THE COURT:  -- when they asked about the Down's syndrome, that was not a direct question --

MR. RUBIN:  No.

THE COURT:  -- put to Ms. Peckler's husband. Mr. Peckler explained why he was concerned about his child when Mrs. Peckler didn't show up to put the child to bed, because he had a specific routine to follow.

MR. CALLAHAN:  That's true.

THE COURT:  Okay.

9

All right, anything else?

I'll bring the jury in.

**MS. CHAHIN:**  Your Honor, may I proceed to the lectern?

**(No audible response)**

Your Honor, may I proceed to the lectern now?

**THE COURT:**  Yes, please.

**MS. DeWITT:**  Your Honor, one other thing, because I'm going to be playing these audio tapes I've moved -- I had to move our laptop to the lectern, which may just cause it to be not quite as fast as it normally is.

**THE COURT:**  That's all right.

**MS. DeWITT:**  Your tech person is going to try to bring in a longer cord so that we can make it a little faster this afternoon.

**(Transcription concluded at 9:48:39; remainder of proceedings transcribed under separate cover)**

## CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_____                    April 14, 2009

          Signed                                                        Dated


*TONI HUDSON, TRANSCRIBER*