1

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

- - -

THE HONORABLE NORA M. MANELLA, JUDGE PRESIDING

```
UNITED STATES OF AMERICA,  )
              Plaintiff,   )
     vs.                   )
                           ) CR-02-220-NM
IOURI MIKHEL, et al.,      )
              Defendants.  )
--------------------------)
```

REPORTER'S TRANSCRIPT OF PROCEEDINGS

Los Angeles, California

June 27, 2002

SHARON A. SEFFENS, RPR
United States Courthouse
411 West 4th Street, Room 1-1053
Santa Ana, CA  92701
(714) 543-0870

2

APPEARANCES OF COUNSEL:

For the Plaintiff:

JOHN S. GORDON
United States Attorney
RONALD L. CHENG
Assistant United States Attorney
Acting Chief, Criminal Division
KAREN I. MEYER
SUSAN DEWITT
Assistant United States Attorneys
1100 United States Courthouse
312 North Spring Street
Los Angeles, CA  90012
(213) 894-2434


For Defendant IOURI MIKHEL:

DALE RUBIN
DALE RUBIN LAW OFFICES
2275 Huntington Drive, Suite 902
San Marino, CA  91108
(800) 695-3717

RICHARD M. CALLAHAN, JR.
RICHARD M. CALLAHAN, JR., LAW OFFICES
225 South Lake Avenue, Suite 300
Pasadena, CA  91101
(626) 202-4060

For Defendant PETRO KRYLOV:

GEORGE W. BUEHLER
BUEHLER & KASSABIAN
350 West Colorado Boulevard
Pasadena, CA  91105
(626) 817-5092

DAVID R. EVANS
DAVID R. EVANS LAW OFFICES
7462 North Figueroa Street, Suite 201
Los Angeles, CA  90041
(323) 257-5100

For Defendant JURIJUS KADAMOVAS:


RICHARD LASTING
RICHARD P. LASTING LAW OFFICES
318 East 8th Street, Suite 801
Los Angeles, CA  90014
(213) 489-9025

MARCIA BREWER
MARCIA J. BREWER APLC
400 Corporate Pointe, Suite 800
Culver City, CA  90230
(310) 670-5325


For Defendant NATALYA SOLOVYEVA:


MICHAEL M. CRAIN
MICHAEL M. CRAIN LAW OFFICES
P.O. Box 3730
Santa Monica, CA  90408
(310) 571-3324

TERRY J. AMDUR
TERRY J. AMDUR LAW OFFICES
1939 Rose Villa Street
Pasadena, CA  91107
(626) 449-9254


For Defendant ALEKSEJUS MARKOVSKIS:

DOMINIC CANTALUPO
DOMINIC CANTALUPO LAW OFFICES
100 Wilshire Boulevard, Suite 950
Santa Monica, CA  90401-1145
(310) 397-2637

TERRENCE J. BENNETT
TERRENCE J. BENNETT LAW OFFICES
P.O. Box 709
Pasadena, CA  91102-0709
(626) 792-5868

ALSO PRESENT:

Russian Interpreter

4

LOS ANGELES, CALIFORNIA; JUNE 27, 2002; A.M. SESSION

THE CLERK:   Item No. 2, CR-02-220-NM, United States of America versus Iouri Mikhel, Jurijus Kadamovas, Petro Krylov, Natalya Solovyeva, Aleksejus Markovskis.

Counsel, please state your appearances.

MS. DEWITT:  Good morning, Your Honor.  Susan DeWitt and Karen Meyer on behalf of the government.

THE COURT:  Good morning.

MR. CALLAHAN:  Your Honor, good morning.  Richard Callahan and Dale Rubin on behalf of Mr. Mikhel, who is present in custody.  He does not need the services of an interpreter.

THE COURT:  Good morning.

MR. AMDUR:  Good morning, Your Honor.  Terry Amdur and Michael Crain on behalf of Natalya Solovyeva, who is present.  She is being assisted by the official court interpreter.

THE COURT:  Good morning.

MS. BREWER:  Good morning, Your Honor.  Marcia Brewer along with Mr. Richard Lasting, who I think we have agreed is going to be working with me on behalf of Mr. Kadamovas, who is present in court.  He is in custody, and he does require the services of the Russian interpreter.

THE COURT:  Good morning.

MR. BUEHLER:  Good morning, Your Honor.  George

Buehler on behalf of Petro Krylov.  Also present is David Evans who has not yet been appointed to also represent Mr. Krylov.

