UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

- - -

THE HONORABLE NORA M. MANELLA, JUDGE PRESIDING

UNITED STATES OF AMERICA,  )
            Plaintiff,     )
      vs.                  )
                           )  CR-02-220-NM
IOURI MIKHEL, et al.,      )
            Defendants.    )
--------------------------)

REPORTER'S TRANSCRIPT OF PROCEEDINGS

Los Angeles, California

August 25, 2003

SHARON A. SEFFENS, RPR
United States Courthouse
411 West 4th Street, Room 1-1053
Santa Ana, CA  92701
(714) 543-0870

SHARON SEFFENS, U.S. COURT REPORTER

2

APPEARANCES OF COUNSEL:

For the Plaintiff:

JOHN S. GORDON
United States Attorney
RONALD L. CHENG
Assistant United States Attorney
Acting Chief, Criminal Division
BEVERLY REED O'CONNELL
Assistant United States Attorneys
1100 United States Courthouse
312 North Spring Street
Los Angeles, CA  90012
(213) 894-2434

For Defendant ALEKSEJUS MARKOVSKIS:

DOMINIC CANTALUPO
DOMINIC CANTALUPO LAW OFFICES
100 Wilshire Boulevard, Suite 950
Santa Monica, CA  90401-1145
(310) 397-2637

TERRENCE J. BENNETT
TERRENCE J. BENNETT LAW OFFICES
P.O. Box 709
Pasadena, CA  91102-0709
(626) 792-5868

ALSO PRESENT:

Russian Interpreter

LOS ANGELES, CALIFORNIA; AUGUST 25, 2003; P.M. SESSION

THE CLERK:  Item No. 3, CR-02-00220-NM, United States of America versus Aleksejus Markovskis.

Counsel.

MS. O'CONNELL:  Good afternoon, Your Honor. Beverly Reed O'Connell on behalf of the United States.

MR. CANTALUPO:  Good afternoon, Your Honor. Dominic Cantalupo for Aleksejus Markovskis who is present.

MR. BENNETT:  Good afternoon, Your Honor. Terrence Bennett.  I am also here on behalf of Mr. Markovskis.

THE COURT:  Thank you.  We also have a Russian language interpreter.

Counsel, I am not at this point going to ask questions that will require any discussion of arguably privileged communications.  If you think that we need to go there, let me know, and I will obviously clear the courtroom before we get there.

The government has indicated its intention not to seek the death penalty against Mr. Markovskis in this case. Under recent Ninth Circuit law -- I guess consistent with Ninth Circuit law going back to United States versus Dufur decided in 1980 the Ninth Circuit held earlier this month on August 5 in United States versus Waggoner that once the government declines to seek the death penalty the

4

defendant's right to the appointment of second counsel is essentially extinguished.  What Mr. Markovskis has at this point is the right to be represented by a single counsel.  I have an impression as to which counsel Mr. Markovskis wishes to represent him, but I will let him speak on his own behalf.

Let me just confirm with respect to the notice that I received from the government filed on August 7 -- Ms. O'Connell, am I correct that the government does not intend to seek the death penalty against Mr. Markovskis in this case?

MS. O'CONNELL:  That's correct, and I have informed defense counsel of that fact as well.

THE COURT:  Mr. Markovskis, do you understand that you only get one counsel now that you are no longer death penalty eligible?

THE DEFENDANT:  Yes.

THE COURT:  And do you have a preference as to which counsel that is?

THE DEFENDANT:  Yes.  I would like to have Mr. Bennett.

THE COURT:  All right.

Mr. Cantalupo, is there any reason that I shouldn't appoint Mr. Bennet, he being the choice of Mr. Markovskis?

SHARON SEFFENS, U.S. COURT REPORTER

MR. CANTALUPO:  Your Honor, let's call a spade a spade.  This is all about Mr. Bennett being greedy.  He and I had a problem in our co-counsel relationship from pretty much day one.  I had actually met with Maria Stratton on that very topic.  It was my decision after that discussion with Ms. Stratton to detach myself from Mr. Bennett and his efforts to put a presentation together, which was successful apparently and in that government is not seeking death.  In the meantime, I devoted my attention to the discovery and reading.

What Mr. Bennett has done by forcing Mr. Markovskis to choose one or the other is detrimental to my relationship with him, but certainly should not be rewarded by continued representation when he blatantly tries to kick a panel attorney off a case.

THE COURT:  Well, is there any question that one or the other of you is going to go?  There is not in my mind.

MR. CANTALUPO:  No.

THE COURT:  Can you think of a more appropriate criterion for the Court to use than the defendant's choice for whatever -- however misguided that choice may be or however much the choice may have been reached due to what you believe to have been some underhanded dealings?  From my perspective, is there any reason I shouldn't appoint the

6

counsel that the defendant has indicated he prefers?

MR. CANTALUPO:  If I was ruling on this case, I would be hesitant to send a message out that one attorney can use any tactic necessary to squeeze another attorney out.

THE COURT:  Well, I guess the only way Mr. Bennett could have used any tactic would have been I suppose if he could have somehow ensured that the government didn't seek the death penalty for Mr. Markovskis, and I think ultimately that is the Attorney General's and the U.S. Attorney's decision, not Mr. Bennett's.

MR. CANTALUPO:  The preference of Mr. Markovskis wasn't expressed until after the government decided not to --

THE COURT:  That may be.  If it were necessary for me to make a determination assuming there was some fault who was at fault, I would go there.  I don't think I have to go there.

Mr. Cantalupo, you obviously have strong feelings that you have been treated shabbily by Mr. Bennett.  I have no view on whether on those feelings are justified at all, nor do I think I have to.  From my standpoint, the fact is that the government has indicated unequivocally that it does not intend to seek the death penalty against Mr. Markovskis He has only got the right to one counsel, and for whatever

reason, he has indicated to me that he wishes to have Mr. Bennett continue to represent him.  I can any think of no reason -- nothing I have heard today persuades me that that should not be the case.

THE COURT:  Mr. Bennett, let me just confirm are you prepared to continue to represent Mr. Markovskis?

MR. BENNETT:  Yes.

THE COURT:  That would be I think at the regular rate.

MR. BENNETT:  I understand.  The only thing I would request is if I am going to continue as counsel of record in this matter I would request the Court to direct Mr. Cantalupo to turn over to me all the discovery, which is one of the sources of our difficulty.

THE COURT:  Of course.

Mr. Cantalupo, I am going to relieve you. Obviously you are entitled to be compensated for all the work that you have done in this case, and the Court appreciates it, but I would ask that you turn over whatever you do have to Mr. Bennett for his future use.

Ms. O'Connell, anything more I should know from the government's standpoint?

MS. O'CONNELL:  No, Your Honor.

THE COURT:  Mr. Markovskis, you will continue to be represented by Mr. Bennett.  Do you understand that?

8

THE DEFENDANT:  Yes.

THE COURT:  Mr. Cantalupo, thank you for your service on the case for far.

MR. CANTALUPO:  Thank you.

THE COURT:  Mr. Bennett, thank you for your continuing service.

MR. BENNETT:  Thank you.

-oOo-

9

CERTIFICATE

I hereby certify that pursuant to Section 753, Title 28, United States Code, the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Date:  April 19, 2009

Sharon A. Seffens        4/19/09
_____
SHARON A. SEFFENS, U.S. COURT REPORTER