UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

- - -

THE HONORABLE NORA M. MANELLA, JUDGE PRESIDING

```
UNITED STATES OF AMERICA,  )
              Plaintiff,   )
     vs.                   )
                           )  CR-02-220-NM
IOURI MIKHEL, et al.,      )
              Defendants.  )
--------------------------)
```

REPORTER'S TRANSCRIPT OF PROCEEDINGS

Los Angeles, California

June 3, 2002

SHARON A. SEFFENS, RPR
United States Courthouse
411 West 4th Street, Room 1-1053
Santa Ana, CA  92701
(714) 543-0870

SHARON SEFFENS, U.S. COURT REPORTER

2

APPEARANCES OF COUNSEL:

For the Plaintiff:

JOHN S. GORDON
United States Attorney
RONALD L. CHENG
Assistant United States Attorney
Acting Chief, Criminal Division
KAREN I. MEYER
SUSAN DEWITT
Assistant United States Attorneys
1100 United States Courthouse
312 North Spring Street
Los Angeles, CA  90012
(213) 894-2434


For Defendant IOURI MIKHEL:

RICHARD M. CALLAHAN, JR.
RICHARD M. CALLAHAN, JR., LAW OFFICES
225 South Lake Avenue, Suite 300
Pasadena, CA  91101
(626) 202-4060

For Defendant PETRO KRYLOV:

GEORGE W. BUEHLER
BUEHLER & KASSABIAN
350 West Colorado Boulevard
Pasadena, CA  91105
(626) 817-5092

For Defendant JURIJUS KADAMOVAS:

MARCIA BREWER
MARCIA J. BREWER APLC
400 Corporate Pointe, Suite 800
Culver City, CA  90230
(310) 670-5325

ALSO PRESENT:

Russian Interpreter

SHARON SEFFENS, U.S. COURT REPORTER

LOS ANGELES, CALIFORNIA; JUNE 3, 2002; P.M. SESSION

THE CLERK:  Case No. CR-02-220-NM, United States of America versus Iouri Mikhel, Jurijus Kadamovas, Petro Krylov.

Counsel, please state your appearances.

MS. DEWITT:  Good afternoon, Your Honor.  Susan DeWitt and Karen Meyer on behalf of the government.

THE COURT:  Good afternoon.

MS. MEYER:  Good afternoon, Your Honor.

MR. BUEHLER:  Good afternoon, Your Honor.  George Buehler on behalf of Mr. Krylov.

THE COURT:  Good afternoon.

MS. BREWER:  Good afternoon, Your Honor.  Marcia Brewer appearing on behalf of Mr. Kadamovas.

THE COURT:  Could I get the third consonant of your client's name because I don't know whether it's an M or an N?

MS. BREWER:  Kadamovas.

THE COURT:  Okay.  And, sir, what is the proper pronunciation?  Can you say it for us.

DEFENDANT KADAMOVAS:  Kadamovas.

MS. BREWER:  Kadamovas.

THE COURT:  Kadamovas.  Thank you.

Let me first take up Mr. Mikhel, who is present. Mr. Mikhel, I received your papers from last week, also a

4

submission from the government.

As of our last hearing and as of last week, you were still seeking to retain counsel; is that correct?

DEFENDANT MIKHEL:  Yes.  I submitted a motion.

THE COURT:  Yes.  I've seen that.  Have you had any luck in retaining counsel?

DEFENDANT MIKHEL:  Not yet.

THE COURT:  Okay.  I understand that you have some properties that you're trying to sell.

DEFENDANT MIKHEL:  That's what I am doing.

THE COURT:  All right.  Is some of your difficulty in securing counsel financial?

DEFENDANT MIKHEL:  Yes.

THE COURT:  Okay.  Now, my understanding is that your fondest hope is that overcoming those financial burdens you will then be able to secure counsel as you originally did with Mr. Sherman; correct?

DEFENDANT MIKHEL:  That's a possibility.

THE COURT:  All right.  It's my understanding at least as of the last hearing that you wish to be represented by counsel at the trial of this matter; is that correct?

DEFENDANT MIKHEL:  Correct.

THE COURT:  Okay.  Now, I understand your concern that you don't want to be in essence losing time between the time that Mr. Sherman has been relieved and the time that

you can secure counsel.

DEFENDANT MIKHEL:  That is absolutely correct.

THE COURT:  All right.  And if you at this point, as it appears, cannot afford to retain counsel, I am prepared to appoint counsel at government expense to represent you with the understanding that you can bring in your retained counsel when you get that counsel, provided it's not so late in the game that retained counsel couldn't be prepared to go to trial.  Do you understand that?

DEFENDANT MIKHEL:  I understand that.

THE COURT:  All right.  And have you had an opportunity to speak briefly with Mr. Callahan before approaching the lectern?

DEFENDANT MIKHEL:  Yes.

THE COURT:  All right.  Because as you know, Mr. Mikhel, from comments I made last time, in charges this serious, the idea of having -- and I assume you're not a lawyer; is that a fair assumption?

