UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

HONORABLE S. JAMES OTERO, JUDGE PRESIDING

UNITED STATES OF AMERICA,               )
                                        )
                                        )
                                        )
                    Plaintiff,          )
                                        )
                                        )
                                        )
          Vs.                           )   No. CR 02-220 (B) SJO
                                        )
                                        )
                                        )
PETRO KRYLOV,                           )
                                        )
                                        )
                                        )
                    Defendant.          )
                                        )
_____         )


REPORTER'S TRANSCRIPT OF TRIAL PROCEEDINGS

LOS ANGELES, CALIFORNIA

FRIDAY, MAY 18, 2007


LEANDRA AMBER, CSR 12070, RPR
OFFICIAL U.S. DISTRICT COURT REPORTER
312 NORTH SPRING STREET, # 442
LOS ANGELES, CALIFORNIA 90012
(213) 613-0179

UNITED STATES DISTRICT COURT

**A P P E A R A N C E S**

**IN BEHALF OF THE PLAINTIFF,**
**UNITED STATES OF AMERICA:**          U.S. DEPARTMENT OF JUSTICE
                                       U.S. ATTORNEY'S OFFICE
                                       BY:  SUSAN J. DeWITT, AUSA
                                            ROBERT DUGDALE, AUSA
                                            KIM MEYER, AUSA
                                       312 NORTH SPRING STREET
                                       12TH FLOOR
                                       LOS ANGELES, CALIFORNIA 90012
                                       (213) 894-4496
                                       susan.dewitt@usdoj.gov
                                       robert.dugdale@usdoj.gov
                                       kim.meyer@usdoj.gov


**IN BEHALF OF THE DEFENDANT,**        LAW OFFICES OF GEORGE W.
**PETRO KRYLOV:**                       BUEHLER
                                       BY:  GEORGE W. BUEHLER, ESQ.
                                       350 SOUTH GRAND AVENUE
                                       SUITE 3900
                                       LOS ANGELES, CALIFORNIA 90071
                                       (213) 625-1600
                                       buehler@geragos.com


                                       LAW OFFICES OF DAVID R. EVANS
                                       BY:  DAVID R. EVANS, ESQ.
                                       600 SOUTH LAKE AVENUE
                                       SUITE 506
                                       PASADENA, CALIFORNIA 91106
                                       (626) 432-5100
                                       dre@drelaw.org


**ALSO APPEARING:**
          ALEX LEVOFF, COURT-CERTIFIED RUSSIAN INTERPRETER
          VARVARA OLSON, COURT-CERTIFIED RUSSIAN INTERPRETER
          JAMES S. DAVIDSON, FBI SPECIAL AGENT
          LOUIS PEREZ, FBI SPECIAL AGENT
          SCARLET NERAD, MITIGATION SPECIALIST

**I N D E X**

PAGE

JURY INSTRUCTIONS HEARING                                    4

4

LOS ANGELES, CALIFORNIA; FRIDAY, MAY 18, 2007; 8:32 A.M.

-o0o-

(Out of the presence of the jury.)

THE CLERK:  Please come to order.  This Court is now in session.  The Honorable S. James Otero presiding.

THE COURT:  Okay.  The record should reflect that counsel are present.  The defendant is present with the interpreters.  The jury obviously is not today.

Mr. Buehler, do we need to --

MR. BUEHLER:  I'm satisfied with the procedure, your Honor.

THE COURT:  Okay.  We're just discussing -- there are two issues.

The first is an issue that was raised yesterday regarding rebuttal argument by the Government.  The -- the defense, as I've interpreted the comments made yesterday, have objected to the Government being allowed to place before the jury rebuttal argument on a penalty phase.  There was reference to a procedure in Judge Carter's court where Judge Carter did not allow the Government to pursue or put before the jury rebuttal argument in the penalty phase of a case that he was handling.

Inquiry was made yesterday of -- by a clerk in my office to a clerk in Judge Carter's chambers, and the

UNITED STATES DISTRICT COURT

information that we have received is that Judge Carter has -- has never made such an order.

That being said, the closing arguments in criminal cases are governed by Federal Rules of Criminal Procedure 29.1.  The Court has reviewed the Federal Rules of Criminal Procedure.

The Court has also reviewed certain case authority regarding argument, including *United States versus Guess*, G-u-e-s-s, 745 F.2d 1986.  It's a Ninth Circuit opinion; *United States versus Gray*, 876 F.2d 1411, again the Ninth Circuit; *United States versus Bryant*, 462 F.2d 433, an Eighth Circuit opinion; *United States versus Wables* or *Wables*, W-a-b-l-e-s, Fed -- 731 F.2d 440; and then *United States versus Sarmiento*.  The *Wables* case, or *Wables* case, is a Seventh Circuit opinion, and the *Sarmiento* at 744 F.2d, 755, is an Eleventh Circuit opinion.

They all stand for the proposition that the Court has broad discretion in controlling the scope of argument, including rebuttal argument.  The Court will exercise its discretion and allow the Government to place before the jury rebuttal argument, assuming that the argument placed before the jury during rebuttal is proper rebuttal argument.

In other words, the Government would be limited to issues raised by the defendants or the defendant in -- in his closing argument.

6

And that's the only limitation that will be placed on the Government.

So we have two and a half hours each side.  The -- the Government can reserve any amount of time for closing argument with the proviso or the order that whatever amount of time that is reserved for closing argument is limited to proper rebuttal.

In -- the next issue is the issue of jury instructions.  And what I've been doing is -- yesterday reviewing the Government's proposed jury instructions.  And I'm -- I want to make sure that I have the -- the most recent set.  And this is -- the Government's proposed jury instructions were for a reference date of May 15th of 2007, consisting of 52 pages and consisting of 29 instructions. The Court has reviewed those instructions.  The Court has also reviewed the instructions used by Judge Carter in capital cases that has -- that Judge Carter has presided over.

I'm inclined -- I have -- I have not made a fixed opinion on all of this because I still have to review the defendant's proposed instructions, but I'm inclined to -- to provide the instructions offered by the Government with modifications taken from Judge Carter's instructions.  I would -- I would -- I would suggest that the modifications are -- are minor.  Well, I shouldn't say "minor."  They're

certainly not extensive, but I think they're -- they're important modifications to be made to the Government's proposed instructions.  And I'll be able to discuss -- to discuss with counsel shortly the modifications that I would suggest be included.

And then once we accomplish that, we can look at the defendant's proposed instructions to see if there are additional instructions that should be included.

MR. EVANS:  Your Honor.

THE COURT:  That would be the procedural -- procedure I would suggest.

Yes.

MR. EVANS:  I don't know if the Court -- I believe that Mr. Cruz provided to you, there was some typographical errors on our Proposed Instruction Number 9 that was filed.  We submitted a replacement for that to the Court.

THE COURT:  Okay.  Yes.  That was given to us this morning.

So it'll -- I think it'll take about -- well, we -- did the Government offer the instruction on a -- on a disc?

MR. DUGDALE:  No, your Honor.  But I can get those.  I can get that on a disc.

THE COURT:  Well.

MR. DUGDALE:  There's a couple of things.  These were filed on May 2.nd so it was prior to the Court's rulings

earlier this week on the mitigation factors.  So none of those things have been revised.

THE COURT:  And I -- I recognize that.

MR. DUGDALE:  And I -- I will revise that, and I can get this to the Court on a disc.  I'll do those revisions and get it to the Court on a disc.

THE COURT:  Okay.

MR. EVANS:  Would the Court, at this time, like us to -- there are a couple of areas regarding factors which I've spoken to Ms. DeWitt and Mr. Dugdale about, which we believe were inappropriate or -- do you want us to address those now or in a few minutes when the Court comes back?

THE COURT:  Yeah.  Well, why don't we wait in a --

MR. EVANS:  Okay.

THE COURT:  Why don't we reconvene at -- how long will it take for you to modify your -- well --

MR. DUGDALE:  Oh, that's --

THE COURT:  Why don't we do this.  Why don't we reconvene at 9:00 o'clock, and at that time I think I will be able to -- I will be ready to place on the record the instructions that I would suggest that should be incorporated into the Government's proposed set of instructions, the modifications or additions coming from Judge Carter's set of instructions.

MR. DUGDALE:  That's fine, your Honor.  I can --

I can -- I can get that here by 9:00, I think.

THE COURT:  Okay.

MR. DUGDALE:  I hope.  Maybe.

THE COURT:  So we're -- we'll -- I'll just -- we'll be in recess again.

MR. EVANS:  Thank you.

THE CLERK:  Court's in recess.

(A break was taken from 8:41 to 9:31.)

THE COURT:  Okay.  We're back on the record on U.S. versus Krylov.  The defendant is present with counsel.

I have the new proposed jury instructions offered by the Government that were submitted about 9:00 o'clock this morning.  I'm -- I'm going to put those instructions to the side for the time being and work off the set that was offered, I believe -- I think on May 2nd.  I -- I'm -- because I've made notes on -- in reference to that set.  And then we can come back to the -- to the Government's proposed instructions.

First of all, in reference to the Government's proposed instructions, the -- we have to make clear -- the -- it appears that the Government's Proposed Instructions were -- were instructions that were adopted from the Mikhel Kadamovas trial.  And certain modifications have to be accomplished because of that.

For example, on Page 6 -- if we look at Page 6,

UNITED STATES DISTRICT COURT

Line 25, it references each defendant, and -- and we have to make sure that it -- the modification is -- is made to read "the defendant."

MR. DUGDALE:  Yes, your Honor.

Actually, the new set, when I went over there we noticed those problems with it, and we changed those --

THE COURT:  Okay.

MR. DUGDALE:  -- in the new set that we submitted. It happens at several junctures.

THE COURT:  Yes, it does.

Let me start with -- with Page 2 of the Government's proposed instructions.  On Line 22, it references nonstatutory aggravating factors.  I just want to make sure that the reference to nonstatutory aggravating factors is the proper reference.  I think it is.

Any -- any issue regarding modifications?

MR. DUGDALE:  No, your Honor.

