UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

- - -

THE HONORABLE NORA M. MANELLA, JUDGE PRESIDING

UNITED STATES OF AMERICA,  )
                Plaintiff,  )
      vs.                    )
                             )  CR-02-220-NM
IOURI MIKHEL, et al.,        )
                Defendants.  )
--------------------------)

REPORTER'S TRANSCRIPT OF PROCEEDINGS

Los Angeles, California

May 6, 2002

SHARON A. SEFFENS, RPR
United States Courthouse
411 West 4th Street, Room 1-1053
Santa Ana, CA  92701
(714) 543-0870

2

APPEARANCES OF COUNSEL:

For the Plaintiff:

JOHN S. GORDON
United States Attorney
RONALD L. CHENG
Assistant United States Attorney
Acting Chief, Criminal Division
CAROLE C. PETERSON
KAREN I. MEYER
Assistant United States Attorneys
1100 United States Courthouse
312 North Spring Street
Los Angeles, CA  90012
(213) 894-2434

For Defendant IOURI MIKHEL:

(None present)

For Defendant JURIJUS KADAMOVAS:

JEFFREY WEISS
MURPHY & GOLD
4640 Lankershim Boulevard, Suite 699
North Hollywood, CA  91602-1818
(818) 509-0311

For Defendant PETRO KRYLOV:

GEORGE W. BUEHLER
BUEHLER & KASSABIAN
350 West Colorado Boulevard
Pasadena, CA  91105
(626) 817-5092

ALSO PRESENT:

Russian Interpreter

SANTA ANA, CALIFORNIA; MONDAY, MAY 6, 2002; P.M. SESSION

THE CLERK:  Item No. 8, CR-02-220-NM, United States of America versus Iouri Mikhel, Jurijus Kadamovas, and Petro Krylov.

Counsel, please state your appearances.

MS. PETERSON:  Good afternoon, Your Honor.  Carole Peterson and Karen Meyer for the government.

MR. WEISS:  Good afternoon, Your Honor.  Jeffrey Weiss for Mr. Kadamovas.

MR. BUEHLER:  Good afternoon, Your Honor.  George Buehler for Petro Krylov.

THE COURT:  Good afternoon.

First of all, Mr. Weiss, how is your client going to proceed?

MR. WEISS:  Your Honor, he is requesting -- and I spoke with the U.S. Attorney -- a 30-day continuance.  He would like me relieved on the case.  He would like 30 days to still attempt to get a private attorney.  If in 30 days he is not able to do so, then he is going to request the Court to appoint him an attorney, but he would like to have 30 days to give it one last shot to come up with the funds.

THE COURT:  All right.  Whatever he must have filed before if he filed anything -- I doubt that he did -- I guess he started out by retaining you.

MR. WEISS:  Yes, he has, Your Honor.

THE COURT:  I mean, he didn't first request appointed counsel?

MR. WEISS:  Right.

THE COURT:  Mr. Kadamovas --

MR. WEISS:  If I may, Your Honor, he actually had a Court-appointed attorney, and then I came into the matter when I thought it was one thing.  Then we went ahead and learned that it was actually hostage-taking afterwards.  Then at that point in time is when we had discussions, and he is now requesting 30 days -- that I be relieved from the case and that he has 30 days.

THE COURT:  All right.  Mr. Kadamovas, is what your counsel just indicated essentially correct?  You would like additional time to retain new counsel?

DEFENDANT KADAMOVAS:  Yes.

THE COURT:  All right.  At least we know where Mr. Kadamovas is.

Mr. Buehler, how about your client?

MR. BUEHLER:  I am representing my client, and we are interested in having the case move along.  I want to express to the Court my consternation over the lack of discovery that we have received.  It's almost 90 days since Mr. Krylov was detained and has been in custody.  Although some discovery has been made, I have not yet seen much more in the way of evidence relating to my client than I saw when

we had the argument about detention in front of Magistrate Hillman almost three months ago, so I would seek the Court's assistance in production of the relevant discovery.  I feel that at this point I am hampered in my ability to effectively represent Mr. Krylov by the lack of information, the inability to know where and what to investigate, and the ability to prepare for trial so that he can exercise his rights under the Speedy Trial Act.

THE COURT:  Ms. Peterson.

MS. PETERSON:  Your Honor, the government as of today has provided almost 2,000 pages of discovery to Mr. Buehler.  There are several tapes both from Mr. Umansky's abduction as well as from the wiretap that remain outstanding.  We have informed Mr. Buehler that those tapes will be made available to him at Copy Pro as of Wednesday.

Ms. Meyer and I received probably an additional 1,000 pages of additional discovery of Friday from the FBI. We worked this weekend to produce the 200 pages we gave to Mr. Buehler today, and we will make the remaining discovery available to him in the next couple of days.  We fully intend to comply with all of our discovery obligations in the most timely manner, and we continue to try to make that happen.

THE COURT:  All right.

