SEAN K. KENNEDY (145632)
Federal Public Defender
MICHAEL TANAKA (85026)
STATIA PEAKHEART (200363)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California  90012-4202
Telephone:  (213) 894-2854
michael_tanaka@fd.org
statia_peakheart@fd.org
SEAN J. BOLSER (250241)
Federal Capital Appellate Resource Counsel Project
Federal Defenders of New York
One Pierrepont Plaza – 16th Floor
Brooklyn, New York 11201
Telephone:  (718) 330-1200, x298
ATTORNEYS FOR IOURI MIKHEL

BENJAMIN L. COLEMAN (187609)
Coleman & Balough LLP
1350 Columbia Street, Suite 600
San Diego, California 92101
Telephone:  (619) 794-0420
blc@colemanbalogh.com
BARBARA E. O'CONNOR (142800)
O'Connor & Kirby, P.C.
174 Battery Street, 3rd Floor
Burlington, Vermont 05401
Telephone:  (802) 863-0112
barbara@kirbyoconnor.com
MARGARET O'DONNELL (KY 83889)
Attorney at Law
P.O. Box 4815
Frankfort, Kentucky 40604-4815
Telephone:  (502) 320-1837
mod@dcr.net
ATTORNEYS FOR JURIJUS KADAMOVAS

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff-Appellee, <br><br> v. <br><br> IOURI MIKHEL, JURIJUS KADAMOVAS, <br><br> Defendants-Appellants. | No. CR 02-220 SJO <br><br> **Unopposed Joint Ex Parte Application for Order Directing the Office of the Clerk to Permit Appellate Counsel to Obtain Copies of Criminal Justice Act Documents; Declaration of Counsel** <br><br> Proposed order lodged |

**DEATH PENALTY CASE**

Defendants-Appellants Iouri Mikhel and Defendant Jurijus Kadamovas, through their counsel, jointly move the Court for an Order directing the Office of the Clerk for the Central District of California to permit his undersigned appellate counsel, or any agent designated by appellate counsel, to scan into Portable Document Format ("PDF") all Criminal Justice Act vouchers filed by trial counsel and all orders and other documents relating to such vouchers, and/or obtain copies of CJA documents already in PDF format and maintained by the Clerk's Office [hereafter "CJA" or, collectively, "CJA trial documents"].  *Cf*. Local Civ. Rule 79-5.3 (Procedure for Disclosure of Confidential Court Records).

Initially the procedure for trial counsel to obtain funding was by an ex parte application filed under seal to the trial judge. (*See, e.g.,* Doc. 153 (Kadamovas' application for an order for CJA funds to purchase discovery materials from Copy Pro); Doc 156 (Order by Judge Manella granting Kadamovas use of CJA funds for discovery materials).)  However, those included the funding documents only through July 2005, when consideration of trial counsel's funding requests changed.  Thereafter, counsel was to submit their applications and CJA vouchers to this Court's CJA Supervising Attorney.  (*See* Doc. 775.)

In October 2011, this Court granted undersigned counsel leave to obtain copies of the underseal filings by all parties (Doc. 2259), which included trial counsel's pre-July-2005 CJA applications and the Court's responses to them.  Here, counsel seek the CJA documents submitted to the CJA Supervising Attorney, and the responses to them.

This order is necessary because trial counsel's files of the CJA documents are incomplete.

To ensure that the CJA trial documents are handled appropriately, counsel for Mikhel and Kadamovas **will maintain their status as documents under seal**. And, as with the sealed documents, counsel for Mikhel and Kadamovas agree that

only Mikhel will receive his/Mikhel's trial counsel's CJA trial documents, and only Kadamovas will receive his/Kadamovas' trial counsel's CJA trial documents.

Counsel met-and-conferred with counsel for the Government. The Government does not ojbect to this application. (*See* Declaration of Statia Peakheart, ¶ 2.)

This application is based on the following memorandum of points and authorities, the declaration of Statia Peakheart, and any pleadings and papers on file in this action.

Appellate counsel submit a proposed order concurrently with this notice and motion.

<div style="margin-left: 40%;">

Respectfully submitted,

SEAN J. BOLSER
Federal Capital Appellate Resource
   Counsel Project

SEAN K. KENNEDY
Federal Public Defender

DATED:  February 14, 2012    By  */S/STATIA PEAKHEART*
STATIA PEAKHEART
MICHAEL TANAKA
Deputy Federal Public Defenders

ATTORNEYS FOR IOURI MIKHEL

BENJAMIN L. COLEMAN
Coleman & Balogh LLP

BARBARA E. O'CONNOR
O'Connor & Kirby, P.C.

