COPY

RICHARD P. LASTING, (SBN 53950)
RPLasting@aol.com
1717 Fourth Street, 3rd Floor
Santa Monica, California 90401-3319
Telephone:   (310) 576-6242
Facsimile:    (310) 576-6247

SONIA E. CHAHIN (SBN 136604)
SEChahin@aol.com
Attorney At Law
2222 Foothill Boulevard, #E-278
La Canada, California  91011
Telephone (818) 549-0149
Facsimile (818) 549-0990

Attorneys  for Defendant
JURIJUS KADAMOVAS

FILED NUNC PRO TUNC 2/14/12

FILED
CLERK, U.S. DISTRICT COURT

MAR 15 2006

CENTRAL DISTRICT OF CALIFORNIA
BY ___ DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>IOURI MIKHEL et al.,<br><br>Defendants, | ) CR No. 02-220 (B) -NM<br>)<br>) DEFENDANT JURIJUS<br>) KADAMOVAS'  NOTICE OF<br>) MOTION; MOTION FOR A<br>) CONTINUANCE OF THE TRIAL<br>) DATE; MEMORANDUM OF POINTS<br>) AND AUTHORITIES;<br>) DECLARATION OF COUNSEL;<br>) EXHIBITS<br>)<br>) Hearing Date:   TBD<br>) Hearing Time:   TBD |

DUPLICATE

ORIGINAL

## TABLE OF CONTENTS

I.    INTRODUCTION AND STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . 3

II.   FACTORS WARRANTING A CONTINUANCE  . . . . . . . . . . . . . . . . . . 4

      a.    Factual and Legal  Complexity and  Seriousness of the Charges at Guilt and Penalty Phase . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      b.    Voluminous Nature of Discovery Materials and Time Required To Review Materials in Foreign Languages  . . . . . . . . . . . . . 5

      c.    Defense Counsel's Obligations and Responsibilities in Other District Court Cases . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

      d.    Severity of Penalty Sought and  Resources Available to All Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

III.  APPLICABLE LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

IV.   CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## TABLE OF AUTHORITIES

Avery v Alabama,
308 U.S. 444 (1940) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Lockett v. Ohio,
438 U.S. 586 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Powell v Alabama,
287 U.S. 45 (1932) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Strickland v. Washington,
466 U.S. 688 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Ungar v. Sarafite,
376 U.S. 575 (1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

United States v. Shirley,
884 F.2d 1130 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Dillon v. Duckworth,
751 F.2d 895 (7th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Newberry v. Wingo,
449 F.2d 344 (6th Cir. 1971) . . . . . . . . . . . . . . . . . . . . . . . . . . 10

United States v. Fessel,
531 F.2d 1275 (5th Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . 11

United States v. Gallo,
763 F.2d 1504 (6th Cir. 1985) cert. denied, 474 U.S. 1068 (1986) . . . . . . . 12

United States v. King,
664 F.2d 1171 (10th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . 12

United States v. Poston,
902 F.2d 90 (D.C. Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . 12

United States v. Verderame,
51 F.3d 249 (11th Cir.1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Fugate v. Commonwealth,
72 S.W. 2d 47 (Ky. 1934) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## RULES, STATUTES, AND OTHER AUTHORITIES

Fifth Amendment of the Constitution . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Sixth Amendment of the Constitution . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

RICHARD P. LASTING, (SBN 53950)
RPLasting@aol.com
1717 Fourth Street, 3rd Floor
Santa Monica, California 90401-3319
Telephone: (310) 576-6242
Facsimile: (310) 576-6247

SONIA E. CHAHIN (SBN 136604)
SEChahin@aol.com
Attorney At Law
2222 Foothill Boulevard, #E-278
La Canada, California 91011
Telephone (818) 549-0149
Facsimile (818) 549-0990

Attorneys for Defendant
JURIJUS KADAMOVAS

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR No. 02-220 (B) -NM |
| Plaintiff, | DEFENDANT JURIJUS KADAMOVAS' NOTICE OF MOTION; MOTION FOR A CONTINUANCE OF THE TRIAL DATE; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF COUNSEL; EXHIBITS |
| v. | |
| IOURI MIKHEL et al., | |
| Defendants, | |
| | Hearing Date:  TBD |
| | Hearing Time:  TBD |

TO: UNITED STATES ATTORNEY DEBRA WONG YANG AND ASSISTANT UNITED STATES ATTORNEYS ROBERT E. DUGDALE, SUSAN J. DE WITT, KAREN I. MEYER:

PLEASE TAKE NOTICE that on April 3, 2006, at 1:30 p.m., or at some other date to be set by this Court, defendant JURIJUS KADAMOVAS, by and through his counsel, Richard P. Lasting and Sonia E. Chahin, will bring on for hearing the following motion:

## MOTION

Defendant KADAMOVAS hereby requests that this Honorable Court grant a continuance of the trial date in this matter from July 11, 2006, to January 9,

4

2007, or as soon thereafter as the Court may be available. He also requests that this Honorable Court enter an order extending the dates related to the filing and hearing of all remaining Phase Four motions. According to the Court's order currently in place, the Phase Four motions are currently scheduled to be filed by April 17, 2006.

As further explained in the attached declaration of counsel, the basis for this request is defense counsel's need for additional time to prepare based on the complexity of the case, the voluminous amount of discovery materials, and the quantity of materials reviewed to date, and the substantial investigation and preparation which must be done to prior to the Capital trial in this matter. As further outlined in the attached declaration, defense counsel does not believe that she can be prepared to proceed in this matter on the current date trial date of July 11, 2006.

This motion is based upon the attached Memorandum of Points and Authorities, Exhibits, the Declarations of Counsel, all files and records in this case, and any such further information as may be adduced to the Court prior to ruling hereon.

Respectfully submitted,

DATED: March 15, 2006

SONIA E. CHAHIN
Attorney for Defendant
JURIJUS KADAMOVAS

RICHARD P. LASTING
Attorney for Defendant
JURIJUS KADAMOVAS

2

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### INTRODUCTION AND STATEMENT OF FACTS[1]

Defendant JURIJUS KADAMOVAS is presently pending trial before this Honorable Court on July 11, 2006, at 9:00 a.m. Defendant KADAMOVAS is charged in a Second Superceding Indictment with offenses which, if convicted, subject him to the Federal Death penalty. He is charged with Conspiracy to Engage in Hostage Taking Resulting in Death and three counts of Hostage Taking Result in Death related to the alleged abductions and subsequent murders of Meyer Muscatel, Rita Pekler, Alexander Umanksky, Nick Kharabadhze, and George Safiev. He is also charged with additional counts, including Conspiracy to Launder Money and a Conspiracy to Escape from Custody.

