SEAN K. KENNEDY (145632)
Federal Public Defender
MICHAEL TANAKA (85026)
STATIA PEAKHEART (200363)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California  90012-4202
Telephone:  (213) 894-2854
michael_tanaka@fd.org
statia_peakheart@fd.org
SEAN J. BOLSER (250241)
Federal Capital Appellate Resource Counsel Project
Federal Defenders of New York
One Pierrepont Plaza – 16th Floor
Brooklyn, New York  11201
Telephone:  (718) 330-1200, x298
ATTORNEYS FOR IOURI MIKHEL

BENJAMIN L. COLEMAN (187609)
Coleman & Balough LLP
1350 Columbia Street, Suite 600
San Diego, California  92101
Telephone:  (619) 794-0420
blc@colemanbalogh.com
BARBARA E. O'CONNOR (142800)
O'Connor & Kirby, P.C.
174 Battery Street, 3rd Floor
Burlington, Vermont 05401
Telephone:  (802) 863-0112
barbara@kirbyoconnor.com
MARGARET O'DONNELL (KY 83889)
Attorney at Law
P.O. Box 4815
Frankfort, Kentucky  40604-4815
Telephone:  (502) 320-1837
mod@dcr.net
ATTORNEYS FOR JURIJUS KADAMOVAS

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 02-220 SJO |
|---|---|
| Plaintiff-Appellee, | **Unopposed Joint Ex Parte Application for Amended Order Directing the Office of the Clerk to Permit Appellate Counsel to Obtain Copies of Criminal Justice Act Vouchers, Applications and Related Worksheets; Declaration of Counsel** |
| v. | |
| IOURI MIKHEL, JURIJUS KADAMOVAS, | |
| Defendants-Appellants. | Proposed order lodged |

**DEATH PENALTY CASE**

Defendants-Appellants Iouri Mikhel and Jurijus Kadamovas, through their counsel, jointly move the Court for an Amended Order directing the Office of the Clerk for the Central District of California to permit Tatiana Craven, Assistant Paralegal with the Office of the Federal Public Defender, assigned to the Training/CJA Unit, and Gail Ivens, Deputy Federal Public Defender, Chief of Training and CJA Resource Counsel for the Office of the Federal Public Defender, to identify and sort all CJA vouchers (CJA 20s/30s), applications for authorization for investigative, expert or other services (CJA 29s) and authorization and vouchers for investigative, expert or other services (CJA 21s) for all co-defendants in the above entitled matter.  The sorting will be accomplished by viewing *only* the first page of the document, which will be the voucher page with payment information on it, including the case name and number, or the first page of the CJA 29 application.  Any vouchers, applications or worksheets for Defendant Kadamovas will be set aside and then provided by the Court to an independent contractor who will scan and/or copy those documents for Kadamovas' appellate counsel.  All other vouchers, applications or worksheets, for Defendant Mikhel or the remaining co-defendants, will be scanned into Portable Document Format ("PDF") by representatives of the Office Services Unit of the Federal Public Defender's Office.  *Cf.* Local Civ. Rule 79-5.3 (Procedure for Disclosure of Confidential Court Records).  The documents relevant to the co-defendants, but not to Defendant Mikhel, will be shared by the Office of the Federal Public Defender with counsel for Kadamovas.

The Court granted counsel's previous application to obtain CJA records. The Legal Services Unit reviewed and sorted the available documents and then made them available to counsel.  The Office of the Federal Public defender scanned those for Mikhel and the remaining co-defendants and Kadamovas' counsel made arrangements for the duplication of his records. However, in July 2012, the Court's CJA Supervising Attorney informed counsel that they

1

inadvertently did not provide counsel access to all the CJA vouchers and related applications and worksheets.  Given the recent budgetary cutbacks, the CJA Supervising Attorney informed counsel that the court does not have sufficient personnel to identify the relevant vouchers for scanning.

Counsel informed the Government about this revised procedure, and the Government has no objection to this application.  (*See* Declaration of Statia Peakheart, ¶ 6.)

This application is based on the following memorandum of points and authorities, the Declaration of Statia Peakheart, and any pleadings and papers on file in this action.

