Timothy J. Foley
tfoley9@earthlink.net
Attorney at Law
California State Bar No. 111558
1017 L Street, #348
Sacramento, CA 95814
Tel: (916) 599-3501

Victoria Bailey Casanova
victoria_casanova@fd.org
Indiana State Bar No. 24082-49
Indiana Federal Community Defenders, Inc.
111 Monument Circle, Suite 3200
Indianapolis, IN 46204
Tel: (317) 383-3520

Counsel for Defendant Jurijus Kadamovas

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | Case No.    CR 02-00220-SJO |
|---|---|---|
| Plaintiff, | ) | REPLY TO GOVERNMENT'S OPPOSITION TO DEFENDANTS' MOTION FOR LIMITED DISCLOSURE OF JUROR NAMES |
| v. | ) | |
| IOURI MIKHEL, and JURIJUS KADAMOVAS. | ) | DATE: July 29, 2020 |
| | ) | TIME: 10:00 a.m. |
| Defendants. | ) | COURT: Courtroom of the Hon. |
| _____ | ) | Philip S. Gutierrez (VTC) |

Defendant Jurijus Kadamovas, through his appointed counsel, submits this Reply to Government's Opposition to Defendants' Motion for Limited Disclosure of Juror Names, in response to the government's opposition (Doc. #

1

2347), and in further support of the motion requesting that the names of the jurors be revealed to appointed defense counsel, Doc. # 2337.[1]  Defendant Kadamovas also incorporates by this reference the Supplemental Memorandum of Points and Authorities in Support of Motion for Limited Disclosure of Juror Names and the Declaration of Jean E. Giles in Support of Motion for Limited Disclosure of Juror Names, documents that are being filed separately under seal.

I.       Propriety and Necessity of Post-Conviction Investigation

The government's rhetoric seems to embrace a view that it is somehow inappropriate or unnecessary for counsel for a death row prisoner to investigate the constitutionality of the proceedings that resulted in the death sentence. On the contrary, a post-trial investigation into legitimate areas of concern -- such as the extent that the shackling of Mr. Kadamovas at trial prejudiced the jury, or the extent to which threats of employer pay withholding may have distracted a sitting juror -- is not a so-called "fishing expedition" but rather an indispensable part of the process without which any death sentence is, simply, illegitimate.

In recent years, at least two federal capital sentences have been set aside due to jury misconduct discovered after the trials ended. In *Sampson v. United States*, 724 F.3d 150, 163 (1st Cir. 2013), the convictions and death sentence were reversed in

---

[1]       Codefendant Mikhel has joined the motion. Doc. # 2338.

§ 2255 proceedings because a juror was deceptive during jury selection and failed to reveal crucial personal experience with abusive relationships and incarceration. *See United States v. Sampson*, 820 F. Supp. 2d 151 (D. Mass. 2011). In *United States v. Lecco*, 634 F. Supp. 2d 633 (S.D. W. Va. 2009), a motion for new trial was granted where a juror failed to reveal he was under federal investigation for child pornography charges during the federal capital prosecution. Such cases demonstrate the need for thorough investigation, continued vigilance, and careful review.

Post-conviction counsel, as noted in the initial memorandum supporting this motion, have an ethical duty to conduct a diligent investigation into "all relevant claims and grounds for relief." *McCleskey v. Zant*, 499 U.S. 497, 498 (1991). The ABA Guidelines that set forth the duties of counsel in capital cases specify the need for post-conviction counsel to "conduct thorough and independent investigations" into all potential irregularities that occurred at trial. ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases (2003), 10.15.1(E). This includes investigation into the jurors. "[C]ounsel investigating a capital case should be particularly alert to the possibility that . . . one or more jurors were unqualified to sit at either phase of the trial and make every effort to develop the relevant facts, whether by interviewing jurors or otherwise[.]" Commentary, ABA Guideline 10.10.2, fn. 260. Such inquiries can be "'critical in discovering constitutional errors.'" *Id*. (quoting Hertz & Liebman, Federal Habeas Corpus Practice and Procedure 489 n.40 (4th ed. 2001)).

