CUAUHTÉMOC ORTEGA (Bar No. 257443)
Interim Federal Public Defender
C. PAMELA GÓMEZ (Bar No. 233848)
(E-Mail: Pamela_Gomez@fd.org)
AJAY V. KUSNOOR (Bar No. 273929)
(E-Mail: Ajay_Kusnoor@fd.org)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
IOURI MIKHEL

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>IOURI MIKHEL, et al.,<br><br>Defendants. | No. CR 02-00220-DP<br><br>**DEATH PENALTY CASE**<br><br>**DEFENDANT IOURI MIKHEL'S REPLY TO GOVERNMENT'S OPPOSITION TO MOTION FOR LIMITED DISCLOSURE OF JUROR NAMES; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**Date: July 29, 2020**<br><br>**Time: 10:00 a.m.**<br><br>**Court: Courtroom of the Hon. Philip S. Gutierrez (VTC)** |

Defendant Iouri Mikhel, by and though his counsel of record, hereby replies to the government's opposition ("Opp.") to his motion for limited disclosure of juror names. This reply and the underlying motion are based on the accompanying Memorandum of Points and Authorities, the pleadings and file in this matter, and such other authorities and evidence as may be presented in any reply or supplemental briefing or at any hearing on this motion.

Respectfully submitted,

CUAUHTÉMOC ORTEGA
Interim Federal Public Defender

DATED:  July 15, 2020          By:    */s/ C. Pamela Gómez*
                                      C. PAMELA GÓMEZ
                                      AJAY V. KUSNOOR
                                      Deputy Federal Public Defenders

                                      Attorneys for Defendant
                                      IOURI MIKHEL

1

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Jurijus Kadamovas and Iouri Mikhel have moved this Court for limited disclosure of juror names. The government argues that defendants fail to show "good cause" for release of this information, and that there is no basis for "stripping" the jurors of their anonymity. Kadamovas filed a reply to the government's motion on July 15, 2020. (Dkt. 2356.) With the exception of footnote 5 in his memorandum of points and authorities, Mikhel joins Kadamovas's arguments in reply. Mikhel thus limits his argument to points not previously addressed in the motion and reply briefs.

## II. ARGUMENT

**A.     The Court should reconsider its prior order granting the government's motion to empanel an anonymous jury.**

On June 16, 2006, this Court granted the government's motion to empanel an anonymous jury. (Dkt. 1064.) This Court has the authority to reconsider this prior order if "1) the first decision was clearly erroneous; 2) an intervening change in the law has occurred; 3) the evidence on remand is substantially different; 4) other changed circumstances exist; or 5) a manifest injustice would otherwise result." *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997). Here, changed circumstances justify reconsideration, and a manifest injustice will result if the Court fails to reconsider its prior order.

As explained below, the government has backtracked on its original justification for seeking an anonymous jury in this case. The government originally moved for an anonymous jury based on unsubstantiated allegations of Mikhel and Kadamovas' ties to organized crime. The government has since repudiated these allegations, both at the trial of Mikhel's co-defendant, Petro Krylov, and again in its appeal of Krylov's conviction.

On May 17, 2006, in moving the trial court to empanel an anonymous jury in this capital case, the government relied on *United States v. Fernandez*, 388 F.3d 1199 (9th Cir. 2004), modified, 425 F.3d 1248 (9th Cir. 2005), and represented to the trial court, Judge

Tevrizian, presiding, that "while this case is not charged as a racketeering case, there is evidence that defendants committed the horrendous crimes at issue within the structure of a violent Russian criminal organization." (Dkt. 1002 at 5.)

In *Fernandez*, a case tried in this district, defendants were convicted on a variety of Racketeer Influenced and Corrupt Organizations Act (RICO) and drug-trafficking charges relating to their participation in, or involvement with, the Mexican Mafia or "the Eme." In Ninth Circuit cases, "the Eme" has been described as the "'gang of all gangs.' It is an organization that wields a significant amount of control over several California prisons and jails as well as street gangs in the Los Angeles area. The Eme asserts its control through violence and intimidation." *Id.* at 1215.

