UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

| Case No. | CR02-00220 SJO | | Date | July 30, 2020 |
| --- | --- | --- | --- | --- |

| Present: | The Honorable Philip S. Gutierrez, Chief United States District Judge |
| --- | --- |

| Interpreter | n/a |
| --- | --- |

| Wendy Hernandez | Not Reported | Not Present |
| --- | --- | --- |
| *Deputy Clerk* | *Court Reporter/Recorder* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendant(s): | Present | Cust. | Bond | Attorney(s) for Defendant(s): | Present | App. | Ret. |
| --- | --- | --- | --- | --- | --- | --- | --- |
| Iouri Mikhel (1) | not | | | Cuauhtémoc Ortega; C. Pamela Gomez; Ajay V. Kusnoor | not | x | |
| Jurijus Kadamovas (2) | not | | | Timothy J. Foley | not | x | |

**Proceedings:    (In Chambers) Order DENYING Defendants' Motion for Limited Disclosure
of Juror Names**

Before the Court is Defendants Jurijus Kadamovas and Iouri Mikhel's Motion for Limited
Disclosure of Juror Names.  Dkts. # 2337 ("*Mot.*"), 2338.  The Government opposes this Motion, *see*
Dkt. # 2347 ("*Opp.*"), and Defendants replied, *see* Dkts. # 2356 ("*Kadamovas Reply*"), 2357 ("*Mikhel
Reply*").  The Court finds the matter appropriate for decision without oral argument.  *See* Fed. R. Civ. P.
78; L.R. 7-15.  Having considered the moving and opposing papers, the Court **DENIES** Defendants'
Motion.

I.    Background

In affirming Defendants' convictions and death sentences, the Ninth Circuit provided this
succinct description of the case:

Between late 2001 and early 2002, defendants Iouri Mikhel and Jurijus Kadamovas
abducted, held hostage, and killed five people, dumping each victim's body in the New
Melones Reservoir outside Yosemite National Park. After a five-month trial, a jury
convicted them of several federal crimes, including multiple counts of hostage taking

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

resulting in death under the Hostage Taking Act, 18 U.S.C. § 1203. . . .[T]he evidence that Mikhel and Kadamovas did these things    and did them without concern for their victims' suffering    was detailed, comprehensive, and in a word, overwhelming.

In subsequent penalty-phase proceedings under the Federal Death Penalty Act ("FDPA"), 18 U.S.C. § 3591 *et seq.*, the jury unanimously recommended that both defendants be sentenced to death.

*United States v. Mikhel*, 889 F.3d 1003, 1016 (9th Cir. 2018), *cert. denied sub nom. Kadamovas v. United States*, 140 S. Ct. 157 (2019).

The jury in this case was anonymous, which is at the heart of the pending Motion. Prior to trial, which commenced in 2006 and concluded in 2007, *id.* at 1020  21, the Government moved to empanel an anonymous jury based on: (i) the seriousness of the crimes Defendants were charged with committing; (ii) evidence linking Defendants' activities to organized crime; (iii) the lack of respect Defendants exhibited for the judicial process as demonstrated by their participation in escape attempts prior to trial; (iv) the seriousness of the sentence Defendants faced; and (v) the likelihood of extensive trial publicity.  *Govt.'s Mot. to Empanel an Anonymous Jury*, Dkt. # 1002, 4:15  7:18.

Defendants did not object, and the Government's motion was granted.  *Mikhel*, 889 F.3d at 1031. "The district court did not instruct the jury on the reasons for their anonymity but simply informed them they would be referred to by number rather than name."  *Id*.  "The questionnaire potential jurors completed stated their information would 'be kept confidential' and that '[n]either your identities nor your answers will be released to the general public or the media.'"  *Id.*  These questionnaires, on which jurors were instructed to write their numbers not their names, also stated that the information would be reviewed only by the court and the attorneys on each side.  *See Kadamovas Reply* 10:2  14.

At the conclusion of the proceedings, the district court instructed jurors that "whether they should speak with any of the attorneys . . . is a personal decision left entirely up to them."  *Mikhel Reply* 6:10  11 (quoting Feb. 21, 2007 Transcript 42).  Additionally, the district court told jurors "I do remind you that this jury was anonymous and you could compromise or sacrifice your anonymity by speaking with counsel.  This is also true with regard to speaking with members of the press."  *Id.* (quoting Feb. 21, 2007 Transcript 43); *see also Opp.* 18:1  3.

