Timothy J. Foley
tfoley9@earthlink.net
Attorney at Law
California State Bar No. 111558
1017 L Street, #348
Sacramento, CA 95814
Tel: (916) 599-3501

Jean E. Giles
jean_giles@fd.org
Indiana State Bar No. 21643-49
F. Italia Patti
italia_patti@fd.org
Indiana State Bar No. 34725-02
Indiana Federal Community Defenders, Inc.
111 Monument Circle, Suite 3200
Indianapolis, IN 46204
Tel: (317) 383-3520

Counsel for Defendant Jurijus Kadamovas

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No.    CR 02-00220-MCS |
| | ) | |
| Plaintiff, | ) | SUPPLEMENTAL |
| v. | ) | PROFFER REGARDING |
| | ) | THE EFFECTS OF |
| IOURI MIKHEL, and | ) | THE PANDEMIC |
| JURIJUS KADAMOVAS. | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## DECLARATION OF JEAN E. GILES IN SUPPORT OF SUPPLEMENTAL PROFFER REGARDING THE EFFECTS OF THE PANDEMIC

I, Jean E. Giles, upon information and belief, declare and state the following:

1.  I am an Assistant Federal Defender in the capital § 2255 unit of the Indiana Federal Community Defenders office ("IFCD"). Along with Timothy Foley and Italia Patti, I represent Jurijus Kadamovas.

2.  This Declaration updates the previous Declaration submitted to this Court in support of the Proffer Regarding the Effects of the Pandemic on August 14, 2020. Doc. # 2376.

3.  Since August 2020, the COVID-19 pandemic has continued to have a significant damaging effect on our representation of Mr. Kadamovas in many ways. In particular, the pandemic has greatly hindered our ability to investigate the issues in this case, contact witnesses, interview witnesses, gather evidence, travel, collect records, and gather information.

## California

4.  In California, the average number of COVID cases continued to rise in the early months of the pandemic until the state was averaging 10,000 new cases, and almost 150 deaths, per day in late July and early August. In September and October, the numbers decreased, restrictions eased, and many businesses were allowed to operate. Throughout October, however, the average new daily case numbers stubbornly refused to sink below 3,000. Some thought the worst was

over, and they were wrong. November brought a catastrophic increase in new cases, with a daily total exceeding 14,000 for the first time on November 21. Since then, the upward spike of new cases has continued unabated. On December 1, California for the first time registered 20,000 cases in a single day. On December 8, the 30,000 threshold was broken; on December 14, the state daily total exceeded 42,000. Deaths have risen in tandem with the total cases, and California is now averaging over 200 deaths a day from the virus. California has suffered over 21,000 total deaths since the pandemic began.[1]

5. On December 3, 2020, the California Department of Public Health issued a Regional Stay at Home order. The order is triggered when Intensive Care Unit ("ICU") hospital capacity drops below 15%.

6. The Regional Stay at Home order went into effect on December 6 in Southern California, including Los Angeles County. Among other restrictions, it forbids nonessential travel and gathering with anyone outside a household, either indoors or outside.

7. Los Angeles County, the location of Mr. Kadamovas's trial, the location of most of the activities that led to the criminal case, the location of the lawyers and jurors

---

[1] The undersigned has compiled information and statistics about COVID in California from the following sources:
1. https://www.latimes.com/projects/california-coronavirus-cases-tracking-outbreak/;
2. https://www.cdc.gov/coronavirus/2019-ncov;
3. https://www.gov.ca.gov/;
4. https://covid19.ca.gov/;
5. https://www.cdph.ca.gov/; and
6. https://www.cacd.uscourts.gov/

involved in the trial, and the location of most of the witnesses who testified, has been especially hard hit by COVID-19. The new spike has made matters worse. With 533,123 positive cases as of December 15, 2020, it has by far the most positive cases of any county in the state. Unsurprisingly, it also leads the state in number of deaths, with 8,345 total deaths. On December 15, 2020, Los Angeles County had fewer than 100 ICU beds available.

8. This Court has continued to face disruptions in its operations due to COVID. Most recently, on December 7, 2020, noting the regional stay-at-home order and ICU availability below 15%, the Court activated a Continuity of Operations ("COOP") Plan that went into effect December 9, 2020 and continues through January 8, 2021.

9. Law enforcement agencies in California also have been affected by COVID and have altered their operations as a result.[2]

10. Most witnesses that the defense team needs to interview are in Southern California. *See* Doc. # 2376-1 ¶ 4. During October, an investigator (not employed by IFCD, which still has significant internal restrictions on travel in order to ensure the safety of employees) working on this case travelled to two locations within the United States (including Southern California) to attempt to conduct in-person witness interviews on Mr. Kadamovas's case. These trips were of limited success, in large part due to the pandemic. The investigator found that many

[2] https://www.policeforum.org/coviddec11

people are reluctant to interact with strangers or be interviewed because of concerns about exposure to the virus. As noted above, the COVID situation in the country, and Los Angeles County, has gotten far worse since October.

