Timothy J. Foley
tfoley9@earthlink.net
Attorney at Law
California State Bar No. 111558
1017 L Street, #348
Sacramento, CA 95814
Tel: (916) 599-3501

Jean E. Giles
jean_giles@fd.org
Indiana State Bar No. 21643-49
F. Italia Patti
italia_patti@fd.org
Indiana State Bar No. 34725-02
Indiana Federal Community Defenders, Inc.
111 Monument Circle, Suite 3200
Indianapolis, IN 46204
Tel: (317) 383-3520
Fax: (317) 383-3525

Attorneys for Defendant Jurijus Kadamovas

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Case No.      CR 02-00220-SJO |
| ) | |
| Plaintiff, ) | MEMORANDUM OF POINTS |
| ) | AND AUTHORITIES IN SUPPORT |
| v. ) | OF KADAMOVAS' MOTION FOR |
| ) | ORDER DIRECTING THE BUREAU |
| IOURI MIKHEL, and ) | OF PRISONS TO PERMIT |
| JURIJUS KADAMOVAS, ) | ACCESS TO LEGAL MATERIALS |
| ) | |
| Defendants. ) | DATE:      August 1, 2022 |
| _____ ) | TIME:      3:00 P.M. |
| | COURT:    Hon. Mark C. Scarsi |
| | Courtroom 7C |
| | 350 W. First Street |
| | Los Angeles, CA 90012 |

1

From the early days of this prosecution, there has been conflict regarding Mr. Kadamovas' access to legal materials and his ability to understand and review the evidence against him, the nature of the prosecution, the procedures applicable to his case, and his legal options. This lack of access and understanding has led to substantial difficulties involving his ability to communicate and cooperate with his attorneys, as well as difficulties preparing for trial and participating in the appeal and postconviction litigation. There are two foundational reasons for these difficulties: first, the materials in this case are voluminous, comprising roughly 90,000 pages of government-produced discovery, hundreds of pleadings, and thousands of pages of trial transcripts; second, Mr. Kadamovas, a Lithuanian citizen born and raised in the Soviet Union, is a native Russian speaker with little command of the English language.

Prior to trial, Mr. Kadamovas and his appointed counsel asserted on several occasions that the defendant lacked sufficient access to a computer to review discovery and aid in the preparation of his defense. *See*, *e.g.*, Dkt. Nos. 824, 855, 979. The defense purchased a computer for Mr. Kadamovas to use, but the jail refused to allow him sufficient time and a suitable location (with confidentiality) for use. Dkt. No. 824, at 3-4. In addition, funding for translation of key documents into Russian was inadequate. Eventually, the parties entered a stipulation regarding computer access, only to have the stipulation unravel as the trial approached. Dkt. Nos. 833, 939.  It was not until forty-three days into the trial that the trial judge finally ordered

2

the jail to allow Mr. Kadamovas to use a computer, supplied by the defense and equipped with translation software, in his cell. Tr. 11/16/2006, 5-6; Declaration of Margaret O'Donnell, *United States v. Mikhel & Kadamovas*, Ninth Cir. No. 07-99009, Dkt. No. 438-1 (attached as Exhibit A[1]), at 4.

The inadequate access and the government's purported breach of the pretrial stipulation were raised as issues in the appeal, but the Ninth Circuit rejected the claims, concluding that the "district court did not clearly err in finding that Kadamovas was receiving sufficient computer access." *United States v. Mikhel & Kadamovas*, 889 F.3d 1003, 1050 (9th Cir. 2018).

Regrettably, the lack of access to legal material, lack of confidentiality, and translation issues continued after Mr. Kadamovas was transferred to the United States Penitentiary at Terre Haute after the trial. Mr. Kadamovas was not allowed by the prison to keep the electronically stored discovery in his cell. Ninth Cir. No. 07-99009, Dkt. No. 438-2, at 35. Numerous DVDs were confiscated, disks went missing, and the prison did not securely store other material. *Id*. The 2018 Declaration of Margaret O'Donnell (Exhibit A) describes in summary the history of the ongoing conflict over access to discovery and the barriers to the ability of Mr. Kadamovas to work on his

---

[1] This declaration was part of a larger document in the original filing and paginated 3 to 13. It references attachments that are not included in this filing, but available in the larger document, Ninth Cir. No. 07-99009, Dkt. No. 438.

case since he arrived at USP Terre Haute. *See also* Ninth Cir. No. 07-99009, Dkt. Nos. 104, 113, 115, 131, 154, 172, 438.

Prisoners have a constitutional right to a meaningful opportunity to access the courts. *Lewis v. Casey*, 518 U.S. 343, 346 (1996); *Bounds v. Smith*, 430 U.S. 817, 828 (1977). Indeed, as the First Circuit pointed out in *Simmons v. Dickhaut*, 804 F.2d 182, 183 (1st Cir. 1986), the right to access derives from several constitutional foundations: "The right of access is a discrete, constitutional right, derived from various constitutional sources. It springs in part from the due process clause [of the Fourteenth Amendment], . . . the privileges and immunities clause . . . and the First Amendment . . . [citations omitted]."

