# Exhibit A

Declaration, Ninth Circuit 07-99009

Docket. No. 438-1, pages 3 to 13

## DECLARATION

1.      I am an attorney appointed, along with Benjamin L. Coleman and Barbara E. O'Connor, to represent Defendant-Appellant Jurijus Kadamovas in this matter. I make this declaration in support of the foregoing renewed motion for computer services, and request for an order protecting confidential legal materials sent by special mail, or, in the alternative, an order requiring the BOP to provide a suitable location to store hard copies of all case related documents.

2.      All efforts to negotiate with the BOP on the current concerns have been exhausted. At issue remain Mr. Kadamovas's software access (including translation software), formal assurances about sufficient time to work at a computer at which Mr. Kadamovas can sit or alternative means that will allow Mr. Kadamovas to work on his case through his hard copy review of the tens of thousands of pages of discovery, transcripts and the clerk's record. Also remaining is a reoccurring concern about the BOP procedure and timeline for review of external hard drives of case-related materials that undersigned counsel send their client in packages marked "special mail."

3.      A synopsis of events related to Mr. Kadamovas's access to his case related materials over the last decade is appropriate.[1] He was sentenced to death in the

---

[1] For a more detailed explanation of the history, see Mr. Kadamovas's pro se "Motion to Nefarious Act By the Government and Prison Officials" filed on June 4, 2010 [DE 154], Apellant's Opening Brief, Issue XII, pp. 184-90, Appellant's Reply Brief, Issue

(4 of 53)

Case 2:02-cr-00220-MCS Document 2420-2 Filed 06/29/22 Page 3 of 12 Page ID
Case: 07-99009, 04/10/2018, ID: 10832300, DktEntry: 438-1, Page 4 of 14
#:14361

United States District Court for the Central District of California. He is currently on death row at the United States Penitentiary in Terre Haute, Indiana where he has been since 2007.

4.      Mr. Kadamovas is a Lithuanian citizen, whose native language is Russian. At the time of his arrest, in February 2002 and through his trial and sentencing which concluded in March 2007, Mr. Kadamovas relied exclusively on official court interpreters. During trial, after several years of effort, Mr. Kadamovas was allowed the use of a laptop computer in his cell while he was detained at the Metropolitan Detention Center ("MDC") in Los Angeles, California. The laptop computer contained the discovery materials and was equipped with translation software that allowed him to translate the discovery documents and the voluminous other materials in this case from English into Russian. No security issues arose from Mr. Kadamovas's use of his laptop computer in his cell.

5.      Mr. Kadamovas's access to his discovery and his ability to work on his case has been an ongoing issue from the outset of his incarceration at USP Terre Haute:

---

XII, pp. 128-39 (concerning whether the government breached a stipulation allowing Mr. Kadamovas access to the vast discovery materials so that he could meaningfully assist in his defense) and his Pro Se Supplemental Brief filed on June 16, 2017, and which this Court has since ordered filed. [DE 364; 366; 369; 418].

(5 of 53)

Case 2:02-cr-00220-MCS Document 2420-2 Filed 06/29/22 Page 4 of 12 Page ID
Case: 07-99009, 04/10/2018, ID: 10832300, DktEntry: 438-1, Page 5 of 14
#:14362

a.    In July 2009, Mr. Kadamovas filed a pro se motion with the Court, and among other things asserted that, due to his limited ability in the English language, he was being denied access to the courts and adequate facilities to assist in his defense. Undersigned counsel supported his request asking for an additional Russian-speaking attorney and for resources for translation and computer equipment, including his request for an order directing the BOP to provide Mr. Kadamovas with a laptop computer in his cell. This Court, on February 24, 2010, denied the request for a laptop computer in his cell, but ordered the prison to provide Mr. Kadamovas with access 20 hours per week to the "dedicated computer" the BOP agreed to provide for Mr. Kadamovas's exclusive use. The parties, on March 24, 2010, filed a status report relating the logistics of Mr. Kadamovas's computer use, and advising the Court that the BOP had replaced his handheld translation device which another prisoner had damaged because it had not been maintained in a secure location.[2]

b.    Undersigned counsel continued to work with Mr. Kadamovas in an effort to have translation software installed on the dedicated computer which would allow him to translate large swaths of discovery and transcripts from English to Russian. The initial hurdle was that the majority of Mr. Kadamovas's digital discovery and case materials would not open on the BOP computer. All attempts to communicate with the

---

[2] During this same time frame, portions of Mr. Kadamovas's CDs with digital discovery were also lost because, as with the handheld translation device, he was not allowed to keep them in his cell and the prison did not maintain the materials in

BOP Information Technology staff remained unanswered. (*See* Declaration of Margaret O'Donnell, attached as Exhibit A). Since there was no way to work with the computer, and because Mr. Kadamovas still believed use of a prison computer would compromise his work product, he declined to use the dedicated computer.

