STEPHANIE S. CHRISTENSEN
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
KAREN I. MEYER (Cal. Bar No. 220554)
Assistant United States Attorney
Violent and Organized Crime Section
    1300 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-8559
    Facsimile: (213) 894-3713
    E-mail:   kim.meyer@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>          v.<br><br>JURIJUS KADAMOVAS,<br><br>       Defendant. | No. CR 02-220-MCS<br><br>GOVERNMENT OPPOSITION TO NOTICE OF MOTION AND KADAMOVAS' MOTION FOR ORDER DIRECTING THE BUREAU OF PRISONS TO PERMIT ACCESS TO LEGAL MATERIALS; DECLARATION OF TODD R. ROYER<br><br>Hearing Date: August 22, 2022<br>Hearing Time: 3:00 p.m. |

Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorney Karen I. Meyer, hereby files its opposition to defendant Jurijus Kadamovas' ("defendant") Notice of Motion and Kadamovas's Motion Directing the Bureau of Prisons to Permit Access to Legal Materials, filed June 29, 2022 (CR 2420).

This opposition is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: August 2, 2022

Respectfully submitted,

STEPHANIE S. CHRISTENSEN
Acting United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

KAREN I. MEYER
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.   INTRODUCTION**

While on death row in Terra Haute, Indiana, defendant Jurijus Kadamovas ("defendant") seeks special treatment for access to his own (or dedicated) computer or an entire separate cell to review the discovery in the case associated with his anticipated petition to be filed pursuant to 28 U.S.C. § 2255.  This court has no jurisdiction to address conditions of confinement such as this concerning an inmate's computer access, and defendant's motion should be dismissed. Further, even if this court does have jurisdiction, defendant has regular access to a law library computer at the facility, access that defendant has not even taken full advantage of.  Because the Constitution does not require defendant to be treated any differently than any other death row inmate in light of reasonable, institutional concerns over the safe operation of the facility, his motion should be denied.

**II.   FACTS AND PROCEDURAL POSTURE OF THE CASE**

**A.   The Hostage-Taking and Murders**

"Between late 2001 and early 2002, defendants Iouri Mikhel and Jurijus Kadamovas abducted, held hostage, and killed five people, dumping each victim's body in the New Melones Reservoir outside Yosemite National Park." <u>United States v. Mikhel</u>, 889 F.3d 1003, 1016, 1020 (9th Cir. 2018).  Defendant did so along with co-defendant Iouri Mikhel to fund a lavish lifestyle centered around expensive cars and pricey homes, targeting wealthy Los Angeles residents. Between December 2001 and January 2002, defendants collected approximately $234,628 in ransom money from the family of victim Alexander Umansky and $969,000 from a business partner of victims

George Safiev and Nick Kharabadze.  Defendant and co-defendant Mikhel orchestrated and participated in the murder of each victim, which was done either by asphyxiation or strangulation.

**B.    Defendant's Escape Attempt While in Pre-Trial Detention**

While awaiting trial at the Metropolitan Detention Center in Los Angeles, defendant, along with co-defendants Mikhel and Petro Krylov, conspired to escape from that facility.  "Once they had been arrested and jailed, Mikhel and Kadamovas carefully plotted their escape from prison – a plan that involved other prisoners and that acknowledged they might have to kill guards on the way out."  Id. at 1058.  They arranged to be moved to cells abutting a common stairwell.  Id. at 1020 ("Kadamovas was originally housed elsewhere in the facility but managed to change cells to be next to the stairwell intended for the escape.").  Mikhel smuggled into the institution a "veritable hardware store" of escape tools, "including hacksaw blades, wrenches, screwdrivers, fishing line, paint, work gloves, bolt cutters, and a camcorder."  Id.

