Timothy J. Foley
tfoley9@earthlink.net
Attorney at Law
California State Bar No. 111558
1017 L Street, #348
Sacramento, CA 95814
Tel: (916) 599-3501

Jean E. Giles
jean_giles@fd.org
Indiana State Bar No. 21643-49
F. Italia Patti
italia_patti@fd.org
Indiana State Bar No. 34725-02
Indiana Federal Community Defenders, Inc.
111 Monument Circle, Suite 3200
Indianapolis, IN 46204
Tel: (317) 383-3520
Fax: (317) 383-3525

Attorneys for Defendant Jurijus Kadamovas

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Case No.    2:02-cr-00220-MCS |
| ) | |
| Plaintiff, ) | KADAMOVAS' REPLY TO |
| ) | GOVERNMENT OPPOSITION |
| v. ) | TO KADAMOVAS' MOTION FOR |
| ) | ORDER DIRECTING THE BUREAU |
| IOURI MIKHEL, and ) | OF PRISONS TO PERMIT |
| JURIJUS KADAMOVAS, ) | ACCESS TO LEGAL MATERIALS |
| ) | |
| Defendants. ) | DATE:    August 22, 2022 |
| ) | TIME:    3:00 P.M. |
| | COURT:    Hon. Mark C. Scarsi |
| | Courtroom 7C |
| | 350 W. First Street |
| | Los Angeles, CA 90012 |

1

Defendant Jurijus Kadamovas, through his appointed counsel, submits this Reply to Government Opposition to Kadamovas' Motion for Order Directing the Bureau of Prisons to Permit Access to Legal Materials, in response to the Government Opposition (Dkt. No. 2425), filed on August 2, 2022, and in further support of the motion requesting this Court's aid in securing access to the legal materials in this death penalty case (Dkt. No. 2420).

A.    This Court Has Jurisdiction to Decide This Motion.

The Government asserts that this Court lacks jurisdiction, arguing that the matter is "a claim concerning . . . [a] condition of confinement." Opposition, 8-9.[1] The cases cited by the Government, however, concern constitutional challenges to conditions of prison life brought before a federal court and the question of where, between the district of confinement and the district of conviction, the case should be heard. *See Rumsfeld v. Padilla*, 542 U.S. 426 (2004); *Hernandez v. Campbell*, 204 F.3d 861 (9th Cir. 2000).

The motion before the Court is neither a civil rights action nor a habeas petition, but rather a motion related directly to the preparation of the habeas corpus application under 28 U.S.C. § 2255 in this case. Under federal statute, a capital defendant has certain rights related to the preparation of a federal habeas petition,

---

[1]    Page references to the Opposition will be to the ECF page number rather than the internal document page number.

2

rights that adhere "prior to the filing of a formal, legally sufficient habeas corpus petition." *McFarland v. Scott*, 512 U.S. 849, 855-56 (1994)(Capital prisoner has "a right to legal assistance in the preparation of a habeas application."); *Brown v. Davis*, 482 F.Supp.3d 1049, 1054 (E.D.Cal. 2020). A petitioner's access to legal materials, and ability to give information to counsel derived from that review, is a crucial part of this "legal assistance."

Thus, this motion falls squarely within the Court's ancillary jurisdiction.

> Ancillary jurisdiction rests on the premise that a federal court acquires jurisdiction of a case or controversy in its entirety. Incident to the disposition of the principal issues before it, a court may decide collateral matters necessary to render complete justice.

*Jenkins v. Weinshienk*, 670 F.2d 915, 918 (10th Cir. 1982). "Ancillary jurisdiction may be exercised . . . 'to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees.'" *Garcia v. Teitler*, 443 F.3d 202, 208 (2d Cir. 2006), quoting *Kokkonen v. Guardian Life Ins.*, 511 U.S. 375, 379 (1994).

The idea that this matter is outside of the Court's jurisdiction is belied by the actions of the Ninth Circuit Court of Appeals in this very case. During the pendency of the appeal, the Circuit Court intervened in the matter of legal access, ordering the BOP to allow Mr. Kadamovas twenty hours per week usage of a dedicated computer. Ninth Cir. No. 07-99009, Dkt. No. 124. Subsequently, when another request was made, the Circuit Court issued an order denying the motion but specifically directing

that the denial was "without prejudice to Kadamovas raising the issues contained therein before the district court." Ninth Cir. No. 07-99009, Dkt. No. 465. There was no suggestion in the Ninth Circuit's actions that there was any jurisdictional problem.

This motion concerns a collateral matter directly linked to the preparation of the 2255 motion and within this Court's jurisdiction.

