**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR 02-00220-MCS |
| Plaintiff, | |
| v. | **ORDER DENYING DEFENDANT KADAMOVAS' MOTION FOR ORDER DIRECTING BUREAU OF PRISONS TO PERMIT ACCESS TO LEGAL MATERIALS (ECF No. 2420)** |
| JURIJUS KADAMOVAS, | |
| Defendant. | |

## I.    BACKGROUND

On January 17, 2007, Defendant/Petitioner Jurijus Kadamovas was convicted of several federal crimes, including multiple counts of hostage taking resulting in death, conspiracy to take hostages resulting in death, conspiracy to launder monetary instruments, conspiracy to escape from custody, and criminal forfeiture.  [Dkt. No. 1481.]  On February 13, 2007, the jury unanimously recommended that a sentence of death should be imposed.  [Dkt. No. 1541.]  The district court sentenced Kadamovas to death on March 12, 2007, and he timely filed his notice of appeal on March 19, 2007. [Dkt. Nos. 1639, 1641, 1606.]  On May 9, 2018, the Ninth Circuit denied Kadamovas'

1

appeal. *United States v. Mikhel*, 889 F.3d 1003 (9th Cir. 2018). His petition for certiorari in the United States Supreme Court was denied on October 7, 2019. *Kadamovas v. United States*, 140 S.Ct. 157 (2019).

Although Kadamovas has not yet officially initiated federal habeas corpus proceedings by filing his 28 U.S.C. § 2255 petition,[1] counsel was appointed on July 18, 2019. [Dkt. No. 2330.] On June 29, 2022, Kadamovas filed the present Motion for Order Directing the Bureau of Prisons to Permit Access to Legal Materials, asking this Court to order the Federal Bureau of Prisons and the officials in charge of the Special Confinement Unit ("SCU") at FCC Terre Haute in Indiana to provide him unique access to legal materials and/or a personal computer so that he may assist his counsel in preparing his § 2255 petition. [Dkt. No. 2420 ("Mot.").] In its opposition, the government argues that this Court does not have jurisdiction to address Kadamovas' motion because it presents a challenge to his conditions of confinement that may not be addressed in a § 2255 habeas action[2] and that the Constitution does not require the type of special access to legal materials that Kadamovas seeks. [Dkt. No. 2425 ("Opp.".]

---

[1] Under the 1996 Antiterrorism and Effective Death Penalty Act's one-year statute of limitations, Kadamovas' 28 U.S.C. § 2255 Motion to Vacate, Set Aside or Correct Sentence was originally due on October 7, 2020. 28 U.S.C. § 2255(f). However, because of complications resulting from the COVID-19 pandemic, the government has agreed to five six-month timeliness waivers until April 7, 2023. [Dkt. No. 2427.]

[2] The contention is that Kadamovas' motion is not appropriate for review by this Court because it challenges his conditions of confinement and does not implicate the fact or duration of his confinement which are the province of this Court in federal habeas corpus proceedings. *Preiser v. Rodriguez,* 411 U.S. 475, 489 (1973); *Nettles v. Grounds*, 830 F.3d 922, 933-34 (9th Cir. 2016). As such, this claim must be pursued in a civil rights action. *See, e.g., Shook v. Apker*, 472 F. App'x 702, 702-03 (9th Cir. 2012) (finding prisoner's claims of inadequate medical care concerned conditions of confinement and should have been brought in a civil rights action, rather than habeas corpus, despite the relief sought); *Johnson v. Matevousian*, 2017 WL 469360, at *2 (E.D. Cal. Feb. 2, 2017) (prisoner's claims, including allegations that prison officials failed to provide him with access to legal materials and denied him access to the courts, constituted challenges to conditions of confinement and, as such, a civil rights action was the proper vehicle for pursuing those challenges); *Wiig v. Ives*, 2011 WL 285075, at *4 (E.D. Cal. Jan. 25, 2011) (claim regarding denial of access to legal materials was not cognizable in habeas corpus and must be pursued in civil rights action). Challenges to the conditions of a prisoner's confinement are cognizable pursuant to 42 U.S.C. § 1983 and may only be brought in the district where a prisoner is confined. *See Badea v. Cox*, 931 F.2d 573, 574 (9th Cir.

