DECLARATION OF ZOYA SPIVAKOVSKY

I, Zoya Spivakovsky, state as follows:

1. I am over 18 years of age and am competent to make this declaration.
2. I speak and write the Russian and English languages fluently. I am a professional Russian language interpreter and have been working as an interpreter for over 30 years, primarily in legal, medical, and business settings.
3. I have been a certified Russian interpreter in the state of California since the early 1990s.
4. Much of the training for interpreters emphasizes veracity. However, the register of speech, intonation, and word choice can also be important for conveying meaning.
5. In terms of this case, I provided interpretation for the U.S. Government and some of the defense trial teams as part of my work on this case. I was first involved by interpreting a proffer for Ainar Altmanis before the other co-defendants were arrested. After Jurijus Kadamovas and the others were arrested, I interpreted for Mr. Kadamovas.
6. I remember interpreting for the Federal Bureau of Investigation for a case in California in which I also interpreted for co-defendants. An FBI agent asked me to tell him what the co-defendant was telling me in separate, attorney-client protected conversations, but I told him I couldn't do that because I thought it was morally objectionable. The court liaison became involved out of a concern that the FBI was trying to poach my time, and it went no further.
7. I remember reviewing a Russian language diary of Natalya Solovyeva at the U.S. attorney's office. I recall that the physical diary was nowhere to be found. The government only retained mismatched pages that were confusing and missing information. I recall reading Xeroxed copies of the text in Russian only.
8. Before Mr. Kadamovas' trial, I spent a significant amount of time working with his trial team. At one point, I was seeing Mr. Kadamovas three times a week. I observed him regularly over the course of several years. I found him to be very personable, and I enjoyed working with him. I remember he was a builder who was good with his hands. I also remember he was very concerned about his young daughter's welfare.
9. I recall Mr. Kadamovas was shackled during trial. I remember that the Marshals raised concerns that the defendants were violent criminals who could not be safely unshackled in the courtroom.
10. Even though there were often four interpreters in the room, there was a greater need for interpretation skill in the courtroom during Mr. Kadamovas' trial.
11. I remember that Mr. Kadamovas did not speak more than a few words in English. He could only speak Russian, and he needed to use an interpreter to communicate with his attorneys.
12. The interpreters translating the court proceedings could not assist Mr. Kadamovas in communicating with his attorneys during the proceedings. So any interpreter on break was supposed to be available to help with any attorney-client communication. It was a logistical nightmare. When interpreting witnesses, we often switched every 20 minutes or so. Interpreters work in shorter increments because studies have shown the interpreter's performance deteriorates significantly after that amount of time without a break. When assisting with attorney-client communications, we were not really getting the rest that we required for peak performance as interpreters.

Declaration of Zoya Spivakovsky

ZS ___ Initials

1

13. Iouri Mikhel was very accomplished at communicating in English. His English was so good, I didn't understand why he needed an interpreter during the proceedings. Although he testified in English, he requested an interpreter. He was an unanticipated Russian-speaking testifying witness, so there were not enough interpreters in the courtroom for the other defendants during his testimony. Of all the co-defendants, he struck me as the savviest and highest functioning.

14. I remember that Petro Krylov also spoke English well and did not always need the assistance of an interpreter.

15. Ainar Altmanis was unable to communicate much in English. He was not well-spoken in Russian. He came across as more polished on the witness stand due to the apparent credibility of the interpreters working with him and the way his speech was interpreted.

16. Ludmila Genn was one of the interpreters who worked during Mr. Kadamovas' trial. She was one of the interpreters for Ainar Altmanis' testimony. She was an older woman. She did not know slang or colloquial terms well. Ludmila would have made Ainar Altmanis seem much more respectable, well-spoken, and intelligent than he was. In her rendition, Mr. Altmanis spoke as someone with an academic background and a higher education degree. In my profession, this is referred to as interpreting in the wrong register. Even though the meaning conveyed may be the same, the interpreter is not accurately conveying the person's use of speech, making them sound too uncouth or too lofty, as was the case with Mr. Altmanis' testimony. Ludmila also was suffering from significant hearing loss and by the time of the trial had been battling cancer for a number of years but could not afford to stop working in order to maintain her treatment. I specifically remember her having issues with her hearing during Mr. Kadamovas' trial. Towards the end of her life, Ludmila kept working even when she was unable to interpret. The other interpreters who worked in a team with her would cover for her when Ludmila didn't have enough energy to work most of the time, was extremely nauseous, and felt very sick. I would not have wanted Ludmila interpreting for me at a capital trial if I was a defendant with the stakes being so high.

17. Alex Levoff is another interpreter who worked during Mr. Kadamovas' trial. He is a capable interpreter in many settings, but he does not translate slang and idiomatic language. As with Ludmila, I would not trust him interpreting for me at a capital trial if I were a defendant.

18. A well-dressed and neatly groomed interpreter is going to lend credibility, legitimacy and status to a testifying witness. An interpreter is not just a voice in the room but also creates an impression that inadvertently becomes associated with the witness.

Pursuant to 28 U.S.C. §1746, I, Zoya Spivakovsky, declare under penalty of perjury under the laws of the United States that the above is true and correct.

_3|10|2023  Los Angely, CA_
Date and Place

_Zoya Spivakovsky_

Declaration of Zoya Spivakovsky

ZS  Initials    2