THE COURT:  Good morning.

MR. CANTALUPO:  Good morning, Your Honor.  Dominic Cantalupo on behalf of Aleksejus Markovskis.  And also present is Terrence Bennett.

THE COURT:  Thank you.

All right, first things first.  I believe that the three original defendants -- Mr. Mikhel, Mr. Kadamovas, and Mr. Krylov -- have not yet been arraigned on the First Superseding; is that correct?

MS. BREWER:  That's correct, Your Honor.

THE COURT:  All right.  Let's take care of that first.

Mr. Mikhel, Mr. Kadamovas, and Mr. Krylov, if you would please stand.

THE CLERK:  Iouri Mikhel, Jurijus Kadamovas, and Petro Krylov, is that your true and full name?

DEFENDANT MIKHEL:  Yes.

DEFENDANT KADAMOVAS:  Yes.

DEFENDANT KRYLOV:  Yes.

THE CLERK:  You are informed that you are in the United States District Court, and a First Superseding Indictment has been filed charging you with violating the

6

laws of the United States.

Have you received a copy of the First Superseding Indictment?

DEFENDANT MIKHEL:  Yes.

DEFENDANT KADAMOVAS:  Yes.

DEFENDANT KRYLOV:  Yes.

THE CLERK:  Do you waive reading of the First Superseding Indictment at this time?

DEFENDANT MIKHEL:  Yes.

DEFENDANT KADAMOVAS:  Yes.

DEFENDANT KRYLOV:  Yes.

THE CLERK:  How do you plead to each of the counts of the First Superseding Indictment.  Mr. Mikhel.

DEFENDANT MIKHEL:  Not guilty.

THE CLERK:  Mr. Jurijus Kadamovas.

DEFENDANT KADAMOVAS:  Not guilty.

THE CLERK:  Mr. Petro Krylov.

DEFENDANT KRYLOV:  Not guilty.

THE COURT:  All right, thank you.

The next issue is the appointment of capital counsel, which I think everyone agrees is appropriate.  I received letters from the Federal Public Defender, Ms. Stratton, recommending the appointments of counsel, and I think at this point we have pairings up, as it were, that Ms. Brewer alluded to.  They would be as follows:  Mr.

Callahan would be working with Mr. Dale Rubin to represent Mr. Mikhel. Ms. Brewer would be working with Mr. Richard Lasting in representing Mr. Kadamovas. Mr. Buehler, who is already appointed -- Mr. David Evans would be working with Mr. Buehler to represent Mr. Krylov. Mr. Michael Crain would be working with Mr. Terry Amdur to represent Ms. Solovyeva. And Mr. Terrence Bennett would be working with Mr. Dominic Cantalupo in representing Mr. Markovskis. Is that correct?

MR. EVANS: Your Honor, may I briefly address the Court on this issue?

THE COURT: Yes.

MR. EVANS: I met Mr. Krylov for the first time this morning. Unfortunately our prior efforts to get together with him were unsuccessful. I don't think there is going to be any problem, but Mr. Krylov has requested an opportunity to talk with me, and I wondered if we could leave this in abeyance until the next appearance or a conditional appointment or something to that effect just so I can reassure him of his concerns.

THE COURT: I think the safer thing, and frankly from your standpoint since you're going to be on the clock, as it were, would be to go ahead and make the appointment. If there is any reason to change it, I am certainly open to that.

8

MR. BUEHLER:  I think that's fine, Your Honor.

THE COURT:  Mr. Krylov, I am going to go ahead and appoint Mr. Evans.  I realize you haven't had a great deal of time to speak with him yet.  He is very experienced counsel.  I have known him for 20 years actually, 20 years this year, I believe.  I think you will be very pleased with him.  But obviously you're going to have an ample opportunity to sit down and talk with him and get to know him.

MR. EVANS:  Thank you, Your Honor.

THE COURT:  All right, at this time, I am -- and I assume the government also wishes second counsel to be appointed.

MS. DEWITT:  Yes.

THE COURT:  Can I take it that at least one of the defendants moves for the appointment of capital counsel, if not all?  Ms. Brewer, do you want to make --

MS. BREWER:  Yes.  I will make a motion on behalf of all of us.

THE COURT:  All right.  Everyone joins?