DEFENDANT MIKHEL:  No, I am not.

THE COURT:  The idea of having a nonlawyer represent himself would appear to be more than foolhardy, and I am concerned -- well, I sympathize with your concern that you don't want to be losing time.  I want to make sure that you are getting proper legal advice throughout this case regardless of when you actually secure the funds to

retain counsel.

So what I would suggest is that I appoint Mr. Callahan to represent you at government expense so that you're not losing that time.  And when and if you secure the funds to bring in retained counsel, retained counsel will simply substitute in and Mr. Callahan will be out.  Is that acceptable to you?

DEFENDANT MIKHEL:  It would be acceptable. Meanwhile I would still have the opportunity to do it myself in parallel with counsel who will be appointed by you?

THE COURT:  Well, the only problem there is I believe the law wouldn't permit me to have Mr. Callahan paid, and I don't think he's going to do it for free.  If he's your counsel, he can be paid by the government.  I think you would find that if you worked with Mr. Callahan you would be happy with the representation that he could provide.  You might actually be happy with it for a longer time but certainly until such time as you could retain your own counsel.

If after working with Mr. Callahan you decided you did not like that representation and wanted to renew your motion to represent yourself through the trial, I would consider that motion.

DEFENDANT MIKHEL:  Fair enough.

THE COURT:  Okay.  Fair enough?

DEFENDANT MIKHEL:  Yes.

THE COURT:  All right.  Then here's what I'm going to do.  Mr. Callahan, are you prepared to take on this representation with the understanding that you might be substituted out by retained counsel?

MR. CALLAHAN:  Yes, Your Honor.

THE COURT:  All right.  Then I am going to at this point appoint Mr. Callahan to represent Mr. Mikhel with the understanding that Mr. Mikhel can obviously still secure retained counsel if he wishes to do so.  And if at the end of the day he wishes to renew his motion to represent himself through trial, then obviously I would consider that as well.

All right.  So we have Ms. Brewer.  We have Mr. Buehler.  We have Mr. Callahan.

Where do we stand statuswise?  Is the government preparing to supersede?

MS. DEWITT:  Your Honor, it is the government's intention to supersede.  We have been unable as of this time to do so.  We hope to do so soon.  The reason is that we're trying to work out some logistical issues with the District Attorney's Office, which has a related investigation.  We hope that that will be resolved.  It's not entirely at this time, but we're hoping it will be soon.

THE COURT:  Okay.  Any guestimates as to what soon

means?  Matter of weeks?  Matter of days?

MS. DEWITT:  I don't like to make representations that I don't have control over.  I had hoped it would have been resolved by now.

THE COURT:  Just a guestimate.  I'm not going to hold you to it.  I'm just trying to get a sense.

MS. DEWITT:  I would hope within the next week or two that that would be resolved.

THE COURT:  Okay.  And I don't suppose the defendants know what these charges are going to be.

MS. DEWITT:  I think it would be fair to say I -- not me personally but counsel for the government has had discussions with them in general as to the nature of those charges, although I don't think there has been specific discussions with them as to the nature of those charges.

THE COURT:  Okay.  Well, are those charges likely to -- what impact are those charges likely to have on the complexity of the case or the length of the case?

MS. DEWITT:  I think those charges will greatly increase both the complexity and to some extent the length of the case as well.

THE COURT:  And is additional discovery likely to be given out in connection with those new charges?

MS. DEWITT:  Yes, Your Honor.

THE COURT:  Well, I am probably most in the dark

here.  I don't know how the defendants' counsel feel about it, but without knowing what the new charges are going to be or what the new discovery is going to be, I don't know that any one of you is in a particularly good position to give me a guess as to when this case will actually go to trial.

MR. BUEHLER:  I would agree with that, Your Honor. And the dilemma that that places me in on behalf of Mr. Krylov is that although a substantial amount of discovery has been produced and I have read it and listened to it, as far as Mr. Krylov is concerned, it has not enlightened me as to the basis for why my client is in this case.

Now, the government counsel has told me there will be more evidence coming.  But at this point in terms of issues of trial setting and Mr. Krylov's rights under the Speedy Trial Act, the fact that he remains detained in this case, I am troubled by the lack of production of evidence in discovery which enables me to make an intelligent decision about how much time we need to prepare the case and whether or not we should be waiving speedy trial rights.

So I would suggest to the Court from Mr. Krylov's perspective that the Court set another status conference maybe two weeks from now, at which time, from what government counsel is saying, I would anticipate we would have a superseding indictment, and we would at least know what the charges are going to be in the case.  And I assume

10

that that indictment would be a little bit more enlightening than the very brief indictment we have at this point in terms of what my client's alleged role in the offense or offenses is claimed to be by the government.

I would prefer to keep -- my client does not want to waive any more time under the Speedy Trial Act at this point.  That's obviously without prejudice to our right to ask for more time once we see the superseding indictment and once we are better apprised of what the evidentiary basis for the government's case is, at which point we can make a more intelligent decision about how much time we need to prepare.