THE COURT:  Okay.

MR. EVANS:  Your Honor, may I inquire?

Does -- as we go through this, do you want us to speak up as to -- as to the pagination or issues or do you want to go through it first?

THE COURT:  Let me go through it first, and then we'll come back to --

MR. EVANS:  Sure.

THE COURT:  -- to other issues.

On -- on Page 3, Line 5, the -- the instruction reads:  "The law provides that the defendant may be sentenced to death."

I think the point should be further emphasized with the inclusion that a sentence of death is never required, which is consistent with the instructions that the Court has given previously and the -- the inquiry that the Court conducted regarding the -- the selection of the jury, where that was emphasized over and over.  And I think it should be emphasized again.

In reference to Page 6, Lines 11 and 12, I -- I believe the point should be further emphasized that the Court has no discretion regarding the sentence that is imposed by the jury.  I want to make sure that the jury understands that whatever sentence is -- is returned, that this Court has no discretion to set that aside, which is different in -- in the state system.

The statute provides for the Court to sit as a 13th juror in the sentencing part of the case and then also make the independent findings, aggravating and mitigating.  And if the Court determines as the 13th juror that the mitigating factors outweigh aggravating factors, the Court has the discretion to set a death penalty verdict aside.

MR. DUGDALE:  Yes, your Honor.  In Instruction 21,

actually that point is again separately made.

THE COURT:  Okay.  And I -- I think it should be made again on -- in -- on -- in Instruction Number 2.  But I -- I agree.  I think that the point is being made throughout the instructions.  It just -- I just believe it should be further emphasized.

MR. DUGDALE:  So is there anything that the Court wants the Government to add here?  I mean, we're saying, all right.  The Court has the right to impose whichever sentence you choose.

THE COURT:  The -- the -- the Court has no discretion to set that sentence aside.

MR. DUGDALE:  Okay.  Thank you.

THE COURT:  Moving to Page 13, Instruction Number 8, regarding videotaped interviews, I think it would be good to insert the names of the persons whose videotaped interviews were played, which is --

MR. EVANS:  It's Adelia Dekhterenka, D-e-k-h-t-e-r-e-n-k-a.

MR. DUGDALE:  Yes.  The Government put that in the revised version.

THE COURT:  Okay.  And which is consistent with Instruction Number 9, where the -- where the names of the witnesses who have been deposed and those depositions played are to be inserted.

Has that been accomplished in the revised set?

MR. DUGDALE:  I merely inserted various witnesses, but I will put the names down.

THE COURT:  Okay.  The names should be identified --

MR. DUGDALE:  Yes.

THE COURT:  -- so that the jury is not confused between videotaped interviews and videotaped depositions.

MR. DUGDALE:  Yes.

THE COURT:  I'm moving to instruction -- this is Instruction Number 12 on Page 18.  And I'll start with -- with Page 17, Line 27.  It reads:  To prove something by a preponderance of the evidence is to prove that it is more likely true than not true.

I've taken language from Judge Carter's set of instructions.  And after the word "not" -- the words "not true," he's included the following:  To prove something by a preponderance of the -- of the evidence is a lesser standard of proof than proof beyond reasonable doubt.

So I think that should be included right after the words "not true," and then everything else would remain the same.

So it should read:  To prove something by a preponderance of the evidence is a lesser standard of proof than proof beyond a reasonable doubt.

MR. DUGDALE:  Okay.  Okay.  I have that.

THE COURT:  Then we move to -- we move to Instruction Number 15 on Page 22.  And I'll -- I'll start reading from Line 5, beginning with the word "the," the beginning of the sentence.  The instruction reads:  The Government must prove that the defendant deliberately committed the foregoing acts with a conscious desire that a person be killed or that lethal force be employed against a person.

I would suggest that it would be modified as follows:  The Government must prove that the defendant deliberately committed the foregoing acts with a conscious desire that a person be killed or that lethal force be employed against the person, which then resulted in that person's death.

I think that is probably required by the law, which then resulted in that person's death.

MR. DUGDALE:  Okay.

THE COURT:  I -- moving to -- to -- down to -- on the same page, Line 17, where the Government says:  In this case, by engaging the hostage taking of Alexander Umansky, Nick Kharabadze, George Safiev, knowing they would be killed after they were taken hostage by the defendant and his co-conspirators.

I interpret that as being argument of counsel.

I think that the sentence should end after the word "act" --

MR. DUGDALE:  Act.

THE COURT:  -- and everything else should be excluded as argument of counsel.

MR. DUGDALE:  I actually -- we -- I struck that at the 9:00 o'clock version, as well.

THE COURT:  Okay.  Great.

MR. EVANS:  So it ends at the -- ends at Line 16, your Honor?

THE COURT:  Yes.  It ends with the word as a direct result of the act.  Lines -- everything after -- from Line 17 through 20 is -- is struck.

Down to the -- on that same page, 22, regarding that a person intends the natural and probable consequences of acts knowingly done or comm- -- or knowingly omitted, I've taken language from Judge Carter's proposed instructions, and I would suggest that the -- the last paragraph be omitted and that the following be inserted.

And it reads:  You may infer from the defendant's conduct that he intended to engage in conduct intending that a person be killed or that lethal force be employed to a person if you find:

One, that the defendant was a person of sound mind and discretion;

Two, that creating a grave risk of death to a

person other than one of the participants in the offenses was an ordinary, natural, and probable consequence of the defendant's acts; and

Three, that the defendant committed these acts knowingly and voluntarily.  But once again, you are never required to make such an inference.

So I can provide --

MR. DUGDALE:  Your Honor, I believe I have that. Was that from *Mills/Bingham* Instruction Number 8?

THE COURT:  Yes.  That's a -- this comes from the -- Mills Instruction Number 9.  *Bingham/Mills* Instruction Number 9.  I'm looking at Page 23 of Judge -- of Judge Carter's instructions on Line 16 of Page 23.

MR. DUGDALE:  I have that, your Honor.

So the entire paragraph from Line 16 to the end then?

THE COURT:  The entire paragraph from Line 16 through 24.

MR. DUGDALE:  Okay.  We will insert that -- or replace that.

THE COURT:  Then we go to Page 30, after Line 24.

MS. DeWITT:  Page 30?

THE COURT:  And I'm reading from the *Bingham/Mills* set of instructions, Instruction 18, and I'm reading from Page 38 of Judge Carter's instructions.  And the following

should be added after -- after Line 24, ending with the words "and his coworkers."

I would propose adding the following:  The aggravating factors that I have listed for you may be considered by you if they are applicable and if you unanimously find they have been established beyond a reasonable doubt in determining the penalty you will impose in this case.  These aggravating factors that I have listed are the only ones that you may consider to be aggravating factors.  You cannot take into account any other factors or circumstances except the circumstances of the capital offenses as a basis for imposing the death penalty.

Again, that makes it, I think, absolutely clear that they can't go beyond the Government's aggravating factors.  So I would propose adding that.

We go to Page 32, Instruction Number 18.

MR. EVANS:  What line, your Honor?

THE COURT:  Page 32, Instruction Number 18, the first paragraph, it starts:  Before you may consider appropriate punishment.  I would replace the first paragraph with Judge Carter's Instruction Number 19, Page 39 of the *Bingham/Mills* Instructions.  The -- the instruction would read if -- if -- if we agree that it should be modified, which -- it should read as follows:  Before you may consider the appropriate punishment you must consider whether the

defendants -- in this case defendant has established the existence of any mitigating factors.  Again, a mitigating factor is a fact about the defendant's background, record, or character, or about the circumstances surrounding the commission of the offenses described in -- and then we have to modify it to the counts that are applicable in this case, that would tend to mitigate against imposition of a sentence of death.

And then I would eliminate Lines 10 through 12 of Judge Carter's proposed instructions, not necessary in this case, and then end it with the following:  A mitigating factor is a fact about the crimes or the defendants or the defendant, which in fairness or sympathy may be considered or which in your opinion justifies a sentence other than death, although it does not justify or excuse the crime of which the defendant has been convicted.

MR. EVANS:  Your Honor, we would request specifically that the Court include Lines 10 through 12. I've made a note of that anyway.  My concern is that all the studies I've seen of jurors being interviewed over what mitigating and aggravating -- I think we have a bright jury, but I -- any interviews I've seen conducted of jurors following a capital case is profound confusion over what mitigating and aggravating means, and often they refer and believe that mitigating refers to an excuse.

19

I -- I think that that language is very important.

THE COURT:  I -- I'm not -- I don't have any strong feelings.  So we can include it.

MR. EVANS:  Thank you.

THE COURT:  Then we move to Page 39 of the Government's proposed set of instructions.  At the end of Page 39, which is -- which -- which is the 40th -- in the set I'm working from, the 40th mitigating factor offered by the defendant, I would add from Judge Carter's set of instructions -- and I'm reading from Page 42 of Instruction Number 19 of his instructions and from Lines 19 through 26 of his set -- the following language should be added:  You are permitted to consider anything else about the commission of the crimes charged in the -- in counts and -- then we have to name the counts -- or about the defendant's background, record, or character that would mitigate against the imposition of a death penalty.

If there are any such mitigating factors, whether or not specifically alleged or argued by defense counsel, which are established by a preponderance of the evidence, you are free to consider them in your deliberations.

The important point here is if the -- if defense counsel fails to argue a mitigating fact or circumstance, for whatever reason, and the jury infers -- can infer properly a mitigating circumstance from all of the evidence, they're

still entitled to consider it.  And I think that's an important principle that needs to be emphasized for the jury.

I'm -- I'm moving to Page 40.  And in this -- this -- this would apply to all the instructions.  On Page 40, Line 27, the -- it reads:  In other words, you should not simply count the number of aggravating and mitigating factors.

Now, in the -- in the State of California there's -- there's efforts by the judicial council to -- to avoid the use of the word "should" because it is ambiguous. Should sometimes implies may.  Should sometimes implies must. And the State of California Judicial Council has taken the position that if a court or if a jury must do something, the word "must" should be used instead of should.  If someone has discretion, then the word "may" should be used.  And they've attempted or are trying to attempt to eliminate the word "should."