Mr. Mikhel, where are you in terms of retaining

new counsel?

DEFENDANT MIKHEL:  Your Honor, since we were last in court and you ruled that Victor Sherman can't represent me, I decided to go pro se and do it myself.  I would like to assure you that at the time of the trial I will have proper representation.  During this period of time before the trial, the pretrial period, I would like to be able to do it myself.

THE COURT:  Well, that's a problem, Mr. Mikhel. You have the right to represent yourself, although if you do that, we will have a separate hearing where we will have a very lengthy colloquy so that I can assure myself you know what you doing because it is considered highly ill-advised for a defendant to represent himself, but, nevertheless, that's your right if you choose to do so.

What you may not have the right to do, however, is to choose to go pro se up until the time of trial, because any lawyer who comes in to represent you isn't going to take this case and be ready to go to trial in a short period of time.  So if you decide to go pro se, you will not necessarily be able to substitute counsel in at the last minute unless that counsel says, oh, sure, I can be ready to go to trial, you know, in a week, and it's highly unlikely in a case like this that you will find anyone who will do that.  So it's either you are going to be represented by

counsel, or you are going to be pro se.

If you need additional time to get counsel, that's one thing.  If you can't afford counsel, counsel can be appointed for you, but you don't get to divvy it up for the reason I just explained.  We can't have all three of you proceeding to trial, and then you saying a week beforehand now I am ready to get a lawyer.  That lawyer will walk in and say, "Well, Your Honor, I'm happy to represent Mr. Mikhel, but I couldn't possibly be ready to go to trial in the next couple weeks."

DEFENDANT MIKHEL:  Maybe it will not be right before the trial.  I will try to arrange the appropriate representation before -- in enough time so he will be ready for the trial and will not hold up the trial itself.

THE COURT:  Well, are you looking for counsel now?

DEFENDANT MIKHEL:  Yes, I am.

THE COURT:  I am just telling you that you won't necessarily have that choice.  We may get to the point where I say I am setting this for trial.  If you don't want retained counsel and you are not in a financial position where I can appoint counsel, then you can assume that this case is going to trial on a certain date and no further continuances will be granted whether or not you can get a lawyer to represent yourself at all, and that would put you in a very, very difficult position.  Do you understand that?

DEFENDANT MIKHEL:  Yes.

THE COURT:  All right.  Have counsel discussed amongst themselves -- well, Mr. Weiss, I guess you don't plan on being around for the trial, so you don't really care when it is set for.

Mr. Buehler, you are the only one who will.  What do you think is a realistic trial date, and have you had those discussions with Ms. Peterson and Ms. Meyer?

MR. BUEHLER:  I have had some discussions, although not that precise.  Again, I think we probably have a disagreement.  At least at this point based on what I have seen so far, I want an early trial date.  I would ask the Court to set a trial date in June and to enable that to be a realistic trial date by requiring the government to follow through --

THE COURT:  Well, actually you can't get a date in June on the Court's calendar now.  There are no dates in June.  The first available trial date that this Court would have realistically is -- well, we have several trials.  The truth of the matter is you would be trailing whether I set you for July 2, which is the week of July 4th, or the 9th.  I say I think you will be trailing because I think this case would have secondary priority with respect to the other cases that are already set for those dates.

MR. BUEHLER:  I would ask for the earliest date,

July 2.

THE COURT:  Will the government be ready?

MS. PETERSON:  Your Honor, the government expects it will be superseding the Indictment in this case.  We are in conversations with the DOJ about that right now.  I tell the Court simply to alert the Court to the fact that this July date may also become a soft date as the Court has referred to the May 14 date.  However, the government is certainly amenable to setting it on that date if the Court is so inclined.

THE COURT:  Mr. Krylov -- let's see, what is our -- our current T-max is May 14.  Obviously the case has not been severed.  Mr. Kadamovas is not ready to go on the 14th, nor is Mr. Mikhel.

Is that correct, Mr. Kadamovas?  I take it you don't want to go to trial on May 14 without counsel do you?

DEFENDANT KADAMOVAS:  That's true.

THE COURT:  Mr. Mikhel, I assume that you don't wish to go to trial on May 14 representing yourself.  Is that correct?

DEFENDANT MIKHEL:  Yes, that's correct.

THE COURT:  Then let me ask each of you. Gentlemen, the current T-max as we call it is May 14.  Mr. Buehler has suggested a trial date of July 2.  That would be the earliest this case would go to trial.  If as the

10

government has indicated it may supersede the Indictment, it could be later.

But at this point, do you all agree to waive your speedy trial rights and agree that this matter may be set for trial no earlier than July 2, 2002?  I will ask Mr. Buehler's client, Mr. Krylov, first.  Do you agree, sir?