MARGARET O'DONNELL
Attorney at Law

ATTORNEYS FOR JURIJUS
KADAMOVAS

</div>

2

## MEMORANDUM OF POINTS AND AUTHORITIES

**A.     Relevant History**

In 2002, the Government indicted Iouri Mikhel, Jurijus Kadamovas and four others with counts related to five kidnapping/murders.  This Court appointed counsel for those six defendants, pursuant to the CJA.  (Docs. 80 (Kadamovas); 89 (Mikhel); 19 (Petro Krylov); 57 (Ainar Altmanis); 106 (Aleksejus Markovskis); 120 (Natalya Solovyeva).)[1]

Although Altmanis and Markovskis were eligible for the death penalty, the Government sought it against only Kadamovas, Krylov, and Mikhel.  In return, Altmanis and Markovskis testified against Mikhel and Kadamovas, and later against Krylov (his trial had been severed for reasons unrelated to the case-in-chief).  Mikhel and Kadamovas were sentenced to death; Krylov's jury rejected the death penalty and he was sentenced to life in prison without the possibility of release.

Krylov's appeal resulted in the affirmance of the judgments, Ninth Cir. No. 08-50033, and the United States Supreme Court denied his petition for writ of certiorari, Supr. Ct. No. 11-6996.  According to the Ninth Circuit's dockets, neither Altmanis, Markovskis, nor Solovyeva appealed the judgments.

The Ninth Circuit consolidated Mikhel's and Kadamovas' appeals.  (Ninth Cir. Nos. 07-99008 & 07-99009.)

In October 2011, undersigned counsel, with leave of this Court, obtained copies of trial counsel's ex parte/sealed funding applications, and the Court's responses to them. (*See, e.g.,* Doc. 153 (Kadamovas' application for an order for

---

[1]   The Court appointed **two** CJA counsel for all the defendants, except Altmanis.

Also, "Doc. #" refers to the document in this Court's docket, and the number assigned to the document.  Any other citations to a document from a court docket notes that Court's jurisdiction.

1

CJA funds to purchase discovery materials from Copy Pro); Doc 156 (Order by Judge Manella granting Kadamovas use of CJA funds for discovery materials).) However, those included only the funding documents through July 2005, when consideration of trial counsel's funding requests changed:  Thereafter, counsel was to submit their applications and CJA vouchers to this Court's CJA Supervising Attorney.  (*See* Doc. 775.)

Undersigned counsel's review of trial counsel's files reveals that counsel's records of the CJA trial documents are incomplete.  Undersigned counsel have obtained from the CJA office all the documents available to them, pursuant to The Guide to Judiciary Policy, Vol. 7, Part A, Chapter 5, § 520.40, which is only the total sums of representation.  So, counsel seek the sealed CJA documents submitted to the CJA Supervising Attorney, and the responses to them.

**B.      Mikhel's and Kadamovas' Rights to the Effective Assistance of Appellate Counsel Requires Counsel to Insure the Record Is Complete**

Mikhel and Kadamovas have the right to the effective assistance of appellate counsel.  *United States v. Sandoval-Lopez*, 409 F.3d 1193 (9th Cir. 2005); *United States v. Skurdal*, 341 F.3d 921 (9th Cir. 2003); *cf. Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 2674 (1984).  Pursuant to this obligation, appellate counsel have sought "to satisfy themselves independently that the official record of the proceedings is complete and to supplement it as appropriate."  ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases, Guideline 10.7, § B(2) (rev. ed. 2003).[2]  In doing so, counsel obtained and reviewed the reporter transcripts and the pleadings

---

[2]  *Wiggins v. Smith*, 539 U.S. 510, 123 S. Ct. 2527, 2536-37, 156 L. Ed. 2d 471 (2003), referred to these ABA's Guidelines with approval, referring to them as "well-defined norms," and "standards to which we long have referred as 'guides to determining what is reasonable' [attorney performance]."

2

counsel filed, the Government's and co-defendants' responses to them, and this Court's action, if any, to such pleadings. Appellate counsel's review also included examining the CJA vouchers submitted by trial counsel and the Courts' responses to them; Mikhel and Kadamovas' appellate counsel found the trial counsel's files of the CJA trial documents incomplete.

CJA trial documents are not "judicial" documents such that they are a part of the official court record of the case. *Cf. United States v. Gonzales*, 150 F.3d 1246, 1254-55 (10th Cir. 1998). Regardless, post-conviction counsel's review of Mikhel's and Kadamovas' CJA trial documents is necessary to adequate representation of them because these documents will inform counsel about, among other necessary information, trial counsel's plans for avenues of fact investigation and development; the composition of the defense team, including consultants' and experts' contributions to the defense; and, when and whether counsel received certain discovery.[3]

**1.  Counsel's access to Mikhel's and Kadamovas' CJA trial documents is necessary**

Mikhel and Kadamovas seek access to the sealed records concerning their own defenses at trial, and the attorneys, experts, and investigators employed on his behalf. Trial counsel have provided complete files to appellate counsel, but the billing records are incomplete. It is in Mikhel's and Kadamovas's interest to make this information available to their current counsel to effect the post-conviction litigation. The requested materials reflect the work done to both prepare and present a defense for their clients, so there is no confidentiality interest in keeping these records from them now. Without these records, present counsel have an

---

[3]  Here, trial counsel obtained the Government's discovery directly from the businesses that reproduced or copied it for counsel. (*See, e.g.,* Docs. 153 & 156.)

inadequate picture of work that may have already been performed on their client's behalf, or alternatively, what work was not performed.