On August 3, 2004, the Government filed its Notice of Intent to Seek the Death Penalty Against Defendant JURIJUS KADAMOVAS. The Notice states that the Government proposes to prove that a sentence of death is justified based on the factors outlined therein, which include the following additional serious charges: Defendant KADAMOVAS' alleged participation in two additional uncharged foreign murders, and one additional hostage taking in Los Angeles county. The Notice states that the Government will seek to prove that Defendant KADAMOVAS participated in the hostage taking resulting in death of Anton Popsuy-Shapko in Istanbul Turkey in November of 2000; that he participated in the hostage taking resulting in death of Valery Papou, in Pathos

---

[1] The information contained in this section is based on the attached Declaration of Counsel.

3

6

Cyprus and elsewhere in November of 2001; and that he participated in the hostage taking of Armen Gyurdzhiyants in Los Angeles County in November of 2001. In sum, defendant KADAMOVAS must be prepared to defend himself at trial to charges alleging no less than 7 murders, two of which occurred outside of the United States, one hostage taking within the United States, in addition to the conspiracies described above.

Defense counsel Sonia E. Chahin was appointed to represent Mr. KADAMOVAS in this matter on November 28, 2005, after this Honorable Court relieved his prior attorney, Marcia Brewer, of her appointment. Mr. KADAMOVAS is also represented by Capital Counsel Richard Lasting. Based on the factors identified above, and further outlined below, both of Mr. KADAMOVAS' defense counsel have serious concerns regarding the adequacy of the time for pretrial preparation permitted to newly appointed counsel Sonia E. Chahin. Both counsel submit that in light of the current trial date, and the other complexities unique to this case, recently appointed counsel Sonia E. Chahin cannot be adequately prepared for the current trial date, and they are therefore requesting a six month continuance.

II.

FACTORS WARRANTING A CONTINUANCE

a.    Factual and Legal Complexity and Seriousness of the Charges at Guilt and Penalty Phase

Although the indictment charges only seven counts, the most serious charges at the heart of the indictment include 7 murders and one hostage taking. The fact that one indictment charges seven murders, without more, renders this case atypical in regard to the factual and legal complexities and the amount of preparation required prior to trial in this matter. Defendant' KADAMOVAS' preparation for trial will require that he be prepared to defend against each one of

those murders, in much the same manner as if he were tried in 7 separate murder cases. This complexity is further compounded because two of the killings alleged occurred outside of the United States, and therefore will require investigation outside of the country.

One demonstrable example of the resulting complexity based on the number of murders charged and the type of evidence which the Government will seek to present can be gleaned from reviewing the Government's Notice of Expert Witnesses.   In its 25 page notice, the Government advises that it will be calling the following types of experts at trial: a Mitochondrial DNA Expert, two Nuclear DNA Experts, a Trace Evidence Expert, two Handwriting Experts, two Fingerprint Experts, a Chemistry Expert, a Toolsmark Expert, four Coroners, a Forensic Dental Examination Expert, a Toxicologist, a Money Laundering Expert, a Russian Language Specialist, various  Forensic Audio, Video, and Image Analysts, various Cryptographic and Electronic Analysts and several Forensic Examiners from the Computer Analysis Response Team ("CART"). Defense counsel must not only review the discovery materials and reports prepared by these government experts, but must also determine whether any additional review or testing should be done by an expert hired by the defense.   If the case proceeds to trial in July 2006, as scheduled, recently appointed counsel will have only have had approximately 8 months to prepare for trial in this matter. Based on factual and legal complexities of the charges, and the other factors outlined herein, this amount of time is simply insufficient, and additional time is required.

      b.    Voluminous Nature of Discovery Materials and Time
            Required To Review Materials in Foreign Languages

To say that the discovery materials provided by the Government in this matter are voluminous seems quite insufficient to describe the magnitude of the

materials which defense counsel must review to prepare this case for trial. The documentary materials exceed 75,000 (seventy-five thousand) pages. These 75,000 pages, however, are simply a fraction of the total materials which defense counsel must review. Defense counsel has attached a 51 (fifty-one) page master index of the non-documentary discovery materials provided by the Government[2]. These other non-documentary discovery materials include CD ROMs, electronic media, floppy disks, information from numerous computer hard drives[3], as well as audiotapes, videotapes, and DVDs.

As best as defense counsel has been able to ascertain to date, the non-documentary discovery materials include the following: approximately 121 (one hundred and twenty-one) audiotapes, 139 (one hundred and thirty-nine) CD ROMS, 29 (twenty-nine) DVDs, 117(one hundred and seventeen) videotapes and information seized from the hard drives of numerous computers seized during the course of the investigation in this case. The quantity of information contained on each one of these pieces of media varies. For example, each one of the 139 CD ROMs provided, contains varying types and quantities of discovery materials, which may range from a few pictures, to several hundreds of pages of documents. As an illustrative example, one entry on page 25 of the 51 page index labeled 281-LA-229714-GJ-FA 72- Subpoenaed bank documents of

_____

[2]    See 51 page Master Discovery Index attached as Exhibit A

[3]    Although defense counsel has not been able to ascertain the volume of the materials contained on the computer hard drives, she would note that the Government requested each defense counsel to provide 19 computer hard drives ranging in size from 1 GB to 39 GB. Based on this request, defense counsel believes that the discovery materials also include information copied from 19 computer hard drives seized during the investigation. Further based on the information contained in the Government's Notice of Expert Witnesses, it is apparent the Government will seek to introduce information seized from these computer hard drives at the trial in this matter. Defense counsel's preparation therefore must also include review and analysis of the information on the 19 computer hard drives.

Mikhel, Kadamovas is a CD ROM containing 866 pages of financial documents. Another entry on page 39 of the index, labeled 281H-1B 350 consists of 2 CD ROMS containing telephone calls of Alexsejus Markovskis. These two CD ROMs contain 124 audio files of telephonic conversations of varying lengths. These 3 CD ROMs alone contain materials which would require a substantial amount of time to review, yet these are only 3 of the 139 CD ROMS which must be reviewed, without accounting for all the additional media described in the 51 page index.

Further, there are also additional materials which must be reviewed which are not contained in the 51 page Master Discovery index. These materials include the transcripts and DVD's of the depositions of Government witnesses Andrei Liapine, Andrei Agueev, and Konstantinos Tezhik. The Government has also advised the defendants that it possess additional materials which are available to be reviewed, which the Government does not consider the be relevant. These materials include 3 boxes of Jamaican Bank documents.

An additional complication related to the review of the discovery materials is that there are a substantial number of documents and audio conversations in several foreign languages. Defense counsel's review to date has identified conversations in Russian, as well as Latvian. While it is impracticable to have all of the non-English materials translated into English, it has been necessary for counsel to meet with the foreign language interpreters to attempt to identify the materials which are pertinent to the defense and must be translated. This in and of itself is a cumbersome and time consuming process which adds to the time required to prepare for trial in this matter.