Appellate counsel submit a proposed order concurrently with this notice and motion.

                                        Respectfully submitted,

                                        SEAN J. BOLSER
                                        Federal Capital Appellate Resource
                                              Counsel Project

                                        SEAN K. KENNEDY
                                        Federal Public Defender

DATED:  October 9, 2012          By   */S/  STATIA PEAKHEART*
                                        STATIA PEAKHEART
                                        MICHAEL TANAKA
                                        Deputy Federal Public Defenders

                                        ATTORNEYS FOR IOURI MIKHEL


                                        BENJAMIN L. COLEMAN
                                        Coleman & Balogh LLP

                                        BARBARA E. O'CONNOR
                                        O'Connor & Kirby, P.C.

                                        MARGARET O'DONNELL
                                        Attorney at Law

                                        ATTORNEYS FOR JURIJUS
                                        KADAMOVAS

2

## MEMORANDUM OF POINTS AND AUTHORITIES

**A.     Relevant History**

In October 2011, undersigned counsel, with leave of this Court, obtained copies of trial counsel's ex parte/sealed funding applications, and the Court's responses to them. (*See, e.g.,* Doc. 153 (Kadamovas' application for an order for CJA funds to purchase discovery materials from Copy Pro); Doc 156 (Order by Judge Manella granting Kadamovas use of CJA funds for discovery materials).) However, those included only the funding documents through July 2005, when consideration of trial counsel's funding requests changed:  Thereafter, counsel was to submit their applications and CJA vouchers to this Court's CJA Supervising Attorney.  (*See* Doc. 775.)

On February 14, 2012, Mikhel and Kadamovas applied for access to the CJA funding requests filed by trial counsel, and all related orders, vouchers or worksheets, so they could obtain them by scanning them into PDF.  This was necessary because trial counsel did not maintain records of these documents.  The application also requested access to the CJA records for their co-defendants, Ainar Altmanis, Petro Krylov, Aleksejus Markovskis, and Natalya Solovyeva.  (Doc. 2265.)  The court granted the application without modification on February 28, 2012.  (Doc. 2269.)

On March 13-16, 2012, Mikhel's team scanned the documents made available to them by the Legal Services Unit.  These included CJA 29s for Mikhel and co-defendants other than Kadamovas.  These consisted of various under seal ex parte applications for funds for travel, out-of-district subpoenas, and other funding.  Defendant Kadamovas' appellate counsel made arrangements to have his own documents scanned independently.

On July 5, 2012, the CJA Supervising Attorney informed Mikhel's counsel that, in March, Mikhel's team did not have access to "the actual CJA vouchers themselves" because, at the time of the pretrial and trial phases, these records were

filed on paper, not electronically, and "the vouchers [were] kept separately from all other related documents." (*See* Declaration of Statia Peakheart, ¶ 4.)

As the Supervising CJA attorney and counsel for Mikhel and Kadamovas began working out how counsel could access these documents for scanning, several points became apparent:

- There are more than 1,000 relevant CJA records in 129 boxes, and the boxes include all CJA records for every indigent defendant/plaintiff in the Central District for the pertinent years, 2002-2007 (except as noted below), including CJA 29s (applications for investigative, expert or other services). CJA 21s (authorization and voucher for investigative, expert and other services) and CJA 20s and 30s with related worksheets (authorization for payment of counsel).

- Pursuant to its document management schedule, the Office of the Clerk shreds all CJA records after seven years. The Clerk has destroyed all CJA records for 2004 — the documents for 2002, 2003, and 2005 still exist.

- Locating the relevant CJA application or voucher requires someone to search each box's contents for the defendants' name on the face-page of the packet, insert a placeholder in the box before removing the packet, note on an index that the particular document has been located, and set the document aside for scanning.

- The Legal Services Unit assigned staff to begin the review. After a week-long trial period, it was determined that searching for the relevant CJA trial documents was very time-consuming and that the Legal Services Unit was not able to commit an employee to the task full-time.

- After consulation between counsel for Mikhel and counsel for Kadamovas, and in order to address the Court's concerns and

2

budgetary constraints, the parties have agreed on a procedure that should safeguard the confidentiality of the Kadamovas records from the Mikhel team, as described below.  (*See* Declaration of Statia Peakheart, ¶ 5.)