3

Defendant's counsel does not wish to -- and are not seeking permission to -- "harass" or "interrogate" or "tamper" with the jurors. Defendant's counsel merely wishes to have what virtually every other defendant in any serious prosecution -- state or federal -- has: the names of the jurors who are (or were) judging him. In many anonymous jury cases, including, as an example, *United States v. Barrangan*, 871 F.3d 689, 712-13 (9th Cir. 2017), the names of the jurors are sealed and not referred to on the record but still given to the defense (with instructions that the defendants not be given the names) so that the defense can do at least a minimal background check.[2] Despite a great deal of posturing, the government gives absolutely no meaningful reason why Kadamovas' counsel should not be given this same opportunity and no legitimate basis why the jurors' names in this case should continue to be kept from the defense.

The recent opinion by the Ninth Circuit in *Mitchell v. United States*, 958 F.3d 775 (9th Cir. 2020) concerns a much different situation. First, *Mitchell* involved a local rule prohibiting post-trial juror interviews without leave of court, a situation not present here. Second, and more importantly, the *Mitchell* case did not involve an anonymous jury and, thus, defense counsel had access to the jurors' names.

---

[2]    It is not known why that sensible methodology was not utilized in this case.

4

II.    Kadamovas' Previous Counsel Did Not "Agree" to Juror Secrecy.

The government's description of the record in this case regarding jury anonymity is misleading and the implicit suggestion that counsel are now somehow seeking a right previously foregone should be rejected. The Opposition asserts that the defense "agreed to forego" having the names of the jurors (Opposition, 7[3]), that the defense "agreed to an anonymous jury" (Opposition, 19), and that Kadamovas' previous trial and appellate counsel "effectively agreed to proceed through trial and appeal without juror identity information" (Opposition, 22). The record is otherwise.

At trial, the prosecution moved to conduct the trial with an anonymous jury, filing a written motion and citing 18 U.S.C. § 3432. Doc. # 1002. No written response was filed by either Kadamovas' counsel or Mikhel's counsel. At the hearing on the motion, the defendants did not object, but they did not join either. Transcript 6/12/06, 66-67. There was no agreement.

On appeal, the defendants directly challenged, as plain error, the failure of the trial court to order "disclosure of the potential jurors' names and addresses to defense counsel." *United States v. Mikhel & Kadamovas,* 889 F.3d 1003, 1031 (9th Cir. 2018); *see* Appellant's Joint Opening Brief, filed May 2, 2013, Ninth Cir. No. 07-99009, 130-33. In the appeal, counsel argued that "it was plain error for the court not to sua sponte disclose potential jurors' identities to defense counsel under a protective

---

[3]    References to pages in Doc. # 2347 will be to the ECF-filed document page, not the number at the bottom of the page.

order" (889 F.3d at 1032) and that the trial court erred by failing to "find by a preponderance of the evidence that disclosing jurors' identities to counsel would have jeopardized jurors' safety" (889 F.3d at 1032, n.8). It is accurate to say that the general ruling allowing juror anonymity was not directly challenged on appeal, but it is simply wrong to suggest that appellate counsel did not challenge the keeping of the jurors' names from the defense.[4] They did.

III.    The Shackling Issue is Not "Defaulted."

The government is correct that the propriety of the shackling is not currently before the Court, but the government is wrong to claim that any such issue is "procedurally defaulted." Opposition, 15. The shackling issue is not before the Court for a different reason: a § 2255 motion containing such an issue has not been filed. Rather, counsel is attempting to investigate the issue, and there is good reason to