At the hearing on this motion, the government submitted on the papers and did not correct its assertion that the defendants had ties to organized crime. (06/12/2006 RT at 67.)

After Mikhel and Kadamovas were convicted and sentenced to death, their co-defendant Petro Krylov was tried separately before Judge Otero. The same prosecution team tried both cases. In the penalty-phase closing arguments on May 21, 2007, the prosecutor argued

> there is simply no evidence that [Mikhel and Kadamovas] were a part of the Russian Mafia. Did they have accomplices in Russia? Absolutely. Several of them. Were they organize[d]? Absolutely. Were they sophisticated? Absolutely. But there's not one piece of evidence showing that they answered to or were connected to what they would call, the defense would call, the true, quote, unquote, Russian Mafia back in Moscow.

(*U.S. v. Petro Krylov*, 05/21/2007 RT at 108-09.)

On appeal to the Ninth Circuit, Krylov once again pointed out that the government had previously linked Mikhel and Kadamovas to organized crime, but disavowed this theory when he stood trial. In its answering brief, the government asserted that "*apart from the motion* [to empanel an anonymous jury], the government did not take any position on

whether or not Mikhel or Kadamovas were part of Russian organized crime or the Russian mafia." (*U.S. v. Petro Krylov*, Ninth Circuit Case 08-5033, Dkt. 43, at 37) (emphasis added). This concession is a significant change in circumstances that justifies reconsideration.

In its opposition to the instant motion, the government neglects to mention its equivocation regarding Mikhel and Kadamovas' alleged ties to organized crime. The government sought to empanel an anonymous jury by *explicitly* labeling Mikhel and Kadamovas as members of an organized crime ring, a position it later renounced in this Court and in the Ninth Circuit. This Court should hold the government to the position it took in subsequent litigation. Because the government has repudiated its rationale for seeking an anonymous jury, this Court should reconsider its prior order granting this request.

**B.    Assuming he is required to do so, Mikhel has shown "good cause" for the limited release of jurors' names.**

Assuming, as the government contends, that the *Bracy* standard is applicable here, there is good cause for the release of the jurors' names to counsel.

In *Bracy v. Gramley*, 520 U.S. 899 (1997), the Supreme Court clarified that a court abuses its discretion to deny discovery "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." *Id.* at 908. In *Bracy*, petitioner sought discovery to develop the theory that the judge who presided over his capital trial had a compensatory bias against defendants, such as Bracy, who did not bribe him "to avoid being seen as uniformly and suspiciously soft on criminal defendants." *Id.* at 906. The Court reasoned Bracy presented "specific allegations" because his trial attorney, a former associate of the trial judge, "may have agreed to take this capital trial quickly so that petitioner's conviction would deflect any suspicion" from other rigged cases before and after Bracy's case. *Id.* 908. Importantly, the court found good cause even though it recognized that "*[i]t may well be . . . that petitioner will be unable to obtain evidence sufficient*" to prevail in his claim. *Id.* at 900 (emphasis added). Further, the court found the lower court

4

had abused its discretion to grant discovery despite the fact that Bracy stood convicted and sentenced to death for his role in an execution-style triple murder, *id.* at 901, and was also under death sentence for two murders in Arizona. *Id.* 901 n.1.

Here, Mikhel has shown good cause for the release of juror names in order to investigate allegations of unconstitutional shackling, juror bias, and juror misconduct.