On direct appeal, Defendants did not challenge the finding that an anonymous jury was appropriate, but argued, among other things, that "it was plain error for the court not to sua sponte disclose potential jurors' identities to defense counsel under a protective order."  *Mikhel*, 889 F.3d at 1032.  The Ninth Circuit held that the "district court committed no error, and certainly no plain error, in empaneling the anonymous jury as it did," because no Ninth Circuit case suggested or required providing jurors' identities to defense counsel under such circumstances.  *Id.*  Further, the Ninth Circuit

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

noted that 18 U.S.C. § 3432[1] did not "require disclosing jurors' identifying information to counsel when the 'life or safety' exception applies, as it undisputedly did here." *Id.*

II.     Discussion

Now, thirteen years after the conclusion of the trial, Defendants seek limited disclosure of the juror names so that post-conviction counsel may investigate potential constitutional errors in Defendants' convictions and sentences. Defendants argue that the need for post-conviction counsel's investigation outweighs any need for the continued anonymity of the jurors, which has greatly diminished since trial. In opposition, the Government contends that Defendants have not established a right to conduct juror interviews or a basis for stripping jurors of their anonymity.[2] The Court agrees with the Government.

A.     Defendants Have Not Established That They Have a Constitutional Right to Interview Jurors

The Ninth Circuit has "long imposed restrictions on lawyers seeking access to jurors." *Mitchell v. United States*, 958 F.3d 775, 787 (9th Cir. 2020). "Rules restricting lawyers' access to jurors '(1) encourage freedom of discussion in the jury room; (2) reduce the number of meritless post-trial motions; (3) increase the finality of verdicts; and (4) further Federal Rule of Evidence 606(b) by protecting jurors from harassment and the jury system from post-verdict scrutiny.'" *Id.* (quoting *Cuevas v. United States*, 317 F.3d 751, 753 (7th Cir. 2003)). Yet, despite discouragement of the practice, "there is no absolute prohibition of post-verdict interviews of jurors in the Ninth Circuit." *Ellison v. Ryan*, No. CV-16-08303 PCT(DLRx), 2017 WL 1491608, at *2 (D. Ariz. Apr. 26, 2017)

---

[1] Section 3432 requires a "list of the veniremen . . . stating the place of abode of each venireman" to be provided to a capital defendant, unless "the court finds by a preponderance of the evidence that providing the list may jeopardize the life or safety of any person." 18 U.S.C. § 3432.

[2] The Government also characterizes Defendants' Motion as a request for discovery, arguing that Defendants have failed to satisfy the "good cause" standard that applies to requests for discovery in connection with motions brought pursuant to 28 U.S.C. § 2255. *See Opp.* 9:23  10:5. "Rule 6(a) allows a district court to authorize a party to conduct discovery *after* the party has filed a § 2255 motion with the district court." *Fabricant v. United States*, No. CR 03-01257 RSWL, 2015 WL 786981, at *3 n.2 (C.D. Cal. Feb. 25, 2015) (emphasis added). No § 2255 motion has been filed yet. Thus, even if requests for juror information may be treated as discovery requests, any such discovery request would be premature at this stage. *Cf. Calderon v. U.S. Dist. Court for the N. Dist. of California*, 98 F.3d 1102, 1106 (9th Cir. 1996) ("[A] prisoner must outline factual allegations in a petition before the district court will be able to determine the propriety of discovery."). Moreover, Defendants have not, perhaps intentionally, framed their Motion as a request for discovery. *See, e.g.*, *United States v. Collazos-Munoz*, 97 F. App'x 136, 137 (9th Cir. 2004) ("The district court correctly stated that it would not have jurisdiction to rule on [defendant's] discovery request unless and until [defendant] filed a petition under 28 U.S.C. § 2255."). Accordingly, the Court does not treat Defendant's Motion as one for discovery.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

(citing *Hard v. Burlington Northern R.R.*, 812 F.2d 482, 485 (9th Cir. 1987), *abrogated on other grounds by Warger v. Shauers*, 135 S. Ct. 521 (2014)).  And, the Government points to no local rule otherwise prohibiting post-verdict interviews of jurors.  *Cf. Mitchell*, 958 F.3d at 782 (addressing a local rule requiring leave of court to conduct post-verdict interviews).

While the Ninth Circuit has not prohibited post-verdict interviews of jurors, the Ninth Circuit has been clear that a court's "'denial of a motion to interrogate jurors' does not raise a constitutional problem where 'there has been no specific claim of jury misconduct.'"  *Id.* (quoting *Smith v. Cupp*, 457 F.2d 1098, 1100 (9th Cir. 1972)); *see also United States v. Eldred*, 588 F.2d 746, 752 (9th Cir. 1978) (finding no abuse of discretion in refusing to allow post-verdict interrogation of jurors where there had been no showing of juror misconduct).  Although Defendants are not necessarily requesting leave of the Court to conduct post-verdict interviews of jurors, the basis for the pending Motion is the need to conduct such interviews.  Defendants have not made a specific claim of jury misconduct that would entitle them to do so.