11. COVID also has hindered the investigator's ability to locate potential witnesses. He has found that many potential witnesses have moved. He normally would talk to former neighbors to try to get information about where the potential witness would have moved, but he has found that such conversations are much more difficult now due to the reluctance of average people to engage with strangers because of the pandemic.

12. Some potential witnesses are in prisons and jails, which have suspended visits.

13. The investigator has also faced significant delays in obtaining court records in many jurisdictions due to the effects of the pandemic.

**Federal Bureau of Prisons**

14. In October 2020, the United States Penitentiary Terre Haute ("USP-TH") began allowing limited visitation.[3] IFCD employees, however, are still prohibited from visiting prisons.

15. As of December 12, 2020, there were 141 confirmed active cases among inmates and 4 confirmed active cases among staff at USP-TH. According to a news report, the prison is "in the midst of a massive COVID-19 outbreak."[4]

---

[3] Counsel obtained information about COVID and the BOP from the following websites: https://www.bop.gov/coronavirus; https://www.bop.gov/locations/institutions/thp/

**<u>Indianapolis</u>**

16. As of December 15, 2020, Indiana reported 434,642 positive cases and 6,547 deaths. Marion County, where Indianapolis is located, has had 59,531 positive cases and 988 deaths.[5] Indiana's governor opened his weekly press briefing on December 9, 2020, by announcing, "The State of Indiana is on fire."[6]

17. IFCD employees continue to be strongly discouraged from working in the office. Many COVID cases have been reported among offices whose employees regularly appear in court in the Southern District of Indiana, including the United States Attorney's office, United States Probation Office, and United States Marshals. Cases have occurred within federal judges' chambers. Further, it my understanding that the entire Indianapolis office of the DEA had to quarantine due to positive tests and exposure. The current surge led to the situation in Marion County being described as "catastrophic" with regard to hospital-bed availability during a telephonic COVID briefing that the Federal Defender attended on December 8, 2020.

---

[4] Michael Balsamo & Michael R. Sisak, *Execution Staff Have COVID-19 after Inmate Put to Death*, https://apnews.com/article/prisons-coronavirus-pandemic-executions-terre-haute-indiana-e80af6a566bbff50ed5e9a097c305dbb (visited December 12, 2020)
[5] https://coronavirus.in.gov
[6] https://fox59.com/news/coronavirus/gov-holcomb-state-leaders-to-provide-update-on-indianas-coronavirus-response/

**Lithuania**

18. Mr. Kadamovas' defense team still has been unable to travel to Lithuania. The Lithuanian government continues to prohibit travelers from the United States.[7]

19. A nationwide quarantine was introduced on November 7, 2020, and continues.

20. As of December 12, 2020, Lithuania, which has a population of roughly 3 million people, has had a total of 90,252 confirmed cases and 791 deaths; 3,303 cases were confirmed on that day.

21. Due to the worsening situation in Lithuania, the government tightened lockdown rules in early December, and lockdown began on December 16. Non-essential travel is forbidden. Contacts between and events involving more than one household are banned.

22. We continue to work with an individual in Vilnius, Lithuania, who has been assisting us with trying to procure records and get contact information from witnesses. His ability to do so has been hampered by COVID. Specifically, even before the lockdown, he found that people were reluctant to meet for fear of the virus.

23. We have been attempting, in spite of these difficulties, to gather records and access materials, using local individuals if possible.  However, we have learned

---

[7] Counsel has complied information regarding coronavirus in Lithuania from the following sources:
1. https://lt.usembassy.gov/;
2. https://urm.lt/default/en/important-covid19;
3. http://koronastop.lrv.lt/en/news/

that archives are closed, and documents cannot be ordered. Travel is severely restricted, and necessary trips across the border into Russia are impossible.

## Additional problems

24. As we feared when I filed my earlier declaration, our inability to investigate has had a cascading effect. Due to the pandemic, we have been unable to obtain records and information that we need to send to potential experts for their review.

## Conclusion

25. These are just some of the difficulties that we are experiencing due to the enormous, unprecedented, continuing effect of the pandemic on all aspects of society. The extraordinary circumstances of the COVID-19 global pandemic continue to severely hamper our efforts on Mr. Kadamovas's behalf.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed by me this 16th day of December, 2020, in Indianapolis, Indiana.

*s/ Jean. E. Giles*
Jean E. Giles