Prisons must facilitate this access and cannot create unreasonable barriers to the ability of prisoners to engage in legal process. "[T]he state and its officers may not abridge or impair [a] petitioner's right to apply to a federal court for a writ of habeas corpus." *Ex parte Hull*, 312 U.S. 546, 549 (1941). The right of access to the courts includes, among other things, the ability to possess and review transcripts and legal materials. For example, the Ninth Circuit has held that a defendant is deprived of due process if prison authorities confiscate the transcript of the state court trial while the appeal is being litigated. *Vigliotto v. Terry*, 873 F.2d 1201, 1202 (9th Cir. 1989); *DeWitt v. Pail*, 366 F.2d 682, 686 (9th Cir. 1966); *see also Wright v. Newsome*, 795 F.2d 964, 968 (11th Cir. 1986). Reasonable restrictions are tolerated in a prison environment, of course, but "a prison regulation impinging on inmates'

constitutional rights" and overly restricting this right of access is only valid "if it is reasonably related to legitimate penological interests." *Lewis*, 518 U.S. at 361; *see also Turner v. Safley*, 482 U.S. 78, 87 (1987).

During the pendency of the Ninth Circuit appeal, Mr. Kadamovas repeatedly implored prison officials, and the Ninth Circuit, to allow him meaningful access to his legal materials. Objections were raised regarding the prison's failure to secure his materials, to provide translation software, and to enable him to work on his case. *See, e.g.*, Ninth Cir. No. 07-99009, Dkt. Nos. 104, 113, 131, 154, 172, 438. In 2010, the appellate court denied a request for Mr. Kadamovas to keep a computer in his cell, but ordered the BOP to allow Mr. Kadamovas twenty hours per week usage of a dedicated computer. Ninth Cir. No. 07-99009, Dkt. No. 124. However, according to appellate counsel, these measures were unsuccessful because much of the electronic discovery and transcripts would not open on the BOP computer and the translation software was inadequate. Exhibit A, at 5-6.

Counsel for Mr. Kadamovas filed additional motions requesting further access, including a renewal of the request for computer use in his cell, and Mr. Kadamovas also filed pro se pleadings accusing the prison authorities of tampering with, and destroying, his case materials. Ninth Cir. No. 07-99009, Dkt. Nos. 131, 154, 157. The BOP was accused of failing to comply with the Ninth Circuit order regarding the twenty hour per week access. Ninth Cir. No. 07-99009, Dkt. No. 172-2, at 17. In response, the government asserted that the accusations of tampering with

Kadamovas' legal materials were unfounded. Ninth Cir. 07-99009, Dkt. No. 178. The Ninth Circuit issued several more orders, denying the requests to intervene. Ninth Cir. No. 07-99009, Dkt. Nos. 189, 352. As set forth in Exhibit A, the disputes with the prison were (and are) ongoing.

On April 10, 2018, after the oral argument in the appellate court and one month before the Ninth Circuit issued its decision on the appeal, Mr. Kadamovas' appellate lawyers filed a document entitled "Renewed Motion for an Order Allowing Computer Software, or, in the Alternative, Requiring the BOP to Provide a Location for Mr. Kadamovas to Both Store and Work with Hard Copies of All his Case Related Materials," Ninth Cir. No. 07-99009, Dkt. No. 438. The materials submitted with this motion included Exhibit A, the declaration from counsel Margaret O'Donnell, documenting the disputes regarding the access to legal materials, as well as a declaration from Mr. Kadamovas noting that "I continue to be denied meaningful access to work on my case and challenge the government narrative. . . . All I ever wanted was a chance to have a fair trial as guaranteed by the United States Constitution . . . ." Ninth Cir. No. 07-99009, Dkt. No. 438-2, at 38.[2] The motion

---

[2] The ongoing difficulties have caused more than just an infringement of the right to access the courts, they have caused mental anguish for Mr. Kadamovas and negatively affected his health and psychological state. *See*, *e.g.*, Amended Complaint, *Kadamovas v. Caraway*, No. 2:14-cv-00179-WTL-WGH (S.D. Ind.), Dkt. No. 10, at 33 (asserting "mental anguish" as a result of the prison's loss of his legal materials); Petition for Writ of Habeas Corpus, *Kadamovas v. Watson,* No. 2:19-cv-00540-JPH-MJD (S.D. Ind.), Dkt. No. 1, at 31 (noting that the lack of ability to work on his case,

renewed previous requests for a court order directing the BOP to provide access and usable software. The government resisted, filing an opposition that questioned jurisdiction and suggested that the motion be brought in the district court "after this Court [the Ninth Circuit] has decided the appeal." Ninth Cir. No. 07-99009, Dkt. No. 443, at 3. On September 7, 2018, after the opinion in the case was released, the Ninth Circuit issued an order denying rehearing and further concluding that "Appellant's Renewed Motion for Miscellaneous Relief (Dkt. No. 438) is DENIED without prejudice to Kadamovas raising the issues contained therein before the district court." Ninth Cir. No. 07-99009, Dkt. No. 465.