c.      Because of the inability to resolve these issues, on December 30, 2010, undersigned counsel filed a status report and renewed motion requesting computer access in Mr. Kadamovas's cell, as well as requests for the imposition of measures to secure and safeguard his case materials and discovery in his cell, and for an order directing the Bureau of Prisons to allow him access in his cell to his electronic translation device. The Court denied the motion on April 29, 2011.

d.      Over the course of several years, the BOP, without notifying Mr. Kadamovas or undersigned counsel, added Quick View Plus 11 (as recommended by Mr. Kadamovas's computer expert (*see* Declaration of Jeffrey Flax, attached as Exhibit B)), which allowed the vast majority of Mr. Kadamovas's digital files to open on the BOP computer. And, after all administrative and legal remedies were exhausted, unexpectedly, prison officials brought Mr. Kadamovas his handheld translation device, and informed him that he could keep it in his cell along with his case-related CDs and DVDs, some of which he has more recently been able to access through his prison-provided DVD player. It was, however, during this time period, in

a secure location.

(7 of 53)

Case 2:02-cr-00220-MCS Document 2420-2 Filed 06/29/22 Page 6 of 12 Page ID
Case: 07-99009, 04/10/2018, ID: 10832300, DktEntry: 438-1, Page 7 of 14
#:14364

2012, that BOP officials forced Mr. Kadamovas to mail out several boxes of paper copies of his legal materials with the threat that they would be destroyed if he did not. Regrettably, two of those boxes never made it to undersigned counsel and there has never been a satisfactory explanation as to why Mr. Kadamovas's legal files were lost. *(See* Letter from Margaret O'Donnell to Warden John Caraway, attached as Exhibit C).

e.      In March 2017, the BOP denied undersigned counsel's request to bring a laptop computer to an upcoming legal visit with Mr. Kadamovas; the Court then denied undersigned counsel's subsequent request for an order allowing the same. It was during this time period that undersigned counsel learned that there was no longer a computer dedicated solely to Mr. Kadamovas's use.

f.      Mr. Kadamovas then filed a pro se Notification of Intent to Withdraw Appeal in which, among other concerns, he raised the ongoing loss of his legal materials and his belief that the Government did not and still does not want him to be able to participate in his defense as grounds for his request. In response to the Court's order, undersigned counsel conferred with Mr. Kadamovas and determined that at the heart of his longstanding unresolved issues regarding his access to his case-related materials and the handling of those materials by the BOP, was a warning displayed on the BOP-provided computer advising that the materials reviewed and work done on the computer is not confidential and requiring a waiver of any claim of privilege. Mr.

7

(8 of 53)

Case 2:02-cr-00220-MCS Document 2420-2 Filed 06/29/22 Page 7 of 12 Page ID
Case: 07-99009, 04/10/2018, ID: 10832300, DktEntry: 438-1, Page 8 of 14
#:14365

Kadamovas also remained concerned that the community computer available for his use does not allow him to save any files, which prohibits him from using the computer in an effective manner, and sharing his work product with his counsel. The materials are simply too voluminous to allow for paper note-taking when reviewing and saving information. Finally, undersigned counsel raised concerns that although the "special mail" package containing the hard drive of case-related digital materials sent to Mr. Kadamovas by his attorneys was opened in his presence, the contents of the hard drives are inspected outside his presence, and then held by prison officials for a number of days before they are given to Mr. Kadamovas.

The government notified the Court that the prison does not enter the sphere of privileged or work-product protected materials when it scans for viruses and contraband on received electronic case material, and that, in spite of wording to the contrary on the opening screen of the computer, the government will not deem Mr. Kadamovas to have waived the attorney-client privilege or work-product doctrine protections merely because he has used the BOP computer to review digital materials. In its June 12, 2017 Order, the Court found that the government had adequately addressed Mr. Kadamovas's concerns about waiver of protections by using the computer, but did direct the government to remind prison officials at Terre Haute to open properly designated "special mail" sent to Mr. Kadamovas by his counsel in his presence.

(9 of 53)

Case 2:02-cr-00220-MCS Document 2420-2 Filed 06/29/22 Page 8 of 12 Page ID
Case: 07-99009, 04/10/2018, ID: 10832300, DktEntry: 438-1, Page 9 of 14
#:14366

6.      Mr. Kadamovas, relying on the government's assertions about his attorney-client and work product protected materials, committed to using the BOP computer. So, undersigned counsel endeavored to begin anew the process of negotiation with the BOP so that the parties could come to an agreement about software and the logistics of Mr. Kadamovas's computer use and insure that, if a return to this Court was required, there would be no question as to what the issues are. Undersigned counsel first sent a letter, on August 21, 2017 setting forth the requests and the issues (*See* Letter from counsel to BOP counsel, attached as Exhibit D), met with FCC Terre Haute attorney, Katherine Siereveld, on August 29, 2017, and then followed up with a letter on October 31, 2017 as well as with subsequent e-mails. (*See* letter and e-mail communication, attached as Exhibits E and F). The parties, as the attached documents reflect, are at an impasse. The unresolved issues include:

a.      The BOP will not allow any software, including translation software, to be installed on the available computer, ostensibly because the BOP computer available for Mr. Kadamovas's use is also used by other prisoners in the Special Confinement Unit and because all the requested software, including the translation software as well as the software necessary to organize and save work, requires a word-processing application to function and word-processing programs are not permitted. (*See* attached letters and e-mail communications, Exhibits D-F).