**C.    Trial, Convictions, and Sentence**

"After a five-month trial, a jury convicted them [Mikhel and Kadamovas] of several federal crimes, including multiple counts of hostage taking resulting in death under the Hostage Taking Act, 18 U.S.C. § 1203....[T]he evidence that Mikhel and Kadamovas did these things – and did them without concern for their victims' suffering – was detailed, comprehensive, and in a word, overwhelming."  Id. at 1016, 1020 (jury came back with guilty verdicts the day after beginning their deliberations).  Defendant was also convicted of conspiring to escape from custody.  Id. at 1048.  Finding all nine of the government's statutory and non-statutory aggravating factors, and

2

none of either defendant's mitigating factors, the jury in the penalty phase unanimously recommended that both defendants be sentenced to death.  Id. at 1016, 1021, 1059.

Defendant was sentenced on March 12, 2007, and timely filed his notice of appeal.  (Clerk's Record ("CR") for No. 02-220, ECF No. 1606.)  Defendants Kadamovas and Mikhel filed a joint opening brief and individual opening briefs in May and June 2013.  After extensive briefing and oral argument, the Ninth Circuit issued its published opinion in May 2018.  Defendant filed for petition of certiorari in the United States Supreme Court, which was denied on October 7, 2019.  Kadamovas v. United States, 140 S. Ct. 157 (2019).  Defendant's petition pursuant to 28 U.S.C. § 2255 was originally due on October 7, 2020, but because of the COVID-19 pandemic, the government has agreed to three six-month timeliness waivers until October 7, 2022.

**D.    Defendant's Conditions to Review Discovery While in Custody at Federal Correctional Complex, Terre Haute**

Defendant currently resides in the Special Confinement Unit ("SCU") at FCC Terre Haute, and has resided there since arriving at the institution in April 2007.  (Declaration of FFC Terre Haute Camp Administrator and Acting SCU Unit Manager Todd R. Royer ("Royer Decl."), ¶ 3.)  As noted in the motion before this Court, Kadamovas' current defense counsel provided computer hard drives to Kadamovas in March and April 2022.  Kadamovas maintains these hard drives in his cell and is able to access these hard drives on the computer in the

law library in the SCU.  (Royer Decl., ¶ 7.)[1]  The law library is open seven days a week, and inmates can sign up to use it for an hour at a time.  (Royer Decl., ¶ 12.)  Inmates can print pages of their discovery from the computer and keep those pages in their cells in accordance with the three-cubic-feet limit of possessing legal property as set forth in the Unit Policy.  (Royer Decl., ¶ 13.)  If an inmate has a need to use the law library for longer than an hour per day, the inmate can make a request to the Unit Team that runs the SCU.  (Royer Decl., ¶¶ 3, 15.)

By way of example, in June 2022, defendant signed up to use the law library, but in only a few instances, and for less than the hour allotted.  (Royer Decl., ¶ 16.)  To Mr. Royer's knowledge, defendant has not been denied access to the law library when he has requested to use it, (Royer Decl., ¶ 16), and since February 2020 when Mr. Royer became acting Unit Manager of the SCU, in no instance has defendant made a request to the Unit Team for access in excess of an hour a day.  (Royer Decl., ¶ 18.)  In a couple of instances in July 2022, defendant was offered the computer and refused both times. (Royer Decl., ¶ 17.)

Previously a computer was purchased for the exclusive use of inmate Kadamovas, which he was able to use in a separate cell where he could store excess legal property.  At some point this computer and extra work space was taken away from all SCU inmates, including inmate Kadamovas (who was the only inmate who received a dedicated computer) because of security concerns associated with such

---

[1]  Defendant is not entitled to any contraband, such as bootleg movies and pornographic movies that were part of discovery.  (Royer Decl., ¶ 6.)

4

accommodations, and in addition, lack of use in Kadamovas's case. (Royer Decl., ¶ 5.)

And while Mr. Royer communicates with defendant in English (both orally and in writing) and there is serious question concerning how defendant's purported language difficulties have hampered his ability to communicate and cooperate with his counsel,[2] defendant has also been provided with an electronic handheld translation device for use in his cell, which he has not been known to use.  (Royer Decl., ¶¶ 4, 8.)