B.    The Court Should Exercise its Authority to Give Mr. Kadamovas Full Access to the Legal Materials in the Case.

The fundamental flaw in the Government's Opposition is the unspecified but clear premise that the limits on Mr. Kadamovas' access to his legal materials have to be unconstitutional before this Court should intervene. The Government asserts that "the Constitution does not require defendant to be treated any differently than any other death row inmate." Opposition, 3. And: "The Constitution does not demand that defendant be . . . favored" with "special treatment." Opposition, 11.

While the guarantee of meaningful access to the courts rests on constitutional rights, this Court need not find that the current restrictions placed on Mr. Kadamovas violate the Constitution in order to give him adequate access to his legal materials. It is simply a question of equity and fairness: whether a man sentenced to death in a case with a voluminous record should be granted the opportunity to review the evidence against him and the transcripts of his trial.

4

Concerning the actual reasons why the Government resists allowing the access requested, the Opposition is vague and conclusory.

Importantly, this request does not involve a computer with internet access. The request is simply for a computer that enables review of voluminous documents that, as a practical matter, must be reduced to a digital format.[2]

During a portion of the trial, the Government allowed Mr. Kadamovas to have his own computer in his cell in the jail. Exhibit A, Declaration of Margaret O'Donnell, Dkt. No. 2420-2, 3. At no time was there any assertion that Mr. Kadamovas misused the computer. Subsequently, as the Government concedes, he was again allowed a dedicated computer for his own exclusive use, as well as the use of a separate cell to store his legal materials, at USP Terre Haute. Opposition, 4. Again, there was no assertion of any misuse of the computer. Nonetheless, that access, and extra work space, were "taken away." Opposition, 4.

The Government now asserts, in a conclusory manner, that an inmate with a dedicated computer and unfettered access to that computer "could load unauthorized software and hardware on such a computer, could alter the computer to use it as an unauthorized communication device, could possibly use the computer to tamper with

---

[2]   As noted in the initial pleadings related to the motion, computer hard drives containing case materials were delivered to Mr. Kadamovas in March and April of this year. Counsel wishes to correct a minor inaccuracy: two (not three) hard drives were delivered. One contains the trial transcripts and audio recordings from trial and *also* contains the audio and video recordings the Government turned over to defense attorneys during trial proceedings; the other contains PDF pages of the discovery produced by the Government at trial. *See* Declaration of Timothy J. Foley, Dkt. No. 2420-3, 3, and Points and Authorities, Dkt. No. 2420-1, 8, fn. 4.

the computer systems in place at the institution, and could remove, substitute, or tamper with the computer's parts for any number of nefarious purposes, including creating weapons." Opposition, 8. One wonders how realistic such possibilities are. Regardless, the prison already allowed Mr. Kadamovas to have a dedicated computer, and none of these hypothetical evils occurred.

Similarly, the assertion that "special treatment toward one inmate interferes with the orderly management of the institution" (Opposition, 8) is an excuse which evaporates in light of the admission that Mr. Kadamovas was the "only inmate who received a dedicated computer" (Opposition, 6; *see also* Opposition, 14[3]) previously. Death row inmates certainly get "special treatment" in a number of ways, most of them detrimental, many of them onerous.

The Government invests a significant portion of its Opposition suggesting that Mr. Kadamovas' language difficulties are not serious and do not hamper his access to legal materials. *See* Opposition, 7; Dkt. No. 2425-1. The fact that staff in the institution communicate with Mr. Kadamovas in their day-to-day conversations in English, however, does not mean that he understands the legal terms, complex word usage, and complicated reports present in the transcripts and discovery involved in this case. The handheld translation device is simply inadequate to the task of

---

[3] According to Administrator Royer: "Previously a computer was purchased for the exclusive use of inmate Kadamovas, which he was able to use in a separate cell where he could store excess legal property." That computer and the extra space were "taken away from all SCU inmates, including Kadamovas . . . because of security concerns associated with such accommodations, and in addition, lack of use in Kadamovas's case." Opposition, 14. The "security concerns" are unspecified.

6

translating thousands of pages of documents containing FBI reports, interview transcripts, financial reports, phone records, autopsy reports, and other complicated items common in the voluminous discovery.

It is no doubt inconvenient for the BOP to accommodate Mr. Kadamovas' requests. But it should not be forgotten that this is a capital case, and the Government is seeking to execute him. It is indisputable that the materials in this case are voluminous, and indisputable that, whatever progress he has made in order to speak English in a prison environment, Mr. Kadamovas is a native Russian speaker whose education is minimal and who struggles with language and communication. As a matter of fairness, the defendant should be given access to, and the ability to review, the evidence against him and the transcripts of the trial.

Counsel for defendant Kadamovas urges the Court to grant the motion.

Dated: August 8, 2022.                    Respectfully Submitted,

                                          */s/Timothy J. Foley*
                                          TIMOTHY J. FOLEY
                                          Counsel for Defendant
                                          Jurijus Kadamovas