2

## II.    DISCUSSION

Courts facing similar motions filed by pro se inmates have construed the requests as motions for preliminary injunction. *See, e.g., Rodriguez v. Allison*, 2021 WL 5881669 (S.D. Cal. Dec. 13, 2021) (construing the petitioner's motion for order directing sheriff to grant him privileges afforded to other pro se prisoners as motion for preliminary injunction); *Foster v. Baker*, 2020 WL 838301 (E.D. Cal. Feb. 19, 2020) (construing pro se prisoner's request for order requiring prison to provide him access to typewriter and law library as motion for preliminary injunction).  As the court did in *Rodriquez*, this Court notes that "[a]s a threshold matter, [it] does not clearly have jurisdiction to issue the injunction [Kadamovas] seeks" because it does not have personal jurisdiction over the parties or subject matter jurisdiction over the claim. *Rodriguez*, 2021 WL 5881669 at *2 (citing *Zepeda v. U.S. Immigr. & Naturalization Serv.*, 753 F.2d 719, 727 (9th Cir. 1985) ("A federal court may issue an injunction if it has personal jurisdiction over the parties and subject matter jurisdiction over the claim; it may not attempt to determine the rights of persons not before the court."); *see also Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) ("Personal jurisdiction, too, is an essential element of the jurisdiction of a district ... court, without which the court is powerless to proceed to an adjudication." (alteration in original) (citation and internal quotation omitted)).

Kadamovas contends that the Ninth Circuit's "interven[tion] in the matter of legal access" during his appellate proceedings belies the suggestion that his motion has any jurisdictional issues. [Dkt. No. 2428 ("Reply") at 3.]  In so arguing, Kadamovas selectively cites the record.  During the pendency of his appeal, Kadamovas filed a motion for computer resources, which the government opposed arguing that prisoners do not have a constitutional right to possess laptop computers, that the Bureau of

---

1991); *Rizzo v. Dawson*, 778 F.2d 527, 531-32 (9th Cir. 1985); 28 U.S.C. §1391(b).  The circumstances giving rise to Kadamovas' claim are occurring in Vigo County, which lies within the venue of the Southern District of Indiana.  *See* 28 U.S.C. § 94(b)(2).

3

Prisons has legitimate reasons for limiting prisoner access to personal computers, and that officials at FCC Terre Haute have consistently offered Kadamovas the means to review the legal materials in his case. [Ninth Circuit Case No. 07-9909, Dkt. Nos. 113 & 115.] Contrary to Kadamovas' contention, in granting in part and denying in part the motion, the Court of Appeals declined to order the prison to provide Kadamovas with any equipment beyond that which the prison *had agreed to provide*. The Court denied Kadamovas' motion for an order directing the prison to provide him with a laptop computer to use in his cell and denied his motion for an order "directing the prison to ensure that the out-of-cell computer – *which the prison had agreed to provide for the exclusive use of [Kadamovas], apart from security inspections by prison staff* – also ha[d] word processing function." [Ninth Circuit Case No. 07-99009, Dkt. No. 124 (emphasis added).] While the Court did order the prison to provide Kadamovas with additional hours of access to the out-of-cell computer, the order did not, as Kadamovas suggests, impinge upon the institution's internal policies regarding prisoner access to computer hardware or software. *See* Mot. at 3 ("During the pendency of the appeal, the Circuit Court intervened in the matter of legal access, ordering the BOP to allow Mr. Kadamovas twenty hours per week *usage of a dedicated computer*." (emphasis added).) Rather, it was consistent with the general rule that federal courts should refrain from interfering in the day-to-day affairs of prison management, especially when those decisions relate to security. *See Turner v. Safley*, 482 U.S. 78, 89 (1987) ("Subjecting the day-to-day judgments of prison officials to an inflexible scrutiny analysis would seriously hamper their ability to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration."); *Jones v. North Carolina Prisoners' Labor Union, Inc.,* 433 U.S. 119 (1977) (finding that courts must give "appropriate deference to the decisions of prison administrators").