*(Affirmative response by all counsel)*

THE COURT:  Anyone not join?  All right.  On that basis then, I am going to make the appointments as I've previously indicated:  Mr. Dale Rubin with respect to defendant Mikhel, Mr. Richard Lasting with respect to

defendant Kadamovas, Mr. Evans with respect to defendant Krylov, Mr. Crain with respect to defendant Solovyeva, and Mr. Bennett with respect to defendant Markovskis.  I will issue an order today making that appointment of counsel.

Also, Ms. Stratton requested in her letters -- made a request with respect to the compensation of counsel, which I am receptive to.  But do counsel want to put anything on the record with respect to justifying that request with respect to the compensation of panel counsel? Mr. Buehler or anybody?

MS. BREWER:  I would, Your Honor.  As Mr. Buehler said in our informal conference earlier, we have just as much responsibility as our co-counsel who are capital trained.  Notwithstanding the comment in Ms. Stratton's letter to the Court, I have tried a second-chair death penalty case stateside, plus I tried another one through the guilt phase.  It was found not guilty, so we didn't get into penalty.

But we have as much responsibility, and to have a disparity in the compensation to me seems quite unfair, because we are going to have to spend as much time, and we were the initial counsel for the client, and the client is really looking to us as the person to carry the ball.  So I would request that we be compensated the same as capital counsel.

THE COURT:  Mr. Buehler.

MR. BUEHLER:  Your Honor, I would just add the comment I made this morning informally, that this will be a very demanding case -- it's obvious -- in terms of the amount of time it requires, and it will therefore tend to crowd out other cases that we would otherwise be handling in the other parts of our practice.  I think for that reason as well the higher rate is justified.

THE COURT:  Anything further?

MR. CALLAHAN:  Only to join in the comments of my colleagues and also to indicate that the emotional toll that this takes on counsel as well is also very important, and I would ask for the higher rate as well.

THE COURT:  I am prepared to grant that request, and in the order that I will issue today, I will order that the panel attorneys be compensated at the same rate as capital qualified attorneys.

Now, earlier this week I believe I signed off on the designation of Mr. Agueev and Mr. Liapine as material witnesses and am prepared to obviously permit their depositions.  One of the issues that arises is the timing of those depositions.  I realize that Mr. Amdur and Mr. Cantalupo have just come into the case.  And while apparently discovery has been provided, it has only been provided recently and they obviously have not had a full

opportunity to familiarize themselves with it.

Nevertheless, there is obviously an incentive to have these depositions taken as soon as possible given that the two material witnesses will be detained I believe.  At least that's what they are now, and I think there is a high likelihood that they will remain detained pending those depositions.

Have counsel had an opportunity to discuss informally a schedule with respect to those depositions?

MS. BREWER:  We have, Your Honor, but I think we've run into a little bit of a snag.  We have picked some dates, and I think some of my colleagues have determined that it's too soon.  I think what we could do is caucus among us ourselves and then talk to the United States Attorneys.

MS. DEWITT:  Your Honor, at this point we're looking for something at the end of July.  Hopefully defense counsel can come to agreement on a date near that time.

THE COURT:  All right.  Maybe what makes sense is this:  to allow counsel to caucus, to talk with the U.S. Attorney's Office, and maybe ask simply for a report -- if counsel don't object, I will ask that the U.S. Attorney's Office files it -- advising the Court as to whether or not counsel have been able to reach a resolution.  If not, I will be happy to resolve it for you.  And if we need a

hearing to do that, we'll just set one on fairly short notice.  Is that acceptable?

MS. DEWITT:  That's fine, Your Honor.  Also just for your information, we did file -- and unfortunately they got separated so they were filed one day apart -- not only a request to take the depositions in this case but also a proposed order that would outline the procedures for handling those depositions.

My guess is that counsel here have not had an opportunity to really look over that proposed order because it just went out.  Some of them have advised me that they haven't gotten in the mail.

THE COURT:  Okay.  I think they were separated because I have the blue-backed original of the proposed order, and it refers in the first sentence to the Court's order.  Does that refer to the order designating the two previous defendants as --

MS. DEWITT:  Yes.

THE COURT:  Okay.  Then at least I think I have received everything by now, but counsel may not have.  So that's another thing.  I would then ask that counsel caucus both on the timing of the depositions and make sure you all have copies of the proposed order so that if you have a problem with the procedures outlined by the government, maybe you can work that out as well.

13

If you can't, then I would say maybe, Ms. DeWitt, by next Wednesday or so you can file something with the Court letting me know if the parties aren't in agreement, what issues need to be resolved, and we'll try to set it for hearing.