THE COURT:  Right.  And I think I have now signed off on the, I guess, second submission of the government with respect to the speedy trial order, although I do think it's clear that when a motion is filed by one defendant the clock stops for the whole case.  It doesn't just stop as to that defendant.  But even if it did, under the severance provision -- or sort of the nonseverance provision of 3161, if the time hasn't run for one defendant and a severance hasn't been granted, then it hasn't run for any of them.  So if it's excludable time for one, it's excludable for all.

My guess, Mr. Buehler -- and I understand your concerns, Mr. Buehler.  My guess is those concerns are probably going to be superseded, not to use a pun, in both

the legal and normal grammatical sense by what the government does.  The first date that I have available after July 10th or June 10 -- and I don't think the morning of June 10th is likely to do you much good, given the estimates that Ms. DeWitt has given me -- is later in the week of June 24th or Monday, July 1st.

If it's going to take a couple of weeks to get this new indictment returned and new discovery is going to be produced, I am not sure you're going to be in much of a position to know what you want to do until July 1st.  But the first -- I mean, the 10th doesn't do you any good.  And the first that I could see you would be later in the week of July 24th -- or June 24th.  If I said July 24th, I didn't mean to.

MS. DEWITT:  Is Your Honor available on the 27th of June?

THE COURT:  Yes.  I could do the 27th, yes.  10:00?

MR. BUEHLER:  That would work for me, Your Honor.

THE COURT:  How does that work for others?

MR. CALLAHAN:  Your Honor, I will be in trial from June 25th through July 25th.  If one of my colleagues can stand in, that 's fine, but I'm not sure if you'd want that at this point.

THE COURT:  When do you start and when do you end?

I can do it earlier if that helps anybody.

MR. CALLAHAN:  We start the 25th.

THE COURT:  Right.  But I mean what time of day.

MR. CALLAHAN:  I think it's 9:00.  I'm not sure.

THE COURT:  Would it help to do it at 8:00?  I use the word help advisedly.

MR. CALLAHAN:  That's fine for me.

THE COURT:  All right.  How about at 8:00 on Thursday, the 27th, then?

MS. DEWITT:  We will also on behalf of the government endeavor to communicate with counsel before that and hopefully work out any logistical issues before then on our part that we can so that we can expedite things.

THE COURT:  All right.  I mean, the main thing is that once we figure out what the parameters of the case are and counsel can figure out what motions they want to file, if any, and we can try to get it organized so that we can set some dates that have some meaning.

The one advantage that criminal cases have is that if the civil cases have to move, they move.  I can't control the rest of the criminal calendar, but I have some control over the 450 civil cases.

All right.  Ms. Brewer, other than being on the verge of being held in contempt by Judge Rafeedie, anything --

MS. BREWER:  Not Rafeedie.  It's Feess.

THE COURT:  Oh, it's Feess.  He's fine.  Don't worry.  You're okay.

MS. BREWER:  I should have gone over there and taken care of it.  I could have come back.

THE COURT:  It's okay.  You see, I am senior to him, so --

MS. BREWER:  I know.

THE COURT:  If it were Rafeedie, it would be different.

MS. BREWER:  Then I would have been over there first.  At this point 8:00 on the 27th is fine for my calendar.  I just want to know if the Court intends, then, to vacate the current trial date, which I think is July 2nd.

THE COURT:  It's July 2nd.  I do intend to do that, based on the government's representation that additional charges will be filed.  I am not sure what our T-max is now based on the last order.

THE CLERK:  August 15th.

THE COURT:  Okay, thank you.  All right then, when we next convene on Thursday, June 27th, at 8:00 a.m., hopefully any additional charges will have been brought and maybe even some additional discovery provided.  And I hope that counsel may have had some opportunity to consult about timing, and we will try to get a little more organized.

Mr. Mikhel, as I said, I think you'll find Mr. Callahan extraordinarily capable.  But at any time when you're ready to substitute retained counsel if those sales go through and you're able to do so, you are free to do so.  All right?  And you're also free to renew your motion down the road.

DEFENDANT MIKHEL:  May I request the permission still to use the law library?

THE COURT:  I can't give you more than what the other prisoners can use in their status as represented prisoners.  I can't do that at this point.

All right, Counsel, I will see you all on the 27th.

MR. BUEHLER:  May I raise this one other housekeeping matter, Your Honor?  I submitted last week an application with respect to certain expenses.

THE COURT:  I think I signed it.

MR. BUEHLER:  Okay.  Thank you, Your Honor.

THE COURT:  I think I signed it late last week.  Thank you very much.

MS. DEWITT:  Thank you, Your Honor.

*(Thereupon, the proceeding was concluded.)*

-oOo-

15

CERTIFICATE

I hereby certify that pursuant to Section 753, Title 28, United States Code, the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Date:  April 19, 2009

Sharon A. Seffens          4/19/09
_____
SHARON A. SEFFENS, U.S. COURT REPORTER