And if you look at various statutes, sometimes the word "should" is interpreted as a command; there's no discretion, and sometimes it's interpreted as -- as a suggestion with the body using discretion.

So, the point being, the word -- in other words, you must not as opposed to should not.  And that change should be made throughout the instructions if there's no discretion.

And that would be the -- the -- the end of the Court's suggestions. So let's first -- let's first discuss the -- the proposed Government's instructions and then the modifications.

Mr. Evans, I'm assuming there's no objections to the modifications that have been placed on the record this morning.

MR. EVANS: None.

THE COURT: Okay. No objections.

And you would -- you would -- I also assume that you would request that those modifications be accomplished.

MR. EVANS: Yes.

THE COURT: Okay. Now, in reference to the Government's, are there any objections to the Government's -- from the Government regarding the proposed modifications referenced this morning?

MR. DUGDALE: No, your Honor. They'll be -- they will be made.

THE COURT: Okay. And then let's -- are there any instructions that have been offered by the Government before we get to the defendant's instructions that, Mr. Evans, you would object to?

MR. EVANS: Some objections, some proposals as well, your Honor.

THE COURT: Okay. Then let's --

MR. EVANS:  Going -- referring to the Government's Proposed instruction's -- and I, too, am looking at the older set because that's the one I marked up.

THE COURT:  Okay.

MR. EVANS:  On Page 1 and through several pages throughout, we would stipulate the defendant is 18 years old, and there would be -- there's no need for a finding by the jury as to that.

THE COURT:  Okay.  So that's -- I think that's -- we can take judicial notice almost.

MR. EVANS:  But in any event we --

THE COURT:  Stipulate so that?

MR. EVANS:  That can be removed.

THE COURT:  Removed.

And the Government agrees?

MR. DUGDALE:  What I will do is insert that it's been stipulated.  I think they should still make a finding, even though it's been stipulated to.

THE COURT:  Well, in Carter's instructions the parties have -- they entered into a stipulation, and it was incorporated into the instructions.  So I think if --

MR. DUGDALE:  I understand.

But in their -- I believe in their special verdict form they still had to make a finding.  Even -- even if parties stipulates to things, juries can always --

THE COURT: -- find otherwise?

MR. DUGDALE: They can always find another way.

MR EVANS: We would stip- --

MR. DUGDALE: I don't think they will.

MR EVANS: We would stipulate that it's been found.

THE COURT: Well, I -- I don't know if this is important.

MR. DUGDALE: It's not important. But, I mean, still, just to make sure that there's no issue, I think the jury needs to make this finding even if we stipulate to it.

THE COURT: Okay.

MR. DUGDALE: It is a threshold factor. I'm not -- I'm pretty confident we're going to win that one, much more than anything else.

THE COURT: Okay. And so there's a proposed stipulation by counsel that the -- the jury will be required to make the finding on a special verdict form, but the instructions should reference that there's a stipulation that the defendant is -- is older than 18.

Mr. Krylov, just to get your consent here, as previously mentioned, a stipulation is -- is an agreement between counsel that a fact has been established. You don't -- you do not have to stipulate. The Government could be held to the burden of proof beyond a reasonable doubt that you're over 18. I think it's pretty obvious that you are

over 18.

You'll agree to the stipulation?

THE DEFENDANT:  Yes.

THE COURT:  Okay.

MR. EVANS:  Um --

THE COURT:  And -- but the jury will be required to still make the finding on the special verdict form.  They'll have to check it off.

Okay.  Go ahead.

MR. EVANS:  Going to Page 7, Lines 19 and 20, "In short, the law does not assume that every defendant found guilty of committing murder shall be sentenced to death." Since defendant is not charged with murder in this case, I believe it should read that "every defendant found guilty of the crimes for which defendant has been convicted should be sentenced to death."

THE COURT:  Well, I think we probably have to -- have to distinguish between the money laundering count.

MR. EVANS:  For all capital crimes for which the defendant has been convicted.

THE COURT:  I think -- yeah, that's -- I think that's an important change.  So it will be -- it will read, "In short, the law does not assume that every defendant found guilty of capital crimes should be sentenced to death."

Is that --

MR. EVANS:  The capital crimes for which the defendant has been convicted.

THE COURT:  That will be --

MR. EVANS:  On the Government's Proposed Instruction Number 8, I believe the Government said they'd already made that change to include the name of Adelia Dekhterenka.

THE COURT:  I'm sorry.  Which?

MR. EVANS:  On Page 13, Government's Proposed Instruction Number 8.

THE COURT:  Yes.

MR. EVANS:  I believe the Government's -- I haven't looked at the modification yet.

As to the next instruction, Number 9 on Page 14, that's the deposition testimony.  The Court had suggested the other day, and I would ask that it be incorporated into the instruction, the statement we will provide the names of those witness.  They were Olga --

THE COURT:  We need to insert the names.

MR. EVANS:  We'll insert the names.

But the Court had suggested saying -- and I think it's appropriate that those witnesses had, in fact, flown from Odessa and waited here to testify for more than ten days.  When the case was continued, they -- their deposition testimony was taken.

THE COURT:  And I think that's an -- that's an important point.  In one capital case I -- I tried, the mother of the defendant would not attend the trial to testify on her son's behalf in the penalty phase to ask the jury to literally spare his life, and that was never mentioned in the course of the trial.  But I was -- I've -- I was concerned, in this case, that the jury could infer that the parents of Mr. Krylov simply chose not to be here.  They had the discretion to choose otherwise, and they chose not to be here, and they wanted to present their testimony by video deposition.

I think it should be made clear that they were here, and they couldn't testify for whatever reasons and so their testimony was offered by videotaped deposition.  If someone's parents did not show up to testify in the penalty phase, it says a lot about the character of a defendant.  I don't want that to be -- the jury to be confused here.

It may say a lot about the character of the defendant.

So, yes.  I agree that should be changed.  Why don't you give the language to -- to Mr. Dugdale and --

MR. EVANS:  I will.  I will provide him with some language along those lines.

THE COURT:  Okay.

MR. EVANS:  Again on Page 17, Proposed Instruction

Number 12 -- I'm sorry.

THE COURT:  Page 18?

MR. EVANS:  17, your Honor.

THE COURT:  17.

MR. EVANS:  This is the 18-year-old issue.

THE COURT:  Okay.  Page -- the 18 --

MR. EVANS:  We can probably just do it -- it's probably just easier to do a search of that, but I think I caught those.

THE COURT:  Okay.  The reference to 18 years old will be eliminated, and again with a stipulation that the -- that the defendant is -- was at least 18.

And I -- Mr. Buehler, you agree with the stipulation?  Yes?

MR. BUEHLER:  That Mr. Krylov is 18?

THE COURT:  Yes.

MR. BUEHLER:  Yes, your Honor.

THE COURT:  Okay.

MS. DeWITT:  And he's 29.

MR. EVANS:  And I'm 39.

I'm looking at Page 21, Government's Proposed 15.  Again, it -- it talks about the crime of murder, findings as to the murder of a particular victim.

THE COURT:  What line are you on?

MR. EVANS:  Seven and eight.  I'm sorry, Page 21.

This is the first set.

THE COURT:  Well --

MR. EVANS:  I'm not sure.

THE COURT:  Should it read, "Hostage taking, resulting in death"?

MR. EVANS:  I believe so.

MR. DUGDALE:  Well, we've got to help the defendant out here.  I mean, that's -- we've got to prove something beyond resulting in death in order to get to this point.  We have to prove the killing of the victim and that the defendant played some role in the intentional killing of the victim.  So if we put that, we're putting a lesser standard on the Government --

THE COURT:  Yeah.

MR. DUGDALE:  -- than is required.

THE COURT:  I agree.

MR. EVANS:  Okay.

THE COURT:  We can change -- we can change "murder" --

MR. DUGDALE:  Killing.

THE COURT:  -- to killing.  It's up to -- it's up to, I think, the defendants to make that call.

Do you prefer murder or do you --

MR. EVANS:  Murder is fine, your Honor.  I just caught the language for that.  I was thinking of the earlier

request.  I think this is appropriate.

THE COURT:  I think probably murder is --

MR. EVANS:  It carries more gravamen.

THE COURT:  Yes, it does.  So we should keep killing -- I mean murder.

Go ahead.

MR. EVANS:  This is going to the Government's proposed aggravating factors listed in Instruction Number 16.

THE COURT:  What page?

MR. EVANS:  On Page 26.  Initially, the multiple killings.  We have trouble with the phrase "in a single episode" as it applies to this case.  There is no federal case law that I've been able to find, at least, that addresses "single episode" in the -- there -- it does show up in the sentencing guidelines as -- under 924C.  And "single episode" means something close in proximity of time.  It would -- I would suspect it would apply and could be found to apply, if they wished, as to the Kharabadze and Safiev homicides, but certainly not -- could not be expanded to include Mr. Umansky.

THE COURT:  So you're proposing that the -- the -- that -- that the -- that the words "in a single criminal episode" be eliminated?

MR. EVANS:  Or deleting -- just delete "Alexander Umansky" from there.

MR. DUGDALE:  Your Honor, I think that's up to the jury.  I mean, this wasn't a death penalty notice that was filed in 2004.  It would have been nice to get some briefing on this prior to the workday before the argument in this case.  I mean, this has been our allegation the entire time. This was the instruction that was given in Mikhel and Kadamovas.  This definition of a single criminal episode comes right from the Eighth Circuit model jury instructions and what that means, and it's up to the jury to determine whether, in fact, these things happened within a single criminal episode or not, based upon that definition.

MR. EVANS:  The definition as provided is so expansive, your Honor, that it could have included everything.  We do not think it's appropriate.

THE COURT:  Okay.  We'll mark this down as one that we have to come back to revisit.

MR. EVANS:  Going --

THE COURT:  In reference to the instruction, you're concerned -- as I understand your argument of claim, is that the -- the single criminal episode should not include the -- the killing of Mr. Umansky.