MR. BUEHLER:  Your Honor, may I make one other observation?  As I read the Speedy Trial Act, particularly Section 3164, once we go beyond 90 days that Mr. Krylov has been detained, not trying him within that 90-day period entitles him to a review of the conditions of his detention and may entitle him to be granted bail by the Court, so when I suggest a July 2 trial date, I am not waiving whatever rights he has under that section to seek a review of the conditions of his detention and to ask this Court to admit him to bail.

THE COURT:  I assume the government wouldn't dispute that.

MS. PETERSON:  Of course not, Your Honor.

THE COURT:  All right, with that understood, let me go back to Mr. Krylov.  Do you consent, sir, that the trial in this matter may be held no earlier than July 2, 2002?

MR. BUEHLER:  May I confer for a moment, Your Honor?

THE COURT:  Yes.

(Mr. Buehler and defendant Krylov conferring.)

MR. BUEHLER:  Your Honor, he is prepared to respond to the Court's query.

THE COURT:  All right, Mr. Krylov, I will ask you again are you prepared to waive your right to a speedy trial and agree that this matter may be set for trial no earlier than July 2, 2002?

DEFENDANT KRYLOV:  Yes.

THE COURT:  Mr. Kadamovas, the same question to you?

DEFENDANT KADAMOVAS:  Yes.

THE COURT:  Mr. Mikhel, the same question to you?

DEFENDANT MIKHEL:  Yes, Your Honor.

THE COURT:  All right.  I'm not sure we are going to be able to have a status conference in this matter any earlier than the day before.  If motions are filed, that will obviously affect the speedy trial maximum.

By the way, Ms. Peterson, if you would please prepare the speedy trial order.

MS. PETERSON:  I will.

THE COURT:  Do you have any idea when the government is likely to supersede?

MR. PETERSON:  Your Honor, I expect it will be in the next two weeks.

THE COURT:  Okay.  I just wondered -- I am going to want to I think set this matter for a status conference.  If you think you will have superseded within the next couple of weeks, then I will set this for a status conference on June 3 at 1:30 p.m.

Mr. Mikhel, that should certainly give you adequate time to obtain counsel since I guess it was last week that we -- that I indicated that Mr. Sherman couldn't represent you.  That will give you five weeks from that date, four weeks from today's date.  I strongly urge you to find out who is going to be representing you at trial for the reasons I indicated.

Mr. Kadamovas, same situation.  If for any reason you -- and I will direct this to Mr. Weiss as well.  Mr. Kadamovas, if you conclude that you are not going to be able to retain counsel and wish to have counsel appointed, you are going to need to let this Court know promptly.  Do you understand that, that is, within the next week or two?

DEFENDANT KADAMOVAS:  Yes.

THE COURT:  In fact, I think what might be a good idea is to set Mr. Kadamovas's case only for a status conference on May 20.  That way if you are able to retain new counsel, new counsel can come in.  If you're not, then someone from the panel will be appointed, though it would be whoever is available on that date.  It won't be a choice.

So as to Mr. Kadamovas, we will set a status conference for May 20 at 1:30 p.m., and that's only for Mr. Kadamovas, but the status conference on June 3 for everyone.

MR. WEISS:  Do you want me to appear on May 20?

THE COURT:  I think that's a good idea.

MR. WEISS:  I will bring the discovery, which I already brought with me today, but I will bring the discovery on that day also.

THE COURT:  And hopefully there will be someone to hand it over to.  Mr. Weiss, maybe you could do us this courtesy, if you could let the Court know beforehand because it would affect whether we call up someone from the panel on that day.

MR. WEISS:  I will, Your Honor.

THE COURT:  Thank you.

My only question is whether it makes any sense to bring back Mr. Mikhel on the 20th to see where we stand.

Mr. Mikhel, I'm sorry if I am repeating myself.  I may have asked you this before.  Are you speaking with or making inquiries about other counsel?

DEFENDANT MIKHEL:  Yes.

THE COURT:  Okay.  Then let's do this.  Let's bring back both Mr. Mikhel -- no, I'm sorry.  I'm not going to do that.  I am going to give you some time to try to find counsel, and then we will just see you back here on June 3.

Okay, anything further if this matter?

MS. PETERSON:  Not from the government.

MR. BUEHLER:  No, Your Honor.

THE COURT:  Thank you very much, Counsel.

I'm sorry.  Mr. Mikhel, did you --

DEFENDANT MIKHEL:  I have a question.  Meanwhile, while I am working on my case myself, can I request the Court to give me permission to go to the law library?

THE COURT:  Well, actually, Mr. Mikhel, you haven't really been granted permission to represent yourself.  I am going to give you additional time to see if you can get counsel.  If you are unsuccessful and you want to make such a motion, we will have a separate hearing on that subject because I can't let you just do that on your own without making sure you are fully advised.

-oOo-

CERTIFICATE


I hereby certify that pursuant to Section 753, Title 28, United States Code, the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.


Date:   November 29, 2010



                          Sharon A. Seffens 11/29/10
                          _____
                          SHARON A. SEFFENS, U.S. COURT REPORTER