**2.     Counsel's access to the co-defendants' CJA trial documents is necessary**

At the guilt phase of the trial, Altmanis, Markovskis and Solovyeva testified against Mikhel and Kadamovas, and later Krylov.  The Ninth Circuit has noted that,

> Defendants who accuse each other [at a joint trial] bring the effect of a second prosecutor into the case with respect to their codefendant.  In order to zealously represent his client, each codefendant's counsel must do everything possible to convict the other defendant.  The existence of this extra prosecutor is particularly troublesome because the defense counsel are not always held to the limitations and standards imposed on the government prosecutor.

*United States v. Tootick*, 952 F.2d 1078, 1082 (9th Cir. 1991).  Here, in exchange for their testimony, each entered negotiations with the Government that permitted them to escape eligibility for the death penalty.

These co-defendants' special relationship with the Government is "particularly troublesome" because the highest of stakes were at issue for all the defendants.  Indeed, the sealed court record that undersigned counsel has reviewed to date indicates that co-defendants' counsel informed the Court several times of the need for funding because of the negotiations with the Government (for one particular defendant, this was many, many times).  Without undersigned counsel reviewing the remaining documents, all involved – including the Government– in their clients' prosecutions and death sentences are aware of those activities and

4

negotiations except the two condemned appellants.  The important due process protections afforded capital defendants with respect to their right to have the opportunity to investigate and address potentially harmful information may be circumvented and violated by a co-defendant who has a clear incentive to make his co-defendant appear as culpable as possible.  *Gardner v. Florida*, 430 U.S. 349, 97 S. Ct. 1197, 51 L. Ed. 2d 393 (1977); *Lankford v. Idaho*, 500 U.S. 110, 124-25, 111 S. Ct. 1723, 114 L. Ed. 2d 173 (1991) (citing *Gardner v. Florida*; "a procedure for selecting people for the death penalty that permits consideration of secret information about the defendant is unacceptable.").  Effective assistance of appellate counsel and the full and fair consideration of the judgments of conviction and sentences of death, as required by the Fifth, Sixth and Eighth Amendments, mandates the Court permit undersigned counsel to review the CJA trial documents for the co-defendants.

Finally, these three defendants' judgments are final, none appealed, and none have sought § 2255 relief, thus, they can have no concern that Mikhel's and Kadamovas' counsel will "unduly intrude upon the privacy of [their] attorneys or . . . compromise defense strategies, investigative procedures, attorney work product, the attorney-client relationship or privileged information provided by the defendant or other sources." *Cf. Gonzales*, at 1265.[4]

**C.     Conclusion**

This Court should direct the Office of the Clerk for the Central District of California to permit his undersigned appellate counsel, or any agent designated by appellate counsel, to scan into PDF all Criminal Justice Act vouchers filed by trial

---

[4]   As for Krylov, until the jury rejected the death penalty and sentenced him to life in prison, his situation was as dire as Mikhel's and Kadamovas'.  Review of the CJA trial documents will comprise one measure of the effort undertaken by his successful trial counsel as one standard against which to measure the unsuccessful defense of Mikhel and Kadamovas.

counsel and all orders and other documents relating to such vouchers, and/or obtain copies of CJA documents already in PDF format and maintained by the Clerk's Office.

Respectfully submitted,

SEAN J. BOLSER
Federal Capital Appellate Resource
            Counsel Project

SEAN K. KENNEDY
Federal Public Defender

DATED:  February 14, 2012          By   /S/STATIA PEAKHEART
                                   STATIA PEAKHEART
                                   MICHAEL TANAKA
                                   Deputy Federal Public Defenders

                                   ATTORNEYS FOR IOURI MIKHEL


                                   BENJAMIN L. COLEMAN
                                   Coleman & Balogh LLP

                                   BARBARA E. O'CONNOR
                                   O'Connor & Kirby, P.C.

                                   MARGARET O'DONNELL
                                   Attorney at Law

                                   ATTORNEYS FOR JURIJUS
                                   KADAMOVAS

6

## DECLARATION OF STATIA PEAKHEART

I, Statia Peakheart, declare:

1.      I am an attorney licensed to practice law in the State of California, and I am admitted to practice before this Court.  I am a Deputy Federal Public Defender with the Office of the Federal Public Defender ("FPD").  The FPD assigned Michael Tanaka and me to represent Iouri Mikhel in this matter, along with Sean J. Bolser.  I have personal knowledge of the following, and I can, and would if called upon, testify to the truth and accuracy thereof.

2.      On Thursday February 9, 2012, I emailed counsel for the Government, Robert Dugdale, to ask his position on this request.  Mr. Dugdale replied that the Government does not oppose the application.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed this 14th day of February at Los Angeles, California.

> /s/ Statia Peakheart
> Statia Peakheart
> Deputy Federal Public Defender
> Counsel for Defendant-Appellant
> IOURI MIKHEL