Based on the sheer quantity of materials to be reviewed in preparation of trial, defense counsel cannot be prepared to proceed on the date currently set in this case. Defense counsel would note that at the time of her appointment in this

matter she was aware of the quantity of the documentary discovery materials in this matter, i.e. approximately 70,000 pages of documents, but she was not aware of the quantity of non-documentary discovery materials which form a large part of the discovery in this case. Further, even if defense counsel could somehow complete review of all of these materials prior to the July 11, 2006, trial date, there would be insufficient time for analysis of the materials, investigation and formulation of a theory of defense. A complete review of the discovery materials does not mark the completion of defense counsel's work, but rather the beginning. Indeed, based on the materials reviewed to date, defense counsel and Capital counsel have already identified substantial additional investigation which must be completed in this and in other countries.

Further, the preparation of this matter for trial requires a multi-tasking approach. Defense counsel's preparation cannot simply be limited to sitting in a room and reviewing the discovery-materials. Adequate preparation requires that time be devoted to numerous tasks simultaneously. These other tasks including meeting with Capital Counsel, meeting with paralegals and investigators, meeting with potential experts, meeting with the client to review discovery materials and discuss case status, conducting investigation, preparing motions and other filings, as well as traveling to view crime scenes and other remote locations.

Finally, defense counsel would also ask the Court to take into consideration that a substantial portion of the non-documentary discovery materials were only recently ordered from Copy Pro[4] and have yet to be reviewed by either counsel . Upon appointment, defense counsel Sonia E. Chahin spent

---

[4] As explained in a Declaration of Richard Lasting previously filed in conjunction with the Defendant's Request to Extend the Dates Related to the Filing of the Phase Three Motions, former counsel Marcia Brewer had undertaken the primary responsibility for obtaining the discovery materials from Copy Pro.

numerous hours organizing the discovery materials to ascertain whether all necessary discovery materials were included in the file obtained from prior counsel. That review disclosed that there were substantial additional discovery materials which needed to be obtained from Copy Pro and reviewed by both counsel in preparation of the trial in this matter. On January 16, 2006, defense counsel requested that Copy Pro duplicate additional discovery materials which included approximately 9 videotapes, 70 CD ROMS, and 505 pages of discovery materials. Although, Copy Pro gave counsel an estimate that it would take approximately 2 weeks to produce the materials, Copy Pro still has <u>not</u> provided all of the materials which were ordered on January 16, 2006. Based on the most recent conversation with the Owner/ manager of Copy Pro James Alegre, defense counsel were advised that all of the outstanding materials would be provided within the next week. Mr. KADAMOVAS submits that these facts further justify his request for additional time to prepare for trial.

  c. <u>Defense Counsel's Obligations and Responsibilities in Other District Court Cases</u>

Defense counsel are both dedicating themselves to this case and are working as quickly as possible to prepare for trial in this matter. However, it would be unrealistic to believe that counsel have no prior commitments or obligations to fulfill to other courts. In that regard, defense counsel Sonia E. Chahin, is scheduled to begin trial on May 30, 2006, before the Honorable Percy Anderson in another complex matter, alleging two homicides and other serious charges. Although Government counsel in that matter previously gave a trial estimate of three weeks, he has recently stated that his estimate may be longer. This is an additional basis for requesting a continuance in Mr. KADAMOVAS' case.

d.    Severity of Penalty Sought and  Resources Available to All Parties

As the Court is aware, the Government is seeking the ultimate penalty of death if Mr. KADAMOVAS is convicted of the charges alleged against him in this matter.  Further, the Government has had several years to prepare this case for trial and has three Assistant United States Attorneys assigned to assist in the prosecution of this case, as well as the assistance of numerous agents at their disposal to assist in the investigation.  Under all of the circumstances described above, Mr. KADAMOVAS submits that it is not unreasonable that he be granted an additional six moths to prepare for the trial in this matter.

## III.
## APPLICABLE LAW

The trial court has discretion to grant a defendant's request to continue a previously-scheduled trial date where it finds the interests of justice require such a continuance.  Factors the court may consider in determining whether such a continuance is necessary are: (1) the extent of the defendant's diligence in readying a defense; (2) the likelihood the continuance would have satisfied the defendant's need; (3) the inconvenience to the court; (4) the extent to which the defendant may be harmed if no continuance is granted.  United States v. Shirley, 884 F.2d 1130, 1134 (9th Cir. 1989)

The right to "due process of law", as guaranteed in the Fifth Amendment, and to "have the assistance of counsel", as stated in the Sixth Amendment, have been interpreted to mean effective assistance of counsel. See, Newberry v. Wingo, 449 F.2d 344 (6th Cir. 1971). It is not an accident that the Supreme Court has often addressed the issue of the effectiveness of counsel in the context of capital cases. See Strickland v. Washington, 466 U.S. 688 (1984).

13

To render effective assistance of counsel, there must be adequate time to prepare for a case. See Powell v Alabama, 287 U.S. 45 (1932). The duty to appoint counsel "is not discharged by an assignment at such time or under such circumstances as to preclude the giving of effective aid in the preparation and trial of the case." Id. The Supreme Court has said that while "the Constitution nowhere specifies any period which must intervene between the required appointment of counsel and trial, the denial of opportunity for appointed counsel to confer, to consult with the accused and to prepare his defense, could convert the appointment of counsel into a sham and nothing more than a formal compliance with the Constitution's requirement that an accused be given the assistance of counsel." Avery v Alabama, 308 U.S. 444, 446 (1940). See generally Dillon v. Duckworth, 751 F.2d 895 (7th Cir. 1985) (trial judge arbitrarily denied defense counsel's request for continuance, supported by affidavit attesting to his own incompetence, due to inexperience and personal crisis, and so abrogated petitioner's right to effective assistance of counsel that a retrial was warranted in capital murder case); United States v. Fessel, 531 F.2d 1275 (5th Cir. 1976) (refusal to grant continuance to permit defendant to secure materials necessary to insanity defense warranted reversal where continuance would have permitted defendant to secure his psychiatric records).

Obtaining time to properly prepare for representing a person facing death is essential. The necessary review of the materials, investigation, and preparation cannot be accomplished without the an additional time requested. Defense counsel face difficult and time-consuming tasks in capital cases. Since a person's life is at stake, counsel are required to exhaustively explore every factual and legal aspect of the "defendant's character...and any of the circumstances of the offense..." Lockett v. Ohio, 438 U.S. 586, 604 (1978), preparing in effect for two trials. A capital trial is different from all other cases, not just by degree, but by kind. In Ungar v. Sarafite, 376 U.S. 575

11

(1964), the Supreme Court explained:

> The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel.... Contrariwise, a myopic insistence upon expeditiousness in the face of justifiable request for delay can render the right to defense with counsel an empty formality... Id. at 849-50.

Denial of a motion for continuance raises constitutional concerns "if there is an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay." United States v. Gallo, 763 F.2d 1504, 1523 (6th Cir. 1985) (citation omitted), cert. denied, 474 U.S. 1068 (1986). See, e.g., United States v. King, 664 F.2d 1171, 1173 (10th Cir. 1981); United States v. Verderame, 51 F.3d 249 (11th Cir.1995); see also United States v. Poston, 902 F.2d 90, 96 (D.C. Cir. 1990) ("denial of a continuance to allow new counsel to prepare implicates the sixth amendment right to counsel.").