**B.     Mikhel's and Kadamovas' Rights to the Effective Assistance of Appellate Counsel Requires Counsel to Ensure the Record Is Complete**

Mikhel and Kadamovas have the right to the effective assistance of appellate counsel.  *United States v. Sandoval-Lopez*, 409 F.3d 1193 (9th Cir. 2005); *United States v. Skurdal*, 341 F.3d 921 (9th Cir. 2003); *cf. Strickland v. Washington*, 466 U.S. 668 (1984).  Pursuant to this obligation, appellate counsel have sought "to satisfy themselves independently that the official record of the proceedings is complete and to supplement it as appropriate."  ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases, Guideline 10.7, § B(2) (rev. ed. 2003).[1]  In doing so, counsel obtained and reviewed the reporter transcripts and the pleadings counsel filed, the Government's and co-defendants' responses to them, and this Court's action, if any, to such pleadings.  Appellate counsel's review also included examining the CJA vouchers submitted by trial counsel and the Courts' responses to them; Mikhel and Kadamovas' appellate counsel found the trial counsel's files of the CJA records incomplete.

Review of Mikhel's and Kadamovas' CJA records is necessary to adequate representation of them because these documents will inform counsel about, among other necessary information, trial counsel's plans for avenues of fact investigation and development; the composition of the defense team, including consultants' and

---

[1]  *Wiggins v. Smith*, 123 S. Ct. 2527, 2536-37 (2003), referred to these ABA's Guidelines with approval, referring to them as "well-defined norms," and "standards to which we long have referred as 'guides to determining what is reasonable' [attorney performance]."

3

experts' contributions to the defense; and, when and whether counsel received certain discovery.[2]

### 1. Counsel's access to Mikhel's and Kadamovas' CJA trial documents is necessary

Mikhel and Kadamovas seek access to the sealed records concerning their own defenses at trial, and the attorneys, experts, and investigators employed on their behalf. Trial counsel have provided their files to appellate counsel, but the CJA records are incomplete. It is in Mikhel's and Kadamovas's interest to make this information available to their current counsel to effect the post-conviction litigation. The requested materials reflect the work done to both prepare and present a defense for their clients, so there is no confidentiality interest in keeping these records from them now. Without these records, present counsel have an inadequate picture of work that may have already been performed on their client's behalf, or alternatively, what work was not performed.

### 2. Counsel's access to the co-defendants' CJA trial documents is necessary

At the guilt phase of the trial, Altmanis, Markovskis and Solovyeva testified against Mikhel and Kadamovas, and later Krylov. The Ninth Circuit has noted that,

> Defendants who accuse each other [at a joint trial] bring the effect of a second prosecutor into the case with respect to their codefendant. In order to zealously represent his client, each codefendant's counsel must do everything possible to convict the other defendant. The existence of this extra prosecutor is particularly

---

[2] Here, trial counsel obtained the Government's discovery directly from the businesses that reproduced or copied it for counsel. (*See, e.g.,* Docs. 153 & 156.)

4

> troublesome because the defense counsel are not always held to the limitations and standards imposed on the government prosecutor.

*United States v. Tootick*, 952 F.2d 1078, 1082 (9th Cir. 1991).  Here, in exchange for their testimony, each entered negotiations with the Government that permitted them to escape eligibility for the death penalty.

These co-defendants' special relationship with the Government is "particularly troublesome" because the highest of stakes were at issue for all the defendants.  Indeed, the sealed court record that undersigned counsel has reviewed to date indicates that co-defendants' counsel informed the Court several times of the need for funding because of the negotiations with the Government (for one particular defendant, this was many, many times).  Without undersigned counsel reviewing the remaining documents, all involved — including the Government — in their clients' prosecutions and death sentences are aware of those activities and negotiations except the two condemned appellants.  The important due process protections afforded capital defendants with respect to their right to have the opportunity to investigate and address potentially harmful information may be circumvented and violated by a co-defendant who has a clear incentive to make his co-defendant appear as culpable as possible.  *Gardner v. Florida*, 430 U.S. 349 (1977); *Lankford v. Idaho*, 500 U.S. 110, 124-25 (1991) (citing *Gardner v. Florida*; "a procedure for selecting people for the death penalty that permits consideration of secret information about the defendant is unacceptable.").  Effective assistance of appellate counsel and the full and fair consideration of the judgments of conviction and sentences of death, as required by the Fifth, Sixth and Eighth Amendments, mandates the Court permit undersigned counsel to review the CJA trial documents for the co-defendants.