---

[4]    Counsel does not concede that the Ninth Circuit was correct in the ruling that the trial court did not have to disclose the jurors' names, nor does counsel concede that the use of an anonymous jury in general was proper. In fact, there is good reason to think that the failure to allow the defense to know the names of the jurors at trial was a violation of fundamental rights. The failure to order limited disclosure of the jurors' names to the attorneys at trial likely violated the Supreme Court's Sixth Amendment public trial jurisprudence, set forth in *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501 (1984), *Waller v. Georgia*, 467 U.S. 39 (1984), and *Presley v. Georgia*, 558 U.S. 209 (2010). The Supreme Court's public trial opinions make clear that a completely anonymous jury process infringes on the openness that is essential to the jury selection phase of a public trial. *See Press-Enterprise*, 464 U.S. at 505-09; *United States v. Blagojevich*, 612 F.3d 558, 564-65 (7th Cir. 2010); *United States v. Wecht*, 537 F.3d 222, 234-39 (3d Cir. 2008). But these issues are not before this Court at this time.

believe that a potential challenge due to improper prejudicial shacking may be present.

The government does not dispute the assertion that the defendants were shackled during the trial. The government also appears to admit that no explicit finding on the need for shackling was ever made by the trial court. *See* Opposition, 15-16. The assertion that "the existing record indicates that the shackles were not visible" (Opposition, 16) is a bold one, since, due to the trial court's failure to have a hearing on the matter, the existing record actually does not indicate one way or another whether the shackles were visible.[5] This is the very question that must be asked of the jurors.

Simply, the shackling issue is not defaulted because it has not been raised - yet. Procedural default is an affirmative defense that must be pled and proven by the proponent of that affirmative defense. *Gray v. Netherland*, 518 U.S. 152, 165-66 (1996); *Bennett v. Mueller*, 322 F.3d 573, 585-86 (9th Cir. 2003); *see also Ray v. Clements*, 700 F.3d 993, 1006 (7th Cir. 2012). The Court cannot assess whether a failure to object has defaulted an issue until the factual and legal basis of the issue have been raised. Even then, there are a variety of exceptions and reasons why a

---

[5] The government also catalogs the disruptive ways codefendant Mikhel conducted himself at the trial, presumably to show that Mikhel was not prejudiced by the jury viewing his shackles, Opposition, 1,3. Of course, Mikhel's behavior does not excuse or avoid the potential prejudice against Kadamovas. Indeed, Mikhel's behavior shows why Kadamovas' repeated motions to sever his case from Mikhel's case should have been granted.

failure to object does not necessarily result in a default. *See, e.g.*, *Stephenson v. Wallace*, 619 F.3d 664, 666 (7th Cir. 2010) (penalty phase relief granted for ineffective assistance of counsel for failure to object to the use of a stun belt at trial); *Walker v. Martel*, 709 F.3d 925, 940 (9th Cir. 2013) (discussion of petitioner's claim of ineffective assistance of counsel for failure to object to shackling at trial).

IV.     The Potential for Ethnic/National Bias is Present in this Case.

The government asserts that there was no possibility, "not a shred of evidence," of ethnic, racial or national bias in this case. Opposition, 9, 19. Aside from the obvious point that this assertion puts the cart well before the horse -- the defense must be allowed to investigate such bias before we can know there was none -- the government is incorrect.[6]

The initial memorandum (Doc. # 2337-1) noted the presence of three military veterans on the jury, including a Vietnam veteran. In addition, the jury questionnaires revealed biases and opinions stereotyping the Soviet-born defendants. Because the questionnaires remain under seal, this aspect of the record is discussed in a separate, sealed pleading, Supplemental Memorandum of Points and Authorities in Support of Motion for Limited Disclosure of Juror Names, and further supported by the

---

[6]     The jurors did sign a certification that the verdicts were free of discriminatory intent. *See* Opposition, 9. This certification is required in every federal death penalty case pursuant to 18 U.S.C. § 3593(f). The presence of such a certification should not and cannot prevent legitimate inquiry into the possibility of such bias.

8

Declaration of Jean E. Giles in Support of Motion for Limited Disclosure of Juror Names, also filed under seal. As the Supplemental Memorandum explains, the jury questionnaires show anti-Russian sentiment and negative stereotyping within the jury pool, and thus provide additional support for the need to release the juror names to the defense in order to facilitate appropriate post-conviction investigation in a death penalty case.