The government argues that a shackling claim under *Deck v. Missouri,* 544 U.S. 622 (2005), would be procedurally defaulted because "[d]efendants did not raise any issue with respect to shackling in the district court or on appeal." (Opp. at 10.) The government's procedural default defense is premature, as Mikhel has not yet had an opportunity to investigate this claim and present its factual basis in full. In any event, a procedural default defense is no basis to deny Mikhel access to the jurors' names. That is because ineffective assistance of trial counsel may constitute "cause" for a procedural default. *Edwards v. Carpenter*, 529 U.S. 446 (2000). It is entirely appropriate to grant discovery to investigate such an ineffective-assistance allegation. *See Detrich v. Ryan*, 740 F.3d 1237, 1246-47 (9th Cir. 2013) (plurality opinion) (where petitioner alleges state habeas counsel's ineffectiveness as cause for a default, "the district court should allow discovery and hold an evidentiary hearing where appropriate to determine whether there was 'cause.'").

The government makes much of Mikhel's failure to raise a shackling claim on direct appeal. Doing so would have been pointless, given trial counsel's failure to object to the shackles or otherwise make an adequate record regarding the nature and prejudicial impact of the shackles. Because Mikhel's proposed shackling claim and his related claim of ineffective assistance are based on extra-record evidence, he could not have raised either claim on direct appeal. *See Massaro v. United States*, 538 U.S. 500, 509 (2003) (where it is based on facts outside the trial record, "failure to raise an ineffective-assistance-of-counsel

claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255.")[1]

Kadamovas and Mikhel also seek to interview jurors about potential bias on ethnic or racial grounds. The government argues there can be no such inquiry because no juror has voluntarily come forward to disclose bias, as they had in *Peña-Rodriguez v. Colorado*, 137 S. Ct. 855 (2017). (Opp. at 9.) But *Peña-Rodriguez* did not involve an anonymous jury, nor was it a death penalty case. Moreover, in *Peña-Rodriguez*, the trial court instructed the juror that "whether you talk to anyone is entirely your own decision." 137 S. Ct. at 861. Here, however, as the government points out, the trial court went further. After the trial court instructed the jurors that "whether they should speak with any of the attorneys . . . is a personal decision left entirely up to them," the trial court continued: "However, I do remind you that this jury was anonymous and you could compromise or sacrifice your anonymity by speaking with counsel. This is also true with regard to speaking with members of the press." (2/21/07 RT 42-43.) Thus, in contrast to the measures designed to prevent racial bias in jury deliberations that are highlighted in *Peña-Rodriguez*, *id.* at 871, here, the court's warning may have dissuaded jurors from coming forward to disclose racial or ethnic bias in the immediate aftermath of a months-long capital trial. It would be unreasonable to expect jurors to do so on their own, over a decade later.

For the same reasons, *Mitchell v. United States*, 958 F.3d 775 (2020) is not dispositive. In *Mitchell*, trial counsel had access to jury identification information and was therefore in a position to conduct investigation that would have guided *voir dire*. Here, unlike *Mitchell*, trial counsel did not have any such information. Thus, unlike *Mitchell*, here, defendants were

---

[1] Throughout its opposition, the government insists this Court must deny defendants' motion based on their trial counsel's failure to object to the anonymous jury. Counsel's failure to do so was deficient performance under *Strickland v. Washington*, 466 U.S. 668 (1984). Lacking access to juror identifying information, trial counsel was incapable of conducting a reasonable investigation into possible juror bias or misconduct. Mikhel needs access to the jury names to investigate the prejudice from counsel's failure to object.

deprived of the "advantages of careful voir dire" that the Supreme Court recognized in *Peña-Rodriguez*, 137 S. Ct. at 871.

Under these circumstances, Mikhel's only recourse is to conduct juror interviews to assess potential bias.

## III. CONCLUSION

Mikhel respectfully requests that the Court grant him limited access to jurors' names. Without this information, undersigned counsel will not be able to investigate viable claims for relief from Mikhel's conviction and death sentence.

Respectfully submitted,
CUAUHTÉMOC ORTEGA
Interim Federal Public Defender

DATED:  July 15, 2020                    By:  */s/ C. Pamela Gómez*
                                              C. PAMELA GÓMEZ
                                              AJAY V. KUSNOOR
                                              Deputy Federal Public Defenders

                                              Attorneys for Defendant
                                              IOURI MIKHEL

7