Defendants contend that juror interviews are necessary to investigate whether jurors were aware of the physical restraints used on Defendants during trial and whether any juror misconduct or bias impacted the verdict.  *Kadamovas Mem. of Points and Authorities in Supp. of Mot.*, Dkt. # 2337-1 ("*Mem.*"), 5:1  9:17.  As to the latter issue, Defendants point to: (i) one juror who was threatened with job loss during trial; (ii) another juror who encountered defense counsel and an expert at a hotel bar during the penalty phase; and (iii) the possibility of racial and ethnic bias against Defendants because of anti-Russian sentiments as evidenced by the presence of three military veterans on the jury and some responses on juror questionnaires, most of which were by individuals not selected as jurors or selected as alternates.  *See id.* at 8:12  9:13; *Kadamovas Reply* 8:9  9:8; *Kadamovas Supp. Mem. of Points and Authorities in Supp. of Mot.*, Dkt. # 2361.  But, crucially, Defendants do not make a specific claim of jury misconduct.  Instead, they explain that the noted "specific occurrences during the trial proceedings *suggest* areas of particular, potential improprieties."  *Mem.* 8:9  10 (emphasis added).  Further, the evidence cited by Defendants does not rise to the level of a colorable claim of juror bias.  *See Dyer v. Calderon*, 151 F.3d 970, 974 (9th Cir. 1998) ("A court confronted with a colorable claim of juror bias must undertake an investigation of the relevant facts and circumstances.").

Defendants cite to *Peña-Rodriguez v. Colorado*, 137 S. Ct. 855 (2017), for support. *Mem.* 7:18  8:4. In *Peña-Rodriguez*, the Supreme Court held  "where a juror makes a clear statement that indicates he or she relied on racial stereotypes or animus to convict a criminal defendant, the Sixth Amendment requires that the no-impeachment rule give way in order to permit the trial court to consider the evidence of the juror's statement and any resulting denial of the jury trial guarantee."  137 S. Ct. at 896.  To warrant judicial inquiry into the matter, "there must be a showing that one or more jurors made statements exhibiting overt racial bias that cast serious doubt on the fairness and impartiality of the jury's deliberations and resulting verdict."  *Id.*  Although *Peña-Rodriguez* established a new exception to the no impeachment rule, it "left untouched the law governing investigating and interviewing jurors."  *Mitchell*, 958 F.3d at 790.  Accordingly, even after *Peña-Rodriguez*, Defendants

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

must still make a preliminary showing of misconduct to establish good cause to conduct juror interviews, which they have failed to do. Moreover, Defendants do not argue they have satisfied the standard in *Peña-Rodriguez* that would warrant judicial inquiry into the matter.

Defendants undoubtedly have a constitutional right to an impartial jury, and that right "is nowhere as precious as when a defendant is on trial for his life." *Sampson v. United States*, 724 F.3d 150, 163 (1st Cir. 2013). Counsel in a federal habeas corpus proceeding "must conduct a reasonable and diligent investigation aimed at including all relevant claims and grounds for relief in the first federal habeas petition." *McCleskey v. Zant*, 499 U.S. 467, 498 (1991). Yet, Defendants do not provide any authority, and the Court has found none, for concluding that Defendants' right to an impartial jury or the obligation of habeas counsel mandates the allowance of post-verdict interviewing of jurors, absent a specific claim of jury misconduct. *See Carter v. Ayers*, No. 06CV1343 BEN(CABx), 2007 WL 433246, at *1 3 (S.D. Cal. Jan. 25, 2007) (rejecting petitioner's request to interview jurors on the grounds that such interviews were a necessary step in the habeas investigation where petitioner made no specific claim of jury misconduct). Similarly, Defendants fail to offer any authority to support their equal protection and fundamental fairness argument. *See Mem.* 3:8 12; 8:5 11.

Accordingly, Defendants have not established that they are entitled under the Constitution to conduct post-verdict interviews of jurors. *See*, *e.g.*, *Smith*, 457 F.2d at 1100 (finding no constitutional violation where the court refused to allow post-verdict questioning of jurors "for the purpose of discovering possible, but unspecified, jury misconduct").