Present counsel were appointed on July 18, 2019, and inherited this situation. Dkt. No. 2330.[3] Given the disputes regarding the integrity of the legal materials

---

in combination with years of solitary confinement, have caused "actual mental anguish and suffering, including increased stress, heightened anxiety, severe difficulty concentrating, short term memory problems, chronic depression, . . . and unfathomable emotion[al] pain and suffering.")

[3]      The initial Ex Parte Application to Appoint Counsel, filed by former counsel, included the following:

> [Mr. Kadamovas'] overriding concern, as it has been since before his trial, continues to be whether he will be able to have full, confidential access to his digital case materials, including more than 80,000 pages of discovery, audio and video recordings, as well as the means to confidentially review the digital materials and discuss with his attorneys. . . . At this stage in the proceedings, Mr. Kadamovas's ability to work on his case and with the discovery in preparation for filing a § 2255 motion is imperative.

previously sent into the prison, counsel has endeavored to provide a newly gathered complete set of discovery and transcripts on several hard drives which have been sent to Mr. Kadamovas.[4] In order to allow him to use and review the materials on these hard drives, however, he still needs a computer. And, in order to utilize the computer, he needs translation software, and software that allows him to take notes and compare documents. And, of course, he must have the time to use these resources and a reasonably accommodating place to conduct his review.

Counsel is willing to purchase and provide a computer for Mr. Kadamovas. However, the BOP may wish to provide a computer. Counsel endeavors to comply with any reasonable security limitations. The issue is access, and Mr. Kadamovas, even though he has been convicted of serious crimes, still possesses fundamental rights and must be able to participate, through review and access to the evidence against him and the transcripts of his trial, in the postconviction process that will decide whether the United States government will execute him.

Dkt. No. 2327, at 13-14.

[4] In March and April of this year, counsel supplied Mr. Kadamovas with three computer hard drives containing the transcripts from the trial, the audio and video recordings produced by the government at trial, and the discovery from the case. In addition, counsel prepared and sent a list of the various work-product documents created by Mr. Kadamovas during trial. *See* the Declaration of Timothy J. Foley in Support of Kadamovas' Motion for Order Directing the Bureau of Prisons to Permit Access to Legal Materials. In sending discovery into the prison, counsel complied with the protective order issued in this Court back in 2004. Dkt. No. 450.

This Court has jurisdiction because this is not a motion generally about conditions of confinement. Instead, the matter here—access to legal materials—is directly related to matters that are in the Court's jurisdiction: Mr. Kadamovas' ability to work on his legal case, assist counsel, and fully develop legal claims that this Court will review. The harm that Mr. Kadamovas suffers because of his lack of meaningful access to his legal materials is definite and concrete, not hypothetical or abstract.

This Court possesses ancillary jurisdiction to issue orders that will help to manage the proceedings before it. "Ancillary jurisdiction is the power of a court to adjudicate and determine matters incidental to the exercise of its primary jurisdiction over a cause under review." *United States v. Sumner*, 226 F.3d 1005, 1013 (9th Cir. 2000). Under such ancillary jurisdiction, this Court has the discretion to require the Bureau of Prisons to provide Mr. Kadamovas with full and fair access to the legal materials needed to work on his case, ensuring he has access to a computer with word processing and translation software, and a meaningful opportunity to use those tools and review the material. Just as the Ninth Circuit had the authority to issue an order during the appeal directing the BOP to provide Mr. Kadamovas twenty hours a week access to a dedicated computer (Ninth Cir. No. 07-99009, Dkt. No. 124), this Court has the authority to grant the relief requested in this motion.

Consequently, counsel for Mr. Kadamovas requests that this Court issue an order, consistent with the request in Exhibit A, at 11-12, directing the Bureau of Prisons to:

9

(1) Allow Mr. Kadamovas access to his own computer with all the necessary software to review the materials relevant to his case, including the ability to translate all documents from English to Russian and to create new documents and transfer his work product to his attorneys, time sufficient to meaningfully work on his case, and access to a toilet; or

(2) Provide Mr. Kadamovas a dedicated computer with all the necessary software to review the materials relevant to his case, including the ability to translate all documents from English to Russian and to create new documents and transfer his work product to his attorneys, time sufficient to meaningfully work on his case, and access to a toilet; or

(3) Provide Mr. Kadamovas with a separate cell dedicated solely to his use in which he can keep and meaningfully work on the tens of thousands of actual pages of documents pertaining to his case (including discovery and trial and appeal transcripts and other records) as well as audio and video records, a cell separate and apart from the one in which Mr. Kadamovas lives in light of the BOP limits on storage in prisoners' cells, and time in the separate cell sufficient to meaningfully work on his case.

Dated: June 29, 2022.                Respectfully Submitted,

                                     */s/Timothy J. Foley*
                                     TIMOTHY J. FOLEY
                                     Counsel for Defendant
                                     Jurijus Kadamovas