(10 of 53)

Case 2:02-cr-00220-MCS 04/10/2018, Document 2420-2 ID: 1083-2306 Filed 06/29/22 DktEntry: 438-1, Page 9 of 12 Page 10 of 14 Page ID #:14367

b.      Prison officials have indicated that they are no longer bound by the previous 2010 commitment to allow Mr. Kadamovas 20 hours a week access to the computer, instead he has been advised to just ask unit team staff for additional time, which has not served to allow him additional time at the computer. (*See* attached letter, Exhibit E). After initially denying Mr. Kadamovas's claim that he could not use the computer while seated, it is undersigned counsel's understanding that the BOP now recognizes that the current BOP computer can only be used when standing. (*See* October 31, 2017 letter and accompanying e-mail from Mr. Kadamovas, attached as Exhibit E).

c.      Prison officials have also rejected the alternative request to provide a cell or other suitable location to store the approximately 100,000 pages of discovery, transcripts and clerk's records and sufficient access time to such a location for Mr. Kadamovas so that he can work on his case. (*See* attached e-mail communications, Exhibit F).[3]

d.      Finally, although prison officials are opening, in Mr. Kadamovas's presence, the packages with hard drives containing digital case materials sent by undersigned counsel, they, even though the Court's June 12, 2017 Order about

---

[3] While his case on appeal has been fully briefed and argued, this does not alter the fact that Mr. Kadamovas can work on his case in anticipation of either a retrial or 28 U.S.C. 2255 proceedings.

10

opening "special mail" in his presence was enclosed in the package, are keeping the hard drives for days, once for 8 days and another time for 12 days, before they are giving them to Mr. Kadamovas. Electronic materials are no less attorney-client privileged than the contents in envelopes sent by attorneys, which this Court continues to recognize provide prisoners with protected First and Sixth Amendment interests in having properly marked legal mail opened only in their presence. *E.g., Nordstrom v. Ryan,* 856 F.3d 1265 (9th Cir. 2017); *Hayes v. Idaho Correctional Center*, 849 F.3d 1204 (9th Cir. 2017); *Mangiaracina v. Penzone,* 849 F.3d 1191 (9th Cir. 2017). The contents of hard drives can contain thousands of gigabytes of material, which makes them akin to thousands of pieces of specifically marked legal correspondence.

7.    Mr. Kadamovas, through his counsel, has sought to work with the BOP to resolve these issues relating to his ability to work on his case. He has sought for years to obtain real and meaningful access to his trial and discovery materials. (*See* attached declaration of Mr. Kadamovas, Exhibit G).

8.    Specifically, undersigned counsel requests an order:

a.    Allowing Mr. Kadamovas access to his own laptop computer with all the necessary software to work on his case (as set forth in the various attached letters, Exhibits D and E), including the ability to translate all documents from English to Russian, to allow him to create new documents and transfer his work product to his

attorneys, and the time sufficient to meaningfully work on his case, as well as access to a toilet, or,

b.      Providing him with a computer that is dedicated solely to his use with all the necessary software to work on his case (as set forth in the various letters, Exhibits D and E), including the ability to translate all documents from English to Russian, to allow him to create new documents, the ability to transfer his work product to his attorneys, and the time sufficient to meaningfully work on his case by sitting (rather than standing) at the computer, and access to a toilet, or,

c.      Providing Mr. Kadamovas with a separate cell dedicated solely to his use in which he can keep and meaningfully work on the tens of thousands actual pages of documents pertaining to his case (both discovery and trial and appeal transcripts and other records) as well as audio and video records. This would be a cell separate and apart from the one in which Mr. Kadamovas lives, given the BOP limits on storage in prisoners' cells.

d.      Sanctioning prison officials for not reviewing, in his presence, hard drives with digital case materials sent to him by his counsel by "special mail."

9.      We have contacted Assistant United States Attorney Ashley Aull, counsel for the government, who advised that the government opposes the relief requested in this motion.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 9th day of April, 2018 at Frankfort, Kentucky.

*s/Margaret O'Donnell*
Margaret O'Donnell

## CERTIFICATE OF SERVICE

I, hereby certify that on April 10, 2018, I electronically filed the foregoing