### E.    FCC Terre Haute's Rationale for Defendant Not Having His Own Computer or Separate Cell to Review Discovery

Officials at FCC Terre Haute are unwilling to allow Kadamovas unfettered access to a dedicated computer for his exclusive use outside of his cell (or to a laptop computer in his prison cell).  No

---

[2] Mr. Royer speaks with defendant frequently, and he and Mr. Royer have never had any difficulty communicating in English, both orally and in writing.  To Mr. Royer's knowledge, all of the interactions between staff members at FCC Terre Haute and Kadamovas, both verbally and in writing, have been in English.  Moreover, as of today's date, inmate Kadamovas has filed three hundred fifty nine (359) written requests for administrative remedies, which have overwhelmingly been written in English. (Royer Decl., ¶ 4.)  See also Declaration of Diane Quinones, (retired) Supervisor of Education at FCC Terre Haute, filed in support of the Government's Response to Defendant Kadamovas's Status Report and Renewed Motion for Computer Access and Access to an Electronic Translation Device in his Cell, filed February 18, 2011, in Ninth Circuit Appellate Case No. 07-99009, docket entry 178-1, attached hereto as Exhibit A, ¶ 3 ("I and other education staff have offered [Kadamovas] the English proficiency exam twice, and he has requested the exam twice.  All four times when it has come time to take the test, inmate Kadamovas has refused the exam....When I questioned why he requested it in the first place, he informed me that he wanted the $25.00 placed in his commissary account.  (Inmates who study and pass the test receive $25.00 for passing the test.)  Inmate Kadamovas told me that he did not want it known that he could read and write English and that he just wanted the $25.00.").

other inmate at FCC Terre Haute is allowed a dedicated computer or dedicated cell to review discovery materials, despite the fact other inmates at the facility face the same circumstances as Kadamovas (i.e., they have been convicted of capital offenses and/or English is not their first language).  (Royer Decl., ¶ 9.)

Permitting a prisoner to have access to a computer device that the prison cannot frequently monitor creates a risk to the safe, secure, and orderly management of FCC Terre Haute, as an inmate given unfettered access to such a device could load unauthorized software and hardware on such a computer, could alter the computer to use it as an unauthorized communication device, could possibly use the computer to tamper with the computer systems in place at the institution, and could remove, substitute, or tamper with the computer's parts for any number of nefarious purposes, including creating weapons.  (Royer Decl., ¶ 10.)  Further, special treatment toward one inmate interferes with the orderly management of the institution.  (Royer Decl., ¶ 10.)  No inmate in the SCU is granted special computer privileges or law library access outside the policies set forth in the Unit Policy.  (Royer Decl., ¶ 22.)

**III.  ARGUMENT**

This Court lacks jurisdiction to hear defendant's motion because it is not the "custodial court."  Therefore, his motion should be dismissed.  Even assuming this Court has jurisdiction, defendant's computer access meets constitutional muster, and, therefore, defendant's motion should be denied.

**A.    This Court Has No Jurisdiction to Hear Defendant's Motion**

Despite defendant's efforts to avoid a jurisdictional bar by characterizing his claim as something other than a claim concerning

6

his condition of confinement, the manner in which defendant is afforded the opportunity to review the discovery in his case falls squarely within the scope of such a claim, and, thus, must be raised and heard in the Southern District of Indiana, where FCC Terre Haute where defendant is housed is located.  See Rumsfeld v. Padilla, 542 U.S. 426, 443 (2004) (challenges to conditions of inmate's confinement are only cognizable pursuant to 28 U.S.C. § 2241 and may only be brought in district where inmate is confined); Hernandez v. Campbell, 204 F.3d 861, 864 (9th Cir. 2000) ("...petitions that challenge the manner, location, or conditions of a sentence's execution must be brought pursuant to § 2241 in the custodial court.").[3]

### B. Defendant Has Not Been Denied Access to the Courts where the Constitution Does Not Entitle Defendant to a Dedicated Computer and Separate Cell to Review Discovery