Nevertheless, assuming without finding that this Court has jurisdiction to issue the type of order Kadamovas seeks, this Court notes that Kadamovas' request would fail on the merits. It is well established that "prisoners have a constitutional

right of access to the courts." *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *see also Murray v. Giarratano*, 492 U.S. 1, 6 (1989) ("Whether the right of access at issue in *Bounds* is primarily one of due process or equal protection, in either case it rests on a constitutional theory. . ."). Such access must be "adequate, effective and meaningful." *Bounds,* 430 U.S. at 822. This fundamental right requires prison authorities to enable prisoners in preparing and filing meaningful legal papers, by providing "adequate law libraries[3] *or* adequate assistance from persons trained in the law." *Id.* at 828 (emphasis added); *Casey v. Lewis*, 4 F.3d 1516, 1520 (9th Cir. 1993). It is designed to ensure that a prisoner's grievance will reach a court for consideration. *Bounds,* 430 U.S. at 828 & n. 17 (in discussing the "constitutional right of access to the courts" the Court said its "main concern here is 'protecting the *ability* of an inmate to prepare a petition or a complaint.'" (Citation omitted) (emphasis added)). As the Ninth Circuit has determined, the right of access under *Bounds* is clearly not equivalent to the Sixth Amendment right to counsel. *Cornett v. Donovan*, 51 F.3d 894, 899 (9th Cir. 1995) ("The right of access is designed to ensure that a habeas petition or a civil rights complaint of a person in state custody will reach a court for consideration.").

The fact that Kadamovas is represented by counsel in his habeas corpus proceedings satisfies the right of access to the courts as guaranteed by the Constitution and interpreted by the Supreme Court. Officials need not provide a prisoner with access to legal materials in a case where he is represented by an attorney. *See United States v. Robinson*, 913 F.2d 712 (9th Cir. 1990) (finding that "[t]he district court ruled correctly that a defendant who is represented by counsel has no constitutional right of

---

[3] To provide adequate access to the courts, a prison library must meet minimal constitutional standards, and inmates must be allowed a reasonable amount of time to use the library. *Oltarzewski v. Ruggiero*, 830 F.2d 136, 138 (9th Cir. 1987). The Constitution does not require a prisoner have unlimited access to the law library, any denial of access claim must focus on the impairment of access *to the courts*. *Walker v. Mintzes*, 771 F.2d 920, 932 (6th Cir. 1985); *Twyman v. Crisp*, 584 F.2d 352, 357 (10th Cir. 1978).

access to legal materials."); *Bourdon v. Loughren*, 386 F.3d 88, 93-95 (2d Cir. 2004) (holding that appointment of counsel was a valid means of satisfying prisoner's right of access to the courts, without consideration of whether counsel's representation fell below effective assistance, and the defendant's right of access therefore was not violated when defendant was denied access to the jail library); *Schrier v. Halford*, 60 F.3d 1309, 1313 (8th Cir. 1995) (concluding that provision of legal assistance satisfies the right of meaningful access to the courts and relieves the state from having to provide access to a law library or its equivalent); *Martin v. Tyson*, 845 F.2d 1451, 1456 (7th Cir.1988) (finding no Constitutional violation where jail officials denied a prisoner access to legal materials in his criminal case where he was represented by counsel on his criminal charges); *Morrow v. Harwell*, 768 F.2d 619, 623 (5th Cir.1985) (concluding that *Bounds* created a "right of access [that] includes the ability to file a legally sufficient claim" and finding the Court was "firm in its command that the right [of access] be met with books *or* legal assistance *or* both." (emphasis added)).