MS. DEWITT:  That's fine, Your Honor.  As a matter of fact, as I set the motion requesting the depositions, I just set it on regular notice motion.  As it stands right now, it is set on calendar, and that may obviate the need for it.  It may not obviate the need for it.

THE COURT:  Which is that?  Is that the motion for -- to take the depositions?

MS. DEWITT:  Yes, Your Honor.

THE COURT:  Is there really going to be any dispute on that?

MS. BREWER:  I don't think there is any dispute. I mean, we're not objecting to taking the depositions.  I think it's a question of the scheduling.

THE COURT:  Of the scheduling.  That's what I understand, too.  But you're saying it's been calendared?

MS. DEWITT:  Yeah.  I just calendared it because it's a motion.  I want people to have an opportunity, if they wanted to, to make those objections.  And if there is no objection, we will also -- I guess I would just ask if somebody's position is other than that, that they let us

SHARON SEFFENS, U.S. COURT REPORTER

14

know that immediately so that we can also reflect that in the status conference.  And if need be, we can come back to you to resolve any issues.

THE COURT:  Okay.  I think that's fine.  So what Ms. DeWitt is going to provide me with by the middle of next week is simply a status report on whether, A, counsel have agreed on a date for the depositions; and B, whether they have come to a resolution as to the procedures; and C, if they haven't, if there is something that they want me to resolve.  And then we'll put that on calendar before July 22nd.

Anything else that we can accomplish today or anything else that counsel want to bring up?

MS. BREWER:  I don't know what the Court wants to do with regard to setting a trial date.  I think the consensus among defense counsel is to do another status conference.

THE COURT:  Okay.  How does the government feel?  Is that all right with the government?

MS. DEWITT:  Yes, Your Honor.

THE COURT:  All right.  How much time do you think you'll need to have to be in a realistic position to make that assessment?  I guess I should ask Mr. Amdur and Mr. Cantalupo.

MR. AMDUR:  In regard to a status conference?

15

THE COURT:  Right.

MR. AMDUR:  I would like an opportunity to review the discovery before that.  I received it, as I indicated, the day before yesterday, but I've been trial up until yesterday afternoon and haven't had a chance to look at it.  So perhaps two weeks.

MS. DEWITT:  Your Honor, the government would propose that any status conference occur after the depositions because we're talking about a status conference with respect to a trial date; right?

THE COURT:  Right.  But does what happens at the deposition, is that really going to affect your general assessment of when you'll be ready for trial?

MR. AMDUR:  Not in my case.

THE COURT:  I wouldn't have thought so.  I mean, frankly, you'll know better than I.  You've reviewed the discovery or will have.  But I would assume that you would -- you know, the trial date isn't going to be written in stone, but I think the principal goal is that as soon as everybody is pretty much familiar with what's out there to have a sense of how long it's going to take them to prepare.  And I'm not sure that taking the depositions is going to affect that that much.

MS. DEWITT:  We have by letter sent out this week also invited counsel to come inspect a fairly significant

16

amount of physical discovery and some discovery that we are hoping ultimately to get photocopied or photographs, but we want to make it available to them as quickly as possible to at least inspect, some of which is going out for further forensic testing, which also necessitates them looking at it if they haven't already done so before it's tested.

But that's going to be happening, I think, in the next couple weeks, so my recommendation would be that any status conference at least be set after that, because I think it would be very difficult for them to assess fully how much time they need until they've had an opportunity to look at the discovery.

Also another factor that's going to play into it is that we've invited all counsel to make a presentation if they wish to the death penalty committees both here and in Washington, so that's going to take some time as well.  And also to get resolution of those issues may take some time as well.  That's really -- the ball is in their court.  It depends on how much time they need and want to do that. Until we get that issue resolved, it's a little difficult to know exactly the full parameters of the trial.

THE COURT:  Well, I understand.  I assume everyone would want to make such presentation.  I know that from some experience it's sometimes difficult to estimate how long it takes both the U.S. Attorney's Office locally to make their

17

decision, not to mention the Department of Justice committee to make its decision, but I am guessing that any date we're going to set is not going to be around the corner.

MR. CANTALUPO:  Your Honor --

THE COURT:  Yes, Mr. Cantalupo.