MR. EVANS:  Yes.

THE COURT:  And the reason being?

MR. EVANS:  It's not -- it's not in any proximate time frame.

THE COURT:  Proximate to what?

MR. EVANS:  The killing of Safiev and -- the three -- there are three homicides described in this multiple murders occurring -- what's the language?  Multiple killings in a single episode.  Two of those, I think, are probably applicable because they happened at about the same time. Mr. Umansky's homicide occurred more than a month before, if I recall correctly.

THE COURT:  Okay.  We -- we'll come back to that. We'll take a look at the case law.

MR. EVANS:  On Page 28 on Government's Proposed Instruction Number 17, there's reference to a continuing pattern of violence, including at least the crimes alleged against him in the second superseding indictment.  I -- they may well have modified this to the crimes to which defendant has been convicted, which would correct that, but there -- he's obviously been acquitted of some and if found not -- not guilty is the wrong phrase but beyond -- as to Rita Pekler, which was included in the conspiracy count as to him.

MR. DUGDALE:  I could do such a modification, I guess.  I mean, the one crime he was acquitted of was the escape.  I -- I think it would be wrong to necessarily conclude that this jury didn't think he was involved in the hostage taking of Ms. Pekler.  What they concluded was that he was not -- that her death was not reasonably foreseeable.

But -- so I don't know if you can make that argument.  But I can -- I can modify this in a way to make it clear that he's only going to be -- they can only consider things that he's found -- that they found him liable for.

THE COURT:  Is it -- does that --

MR. EVANS:  For which he's been convicted and found liable for.

THE COURT:  Does that suffice?

MR. DUGDALE:  Yes.

THE COURT:  Okay.

MR. EVANS:  I think it does.

THE COURT:  Okay.  Well, let's see what the final language is.

MR. EVANS:  Your Honor.

THE COURT:  Wait.  Let me just write this down.

Okay.

MR. EVANS:  Your Honor, then turning to Page 29, defendant's participation in other uncharged serious acts of violence, Paragraph 7 -- this refers to Armen Gyurdzhiyants, who, as the Court will recall, the Government called and reserved the Fifth Amendment and did not testify.  I don't believe there's sufficient evidence to sustain this in the record.

MR. DUGDALE:  Your Honor, there was prior litigation in front of Judge Tevrizian in this issue.  We had

alleged as to the three capital defendants various uncharged crimes that we could then prove in the penalty phase or at some other point in time.  This was the one that stuck -- was the Armen Gyurdzhiyants abduction.

And there has been testimony on this, not from Mr. Gyurdzhiyants, because he did indicate that he would take Fifth Amendment, but testimony from Mr. Altmanis about this hostage taking; the testimony from the defendant himself as far as his involvement in the hostage taking.

And Natalya Solovyeva as well, including the playing of the videotape that was made of Mr. Gyurdzhiyants prior to his release in which he discussed why he had approached the people that he had approached.

So there is evidence to show, first of all, that Mr. Gyurdzhiyants was taken hostage; and, second, that the defendant participated in.  And if the Court will recall on cross, he admitted that he was a guard for this conduct.  So there was no need to present additional evidence for this in the penalty phase.  He -- there -- the evidence has already been provided to the -- the jury on this issue.

MR. EVANS:  Your Honor, I would submit to the Court that there's insufficient evidence presented to -- to the trier of fact that serious acts of violence were conducted by defendant, that he threatened to kill, injure, or continue to detain that person, et cetera.  We would submit on that.

MR. DUGDALE:  He admitted to guarding him, your Honor; so he obviously continued to detain him.  So that's -- that's just not an argument.

THE COURT:  I -- I -- I agree.  The objection would be overruled.

MR. EVANS:  Okay.  Your Honor, on that same page, at the bottom of the page, beginning at Line 27:  "Witness elimination.  Defendant Krylov participating in crimes leading to the murders of the victims of his crimes, including Mr. Umansky, Mr. Kharabadze, and Mr. Safiev in order to eliminate these victims as possible witnesses to his crimes."

My problem with this is the language of this.  I've discussed it with the Government.  They disagree with me.  I recall the Court's attention to *United States versus Sampson,* 335 F.Supp.2d 166.

THE COURT:  What circuit?

MR. EVANS:  I'm sorry?

THE COURT:  What circuit?

MR. EVANS:  I'm sorry.  It's a district court case from the first --

THE COURT:  Federal Supp.

MR. EVANS:  Federal District Court from Massachusetts.  It was the federal death penalty case involving carjacking.  It was the first -- received a lot of

notoriety because it was a non death penalty state where they brought the federal prosecution.

Beginning at Headnote 27, et seq., it goes into discussion of the requirements for a witness elimination. We believe that before this can be put before the jury that there must be some language specifying that that was the specific intent of the defendant, not simply there's participation in the act that led to his elimination.

In any murder, in any homicide, a witness is silent. The -- to distinguish this crime from all other homicides or murders, there must be something more distinctive about it. And -- and the Court in *Sampson*, I think, gives a good analysis and suggests that killing a person for the sole or dominant purpose of preventing him from reporting another crime to the authorities is the kind of language that's required. I don't think that the language here is specific enough as to the defendant's required intent.

THE COURT: And Mr. Dugdale, I -- I guess the victims can be killed for a number of reasons, including eliminating them as possible witnesses to the -- to the crimes. There are murders and killings where victims are killed simply because the person enjoys killing.

MR. DUGDALE: Correct, your Honor.

And -- and I -- that's what *Sampson* is talking

about and, you know, if I were to go over and kill Mr. Evans right now -- of course I would never do such a thing, but it would obviously not be for a witness elimination because he would not be a witness to his own killing.  But there would be a federal judge who would watch it, probably a pretty compelling witness.

I'd be in -- I mean, there's some problems here. But in this particular case, I think it's up to the jury to determine whether that was the motivation here, and I think it's clear from the evidence that that was the motivation to kill all of these witnesses.

The one witness they let live, the Court will remember, the one victim was Armen Gyurdzhiyants, who they didn't have any fear of going to the police because they videotaped him saying that he was there to try and hire somebody to kill a police officer.  Every other witness was killed.

In fact, according to the defendant's own story, he claims Ms. Pekler was killed because she recognized Mr. Altmanas and therefore she could be a witness against -- she would be able to identify people in the group and could be a witness against those people.

So it's clear that the only reason or the primary reason why Umansky, Safiev, and Kharabadze were killed was because they would be witnesses who could report their

abduction, and they needed to be eliminated as such and that's why they were killed here. And I think it's up to the jury to determine whether that, in fact, is the case. There's a finding in the Mikhel and Kadamovas case in which the jury unanimously found.

THE COURT: Yeah. And I'm not sure if Mr. Evans disagrees with -- with most of your statements. I think what he's saying is that the -- the jury should be required to -- to further find that the defendant had an intent to kill in order to eliminate the persons as victims as opposed to another -- the jury could find that they just enjoyed killing. I don't know.

MR. DUGDALE: I -- I think that's what --

THE COURT: I'm not sure that -- that --

MR. DUGDALE: I -- I think that's what we're asking the jury to find here, though. I think what we're asking is to make a finding that that was the reason, witness elimination -- participating in the crimes in order to eliminate these victims as possible witnesses. That's what --

THE COURT: Well, if we add some additional language as to specific intent or an intent on the part of Mr. Krylov to -- to eliminate the victims because they were potential witnesses, how does that prejudice the Government?

MR. DUGDALE: It probably doesn't. I -- I just

would like to see the language.

THE COURT:  Okay.

MR. DUGDALE:  I mean, again, it's from death penalty notice that was filed several years ago, but I guess we can get that today.

THE COURT:  Yes.

Mr. Evans, I'm inclined to include some language in there that would require the jury to make the specific finding.

MR. EVANS:  Thank you, your Honor.

Your Honor, as to Government's proposed instruction number --

THE COURT:  Well, back -- back to witness elimination, Defendant Krylov.

MR. EVANS:  Sure.

What page was that, your Honor?  I'm sorry.

THE COURT:  29.  Page 29.

Defendant Krylov participated in crimes leading to the murders of the victims of his crimes in order to eliminate these victims as possible witnesses of his crimes.

I think one can infer from the evidence that the persons who made the determination as to who would be killed or not is not Mr. Krylov.  The persons who made the determination as to who would be killed or not were Mr. Mikhel and Mr. Kadamovas; and, therefore, one could

conclude that Mr. Krylov did not participate in the murders to eliminate these persons as victims -- as witnesses to the crimes but participated in the murders simply because that was the order of Mr. Mikhel and Mr. Kadamovas.

So I think -- I think all the more reason why we need to have the jury find or make a finding or at least have an instruction that Mr. Krylov intended the -- or participated in the murders in order to eliminate these persons as witnesses.

MR. DUGDALE:  I have no problem with that, your Honor.

THE COURT:  Okay.

MR. EVANS:  Your Honor, as to Government's Proposed Instruction 18, we would request that the Court instruct that -- now I'm -- I'm looking at a different set of instructions from Judge Carter.  I didn't have the *Mills* set. I only had the *Bridgewater Heerston* set of instructions. It's Instruction Number 20.  I think it was 19 on the *Mills* set, but I could be mistaken.  They were one number off on a number, but I didn't have that in front of me when I was preparing these.

May I show this to the Court or is it --

THE COURT:  Well, let me -- why don't you read from it.

MR. EVANS:  I'm going to read the opening

paragraph.  It's either 19 --

THE COURT:  What -- what are you proposing?

MR. EVANS:  Well --

THE COURT:  We're -- we're going to eliminate the first --

MR. EVANS:  That's just a substitution -- it's -- both of these are with -- establishment of mitigating factors.

THE COURT:  Yes.

And we've agreed that the first paragraph of Government's proposed instructions should be eliminated.  And we're going to add Instruction 19 from the *Bingham* set of instructions.

MR. EVANS:  Oh.  Okay.  Was this -- was this the one we were talking about?

THE COURT:  Yes.