The granting of a continuance and affording reasonable time for preparation is "of special importance where the accused is represented by appointed counsel" in a capital case. Fugate v. Commonwealth, 72 S.W. 2d 47, 48 (Ky. 1934)

In this case, based on all of the factors outlined in Section I above, a continuance of the currently scheduled trial date is warranted in this matter. The primary concern that drives this request is defense counsel's need for sufficient enough time to adequately review the discovery materials, prepare a defense, and provide "effective assistance of counsel." See Strickland v. Washington, 466 U.S. 688 (1984).

## IV.
## CONCLUSION

For all of the foregoing reasons, defendant JURIJUS KADAMOVAS, hereby requests that this Honorable Court grant a continuance of the trial date in this matter from July 11, 2006, to January 9, 2007. He also requests that this Honorable Court enter an order extending the dates related to the filing and hearing of all remaining Phase Four motions.

Respectfully submitted,

DATED: March 15, 2006

SONIA E. CHAHIN
Attorney for Defendant
JURIJUS KADAMOVAS

RICHARD P. LASTING
Attorney for Defendant
JURIJUS KADAMOVAS

13

## CERTIFICATE OF SERVICE

I, Sonia E. Chahin hereby state and declare:

That I am employed in the County of Los Angeles, State of California; that my business address is 2222 Foothill Blvd., #E-278, La Canada, California 91011; that I am over the age of eighteen and not a party to the within entitled action; that I am a member of the bar of this Court.

On March 15 2006, I served a copy of:

**DEFENDANT JURIJUS KADAMOVAS' NOTICE OF MOTION; MOTION FOR A CONTINUANCE OF THE TRIAL AND EXTENDING THE DATE FOR FILING THE PHASE FOUR MOTIONS**

Service was:

[ ]   Placed in a sealed envelope and mailed via United States Mail, addressed as follows:
[x]   By hand delivery addressed as follows:
[ ]   By facsimile as follows:
[ ]   By messenger as follows:

AUSA Robert E. Dugdale
AUSA Susan Dewitt
1500 United States Courthouse
312 North Soring Street
Los Angeles, CA 90012

Service was:

[ ]   Placed in a sealed envelope and mailed via United States Mail, addressed as follows:
[ ]   By hand delivery addressed as follows:
[ ]   By facsimile as follows:
[x]   By e-mail as follows

Michael M. Crain, Esq. (Capital Counsel)
Law Offices
P.O. Box 3730
Santa Monica, CA 90408
(310) 571-3324 Office
(310) 571-3354 FAX
michaelmcrain@aol.com

SEE ATTACHED SERVICE LIST

This Certificate is executed on March 15, 2006, at Glendale, California. I certify under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

SONIA E. CHAHIN

United States v. Gilbert Saldana et al.
CR No. 04-415(A)-PA

Richard Lasting (Capital Counsel)
1717 4th Street, Suite 300
Santa Monica, CA 90401
(310) 576-6242 Office
(310) 576-6247 FAX
RPLasting@sbcglobal.net

Dale M. Rubin, Esq. (Capital Counsel)
Law Offices
2275 Huntington Drive, Suite 902
San Marino, CA 91108
(800) 695-3717 Office
(413) 228-0521 FAX
drubin@socal.rr.com

Richard Callahan, Esq.
230 E. Colorado Blvd., Suite 1200
Pasadena, CA 91101
(626) 202-4060 Office
(626) 794-4676 FAX
rmcallahanjr@earthlink.com

David R. Evans, Esq. (Capital Counsel)
202 South Lake Avenue, Suite 230
Pasadena, CA 91101
(626) 432-5100 Office
(626) 432-5110 FAX
drlbrty@sbcglobal.net

George W. Buehler, Esq.
350 S. Grand Avenue, Suite 3900
Los Angeles, CA 90071
(213) 625-3900 Office
(213) 625-1600 FAX
buehler@geragos.com

Terry Amdur, Esq.
1939 Rose Villa Street
Pasadena, CA 91107
(626) 449-9254 Office
(626) 568-1277 FAX
tamdur@msn.com

## DECLARATION OF SONIA E. CHAHIN

I, Sonia E. Chahin, hereby state and declare as follows:

1. I am an attorney in the Central District of California appointed to represent defendant JURIJUS KADAMOVAS in the above entitled action.

2. Mr. Kadamovas is charged with offenses that potentially subject him, if convicted, to the death penalty. The Attorney General of the United States has authorized the seeking of the death penalty against the defendant.

3. I was appointed to represent Mr. KADAMOVAS in this matter on November 28, 2005, after this Honorable Court relieved his prior attorney, Marcia Brewer, of her appointment. Mr. KADAMOVAS is also represented by Capital Counsel Richard Lasting.

4. I have prepared this declaration in support of a request that this Honorable Court grant a continuance of the trial date in this matter from July 11, 2006, to January 9, 2007 and enter an order extending the dates related to the filing and hearing of all remaining Phase Four motions.

5. Based on the factors identified in the motion, Richard Lasting and I both have serious concerns regarding the adequacy of the time for pretrial preparation permitted to me if the case proceeds as currently scheduled on July 11, 2006. I believe that in light of the current trial date, and the other complexities unique to this case, I cannot be adequately prepared for the current trial date, and they are therefore requesting a six month continuance.

6. I believe that the fact that this one indictment charges seven murders, without more, renders this case atypical in regard to the factual and legal complexities and the amount of preparation required prior to trial in this matter.

7. The Government has filed its Notice of Expert Witnesses which states that it will be calling the following types of experts at trial: a Mitochondrial DNA

Expert, two Nuclear DNA Experts, a Trace Evidence Expert, two Handwriting Experts, two Fingerprint Experts, a Chemistry Expert, a Toolsmark Expert, four Coroners, a Forensic Dental Examination Expert, a Toxicologist, a Money Laundering Expert, a Russian Language Specialist, various Forensic Audio, Video, and Image Analysts, various Cryptographic and Electronic Analysts and several Forensic Examiners from the Computer Analysis Response Team ("CART"). For purposes of preparation, defense counsel must not only review the discovery materials and reports prepared by these government experts, but must also determine whether any additional review or testing should be done by an expert hired by the defense. If the case proceeds to trial in July 2006, as scheduled, I will have only have had approximately 8 months to prepare for trial in this matter. Based on factual and legal complexities of the charges, and the other factors outlined herein, this amount of time is simply insufficient, and additional time is required.

8. Defense counsel must review voluminous materials to prepare this case for trial. The documentary materials exceed 75,000 (seventy-five thousand) pages. These 75,000 pages, however, are simply a fraction of the total materials which defense counsel must review. The attached 51 (fifty-one) page master index of the non-documentary discovery materials was provided by the Government. The list identifies the other non-documentary discovery materials which include CD ROMs, electronic media, floppy disks, information from numerous computer hard drives, as well as audiotapes, videotapes, and DVDs.