Altmanis', Markovskis' and Solovyeva's judgments are final, and none have sought § 2255 relief, thus, they can have no concern that Mikhel's and

Kadamovas' counsel will "unduly intrude upon the privacy of [their] attorneys or . . . compromise defense strategies, investigative procedures, attorney work product, the attorney-client relationship or privileged information provided by the defendant or other sources." *Cf. United States v. Gonzales*, 150 F.3d 1246, 1265 (10th Cir. 1998). As for Krylov, until the jury rejected the death penalty and sentenced him to life in prison, his situation was as dire as Mikhel's and Kadamovas'. Review of the CJA applications, vouchers and related worksheets will comprise one measure of the effort undertaken by his successful trial counsel as one standard against which to measure the unsuccessful defense of Mikhel and Kadamovas.[3]

**C.      Procedure Proposed and Safeguards**

To obtain the CJA applications, vouchers and related worksheets as previously ordered by the Court, and in an effort to accommodate the Court's budgetary constraints, the parties propose that Tatiana Craven and Gail Ivens be designated to conduct the review and sorting. Tatiana Craven is an Assistant Paralegal with the Office of the Federal Public Defender, assigned to the Training/CJA Unit, and Gail Ivens is a Deputy Federal Public Defender, who serves as Chief of Training and CJA Resource Counsel for the Office of the Federal Public Defender. Ms. Craven, under the supervision of Ms. Ivens, will employ the following procedure to safeguard the confidentiality of the Kadamovas records.

Ms. Craven and/or Ms. Ivens will view *only* the first page of any CJA vouchers (CJA 20s/30s), applications for authorization for investigative, expert or

---

[3] On May 25, 2011, the Ninth Circuit affirmed Krylov's conviction and sentence in an unpublished memorandum decision. (9th Cir. No. 08-50033.) The Supreme Court denied Krylov's petition for a writ of certiorari (No. 11-6996 (S. Ct.)), and the statute of limitations for a petition under 28 U.S.C. § 2255 runs on November 28, 2012.

other services (CJA 29s) or authorization and vouchers for investigative, expert or other services (CJA 21s) for all co-defendants in the above entitled matter.  This view of the first page is the only viewing necessary to accomplish the selection of relevant documents from among the many boxes of records at the Courthouse.  That first page includes the defendant's name and the case number.  If the name indicates that the document relates to Defendant Kadamovas, that document will be placed in a stack separate from the documents for Mikhel and the other co-defendants.  That stack of Kadamovas documents will be provided by the Legal Services Unit to whichever outside independent copy service decided upon by appellate counsel for Kadamovas in consulatation with the Legal Services Unit.  If at any time there is any ambiguity as to whether a particular voucher or application related to defendant Kadamovas, and if a viewing of the first page does not enable Ms. Craven or Ms. Ivens to make that determination, that voucher will be placed in a second separate stack for review by an employee of the CJA Unit who will make the final determination.  Under no circumstances will Ms. Craven or Ms. Ivens view any other than the first page of the documents to accomplish the sorting.

        After the sorting is completed, all vouchers, applications or worksheets, for Defendant Mikhel or the remaining co-defendants (excluding Kadamovas), will be scanned into Portable Document Format ("PDF") by representatives of the Office Services Unit of the Federal Public Defender's Office.  *Cf.* Local Civ. Rule 79-5.3 (Procedure for Disclosure of Confidential Court Records).  The documents relevant to the co-defendants, but not to Defendant Mikhel, will be shared by the Office of the Federal Public Defender with counsel for Kadamovas.