V.     No Promise to the Jurors Need be Broken.

The basis for jury anonymity has long since disappeared and no substantial reason exists today for keeping the jurors' identities from defense counsel. The government has no real response to this truth. Instead, the government claims that the Court's granting of this motion would somehow "demonstrate that jurors cannot rely on assurances by a federal court" and would "undermine juror confidence in a system that depends heavily on citizen willingness to serve as jurors." Opposition, 23. Upon examination, the premise of the government position evaporates.

No promises were made to the jurors regarding whether their names would be revealed to the defense or the prosecution, and no promise will be broken by a ruling allowing defense counsel to know those names now.

On arrival, the potential jurors were told, in a rather matter-of-fact way, that "we are not going to be asking for your names" and that they should use the juror number given to them in the jury room. Transcript, 7/11/07, 67. The judge advised:

9

"You'll be known by a number and not a name throughout this entire trial." Transcript, 7/11/07, 68. In passing out the juror questionnaires they were reminded a number of times to write the jury number, not their name, on the pages of the questionnaire. Transcript, 7/11/07, 68-69, 76.

In addition, each questionnaire contained a written advisement that explained to the potential jurors that the "information" in the questionnaires would be kept "confidential," but it would be "reviewed only by the court and by the attorneys on each side."  The written advisement further stated: "Neither your identities nor your answers will be released *to the general public or the media* without authority or expressed order of the Court." Declaration of Jean E. Giles in Support of Motion for Limited Disclosure of Juror Names, 6 (emphasis supplied).

Thus, neither the in-court discussion nor the written advisement on the questionnaire promised that the names of the jurors would not be given to defense counsel.  In fact, the advisement stated that the information in the questionnaires would be used by both the defense and the prosecution.

At the conclusion of the trial, the judge noted that the jurors could, if they so chose, "speak with any of the attorneys about the case or their verdict." Transcript, 2/2/07, 42. The judge reminded the jurors that "this jury was anonymous" and that speaking with "members of the press" or the attorneys might "compromise or sacrifice" the anonymity. Transcript, 2/21/07, 43. The record does not reveal whether jurors spoke with the prosecution or the defense attorneys after the trial.

10

Consequently, the record shows that the jurors were never promised that their identities would be kept from the defense in perpetuity. The government's hyperbolic suggestion that the jury system might collapse if the names are now revealed should be ignored.

VI.    Conclusion.

The government seeks to avoid investigation into the legitimacy of the convictions and capital sentence in this case. The record reveals the potential for constitutional error in the unsupported shackling of the defendants, the problems with a sitting juror's employment, the contact between Mikhel's defense team and another juror, and the suggestions of ethnic and national bias in the jury questionnaires. But even without any showing of these potentially meritorious issues, post-conviction counsel should be given the names of the jurors who issued the death sentence. This Court should not deny this motion unless there is a compelling present need to prevent the identities from being known to defense counsel. The prosecution's opposition shows none.[7]

---

[7]    A certain amount of exaggeration, even hyperbole, is not unusual in summary descriptions of a complicated case by a zealous advocate, and defendant's counsel should not and need not respond to every small inaccuracy in an opposition to a motion. Yet, counsel does feel one correction is in order under the circumstances: in the Opposition at page 7, the government states that that one of the victims in this case was "a *pregnant* woman [emphasis supplied]." This assertion is incorrect. The female victim was not pregnant. Transcript, 10/25/06, 125; Exhibit 1429, 6.

Accordingly, counsel requests that this Court issue an order releasing the names of the jurors and alternate jurors to appointed counsel for Kadamovas.

Respectfully submitted,

Dated: July 14, 2020                                        */s/Timothy J. Foley*
                                                           TIMOTHY J. FOLEY
                                                           Counsel for Defendant
                                                           Jurijus Kadamovas

12