B.  <u>Defendants Have Not Provided a Basis to Disturb the Anonymity Afforded to Jurors</u>

Defendants argue that any need for the anonymity of jurors has diminished with the passage of time and because the jury's factfinding function is over. *Mem.* 9:20 12:6. Additionally, Defendants argue any claim that Defendants' activities had a connection to organized crime is baseless in light of the Government's subsequent arguments during the proceedings of their co-defendant. *See Mem.* 11 n.2; *Mikhel Reply* 3:14 4:3. In their co-defendant's case, at trial, the Government argued that there was no evidence Defendants were part of the Russian mafia, and, on appeal, the Government acknowledged that, other than the motion to empanel an anonymous jury, the Government never argued that Defendants were part of Russian organized crime or the Russian mafia. *See id.*

In opposition, the Government does not address the factors that were initially invoked to empanel an anonymous jury. *See Opp.* Instead, the Government argues that continued anonymity is required because the district court promised the jurors the protection of anonymity and revoking that promise would undermine juror confidence in the judicial system. *Opp.* 18:1 11. In reply, Defendants contend that no promise was made to jurors that their names would not be given to counsel and, thus, the requested disclosure would not necessitate breaking any promises. *Kadamovas Reply* 9:21 24.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

"[T]he trial court may empanel an anonymous jury 'where (1) there is a strong reason for concluding that it is necessary to enable the jury to perform its factfinding function, or to ensure juror protection; and (2) reasonable safeguards are adopted by the trial court to minimize any risk of infringement upon the fundamental rights of the accused.'" *United States v. Shryock*, 342 F.3d 948, 971 (9th Cir. 2003) (quoting *United States v. DeLuca*, 137 F.3d 24, 31 (1st Cir. 1998)); *see also* 18 U.S.C. § 3432. "Courts have recognized the need for jury protection based on some combination of factors, including: (1) the defendants' involvement with organized crime; (2) the defendants' participation in a group with the capacity to harm jurors; (3) the defendants' past attempts to interfere with the judicial process or witnesses; (4) the potential that the defendants will suffer a lengthy incarceration if convicted; and (5) extensive publicity that could enhance the possibility that jurors' names would become public and expose them to intimidation and harassment." *Shryock*, 342 F.3d at 971.

Even if the Government's claim that Defendants' activities had ties to organized crime has been undermined by subsequent arguments, that was not the only factor relied on by the Government in moving to empanel an anonymous jury. *See Shryock*, 342 F.3d at 971 (noting that the listed factors are neither exclusive nor dispositive). Additionally, although the other factors justifying an anonymous jury may no longer be present to the same degree, it is not simply a matter of reconsidering the prior order empaneling an anonymous jury as Defendants suggest. *See Mem.* 9:20 12:7; *Mikhel Reply* 2:11 4:11. As the First Circuit noted, albeit in the context of the press requesting juror names, post-trial requests for juror names raise a "different mix of issues" than pre-trial requests. *In re Globe Newspaper Co.*, 920 F.2d 88, 93, 98 (1st Cir. 1990) (holding that absent findings justifying non-disclosure and where there were no safety concerns, juror information must be public in accordance with court's local jury plan, regardless of jurors' expressed preference of anonymity). Among these issues, is that "the jurors themselves have an interest in having their privacy protected." *Id.* at 93.

Jurors were told that they were part of an anonymous jury. No party cites to any portion of the transcript where the district court defined for the jury precisely what that meant or expressly promised the jurors that their names would never be revealed to counsel. However, by instructing jurors to use their juror numbers, rather than their names, and by admonishing jurors at the conclusion of trial that speaking to counsel could compromise their anonymity, the district court conveyed to jurors that counsel did not know their names.

Jurors were provided with anonymity in this matter. Although continued anonymity of the jurors may hamper post-conviction counsel's investigation into potential constitutional deficiencies of Defendants' convictions and death sentences, such fact is necessarily contemplated as part of empaneling an anonymous jury. Moreover, as discussed above, Defendants have not established a constitutional right to interview jurors. And, Defendants do not otherwise provide any authority for the Court to pull back the cloak of anonymity. Accordingly, because Defendants have provided no basis for the Court to disturb the anonymity afforded to jurors, the Court declines to do so. *See United States v. Ruggiero*, 850 F. Supp. 186, 188 (E.D.N.Y.), *dismissed*, 48 F.3d 1212 (2d Cir. 1994) (denying

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

defendants' post-trial motion for disclosure of the names of anonymous jurors, because, among other reasons, there was no reason to breach the condition of anonymity under which jurors agreed to serve).

III.    Conclusion

For these reasons, Defendants' Motion for the Limited Disclosure of Juror Names is **DENIED**.

The hearing set for August 5, 2020 is hereby VACATED and taken OFF-CALENDAR.

**IT IS SO ORDERED.**

:00
jre