Defendant's contention that he has been denied access to the courts because he has not been granted a dedicated computer for his exclusive use or a separate cell to review discovery is incorrect. Courts have uniformly recognized that prison officials have wide discretion when it comes to creating policies and making decisions that impact the "preservation of internal order and discipline, the maintenance of institutional security, and rehabilitation of

---

[3] Courts have also held that such claims must be asserted in a civil rights action as opposed to a habeas petition.  See Torlucci v. Evans, 2008 WL 4360767, *1 (C.D. CA. 2008) ("Claims directed to the conditions of petitioner's confinement may not properly be asserted in a habeas petition, or as part of a habeas petition.  Rather, such claims must be asserted in a separate civil rights action.") (citations omitted); Arnold v. Lammer, 2022 WL 2757571, *2 (C.D. Ca. 2022).  The Supreme Court has recognized that the distinction between civil rights actions and habeas petitions is not clear.  Lewis v. Casey, 518 U.S. 343, 354-55 (1996).  Either way, this Court does not have jurisdiction to hear this motion because defendant is not housed in this district.

7

prisoners." Storseth v. Spellman, 654 F.2d 1349, 1355 (9th Cir. 1981). And the Supreme Court has recognized the need to give broad deference to prison administrators with respect to decisions impacting the day-to-day operations of a prison facility. Bell v. Wolfish, 441 U.S. 520, 546-47 (1979). While prisoners have a constitutional right of access to the courts, Vandelft v. Moses, 31 F.3d 794, 796 (9th Cir. 1994), none of the reasonable restrictions that FCC Terre Haute places on death row inmates, including on Kadamovas, can be characterized as infringing on that right, especially where defendant is represented by counsel.

In Vandelft, a case involving a Section 1983 action brought against prison officials, the Ninth Circuit specified that included within the right of access to the courts "is a prisoner's right of access to adequate law libraries or legal assistance from trained individuals." Id. (citing Bounds v. Smith, 430 U.S. 817, 820 (1977)). The Ninth Circuit established a two-step analysis based on whether a claim alleges a denial of adequate law libraries or denial of adequate assistance from persons trained in the law. Id. If neither requirement is at issue, then the second step requires defendant to establish actual injury, or actual denial of access to the courts. Id. In this case, defendant makes no such allegations either regarding denial of law library access,[4] denial of access to a

---

[4] While defendant apparently suggests that law library access is not Constitutionally sufficient for his needs, it should be noted that even in this context, "the Constitution does not guarantee a prisoner unlimited access to a law library. Prison officials of necessity must regulate the time, manner, and place in which library facilities are used. The fact that an inmate must wait for a turn to use the library does not necessarily mean that he has been denied meaningful access to the courts." Vandelft, 31 F.3d at 796 (quoting
*(footnote cont'd on next page)*

8

trained legal professional, or specific denial of access to the courts.  Thus, his claim fails.

Defendant spends much of his brief detailing his past complaints concerning computer access, but devotes little discussion to any concern over defendant's access to discovery provided by his current counsel other than vague unsubstantiated claims that his purported lack of access and purported lack of understanding of English has led to substantial difficulties in cooperating with his attorneys.  (Mot. at 2.)  As noted above, defendant functions within the institution in English.  But to the extent defendant requires translation into his native language, he has been afforded an electronic translation device.  Defendant has also been afforded access to his discovery through the use of a law library computer to use upon request. Defendant alone denies himself access by choosing not to avail himself of the opportunities presented by the institution.  In the absence of any meaningful claim that he has been unable to cooperate with counsel or has been denied access to the courts, defendant instead asserts that he is entitled to access as he defines it, in other words, to special treatment among all death row inmates at FCC Terre Haute in the form of a dedicated computer or a separate cell for discovery review.  The Constitution does not demand that defendant be so favored.