Kadamovas has been provided *both* adequate access to legal materials *and* legal representation. As the parties note, Kadamovas' counsel has provided him with computer hard drives which he keeps in his cell. (Mot. at 8; Opp. at 3-4, 12-13.) According to the government, Kadamovas is able to access these drives from the computer in the prison library. (Opp. at 12-13.) Kadamovas also has an electronic handheld translation device. (Opp. at 5, 13.) Like the other prisoners housed in the SCU, Kadamovas may sign up to use the law library's discovery computer for an hour at a time, seven days a week, but if he has a need to use the library for additional time, he may make a request for longer access. (Opp. at 5, 14-15.) While Kadamovas suggests that he has had inadequate "opportunity to review the evidence against him and the transcripts of his trial," (Reply at 4), the government counters this characterization, noting that "Kadamovas has signed up to use the law library in only a few instances, and in these instances it was for less than the hour time slot allotted. . . . [¶] Inmate Kadamovas has also refused an offer to him for computer use." (Opp. at

6

15.)  Kadamovas' "access to the courts" claim is without merit because he has not demonstrated that the limits placed on his access to a personal computer or additional cell prevented him from pursuing a legal claim.  *See Lewis v. Casey*, 518 U.S. 343, 351 (1996) (holding that an inmate must demonstrate that the alleged shortcomings in legal materials hindered his efforts to pursue a legal claim).

As to Kadamovas' argument that this Court need not find a constitutional violation in order to grant him the equitable relief he seeks, the Court notes that it has limited authority to direct the daily management of detention facilities. *See Bell v. Wolfish*, 441 U.S. 520, 547 (1979) ("Prison administrators ... should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.").  Judicial deference is generally accorded to prison administrators because the administrator will typically have a better grasp of his or her domain than the court, and also because the operation of our correctional facilities is peculiarly the province of the Legislative and Executive Branches of our Government, not the Judicial.  *Id.* at 548.  According to the government, "[o]fficials at FCC Terre Haute are unwilling to allow Kadamovas unfettered access to a dedicated computer for his exclusive use outside of his cell (or to a laptop computer in his prison cell)." (Opp. at 5, 13.)  None of the prisoners at FCC Terre Haute are permitted such equipment for security reasons, and to permit Kadamovas to be excepted from the prison's policy would undermine "the orderly management of the institution." (Opp. at 6, 13.)  According to Todd R. Royer, the Camp Administrator and Acting Unit Manager for the SCU, the rationale for the prison's policy is as follows:

> Special treatment toward one inmate or permitting a prisoner to have access to a computer device that the prison cannot frequently monitor creates a risk to the safe, secure, and orderly management of FCC Terre Haute, as an inmate given unfettered access to such a device could load unauthorized software and hardware on such a computer; could alter the

7

computer to use it as an unauthorized communication device; could possibly use the computer to tamper with the computer systems in place at the facility; and could remove, substitute, or tamper with the computer's parts for any number of nefarious purposes, including creating weapons.

(Opp. at 13.)

This Court will not disturb the limits placed on accessing legal materials by the Bureau of Prisons and officials at the SCU at Terre Haute. While incarcerated *pro se* defendants have a Sixth Amendment right to reasonable access to legal materials to prepare a defense, the Court is aware of no authority providing that this right extends to the physical possession of computers or documents by prisoners who are represented by counsel. Moreover, a prisoner's right to legal materials "must be balanced against the legitimate security needs or resource constraints of the prison." *United States v. Sarno*, 73 F.3d 1470, 1491 (9th Cir. 1995). In *United States v. Youker*, the Ninth Circuit cited *Sarno* in holding that the district court did not abuse its discretion in denying a *pro se* defendant's "numerous requests for 'complete access' to discovery.'" 718 Fed.Appx. 492, 495 (9th Cir. 2017). The Court of Appeals noted that "given safety concerns" with the defendant's requests, the district court was rightfully reluctant to " 'micromanage jail officials,' whose prevailing policy did not permit detainees to keep discovery in their cells." *Id.*

Here, the limits placed on Kadamovas' access to legal materials as a result of the prison's security policies neither violate his constitutional right to access the courts nor implicate equitable concerns.

8

### III.    CONCLUSION

For the foregoing reasons, Kadamovas' Motion for Order Directing the Bureau of Prisons to Permit Access to Legal Materials is DENIED.

**IT IS SO ORDERED**

DATED:  August 22, 2022

_____
MARK C. SCARSI
UNITED STATES DISTRICT JUDGE

cc:  **BOP**

9