MR. CANTALUPO:  -- I was going to suggest -- at Mr. Markovskis' initial arraignment a date for status conference was set for July 22nd.  Also I believe a trial date was set for August 6th, which I assume the Court has vacated.

THE COURT:  I think we can safely say that.

MR. CANTALUPO:  But I don't know how the July 22nd date fits in with the government counsel's statements, but that seems to be --

THE COURT:  Well, I was thinking either that or the week after.  Anyone have any preference?  Mr. Rubin.

MR. RUBIN:  Thank you, Your Honor.  Dale Rubin on behalf of Mr. Mikhel.  We are about to undertake a separate investigation which includes the preparation of the case not only for presentation to the U.S. Attorney's Office and to the Department of Justice but also for trial.  We're starting from scratch at this point, so I think a two-week date for a status conference is really going to be meaningless as far as those issues are concerned.

THE COURT:  Okay.

18

MR. RUBIN:  I would suggest a 60-day date.

THE COURT:  Well, as a practical matter, I do see some advantage to, A, giving counsel some time to think about their own presentations; B, to evaluating or at least seeing some of the physical evidence that the government has because I realize that may have some significance here.  And I don't think we're talking about a case that would otherwise be going to trial in the next 60 days.

So let's do this.  How about August 19th?

MR. BUEHLER:  Your Honor, that conflicts with vacation plans for me.

THE COURT:  Okay.  I don't like to do that.  How about the 26th?

MR. BUEHLER:  That would be okay.

THE COURT:  Does the 26th work?  August 26th at 1:30?

What is our speedy trial max now?  Do we have a T-max now?

MS. MEYER:  Your Honor, I would have to go back and look at that.

MS. DEWITT:  Probably the trial date that was vacated.

THE COURT:  And that was --

MS. MEYER:  It probably is July 2nd, which was the trailing trial date for this case, but I would go back and

check.

THE COURT:  Well, I'm sure that -- let's see what the last -- it told it, if that's your question, Mr. Amdur, but I signed off on that.  Although, I do have the motion.  Well, I'm not sure I do have any other motion pending before me.  Well, I guess there is a motion to take the depositions, which is tolling things.  But let me just make a record here.

To all defendants -- well, actually I have got a T-max here of 8/15, but this status conference would obviously come after that.  To defendants Mikhel, Kadamovas, Krylov, Solovyeva, and Markovskis, your counsel have requested that I put this matter over for a period until August 26th at 1:30 p.m. for a status conference to allow your newly appointed counsel to familiarize themselves with the discovery and to adequately prepare to advise the Court on what would be an appropriate trial date by which they would be prepared to defend you in trial.

To each of you, do you agree that this matter may be continued beyond what is currently the -- assuming the speedy trial maximum is August 15th -- and that the Court may set this matter for a status conference on August 26th of this year at 1:30 p.m.?  Mr. Mikhel.

DEFENDANT MIKHEL:  Yes.

THE COURT:  Thank you.

Mr. Kadamovas.

DEFENDANT KADAMOVAS:  Yes.

THE COURT:  Mr. Krylov.

DEFENDANT KRYLOV:  Yes.

THE COURT:  Ms. Solovyeva.

MS. SOLOVYEVA:  Yes.

THE COURT:  Thank you.

Mr. Markovskis.

MR. MARKOVSKIS:  Yes.

THE COURT:  All right, thank you very much.

Ms. Meyer, I am going to ask you to prepare the speedy trial order if you will, please.

MS. MEYER:  Yes, Your Honor.

THE COURT:  Anything further in this matter -- oh, I have one thing further.  Do counsel want interim payments? I assume you do.

MS. BREWER:  Can we submit payments on a monthly basis?

THE COURT:  I was just inclined to authorize interim payments.

MS. BREWER:  Whenever?

THE COURT:  Yes, whenever.

MS. BREWER:  Would the Court issue an order?

THE COURT:  Yes.  I am going to make it part of the order appointing capital counsel.

All right.  Thank you very much.

*(Thereupon, the proceeding was concluded.)*

-oOo-

22

CERTIFICATE


        I hereby certify that pursuant to Section 753,

Title 28, United States Code, the foregoing is a true and

correct transcript of the stenographically reported

proceedings held in the above-entitled matter and that the

transcript page format is in conformance with the

regulations of the Judicial Conference of the United States.


Date:  April 19, 2009



                        Sharon A. Seffens        4/19/09
                        _____
                        SHARON A. SEFFENS, U.S. COURT REPORTER