MR. EVANS:  Oh, I apologize.  I didn't make a note on this one.  Okay.  That solves it.

THE COURT:  So we're going -- we're going to add Instruction Number 19 from the *Bingham* Instructions prepared by Judge Carter.  I think that solves --

MR. EVANS:  That addresses it.  I didn't make a note when we were talking about it.  I did on a separate pad.  I apologize.

As to Government's Proposed Instruction

Number 20 --

THE COURT:  What page --

MR. EVANS:  This is the one where the Court changed the "shoulds" to "must" on Page 40.

THE COURT:  Okay.  Let me get there.

Yes.

MR. EVANS:  I was concerned with the language on Lines 17 through 20, "engaging in this weighing process you must avoid any influence of passion, prejudice, or undue sympathy."

We would ask the Court provide that excerpt from Instruction Number 22, which talks about how, though, in the guilt phase the Court -- the jury's instructed to disregard sympathy.  It may regard sympathy in exercising its function in the penalty phase.

The language of undue sympathy is inherently confusing and that there is a distinction between the function of the jury in these two phases.  And that's in the *Mills* Instruction that -- Number 22 that I referred to.  I think it's on the second page, in the middle.

THE COURT:  Okay.  So you want to -- I think you -- you raised an important point.  You want to eliminate in engaging in this weighing process you must avoid any -- we can just change it to any -- any prejudice and eliminate everything else, or --

MR. EVANS:  Influence of passion or prejudice.

THE COURT:  Yes.

And then eliminate -- eliminate undue sympathy.

MR. EVANS:  Yes.  And then the Court should -- we would request the instruction -- I believe it's included on my list, but it's found on -- in *Mills* on Page 45, Instruction -- proposed -- I'm sorry.  *Bridgewater*.  I'm looking at the *Bridgewater* instruction.  The language is the same for *Mills*.

THE COURT:  How does it read?

MR. EVANS:  Passion and prejudice have no role in your efforts to reach a just result in this case.  Although you were instructed during the guilt phase of this trial that you must decide -- set aside any sympathy for the defendant in determining his guilt or innocence, this rule does not apply to this penalty phase of the trial.

You may consider any sympathetic aspect of the defendant's character or record the defendant offers as a basis for a sentence of life imprisonment without possibility of release.

THE COURT:  Yeah.  I -- I -- I think that should be included.  So let's modify ins- -- 40 to include the passage from Judge Carter.

MR. DUGDALE:  I'm sorry.  I thought that was already added.  But --

MR. EVANS:  Where?

MR. DUGDALE:  Somewhere earlier.

MR. EVANS:  Did I miss it?

THE COURT:  Well, I -- it -- even if it was added previously, I think this instruction needs to be at least modified to -- to remove undue sympathy.  And I -- I also think that it doesn't hurt to reemphasize the point made in Judge Carter's set of instructions that the jury can return a verdict of life based on sympathy.

So, I'll -- I'll just leave that up to Mr. Evans and Mr. Dugdale to make the modification.  Just incorporate the language out of Judge Carter's set.

MR. EVANS:  And then finally, your Honor, on -- as to Government's Proposed 21 on Page 43, we would ask that the Court insert Defendant's Proposed Number 13 in its stead -- that -- the Defendant's Proposed 13 in its stead.  It's found on Page 41 of Defendant's Proposed Instructions.

THE COURT:  Do you have -- are you proposing defendant's proposed instruction number --

MR. EVANS:  13.  It's on Page 41 of our set.

MS. DeWITT:  I'm sorry.  What page was it on?

MR. EVANS:  41.

THE COURT:  40- -- you're on 21, aren't you?

MR. EVANS:  No.  I'm on Page 41 of the defendant's Proposed instructions.

THE COURT:  Okay.  41 of the defendant's proposed.  That's Number 13?

MR. EVANS:  Yes.

MR. DUGDALE:  Your Honor, we actually have an issue with some of the language in this, 13.  It's -- it's really the -- Lines 7 through 10, which reads:  If after engaging in the balancing process I have described to you all twelve members of the jury do not unanimously find, beyond a reasonable doubt, that the defendant should be sentenced to death, then you may not impose the death penalty.

The problem with that is that there's -- there are certain facts that the jury has to find beyond a reasonable doubt in order to impose the death penalty.  But the actual balancing test itself is not subject to a beyond a reasonable doubt standard because while you can find facts beyond a reasonable doubt, you can't really balance things beyond a reasonable doubt.  It's illogical.  It doesn't make any sense.

The test is whether the aggravating factors sufficiently outweigh the mitigating factors in order to justify the imposition of the death penalty.  So by incorporating this reasonable doubt language here, it is misleading.

With that exception, I have no problem with the third paragraph here.  The first paragraph also contains that

same problem I just referenced.  The fourth paragraph appears okay as well.

MR. EVANS:  Your Honor, we don't believe it's misleading at all.  They're talking about the balancing process after they've gone through the prior stages.  If -- if they -- having gone through that, they're balancing it and it's not a unanimous verdict, then they can't impose a verdict of death.

It then instructs them to proceed to -- showing respect for each other to continue discussion.  I mean, I think that's an accurate statement of the law.

THE COURT:  This is from the Sands --

MR. EVANS:  Yes.  It's -- it comes from Sands 9A20.

MR. DUGDALE:  Well, again, I don't think that's right.  If you look at the language of the instruction, it's talking about beyond a reasonable doubt in the balancing process in the same sense.  I think it's going to be confusing.  And I think it's not an accurate statement of the law.

This -- this instruction -- by the way, this instruction, including -- and also the one that's included here by the Government is subject to some debate as well. There's a case called *Jones versus the United States*, a Supreme Court case where the Supreme Court recognized that this unanimity instruction is not constitutionally required

because it undermines the idea that the Courts are supposed to encourage juries to come to a verdict by telling them ahead of time if you don't come to a verdict, this is what's going to happen.  That undermines that process.

So given this instruction is not constitutionally required to begin with, but if it's going to be given, we would recommend the one that mirrors what Judge Carter gave in what was given in the companion case of this case.

MR. EVANS:  What page was that?

THE COURT:  Which -- which -- which number is Judge Carter's?

MR. DUGDALE:  Give me a moment, your Honor.

I'm not sure if this was given at all, frankly, because of the -- the reasons I gave with the *Jones* case. But I -- I could be wrong about that.

Actually, it's on -- I'm looking at Page 46, Instruction Number 23.

MR. EVANS:  Are you looking at *Mills*?

MR. DUGDALE:  No.  I'm looking at *Bridgewater*.

MR. EVANS:  Okay.  Page 46.

THE COURT:  How does it read?

MR. DUGDALE:  I'm sorry.  I have to go back.

It says:  After consideration of the aggravating and mitigating factors, you must unanimously determine whether each defendant should be sentenced to death or to

life imprisonment without the possibility of release.

If you cannot unanimously determine that a sentence of death is justified as to a particular count for defendant, then the Court will impose the sentence of life imprisonment without the possibility of release for the particular defendant.

You are never required to impose a sentence of death. You should indicate your determinations in Section 6 of the special verdict form.

MR. EVANS: That's fine.

That's -- that say the same thing. And if that eliminates the problem they had with that, I don't -- I don't -- I didn't -- I don't see the problem that they're describing, but that's sufficient for us.

THE COURT: Mr. Dugdale, are you -- do you agree with the modification to include -- to eliminate Government's Proposed Instruction Number 21? I -- and I think 21 is a fair statement of the law, but can you -- can you -- live with Judge Carter's instruction?

MR. DUGDALE: I'll struggle with that. But I'll -- I can live with that.

THE COURT: Okay. Then we'll --

MR. DUGDALE: I would -- for the benefit of the defendant, too, I don't think that Judge Carter included the fact that there's no parole in the federal system. I think

we probably should include that as well.

THE COURT:  Yeah.  I think we need to emphasize that.

Jurors or -- or lay people are of the -- have the impression that people are released.

MR. EVANS:  I haven't seen a television show that doesn't say that in the last 20 years.

Your Honor, that's all we have at this point with regard to the Government's proposed instructions.

THE COURT:  Okay.  Let's -- then let -- let me have -- let's have the Government make the modifications and offer a third set.

MR. DUGDALE:  Yes, your Honor.

THE COURT:  How long will it take you?

MR. DUGDALE:  I would -- there's -- there's some typing involved.  If I could have an hour.

THE COURT:  Okay.  Let's --

MR. DUGDALE:  An hour and 15 minutes.

MR. EVANS:  For -- and then I have -- I have not yet -- I just received it yesterday afternoon, reviewed the special verdict form, and I can do that while they're doing that --

THE COURT:  Okay.

MR. EVANS:  -- to see if we have issues.

MR. DUGDALE:  And, your Honor, there's one issue

that I forgot concerning one mitigating factor raised by the defense.  And, boy, I don't know if this is going to make or break anything, but I -- I'm still going to raise it anyway.

There -- there is a mitigating factor that they offer concerning defendant's drug abuse.  It's Mitigating Factor Number 29 for instruction.

THE COURT:  What page?

MR. DUGDALE:  I'm looking at -- it's Instruction Number 19.

MR. EVANS:  In ours, or yours?

MR. DUGDALE:  In ours -- instruction.

THE COURT:  What page?

MR. DUGDALE:  I -- it's on Page 36 of what I'm looking at --

THE COURT:  Okay.

MR. DUGDALE:  -- but it's probably not -- I'm looking at the newer version, your Honor.

THE COURT:  Well, I'll look at the new version.

MR. DUGDALE:  Okay.

THE COURT:  Okay.  What number?

MR. DUGDALE:  It's 29.

And it simply reads:  At the time of his arrest, Defendant Krylov had no record of drug abuse.  It -- there just has been no testimony concerning the defendant's use of drugs or nonuse of drugs or anything related to that

subject.

Had such testimony been introduced, the Government would have introduced the fact that there were drugs, in fact, found at the defendant's residence at the time of his arrest and there was narcotics paraphernalia found there as well.  So I don't think there's any evidence to support this particular mitigating factor, and it is the defendant's burden to prove it.  So -- and since they didn't present any evidence, we didn't present any rebuttal.