9. As best as I have been able to determine, the non-documentary discovery materials include the following: approximately 121 (one hundred and twenty-one) audiotapes, 139 (one hundred and thirty-nine) CD ROMS, 29 (twenty-nine) DVDs, 117(one hundred and seventeen) videotapes and information seized from the hard drives of numerous computers seized during the course of the investigation in this case. The quantity of information contained on each one of

-2-

these pieces of media varies.  For example, each one of the 139 CD ROMs provided, contains varying types and quantities of discovery materials, which may range from a few pictures, to several hundreds of pages of documents.  As an illustrative example, one entry on page 25 of the 51 page index labeled 281-LA-229714-GJ-FA 72- Subpoenaed bank documents of Mikhel, Kadamovas is a CD ROM containing 866 pages of financial documents.  Another entry on page 39 of the index, labeled 281H-1B 350 consists of 2 CD ROMS containing telephone calls of Alexsejus Markovskis.  These two CD ROMs contain 124 audio files of telephonic conversations of varying lengths.  These 3 CD ROMs alone contain materials which would require a substantial amount of time to review, yet these are only 3 of the 139 CD ROMS which must be reviewed, without accounting for all the additional media described in the 51 page index.

10.    Although I have not been able to ascertain the volume of the materials contained on the computer hard drives, based on my review of the discovery letters, I have seen that the Government requested each defense counsel to provide 19 computer hard drives ranging in size from 1 GB to 39 GB.  Based on this request, I believe that the discovery materials also include information copied from 19 computer hard drives seized during the investigation.  Further based on the information contained in the Government's Notice of Expert Witnesses, it appears that the Government will seek to introduce information seized from these computer hard drives at the trial in this matter.  Therefore I believe that my preparation must also include review and analysis of the information on the 19 computer hard drives.

11.    I have also determined that there are also additional materials which must be reviewed which are not contained in the 51 page Master Discovery index.  These materials include the transcripts and DVD's of the depositions of Government witnesses Andrei Liapine, Andrei Agueev, and Konstantinos Tezhik.  The Government has also advised the defendants that it possess additional

- 3 -

materials which are available to be reviewed, which the Government does not consider the be relevant. These materials include 3 boxes of Jamaican Bank documents.

12. An additional complication related to the review of the discovery materials is that there are a substantial number of documents and audio conversations in several foreign languages. My review to date has identified conversations in Russian, as well as Latvian. While it is impracticable to have all of the non-English materials translated into English, it has been necessary for Richard Lasting and I to meet with a foreign language interpreter to attempt to identify the materials which are pertinent to the defense and must be translated. This in and of itself is a cumbersome and time consuming process which adds to the time required to prepare for trial in this matter.

13. Based on the sheer quantity of materials to be reviewed in preparation of trial, I do not believe I can be prepared to proceed on the date currently set in this case. At the time of my appointment in this matter, I was aware of the quantity of the documentary discovery materials in this matter, i.e. approximately 70,000 pages of documents, but I was not aware of the quantity of non-documentary discovery materials which form a large part of the discovery in this case. Further, even if I could somehow complete review of all of these materials prior to the July 11, 2006, trial date, there would be insufficient time for analysis of the materials, investigation and formulation of a theory of defense. A complete review of the discovery materials does not mark the completion of my work, but rather the beginning. Indeed, based on the materials reviewed to date, Richard Lasting and I have already identified substantial additional investigation which must be completed in this and in other countries.

14. Further, the preparation of this matter for trial requires a multi-tasking approach. My preparation cannot simply be limited to sitting in a room

- 4 -

and reviewing the discovery materials. Adequate preparation requires that time be devoted to numerous tasks simultaneously. These other tasks including meeting with Capital Counsel, meeting with paralegals and investigators, meeting with potential experts, meeting with the client to review discovery materials and discuss case status, conducting investigation, preparing motions and other filings, as well as traveling to view crime scenes and other remote locations.

15. I would also ask the Court to take into consideration that a substantial portion of the non-documentary discovery materials were only recently ordered from Copy Pro[1] and have yet to be reviewed by either counsel . Upon appointment, I spent numerous hours organizing the discovery materials to ascertain whether all necessary discovery materials were included in the file obtained from prior counsel. That review disclosed that there were substantial additional discovery materials which needed to be obtained from Copy Pro and reviewed by both counsel in preparation of the trial in this matter. On January 16, 2006, Richard Lasting and I requested that Copy Pro duplicate additional discovery materials which included approximately 9 videotapes, 70 CD ROMS, and 505 pages of discovery materials. Although, Copy Pro gave counsel an estimate that it would take approximately 2 weeks to produce the materials, Copy Pro still has not provided all of the materials which were ordered on January 16, 2006. Based on the most recent conversation I had with the Owner/ manager of Copy Pro James Alegre, I was advised that all of the outstanding materials would be provided within the next week.

16. I am working as quickly as possible to prepare for trial in this matter, but I do have prior commitments and obligations to fulfill to other courts. In that

---

[1] As explained in a Declaration of Richard Lasting previously filed in conjunction with the Defendant's Request to Extend the Dates Related to the Filing of the Phase Three Motions, former counsel Marcia Brewer had undertaken the primary responsibility for obtaining the discovery materials from Copy Pro.

regard, I am scheduled to begin trial on May 30, 2006, before the Honorable Percy Anderson in another complex matter, alleging two homicides and other serious charges.

17.    For all the foregoing reasons, I am hereby requesting that this Honorable Court grant a continuance of the trial date in this matter from July 11, 2006, to January 9, 2007. I am also requesting that the Court enter an order extending the dates related to the filing and hearing of all remaining Phase Four motions.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge. Executed this _15_ day of March of 2006, at Glendale, California.

SONIA E. CHAHIN

**EXHIBIT A**

# MASTER SET

upctaka
~~1/08/05~~
1/9/06

## 281H-LA-229714

1A 149: PHOTOGRAPHS & NEGATIVES DOCUMENTING THE SEARCH OF: 2002
MERCEDES M155 VIN 4JGAB74E62A290234

1A 150: PHOTOGRAPHS & NEGATIVES DOCUMENTING THE SEARCH OF 1992
NISSAN QUEST VIN 4N2DN11W2PD801010

1A 151: PHOTOGRAPHS & NEGATIVES DOCUMENTS THE SEARCH OF BMW 850I
VIN WBAEG2310NCB74240

1A 152: PHOTOGRAPHS & NEGATIVES DOCUMENTING THE SEARCH OF JEEP
CHEROKEE SPORT VIN NUMBER 1J4FT6880SL616836

1A 153: PHOTOGRAPHS & NEGATIVES DOCUMENTING THE SEIZURE &
TRANSPORT OF 2002 MERCEDES ML55-VIN 4JGAB74E62A290234
1992 NISSAN QUEST VIN 4N2DN11W2PD801010