\\

\\

\\

**D.    Conclusion**

This Court is requested to direct the Office of the Clerk for the Central District of California to permit the Office of the Federal Public Defender access to all CJA records from 2002-2005 for the purpose of sorting and scanning as described herein.

Respectfully submitted,

SEAN J. BOLSER
Federal Capital Appellate Resource
Counsel Project

SEAN K. KENNEDY
Federal Public Defender

DATED:  October 9, 2012          By   */S/  STATIA PEAKHEART*
STATIA PEAKHEART
MICHAEL TANAKA
Deputy Federal Public Defenders

ATTORNEYS FOR IOURI MIKHEL


BENJAMIN L. COLEMAN
Coleman & Balogh LLP

BARBARA E. O'CONNOR
O'Connor & Kirby, P.C.

MARGARET O'DONNELL
Attorney at Law

ATTORNEYS FOR JURIJUS
KADAMOVAS

8

## **DECLARATION OF STATIA PEAKHEART**

I, Statia Peakheart, declare:

1.     I am an attorney licensed to practice law in the State of California, and I am admitted to practice before this Court.  I am a Deputy Federal Public Defender with the Office of the Federal Public Defender ("FPD").  The FPD assigned Michael Tanaka and me to represent Iouri Mikhel in this matter, along with Sean J. Bolser.  I have personal knowledge of the following, and I can, and would if called upon, testify to the truth and accuracy thereof.

2.     On February 14, 2012, I filed a request, on behalf of Mikhel and Kadamovas, for access to the CJA applications and vouchers filed by trial counsel, and all orders and other documents relating to such requests and vouchers, so that we could scan them into PDF.  The application also requested access to the same records for their co-defendants, Ainar Altmanis, Petro Krylov, Aleksejus Markovskis, and Natalya Solovyeva.  The court granted the application without modification on February 28, 2012.

3.     On March 13-16, 2012, Mikhel's team scanned the CJA trial documents made available to them by the Legal Services Unit.  Counsel for Kadamovas made arrangements to have his documents duplicated.

4.     On July 5, 2012, the Supervising CJA attorney informed me that, in March, we did not have access to "the actual CJA vouchers themselves" because, at the time of the pretrial and trial phases, such documents were filed on paper, not electronically, and "the vouchers [were] kept separately from all other related documents."

5.     The Supervising CJA attorney and I began working out how we and the Kadamovas team could access these documents for scanning, and several points became apparent:

a.     There are more than 1,000 relevant CJA documents in 129 boxes, and the boxes include all CJA documents for every indigent

9

defendant/plaintiff in the Central District for the pertinent years, 2002-2007 (except as noted below).

b.      I was informed that the Office of the Clerk shreds all CJA documents after seven years, and that the Court has destroyed all CJA trial documents for 2004, although the documents for 2002, 2003, and 2005 still exist.

c.      Locating the relevant CJA trial document requires someone to search each box's contents for the defendants' name on the face-page of the packet, insert a placeholder in the box before removing the packet, note on an index that the particular CJA record  has been located, and set the document aside for scanning.

d.      After a week-long trial period, searching for the relevant CJA trial documents was too time-consuming for the Legal Services Unit to commit an employee to the task full-time.

6.      After consultation with Federal Public Defender Sean K. Kennedy, co-counsel Michael Tanaka and Supervising Deputy Federal Public Defender Gail Ivens, we arrived at a proposal that we believe meets the concerns of the Court for procedural safeguards and cost-savings while at the same does not require the parties to incur the expense of retaining an independent contractor to conduct the searching and sorting.  Ms. Ivens is suggested because of her familiarity with the CJA voucher process as a former member of the Auxiliary and Appellate panels of this Court.  It is anticipated that under her supervision Ms. Craven will be able to conduct the review of the face page of each document in a reasonably expeditious fashion.

7.      On October 4, 2012, Michael Tanaka emailed counsel for the Government, Robert Dugdale, to ask his position on this request.  Mr. Dugdale replied that the Government does not oppose the application.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed this 9th day of October 2012 at Los Angeles, California.

_/s/ Statia Peakheart_
Statia Peakheart
Deputy Federal Public Defender
Counsel for Defendant-Appellant
IOURI MIKHEL

11