**IV.   CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court either dismiss defendant's motion for lack of jurisdiction or deny defendant's motion because he has failed to

---

Lindquist v. Idaho State Bd. of Corrections, 776 F.2d 851, 858 (9th Cir. 1985).

establish a violation of his constitutional right of access to the courts.

DECLARATION OF TODD R. ROYER

I, Todd R. Royer, declare as follows:

1.    I am employed as the Camp Administrator and in addition have acted as the Acting Unit Manager for the Special Confinement Unit ("SCU") at the Federal Correctional Complex at Terre Haute, Indiana ("FCC Terre Haute") since February 2020.  Since 2010, I worked in areas of responsibility as a Case Manager and Unit Manager throughout the institution, at times over the SCU.  I began my career with the Federal Bureau of Prisons ("BOP") in December 2003, and I have been stationed at FCC Terre Haute since that time.

2.    The SCU at FCC Terre Haute has been established and designed with the mission to provide a humane, safe, and secure environment for individuals who have received a sentence of death in the federal court system.

3.    The SCU is run by a Unit Team ordinarily consisting of one unit manager, a correctional counselor, and a case manager.  There are 40 inmates designated to the SCU, with 38 inmates currently housed in the SCU.  Inmate Jurijus Kadamovas is an inmate in the SCU, and has been an inmate in this Unit since coming to the institution on April 4, 2007.  Kadamovas is a maximum custody inmate, which means his movements require the maximum level of security available at FCC Terre Haute.

4.    In response to the assertions by inmate Kadamovas in his motion before this Court, I offer the following:  I speak with inmate Kadamovas frequently, and he and I have never had any difficulty

11

communicating in English.  I have communicated with inmate Kadamovas both verbally and in writing and it has always been in English.  As far as I am aware, all of the interactions between staff members at FCC Terre Haute and Kadamovas, both verbally and in writing, have been in English.  Moreover, as of today's date, inmate Kadamovas has filed three hundred fifty nine (359) written requests for administrative remedies, which have overwhelmingly been written in English.

5.    Previously a computer was purchased for the exclusive use of inmate Kadamovas, which he was able to use in a separate cell where he could store excess legal property.  While I do not recall the exact date, at some point this computer and extra work space was taken away from all SCU inmates, including inmate Kadamovas (who was the only inmate who received a dedicated computer) because of security concerns associated with such accommodations, and in addition, lack of use in Kadamovas's case.

6.    When inmate Kadamovas' discovery was initially sent to FCC Terre Haute, it included a number of compact disks and DVDs, some of which contained "bootleg" copies of popular movies and pornographic movies.  As contraband, Kadamovas has not been permitted to have access to these items.

7.    As noted in the motion before this Court, Kadamovas' current defense counsel provided computer hard drives to Kadamovas in March and April 2022.  Kadamovas maintains these hard drives in his

cell, and is able to access these hard drives on the computer in the law library in the SCU.

8.    During the entire time I have overseen and worked in the SCU, Kadamovas has had a handheld electronic translation device available for his use in his cell, which he has not been known to use.

9.    Officials at FCC Terre Haute are unwilling to allow Kadamovas unfettered access to a dedicated computer for his exclusive use outside of his cell (or to a laptop computer in his prison cell). No other inmate at FCC Terre Haute is allowed a dedicated computer or dedicated cell to review discovery materials, despite the fact other inmates at the facility face the same circumstances as Kadamovas (i.e., they have been convicted of capital offenses and/or English is not their first language).

10.    Special treatment toward one inmate or permitting a prisoner to have access to a computer device that the prison cannot frequently monitor creates a risk to the safe, secure, and orderly management of FCC Terre Haute, as an inmate given unfettered access to such a device could load unauthorized software and hardware on such a computer; could alter the computer to use it as an unauthorized communication device; could possibly use the computer to tamper with the computer systems in place at the facility; and could remove, substitute, or tamper with the computer's parts for any number of nefarious purposes, including creating weapons.