THE COURT:  Well, maybe we can just change it by -- by saying that at the time of his arrest, the defendant had no criminal conviction for drug abuse or drug use.

MR. EVANS:  That's fine with me.

MR. DUGDALE:  That's fine.  It seems repetitive with Number 27, which says he didn't have any prior criminal record, but that's fine.

THE COURT:  Okay.

MR. EVANS:  Your Honor, there is one thing that I did not mention.  This comes in the modified proposed number -- Instruction Number 9, which I submitted this morning.  I don't --

Did Mr. Dugdale see that?  I gave it to Ms. DeWitt. I don't know.

MS. DeWITT:  I -- I didn't vote on it.

You modified Number 9.

MR. EVANS:  Yes.

MS. DeWITT:  Where did -- how did you modify it? How did you modify it?

MR. EVANS:  I inserted some language from the Statute 3593.  Beginning on Page 26 -- beginning on the bottom of Page 25, Line 26 through -- 26, I include -- I made a distinction between statutory and nonstatutory mitigating factors to parallel the statutory and aggravating factors that appear for the Government.  And I highlighted those statutory factors that are defined in the statute, and then I listed the nonstatutory ones that we've submitted and which we've previously discussed.

MS. DeWITT:  Your Honor, the only problem that we have with these statutory mitigating factors is that this -- this literally -- last night is the first time we ever got notice of them.  We don't have an objection to them per se, but they are -- they are completely redundant of nonstatutory mitigating factors that they have -- that they've already -- that they have put in their nonstatutory section.

So I -- I do think at some point it becomes a problem to have in front of the jury completely repetitive mitigating factors.  It becomes confusing.  It wastes their time.  It wastes our time in arguing and having to respond to them.  So each of these three statutory, mitigating factors that they have now --

MR. EVANS:  Four.

MS. DeWITT:  -- included for the first time yesterday is exactly repetitive of other statutory factors.

THE COURT:  Mr. Evans, let's -- so we have clarity in the record, why don't you offer that instruction to make sure that we have it -- we have it identified in the record offered.  The Court is inclined not to give your version.

MR. EVANS:  May I -- should we approach the clerk?

THE COURT:  Yes.  Make sure that the clerk has it so that it's identified as an instruction that it's offered proposed, objected to by the Government, and the Court would not give it because it's -- it's cumulative and redundant.

MR. EVANS:  Does the Court have a copy?

THE COURT:  I have a copy in chambers.  I've gone through the instructions.

MR. EVANS:  Right.  Okay.

THE COURT:  Anything further?

MR. EVANS:  No.

THE COURT:  Let's see the -- the Government's final set.  I think we would be --

MR. EVANS:  By 11:45, your Honor?

THE COURT:  11:45.  Maybe we can conclude soon thereafter, and you can prepare for your -- your argument.

MR. DUGDALE:  Yes, your Honor.

I -- I guess the one thing I may leave blank, then,

53

is the witness elimination language, which defense counsel will propose.

THE COURT:  Mr. Evans has to propose that language, yes.

And then we need to -- we need to see if we agree on the special verdict form.

MR. EVANS:  I'll review that while they're doing this.

MR. DUGDALE:  Yes.  There was -- the -- the Armen Gyurdzhiyants nonaggravating factor was mistakenly not included in that.  But, with that exception, it's what we propose.

THE COURT:  So as I understand it, Mr. Evans, the only instruction you -- you've stated your -- we've covered all of the instructions that the Court intends to give.  We made the modifications.  You agree with the modifications.  There's some additional modifications to be accomplished, and we'll look at the final set offered by Mr. Dugdale and counsel.  There's only one instruction that you've offered that the Court has not given.

Is there anything else that we have to place on the record?

MR. EVANS:  Your Honor, let me review that while they're doing that and see if there's anything additional.  I don't believe there is, but I should check before I write

off on it.

THE COURT:  Okay.

MR. EVANS:  Thank you.

THE COURT:  We'll -- we'll reconvene at 11:30, 11:45?

MR. DUGDALE:  11:45 is good, your Honor.

THE CLERK:  Court's in recess.

THE COURT:  There's one issue that's come up.  The record should reflect that everybody is present, including the defendant.

THE CLERK:  Mr. Dugdale is not here, Judge.

THE COURT:  Well, we have counsel for the Government here.

MR. DUGDALE:  I'll take notice, your Honor.  The defendants have offered proposed Instruction Number 15. It -- can you -- do you have a copy of it?

MR. EVANS:  I'm sure I do, your Honor, if I could just have a second.

I have it if you don't.

THE COURT:  I -- I would -- I would think that we should give the Defendant's Proposed Instruction Number 15. I neglected to.

MS. DeWITT:  Your Honor, we have additional objections to this instruction as well for the same reasons that were stated with the other instruction that talks

about --

THE COURT:  Well.  Yeah, with --

MS. DeWITT:  -- without --

THE COURT:  With certain modifications.

MS. DeWITT:  Okay.

THE COURT:  So the -- the -- I think the important part -- I think the important part of the instruction is -- it -- is -- begins with the word "when you are in the jury room" --

MS. DeWITT:  Yes.

THE COURT:  -- through Line 20.  I think that probably should -- should be given to the jury.

MS. DeWITT:  We don't have any objection to that, your Honor.  We can -- we can --

THE COURT:  Incorporate that?

MS. DeWITT:  I think that's actually in ours already, but if you want to do it in a separate one to emphasize it, we'll just add it as an additional instruction.

THE COURT:  Yeah, and I -- I think it -- it emphasizes the -- the importance of the deliberation process and each juror's conscientious decision in arriving at the appropriate verdict.  So I would propose offering the instruction, commencing on Lines 10 through 20.

MR. EVANS:  We would request the entire

instruction, your Honor.

THE COURT:  Thank you.

THE CLERK:  Court's in recess.

(A break was taken from 10:44 a.m. to 12:00 p.m.)

THE CLERK:  Please come to order.  This Court is now in session.

THE COURT:  We're back on the record on U.S. of A versus Krylov.

Counsel are present.  The defendant is present with the interpreters.  The Government has prepared the proposed final set of the jury instructions, penalty phase.

I just have been handed the instructions.  I have not had the opportunity to review each of the instructions referenced in the final set.  I see that certain of the pages have been -- have been tagged -- marked with a Post-it.

Mr. Dugdale.

MR. DUGDALE:  Sure, your Honor.

What I did was I made all the revisions that the Court wanted.  The -- and I think that the only three things that are left are to deal with the instructions that have the Post-it next to it because I was waiting on something for defense -- from defense counsel for them.

THE COURT:  Okay.

MR. DUGDALE:  Court's Instruction Number 9 deals with the depositions of the witnesses.  And the Court wanted

something indicated to the jury concerning the fact that the defendant's parents had to go back to the Ukraine.

What I would propose for this is not adding on a jury instruction, but I can work out a written stipulation to read to the jury on that point. But I'll do it however the Court wants. I mean, we're not going to -- we're not going to debate that fact.

THE COURT: The point being that the parents were here. They had to return to Odessa.

MR. EVANS: They were going to return by the terms of their visa by May 5th.

THE COURT: And that's fine. And we can do that pursuant to a stipulation to be read to the jury.

MR. DUGDALE: That's fine, your Honor.

The next Post-it is on the witness elimination issue, and Mr. Evans is going to give me some language on his intent issue.

And then the last one -- this was the issue with the -- with the insert from, I believe, *Mills/Bingham*, regarding sympathy and the -- and the jury's ability to use sympathy as a basis for not opposing the death penalty. I -- I couldn't find that specific reference. I'm sure Mr. Evans can. When he does, I'll put it in here. That's on Page 38, the last of the Post-its.

THE COURT: 38?

MR. DUGDALE:  Correct.

The three Post-its.  The first one was for Instruction Number 9 on Page 14.  The second one, regarding the witness elimination issue, was on Page 28.  And then on Page 38 I put the third Post-it that relates to this -- this Line 17 through 19, which currently reads:  In engaging this weighing process you must avoid any influence of passion or prejudice.  The words "undue sympathy" used to be in there as well.  The Court wanted that taken out because of the fact that the jury can use sympathy as a basis to --

THE COURT:  Okay.  So Mr. Evans, are you going to supply that language?

MR. EVANS:  I will, your Honor.  I've gone through about a third of these as well.  If there is an issue -- what time will the Court be -- I don't think there will be. I think anything that remains can be worked out.  But I -- if there is, what time -- how long will the Court be here today?

THE COURT:  I'll be here all day.  But --

MR. EVANS:  I don't anticipate that.  I think we can resolve it, but --

THE COURT:  Do you want to return this afternoon after reviewing the instructions?

MR. EVANS:  Well, why don't we -- I don't want to do it -- that'd be fine if the Court wants to set a time.

But I think we can -- let me look at them, talk to Mr. Dugdale; if there is an issue that we can't resolve, then we can notify Mr. Cruz.

THE COURT:  Okay.  Then let me -- let me make sure I have clarity in the record.

The Government has offered the final proposed set.  The defendants have no objections to the final proposed set, other than the -- the three instructions that we've just discussed on the record that need to be finalized; is that correct?

MR. EVANS:  No, your Honor.  I've just -- I've just been handed this, and I haven't gone through the whole thing to review it in light of the Court's earlier comments.  I don't -- I'm sure that if there's any issue that Mr. Dugdale and I can resolve it.  If there is an issue that arises with regard to any of this, we -- we will notify Mr. Cruz promptly and come in.

THE COURT:  We have the jury arriving at 8:00 o'clock.  So the -- the intention would be for the -- for the clerk to be able to instruct commencing at about -- at 8:00 o'clock.

MR. EVANS:  I think we'll be ready by this afternoon.  I don't think we'll have to bother the Court again.  But I'm just saying in case there was an issue, I can come in.  I would ask if it's all right with the Court if

Mr. Buehler could be excused so he can work -- he's going to be doing the closing for us.