1A 158: PHOTOS FROM SURVEILLANCE 02/17/02 VENTURA BLVD ENCINO CA

1A 172: ONE SET PHOTOGRAPHS AND ARREST OF NEGATIVES FOR AUTOPSY
OF JOHN DOE, CONDUCTED AT THE STOCKTON MORGUE

1A 175: PHOTOGRAPHS & NEGATIVES OF THE SEARCH OF THE TURNOUT AT
NEW MELONES RD & HWY 49 ON 03/01/02

1A 178: 1 ROLL OF FILM, 1 SET OF PHOTOS & 1 PHOTO LOG OF THE 2ND
BODY RECOVERED AT NEW MELONES RESERVOIR AT THE HWY 49
BRIDGE ON 3/17/02 (PHOTOS OF BODY BEING RECOVERED)

1A 179: PHOTO LOG, NEGATIVES, 1 SET OF PHOTOGRAPHS OF AUTOPSY
-UNSUB#1; ROLL NUMBER 3

1A 180: PHOTO LOG, NEGATIVES AND 1 SET OF PHOTOS OF AUTOPSY ON
UNSUB#1; ROLL NUMBER 2

1A 181: PHOTO LOG, NEGATIVES AND 1 SET OF PHOTOS OF AUTOPSY ON
UNSUB#1 AND #2; ROLL #1

1A 182: PHOTO LOG, NEGATIVE, 1 SET OF PHOTOS OF BODY-UNSUB #3 AT
MORGUE

1A 183: ONE SET OF PHOTOGRAPHS & ONE SET OF NEGATIVES OF AUTOPSY
FOR JANE DOE #1, CONDUCTED AT STOCKTON MORGUE; ROLL#4

1A 186: PHOTO LOG, 1 SET OF PHOTOS, NEGATIVES FROM BODY RECOVERY,
NEW MELONES LAKE, PARROTS FERRY BRIDGE

1A 187: ONE SET OF PHOTOGRAPHS AND ONE SET OF NEGATIVES FOR
AUTOPSY OF JANE DOE, CONDUCTED AT THE STOCKTON MORGUE;
ROLL# 5

26

1A 188: ONE SET OF PHOTOGRAPHS AND ONE SET OF NEGATIVES FOR AUTOPSY OF JANE DOE #1, CONDUCTED AT THE STOCKTON MORGUE ROLL#6

1A 189: 1 SET PHOTOS, PHOTO LOG & NEGATIVES ON BODY RECOVERY AT NEW MELONES RESERVOIR PARROTS FERRY BRIDGE ON 3/18/02

1A 190: PHOTO LOG, 1 SET OF PHOTOGRAPHS AND NEGATIVES FROM BODY RECOVERY, PARROTS FERRY BRIDGE, NEW MELONES LAKE-MORGUE

1A 191: PHOTO LOG, NEGATIVES & 1 SET OF PHOTOS OF AUTOPSY OF UNSUB#2; ROLL #5

1A 192: PHOTO LOG, NEGATIVES & 1 SET OF PHOTOGRAPHS OF AUTOPSY, UNSUB #1 & #2; ROLL #4

1A 193: 2 ROLLS OF FILM & 1 SET OF PRINTS & PHOTO LOGS-OF THE RECOVERY OF THE 1ST BODY AT NEW MELONES RESERVOIR AT THE HWY 49 BRIDGE

1A 194: ONE SET OF PHOTOGRAPHS AND NEGATIVES OF AUTOPSY FOR JOHN DOE #3, CONDUCTED AT STOCKTON MORGUE; ROLL #3

1A 195: ONE SET OF PHOTOS AND ONE SET OF NEGATIVES FOR AUTOPSY OF JOHN DOE #3, CONDUCTED AT THE STOCKTON MORGUE; ROLL #7

1A 196: ONE SET OF PHOTOS AND ONE SET OF NEGATIVES FOR AUTOPSY OF JOHN DOE #3, CONDUCTED AT THE STOCKTON MORGUE; ROLL 5

1A 217: PHOTOS OF FLEX CUFF (BROKEN) FOUND NEAR NEW MELONES LAKE

1A 218: PHOTOS OF 3RD SUBJECT RECOVERED FROM NEW MELONES LAKE (NEGATIVES INCLUDED)

1A 219: PHOTOS OF FIRST SUBJECT RECOVERED FROM NEW MELONES LAKE (NEGATIVES INCLUDED)

1A 246: PHOTOS-SEARCH OF 2001 YUKON-UMANSKY; ONE OF TWO

1A 247: PHOTOS-SEARCH OF 2001 YUKON-UMANSKY; TWO OF TWO

1A 249: PHOTOS AND NEGS OF SEARCH WARRANT EXECUTED AT 1243 NORTH MANSFIELD AVENUE, APT 6, LOS ANGELES, CA 2/19/02

1A 264: PHOTOS OF 4320 MAMMOTH # 103 SHERMAN OAKS, CA; 2 OF 2

1A 265: PHOTOS OF 4320 MAMMOTH #103 SHERMAN OAKS, CA

1A 266: SEARCH PHOTOS OF RED LINCOLN TOWN CAR CA LIC PLATE 35N2009

1A 267: PHOTOS OF WHITE LINCOLN NAVIGATOR WITH LIC PLATE 4NRY544 FROM SEARCH

27

1A 291: PHOTOS-SEARCH OF DABBS RESIDENCE

1A 302: FILM DEVELOPED FROM EVIDENCE, HOME OF IOURI MIKHEL

1A 303: FILM DEVELOPED FROM EVIDENCE, HOME OF IOURI MIKHEL

1A 304: FILM DEVELOPED FROM EVIDENCE; HOME OF IOURI MIKHEL

1A 305: FILM DEVELOPED FROM EVIDENCE, HOME OF IOURI MIKHEL

1A 306: FILM DEVELOPED FROM EVIDENCE, HOME OF IOURI MIKHEL

1A 307: FILM DEVELOPED FROM EVIDENCE, HOME OF IOURI MIKHEL

1A 308: FILM DEVELOPED FROM EVIDENCE, HOME OF IOURI MIKHEL

1A 309: FILM DEVELOPED FROM EVIDENCE, HOME OF IOURI MIKHEL

1A 310: FILM DEVELOPED FROM EVIDENCE, HOME OF IOURI MIKHEL

1A 311: FILM DEVELOPED FROM EVIDENCE , HOME OF IOURI MIKHEL

1A 312: FILM DEVELOPED FROM EVIDENCE, HOME OF IOURI MIKHEL

1A 313: FILM DEVELOPED FROM EVIDENCE, HOME AT IOURI MIKHEL

1A 314: FILM DEVELOPED FORM EVIDENCE HOME OF IOURI MIKHEL

1A 315: FILM DEVELOPED FROM EVIDENCE, HOME OF IOURI MIKHEL

1A 316: FILM DEVELOPED FROM EVIDENCE, HOME OF IOURI MIKHEL

1A 320: PHOTOS DURING SURVEILLANCE OF ALTMANIS IS, KADAMOVAS AND KRYLOV ON 2/18/02

281H-LA-229714-1B

1B Evidence @ Copy Pro (Photo A)

1B-12:      (Photo of Original) PHOTOGRAPH OF ENVELOPE SEIZED FROM
            WESLIN, ENCINO, CA, WITH "(818) 259-1740" WRITTEN ON
            IT.