13

11.  As mentioned above, the SCU contains a law library that has a discovery computer that all inmates housed in the SCU can use.  It also contains a typewriter if an inmate wishes to type notes.  The law library is closed behind a metal door with a window and a separate window with metal bars through which an inmate can be monitored to determine whether he is engaging in unauthorized behavior in the law library.  There is frequent movement by SCU staff outside the law library to be able to monitor an inmate's movements within the law library, while preserving the inmate's privacy in reviewing his discovery.

12.  Inmates can sign up to use the law library and, thus, the discovery computer, seven days a week for an hour at a time.  The names of inmates who sign up to use the law library are kept in a law library log.

13.  Inmates are permitted to print pages of their discovery from the law library computer and keep those printed pages in their individual cells.  The only limitation on the number of pages an inmate can print is the amount of legal property an inmate can have in his cell.  The Unit Policy specifies that:

"[a]n inmate is authorized in his possession up to three cubic feet of legal material with the stipulation that it is to prepare for or respond to an active case.  Inmates will need to prioritize what legal documents they retain in their cell.  If the inmate requires more than the allowable amount, the inmate may request a temporary increase of legal material from the Unit Manager.  All material must be neatly maintained in the space provided."

14

14. The limitations on the quantity of legal materials that an inmate may store in his cell have been imposed for practical and security-related reasons. First, these limitations are necessary because an inmate only has a limited amount of space in his cell to live and allowing an inmate to store all of his legal materials in his cell would post a fire hazard, particularly in the case of an inmate like Kadamovas, whose legal materials fill dozens of boxes. In addition, these limitations exist because permitting inmates to keep paper and belongings in their cells above the quantities allowed would not permit staff to perform adequate searches of inmates' cells for contraband, which would impact the secure and orderly operation of the institutions these officers are responsible for safeguarding.

15. Generally inmates are limited to using the law library for one hour a day, but if an inmate had a need to use it for a longer time, that inmate could make such a request to the Unit Team.

16. In looking at the law library log just for June 2022 by way of example, inmate Kadamovas has signed up to use the law library in only a few instances, and in these instances it was for less than the hour time slot allotted. I am not aware that Kadamovas has been denied access to the law library upon his request.

17. Inmate Kadamovas has also refused an offer to him for computer use. For example, on July 13, 2022, and July 15, 2022, inmate Kadamovas was offered the computer and refused both times.

18. To the best of my knowledge, in no instance since February 2020 has Kadamovas made a request to the Unit Team for law library access in excess of an hour a day.

19. I am aware that in the motion before the Court, inmate Kadamovas has requested the ability to have a computer program that

15

would allow him to create new documents.  Word processing is not allowed on any computer in the facility as it presents a security risk to the institution.

20.  In addition, concern has been expressed at various times about the ability of BOP's computers to open certain discovery files. This is a problem with many inmates' discovery materials and does not occur because the computer is not functioning correctly.  This issue arises because the computers that inmates are allowed to have access to within FCC Terre Haute are designated as "read only" devices. However, the programs on these devices can open any files that are submitted in either an Adobe Acrobat "*.pdf" format for documents or Windows Media Player format for audio and/or video files.

21.  In the past, inmate Kadamovas received more accommodations to assist him in his legal efforts than any of the other inmates at FCC Terre Haute, including all of the other death row inmates at FCC Terre Haute and other inmates for whom English is not their first language, accommodations that he did not avail himself of. Currently, for operational and safety concerns, inmate Kadamovas along with the other SCU inmates are treated similarly by giving the inmates access to a law library computer where they, including Kadamovas, can review discovery and take handwritten notes. Kadamovas, as with other SCU inmates, is also permitted to keep his electronic media discovery in his cell in accordance with the Unit's policy.

16

22.    No inmate in the SCU is granted special computer privileges or law library access outside the policies set forth in the Unit Policy.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration is executed in Terre Haute, Indiana, on August 2, 2022.

TODD R. ROYER
Camp Administrator and Acting
SCU Unit Manager

7