MR. BUEHLER:  That's not a problem.  I can be here.

MR. DUGDALE:  Your Honor, that's fine.  Why don't we just --

THE COURT:  Do you want to return at -- at 2:00 o'clock and -- and we can place on the record that there -- that the -- we've reached the final set of instructions that everybody agreed to?

MR. DUGDALE:  That's fine, your Honor.

THE COURT:  Okay.  Why don't we do that at 2:00 o'clock.

And then we have the special verdict form?

MR. EVANS:  I'll look at that too, your Honor.

THE COURT:  Okay.

MR. EVANS:  I believe there were some changes made to it.

THE COURT:  Okay.  Anything else on jury instructions?

MR. DUGDALE:  No, your Honor thank you.

THE COURT:  Mr. Evans.

MR. EVANS:  Nothing, your Honor.

THE COURT:  And then, Mr. Buehler, if you would like to be excused and not have to return at 2:00 o'clock, feel free to.

MR. BUEHLER:  Thank you, your Honor.

THE COURT:  Thank you.

THE CLERK:  Court's in recess.

(A break was taken from 12:06 p.m. to 2:07 p.m.)

THE CLERK:  Please come to order.  This Court is now in session.

THE COURT:  Okay.  We're back on the record on United States of America versus Krylov.  The defendant is present with counsel.  Russian interpreters are present.

This is the final hearing regarding jury instructions.

MR. EVANS:  We hope, your Honor.

The -- apparently there was a snafu with the Government receiving my e-mail with the few modifications to -- I think -- I don't know -- I've handed them a hard copy now.  I've sent it at about 1:30.  It wasn't received for whatever reason.

THE COURT:  Are we ready to proceed on jury instructions or do you need additional time to confer?

MR. DUGDALE:  Your Honor, since we just got handed this thing, we do need additional time.

THE COURT:  Okay.

MR. DUGDALE:  This is what I recommend.  If we could come back Monday, 7:00, 7:15, 7:30, we could probably settle the matter at that point in time and be ready to go at

8:00 o'clock.

This is not extensive.  The one issue that may remain is this witness elimination instruction.  I was expecting a sentence or two about the intent issue that counsel raised; instead, there's three paragraphs here, single spaced.  It looks like it could cover a full page of the jury instructions on this issue.  And I need to check this out, to read the case that he cites.  And having just gotten it, I can't do that at this moment.

THE COURT:  Well, I can --

MR. DUGDALE:  If you want to come back in an hour, we can address the issue.

THE COURT:  Okay.  Then let's -- let's put the matter over to 3:00 o'clock.

MR. DUGDALE:  That's fine, your Honor.

MR. EVANS:  Thank you.

THE CLERK:  Court's in recess.  We're not ready for the next matter, Judge.

(A break was taken from 2:08 p.m. to 3:00 p.m.)

THE COURT:  Okay.  We're back on United States versus Krylov.  The defendant is present with counsel.

Let's see if we can finalize the instructions.

First of all, I have what appears to be the final proposed set of jury instructions from -- offered by the Government.  The final proposed set includes modifications to

Instruction Number 9, as discussed this morning on the record, placing the name of the deponent and doing that also in reference to Instruction Number 8, the -- the videotaped interview.  So that's been done.

MR. DUGDALE:  Yes.

And in addition, your Honor, the Government provided a stipulation for -- typed up a stipulation using language proposed by the defendant concerning the absence of his father, mother, aunt, and cousin --

THE COURT:  Okay.

MR. DUGDALE:  -- because they needed to go back to the Ukraine.  And we would not object to that being read to the jury first thing on Monday.

THE COURT:  And before we get to the jury instructions, one other issue.  The defense has requested that the jury be informed that Mr. Mikhel and Kadamovas were convicted and sentenced to death by the jury that was before Judge Tevrizian.

I think that probably should be placed in some type of proposed stipulation and read to the jury at -- on Monday, also assuming Mr. Krylov also agrees.

MR. DUGDALE:  Yes.  It's not in evidence anywhere.  So that's the only way it could get to the jury.  So we will -- we would do that.  I offered a stipulation last night that had that in there, but that's been rejected.  But I will

narrow it to just that subject.

THE COURT:  Okay.  And then in reference to the other -- other defendants, the jury may be -- I'm not sure what the focus was in reference to, I think, Juror Number 6. Was it 6?  Juror Number 6?  Seat Number 6, I should say.

MR. DUGDALE:  Right.

But the other defendants -- that is in evidence. All of them were cross-examined about the fact that they have not been sentenced yet.

THE COURT:  Yes.

So I -- the question is whether they should, the jury should, again, be reminded that those defendants have not yet been sentenced.  And I think as a practical matter, the -- those defendants come back to this Court because they're all related, and this Court is going to be the Court that sentences those defendants.  If -- if you want that known to the jury, it's up to counsel.  I'll just leave it up to counsel for both sides.

Jury instructions.

MR. DUGDALE:  There -- there really are just three issues remaining.  I know they multiplied from an our hour ago.

The first one refers to the witness elimination issue, and among the things that I gave Mr. Cruz was a small little thing that had the case *United States versus Sampson*

UNITED STATES DISTRICT COURT

that defense counsel quoted, as well as the proposed

instruction from the Government on this issue and a proposed

instruction from the defense on this issue.

And really what it boils down to is there's a

long -- there was a long instruction that was given in the

*Sampson* case regarding this issue, this witness elimination

issue.

The -- the instruction proposed by the defense

eliminates a paragraph in that instruction that the

Government thinks should be included.

THE COURT:  I'm not sure I have the -- the

competing instructions.  I have an e-mail to Mr. Cruz from --

it looks like from Mr. Evans regarding the defendant's

proposed instruction.

MR. DUGDALE:  Well, what I --

THE COURT:  I don't have the Government's

proposed --

MR. DUGDALE:  I'm sorry.  Did I give you this?

THE CLERK:  Yes, you did.  I believe you did.

THE COURT:  I'm not sure I can see that.

MR. DUGDALE:  I'm sorry.

When I was saying "this," I was referring to --

there is a Westlaw printout of the case, *United States versus*

*Sampson*.

THE COURT:  I have that, yes.

MR. DUGDALE:  And attached to that is a couple of pages, I think three pages, of the Government's instructions, which includes the witness elimination instruction.

THE COURT:  Okay.  Yes, I have that.  I didn't see it.

MR. DUGDALE:  And then at the last page is something which starts -- titled Bob, to me, from Mr. Evans. In the last third of that document it contains the instruction that the defense is proposing.  What the Government is proposing here, and we'll leave it up to the defense as far as what it would like to do, or if it would like to do something else completely, is -- in what we've included there was one sentence which is not in bold, which is what we would have proposed to give to the jury.  But if the defense wants this long instruction that came out of the *Sampson* case, we would propose what is in bold there, which tracks what is -- the instruction was that was given in the *Sampson* case.

The instruction proposed by the defense eliminates an entire paragraph in that instruction, which is the one paragraph that is -- that explains why this is an aggravating factor and why witness elimination is something that explains why the death penalty or something that should be marked in the pro column for the death penalty.  And if we're going to give that long instruction, we should give the whole thing,

not eliminate parts that are helpful for the Government and include everything else.  That's our point on that.

So I'll leave it up to the defense and the Court as far as what they want to do on that, whether it be the one sentence or the whole thing in bold, but that's issue number one.

THE COURT:  And I'm looking at Mr. Evans's proposed instruction in the first paragraph.

Does the -- does the first paragraph track the aggravating -- track word for word the aggravating factor referenced by the Government in the -- in the jury instructions?

MR. DUGDALE:  It does now.  I -- it does not track word for word what we put in our death penalty notice, which is probably the important thing.  I did change it, I believe, to reflect this language.

Because I think the point of the *Sampson* case is that the witness elimination has to be the sole or primary purpose of the event at issue there.  I mean, the -- *Sampson* is a really different case in this.  *Sampson* is -- was a carjacking case where the victim was killed.  I'm seeing the witness elimination had very little to do with what was going on there, but certainly it's not as important as it was in this case, but --

THE COURT:  Well, Mr. Evans, can you -- can you

accept the Government's proposed instruction?  It almost --

MR. EVANS:  The difference is the second bold paragraph, your Honor in the Government's proposed instruction.  That was not included in mine.  That was included in the footnote of the *Sampson*, which was the source for my instruction.

Yes.  We can accept that.

THE COURT:  Okay.

MR. DUGDALE:  So I should just unbold everything?

THE COURT:  Yes.

MR. EVANS:  Yes.

MR. DUGDALE:  Okay.  I can live with that.  Okay. Perfect.  Okay.

Number two of three relates to one of the mitigating factors that the defense has proposed, and there was some discussion about this earlier.  And the Government did object to this earlier.  This relates to the last mitigating factor, which concerns the plea or the defendant's purported willingness to plea.

Number 38.  It's on page -- I'm sorry.  It's on Page 38.  It's Mitigating Factor Number 38.  We offered a stipulation to the defense --

THE COURT:  Wait, wait, wait.  This is Page 38 of the instructions?

MR. DUGDALE:  The -- the new instructions, yes.

THE COURT:  Which is Court's Instruction Number 20?

MR. DUGDALE:  It's the one that lists all the mitigating factors.  Let me check.

THE COURT:  It may --

MR. DUGDALE:  19, your Honor.

THE COURT:  Okay.  Then I have -- I'm not -- I don't have the -- the -- the newest set of jury --

Do you have the set of jury instructions?

Okay.  Which -- which number?

MR. DUGDALE:  38, your Honor.  It's the last one.

THE COURT:  Okay.  Go ahead.

MR. DUGDALE:  In any event, we offered a stipulation to the defense last night concerning this mitigating factor and that -- I understand that that has been rejected.  The consequence of that is that there's no evidence in the record about the defendant's offer to plead guilty.  And since there's no evidence in the record here, this can't be a mitigating factor that the jury should consider.  I mean, they would only -- if given here, they could only speculate as to what this means since there was no evidence on the subject.  And as a result, it should be stricken.