1B-291: ·   (Photo of original) SAFIEV'S DRIVER'S LICENSE

1B-292:     (Photos of original) VISA CARD - SAFIEV (front/back)

1B-294:     (Photos of original) WALLET (inside/outside)

1B-295:     (Photo of original) PLASTIC BAG

1B-296:     (Photo of original) KHARABADZE DRIVER'S LICENSE

1B-297:     (Photos of original) AMERICAN EXPRESS CARD - SAFIEV
            (front/back)

281H-LA-229714

1B Evidence @ Copy Pro (Photo B)

1B-34:     Item 48-(Photo of original) DUBAI BANK INSTRUCTIONS USED DURING UMANSKY'S KIDNAPPING

1B-42:     Item 30-(Photo of original) HANDWRITTEN NOTE WITH MONEY BREAKDOWN INCLUDING "PETRO" (P1/P2)

1B-42:     Item 69-(Photos (2) of original) COPY OF THOMAS GUIDE MAP/WOODMAN AND VENTURA MARKED

1B-52:     Item 3-(Photos of original) HANDWRITTEN NOTE W/EMAIL ADDRESS; "RAUL135" AND "EOTLEM" & FAX #'S & 095 PHONE #'S ON BACK (front/back)

1B-52:     Item 5-(Photo of original) HANDWRITTEN RANSOM NOTE IN RUSSIAN

1B-52:     Item 6-(Photo of original) HANDWRITTEN LIST WITH NAMES OF GEORGIOS SAFIEV'S BANK ACCOUNTS, ACCOUNT #'S AND PINS

1B-52:     Item 7-(Photo of original) HANDWRITTEN LIST WITH W/SAFIEV'S NAME & LA & FOREIGN ADDRESSES

1B-52:     Item 8-(Photo of original) HANDWRITTEN LIST WITH NICK KHARABADZE'S ADDRESSES & PHONE #'S

1B-52:     Item 9-(Photo of original) HANDWRITTEN NOTE W/NAME URAL VISHNEVSKY, RON SHELTON, AND STRINGFELLOW

1B-52:     Item 17-(Photos of original) QUALEX CUSTOMER RELATIONS ACTION REQUEST RECEIPT FOR ALEX BENDER 23523 CALVERT ST., (310) 993-6748, FOR FILM DEVELOPING & TEAR OFF RECEIPT

1B-113:    Item 14-(Photo of original) THOMAS GUIDE MAP PAGE WITH "MARGARITA" MARKED AND ADDRESS OF "222559 MARGARITA" AND CAR MAKES ON BACK (back only)

1B-119:    Item 14-(Photo of original) PAPER WITH "CREDIT AGRICOLE INDOSUEZ SA ZURICH SWITZERLAND 14.02.02" WRITTEN ON IT

281H-LA-229714

1B Evidence @ Copy Pro (Photo C)

1B-197:    (Photos (3) of Original) CROSS-CHAIN/KHARABADZE

1B-188:    (Photo of Original) 45 LB. WEIGHT/KHARABADZE

1B-212:    (Photo of Original) ROPE/UMANSKY

1B-211:    (Photos (2) of Original) FLEX CUFF-RIGHT LEG/UMANSKY

1B-206:    (Photos (2) of Original) ROPE/SAFIEV

1B-200:    (Photos (2) of Original) FLEX CUFF-ANKLE/SAFIEV

1B-222:    (Photos (2) of Original) 25 LB WEIGHT/PEKLER

1B-221:    (Photo of Original) ROPE/PEKLER

1B-221:    (Photos (2) of Original) ROPE-WEIGHT/PEKLER

1B-220:    (Photos (2) of Original) RECOVERY ROPE/PEKLER

1B-206:    (Photos (2) of Original) ROPE/KHARABADZE

1B-200:    (Photos (2) of Original) FLEX CUFF/KHARABADZE

1B-224:    (Photos (3) of Original) ROPE-WRISTS-ARMS/PEKLER

1B-65:    (Photos (2) of Original) TWO (2) RIFLES

1B-64:    (Photos (2) of Original) TWO (2) RIFLES

1B-63:    (Photo of Original) AIR RIFLE

1B-61:    (Photo of Original) MOSSBERG 12 GAUGE

1B-62:    (Photo of Original) REMINGTON RIFLE W/SCOPE

1B-54:    (Photo of Original) WALTHER .380

1B-53:    (Photo of Original) H&K .45 CALIBER

1B-50:    (Photo of Original) BERRETTA 9MM

1B-49:    (Photo of Original) SIG SAUER .40

1B-48:    (Photo of Original) GLOCK 22 CONVERSION KIT

1B-47:    (Photo of Original) GLOCK 19/22/23 CONVERSION KIT

1B-46:    (Photo of Original) TAURUS .38 CALIBER REVOLVER

31

1B-45:      (Photo of Original) RAVEN .25 CALIBER

1B-44:      (Photo of Original) GLOCK .45 CALIBER

1B-88:      (Photo of Original) SMITH & WESSON .38 SPECIAL

1B-84:      (Photo of Original) RUGER P89DC w/MAG

1B-60:      (Photo of Original) GLOCK 23 w/HOLSTER

1B-59:      (Photo of Original) SMITH & WESSON 9mm

1B-58:      (Photo of Original) COLT .380

1B-57:      (Photo of Original) SIG SAUER P226

1B-56:      (Photo of Original) H&K 9mm

1B-55:      (Photo of Original) BERETTA

1B-294:     (Photo of Original) WALLET REC'D FROM PANIOUCHKINE

1B-295:     (Photo of Original) PLASTIC BAG REC'D FROM PANIOUCHKINE

1B-314:     (Photo of Original) PLASTIC CUFF FOUND AT COLUMBIA INN

1B-176:     (Photo of Original) HEATER (BOX ONLY)

1B-175:     (Photo of Original) Item 3-PLASTIC TIES

1B-175:     (Photo of Original) Item 3-PLASTIC TIES

1B-175:     (Photo of Original) Item 23-ROPE

1B-175:     (Photo of Original) Item 23-ROPE

1B-140:     (Photo of Original) TARP

1B-148:     (Photo of Original) CARDBOARD

1B-177:     (Photo of Original) 23 AUDIO TAPES

1B-154:     (Photo of Original) HEATER

1B-240:     (Photo of Original) Item 1,2,3-PEKLER's ROBE, NAIL
            FILE, and HAIR BAND