The stipulation that we offered, it contained -- I believe why it was rejected -- I don't know why it was rejected.  But it contained the time at which the offer was

70

made, which the Government believes was important to demonstrate whether or not this -- this was any sign of remorse or on the part of defendant.  Namely, the fact that this offer came only the day after Mr. Kadamovas and Mr. Mikhel were convicted and sentenced to death by their jury, which was on February 13th, 2007.

The first offer that was made by the defense and the only offer that was made by the defense was the following day.  It's the Government's belief that had that not occurred, had Mikhel and Kadamovas not been sentenced to death, the call that we would have received the following day would have been to drop the death penalty since two more culpable defendants did not receive it.  So the only reason that this offer was made by defense was because of that outcome, and we tried to have that reflect in the stipulation.  It was rejected.  We have nothing now.

THE COURT:  Okay.  Mr. Evans, how do you want to handle this?  The -- I think Mr. Dugdale is correct that it -- there's no -- nothing in the record.  No evidence before the jury to establish facts necessary to offer Mitigation Factor Number 38.

That being said, I certainly would allow the -- the defendant an opportunity to reopen to -- to present that evidence.  If we -- if I allow the defendant an opportunity to reopen, we -- we probably will get into the date of when

the offer was made.

From my prospective, it's -- it seems to be a significant factor, at least a factor for the jury to consider that the defendant offered to plead guilty. The -- the timing of the offer is -- is prob- -- I don't perceive it to be as important as counsel for the defendant or counsel for the Government. I think what's important is the fact that he offered to plead guilty, and in offering to plead guilty, the argument could be made that he -- he -- he didn't want to put the families through a second trial.

And I think that's -- that's one of the points that could be made. The Government could offer -- could -- could argue that the timing of the offer is -- should be considered by the jury. But, you know, when you're looking at a life-and-death situation, I don't think it's unreasonable for a defendant to -- to consider entering a plea of guilty until after the first trial is concluded. It just --

MR. DUGDALE: Well, I guess my -- my point, your Honor, is there would have been no plea had Mikhel and Kadamovas not received a sentence of death because at that point the demand would have been for us to withdraw the death penalty. I have no doubt about that. No doubt about that at all. I mean, that's exactly what happened in the *Aryan Brotherhood* case before Judge Klausner and that would have happened.

Now at the moment if -- let's say the death penalty then was withdrawn, the defendant then had no incentive whatsoever to enter into a plea because a plea would have given him a life sentence, going to trial and being convicted would have given him a life sentence. So at that point in time there would have been no plea offer.

So the -- I think the timing is critical as far as what the motivations to the defendant were. And the other thing that is important here to --

THE COURT: Well, we -- we can put timing in and there's -- there's one way to do it and that is to stipulate to it or allow the defendant to reopen.

MR. DUGDALE: I understand.

The stipulation we offered did have that in it, and it was rejected; that's my point. And the other thing that was in the stipulation that, again, is important is the defendant always had the opportunity to plead guilty to the charges and then just proceed to the penalty phase. If he really wanted to spare the family the agony of going through months of trial and everything else, that could have been done too.

So -- but I can't argue those facts unless they are facts that are before the jury. So that's why the stuff had to be included in the stipulation and why it's important.

THE COURT: Mr. Evans, can we get the -- the -- can

you stipulate to the date that the offer was made and then argue from the -- from the evidence received in trial and -- and also based on the stipulation?

MR. EVANS:  Your Honor, the stipulation includes sig- -- significantly more than that that we could avoid. Both -- both of these factors really go to attorney-client communications and attorney judgments about when to make the representations, which we obviously can't open up.

THE COURT:  So let's include -- let's -- if we modify Factor Number 38 to -- to include the date -- on such and such a date Defendant Krylov offered to plead guilty to the charges in this case if the Government would not seek a sentence of death.  The Government rejected the offer. And we can include that the offer came after the -- the verdicts and the -- in the other -- with the other two defendants.

MR. DUGDALE:  Well, I don't care so much about what the factor says.  That doesn't really mean that much.  It's what the evidence is and what the stipulation says.  And, again, we've proposed the stipulation, which includes what I've talked about and --

THE COURT:  Well, where is the proposed stipulation?

MR. DUGDALE:  I have it here, your Honor.

THE COURT:  Let me see it.

Well, why don't we include everything up to Line 16 and remove everything else?

MR. DUGDALE:  Well, I mean, we have to get in the fact that the plea was rejected.  It should be obvious, I guess.  But --

THE COURT:  Well, we can include that the plea was -- that it was rejected.  But the line -- from Line 17 through the second page, I'm not sure we need all of that.

MR. DUGDALE:  Well, I -- I do think it's important.  The jury will not know the defendant.  They may think that as a result of this the defendant had no option but to go forward with this trial, which was not true.

And so I think that the information that's on Line 24 through Line 2 of the next page is important as well.  And that -- that's the stipulation that we've offered and that's the one that we would need to accept to sign it.  I -- I don't care as much about what's between Line 18 and 23, although all those things are also true.

MR. EVANS:  Well, sort of true.

THE COURT:  I'm -- well, look, the lawyers can place whatever weight you wish to place on the words in the stipulation.  I -- I just don't share the significance or the importance that counsel may see.

I'm willing to -- to accept the stipulation offered by the Government, to -- to consider further modifying it,

allow the defendant to reopen, and we can -- we can cover this before the jury.

MR. DUGDALE:  That's fine, your Honor.  If they want to take the weekend to think about it, that's fine.

THE COURT:  Well, Mr. Evans, how do you want to proceed?

MR. EVANS:  It's -- if I understand the Court correctly, and I may have missed something --

THE COURT:  We can accept the -- you can agree to the Government's proposed stipulation.  You can -- you can work to modify it.  The third alternative would be to simply allow you to reopen the defense portion of the case to get these facts before the jury.

The Court would -- would certainly consider a motion to reopen to allow this testimony to get before the jury.

MR. EVANS:  Thank you, your Honor.

I -- I -- I share the Court's opinion with regard to the stipulation that would -- we would be prepared to enter into if it were modified as the Court suggested it.  I would have to confer with counsel to co-counsel to decide whether we're going to move to reopen.  Could we hold that in abeyance for Monday after- -- morning?  I don't anticipate that happening, but I would -- I would -- I'd feel obliged to do that.

THE COURT:  Okay.  So you want until Monday to work on this?

MR. EVANS:  Yes.

THE COURT:  Or consider it.  Okay.

MR. EVANS:  I suspect nothing is going to come of it.  But --

THE COURT:  Well, then -- then -- then we're going to reopen on Monday, is that --

MR. EVANS:  No.  I -- I -- I suspect what will happen is that neither will occur, but I -- I do need to confer with co-counsel.

THE COURT:  Okay.  And then, finally, Mr. Dugdale?

MR. DUGDALE:  Yes.  I'm sorry.

Well, the next issue was the -- the defense wanted to return to the issue of the single criminal episode related to the multiple murder.

THE COURT:  What page is that?

MR. EVANS:  That was before the -- it was modified that was on Page 25, Line 27.  I think it's been renumbered slightly.  That's right.  It's still the same.  That has not been modified.  The bottom is Line 25.  The multiple killings.

THE COURT:  Okay.  Mr. Evans, what's -- what's your concern?

MR. EVANS:  It's what we discussed.  The Court had

commented when we discussed it this morning that you were going to put a Post-it, and we would revisit it.

THE COURT:  Yes.

MR. EVANS:  Yes.

Our concern was that you met -- there is no case law that I've been able to find to define what constitutes a single criminal episode within the context of the aggravating factors.  There is case law dealing with a single criminal episode in the context of the sentencing guidelines which talks about incidents occurring within a proximate cause of one another.  In this instance, it's more than a month apart.  And we would argue that at least Mr. Umansky's abduction and murder do not fall within that category.

THE COURT:  Okay.  Mr. Dugdale, do you wish to be heard?

MR. DUGDALE:  Yes, your Honor.

The definition of a single criminal episode was taken from the Eighth Circuit instructions.  It's the same instruction that was given in the Mikhel Kadamovas case that relate to all the victims in this case.  We are talking about an isolated period of time within a couple of months here, and basically with the same modus operandi and everything else.  The jury can decide whether this constitutes a single criminal episode given the instructions that are given.  I think it's the job of the jury to do so.

THE COURT:  The Court concurs.  Objection is overruled.

MR. EVANS:  I think that's it, Judge.

THE COURT:  Just to finalize --

MR. EVANS:  We will be submitting a stipulation provided by the Government as to the deposition testimony.

THE COURT:  The lawyer -- counsel will continue to -- to see if you can reach a stipulation regarding the plea offer.  That -- that remains to be decided on Monday.

Is there any other issue that has to be decided on Monday regarding jury instructions?

MR. DUGDALE:  No, your Honor.

THE COURT:  And -- and then on Monday you'll -- you'll provide the Court with the final -- final set?

MR. DUGDALE:  Yes, your Honor.

I -- I can give -- well, it may be a waste of time to give the Court what we've done right now.  It would only be unbolding that -- that one paragraph.  And then the -- the remaining issue is whether that last mitigating factor exists or not, if -- if it could be supported by any evidence, including the stipulations we can work out.

But I will -- I will provide -- I'll provide on Monday a final set that includes everything that we've talked about today and that one mitigating factor in bold, if it's supported and can be given, the Court can read it.  If it's

not, the Court can skip it.

THE COURT:  Do we have an agreed upon special verdict form?

MR. EVANS:  Yes, your Honor.

MR. DUGDALE:  Yes, your Honor.

THE COURT:  Okay.

MR. DUGDALE:  And I can provide that as well.

THE COURT:  Okay.  Then is there anything else that we -- we need to discuss today?

MR. EVANS:  I don't think so, your Honor.

MR. DUGDALE:  Have a good weekend, your Honor. Thank you.

THE COURT:  Thank you.

MR. EVANS:  Thank you, your Honor, for your time.

THE COURT:  We're adjourned.

(Whereupon, at 3:36 p.m., the proceeding concluded.)