1B-240:     (Photo of Original) Item 1-PEKLER's ROBE

1B-126:     (Photo of Original) DVD SCREEN

1B-126:     (Photo of Original) DVD SCREEN

```
1B-125:   (Photo of Original) DVD SCREEN

1B-125:   (Photo of Original) DVD SCREEN

1B-124:   (Photo of Original) DVD SCREEN

1B-124:   (Photo of Original) DVD SCREEN

1B-124:   (Photo of Original) DVD SCREEN

1B-121:   (Photo of Original) DVD SCREEN

1B-121:   (Photo of Original) DVD SCREEN

1B-122:   (Photo of Original) DVD SCREEN

1B-122:   (Photo of Original) DVD SCREEN

1B-123:   (Photo of Original) DVD SCREEN

1B-123:   (Photo of Original) DVD SCREEN

1B-248:   (Photo of Original) ITEMS FROM MUSCATEL's FORD EXPLORER

1B-248:   (Photo of Original) ITEMS FROM MUSCATEL's FORD EXPLORER

1B-248:   (Photo of Original) ITEMS FROM MUSCATEL's FORD EXPLORER

1B-248:   (Photo of Original) ITEMS FROM MUSCATEL's FORD EXPLORER

1B-248:   (Photo of Original) ITEMS FROM MUSCATEL's FORD EXPLORER

1B-248:   (Photo of Original) ITEMS FROM MUSCATEL's FORD EXPLORER

1B-248:   (Photo of Original) ITEMS FROM MUSCATEL's FORD EXPLORER

1B-248:   (Photo of Original) ITEMS FROM MUSCATEL's FORD EXPLORER

1B-248:   (Photo of Original) ITEMS FROM MUSCATEL's FORD EXPLORER

1B-248:   (Photo of Original) ITEMS FROM MUSCATEL's FORD EXPLORER

1B-172:   (Photo of Original) WEIGHTS

1B-172:   (Photo of Original) WEIGHTS

1B-172:   (Photo of Original) WEIGHTS

1B-172:   (Photo of Original) WEIGHTS

1B-172:   (Photo of Original) WEIGHTS

1B-111:   (Photo of Original) FAX MACHINE
```

33

```
1B-70:     (Photo of Original) FAX MACHINES

1B-71:     (Photo of Original) PDA AND ACCESSORIES

1B-71:     (Photo of Original) PDA AND ACCESSORIES

1B-150:    (Photo of Original) 2 VACUUM FILTERS

1B-286:    (Photo of Original) SHOES

1B-285:    (Photo of Original) SHOES

1B-283:    (Photo of Original) FLIP FLOPS

1B-282:    (Photo of Original) HIKING BOOTS

1B-281:    (Photo of Original) SNEAKERS

1B-280:    (Photo of Original) FLIP FLOPS

1B-279:    (Photo of Original) BOOTS

1B-278:    (Photo of Original) BOOTS

1B-277:    (Photo of Original) BOOTS

1B-284:    (Photo of Original) SNEAKERS

1B-31:     (Photo of Original) CIGARS, HAT, SNEAKERS

1B-31:     (Photo of Original) DAGGER

1B-31:     (Photo of Original) WEAPON

1B-100:    (Photo of Original) 3 BAGS

1B-100:    (Photo of Original) 3 BAGS

1B-99:     (Photo of Original) 2 BAGS

1B-98:     (Photo of Original) 2 BAGS

1B-97:     (Photo of Original) 2 BAGS

1B-95:     (Photo of Original) 4 BAGS

1B-94:     (Photo of Original) 4 BAGS

1B-167:    (Photo of Original) CLOSET ROD

1B-167:    (Photo of Original) CLOSET ROD

1B-67:     (Photo of Original) ONE ROLL OF PLASTIC W/TORN EDGE
```

34

1B-67:      (Photo of Original) ONE ROLL OF PLASTIC W/TORN EDGE

1B-158:     (Photo of Original) CARPET FRAGMENT

1B-15:      (Photo of Original) DIRT DEVIL

1B-16:      (Photo of Original) SNEAKERS

1B-119:     (Photo of Original) HEAD REST/UMANSKY's VEHICLE

1B-27:      (Photo of Original) FAX MACHINE

1B-18:      (Photo of Original) VACUUM CLEANER

1B-18:      (Photo of Original) VACUUM CLEANER

35

281H-LA-229716

1B Evidence @ Copy Pro (Photo D)

| | | |
|---|---|---|
| 1B-20: | (Photo of Original) | Item #7 TORN NOTE |
| 1B-20: | (Photo of Original) | Item #7 TORN NOTE |
| 1B-20: | (Photo of Original) | Item #9 TORN NOTE |
| 1B-20: | (Photo of Original) | Item #10 TORN NOTE |
| 1B-20: | (Photo of Original) | Item #8 TORN NOTE |
| 1B-20: | (Photo of Original) | Item #11 PHONE BILL |
| 1B-119: | (Photo of Original) | Item #14 MAP (FRONT-CLOSEUP) |
| 1B-119: | (Photo of Original) | Item #14 MAP (FRONT) |
| 1B-119: | (Photo of Original) | Item #14 MAP (BACK) |
| 1B-119: | (Photo of Original) | Item #14 MAP (BACK) |
| 1B-20: | (Photo of Original) | Item #9 TORN NOTE |
| 1B-20: | (Photo of Original) | Item #9 TORN NOTE |
| 1B-20: | (Photo of Original) | Item #9 TORN NOTE |
| 1B-20: | (Photo of Original) | Item #9 TORN NOTE |
| 1B-20: | (Photo of Original) | Item #8 TORN LETTER |
| 1B-43: | (Photo of Original) | Item #36 TOOTH IN MATCHBOX |
| 1B-43: | (Photo of Original) | Item #36 TOOTH IN MATCHBOX |
| 1B-35: | (Photo of Original) | Item #17,18,25,26 CELLPHONES |
| 1B-30: | (Photo of Original) | CELLPHONE |
| 1B-14: | (Photo of Original) | 3 CELLPHONES |
| 1B-30: | (Photo of Original) | CELLPHONE |
| 1B-30: | (Photo of Original) | Item #41 RECORDER |
| 1B-30: | (Photo of Original) | CELLPHONES |
| 1B-35: | (Photo of Original) | DIGITAL RECORDERS/TAPE |
| 1B-35: | (Photo of Original) | DIGITAL RECORDERS/TAPE |

36

1B-35:      (Photo of Original) Item #2 2-WAY RADIOS

1B-35:      (Photo of Original) Item #24 CAMERA

1B-34:      (Photo of Original) Item #52 STAMPS

1B-34:      (Photo of Original) Item #52 METAL CASE

1B-42:      (Photo of Original) Item #53

1B-42:      (Photo of Original) Item #60

1B-42:      (Photo of Original) Item #34 TRANSMITTER

1B-342:     (Photo of Original) Footprint on BMW car mat

1B-343:     (Photo of Original) Mark on BMW car mat

37