UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| JURIJUS KADAMOVAS, on his own behalf and on behalf of a class of those similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 2:23-cv-22 |
| DIRECTOR, FEDERAL BUREAU OF PRISONS, in her official capacity; STEVEN KALLIS, WARDEN, UNITED STATES PENITENTIARY, TERRE HAUTE, INDIANA, in his official and individual capacity; and THOMAS J. WATSON, in his individual capacity, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**Class Action Complaint for Declaratory and Injunctive Relief and Damages**

**Introduction**

1.      The United States Penitentiary in Terre Haute, Indiana ("USP Terre Haute") is the site of the federal execution chamber. Although a few federal prisoners sentenced to death are housed elsewhere, USP Terre Haute contains the only unit in the United States Bureau of Prisons dedicated exclusively for male prisoners sentenced to death by federal courts. At the current time there are approximately 38 male prisoners confined in USP Terre Haute's death row, referred to as the Special Confinement Unit ("SCU"). Jurijus

Ex. 113 pg.1 of 13

Kadamovas has been housed in the SCU since 2007, having been sentenced that year to death.

2.     Mr. Kadamovas and the other prisoners in the SCU are held in severely isolating and solitary conditions. They are restricted to their single cells except for a few hours each week. The only relief from this isolation is limited solitary recreation for "Phase I" prisoners, and brief periods of time when "Phase II" prisoners can interact with one other prisoner. For all prisoners, this unrelenting solitary confinement will last the entirety of their stay in the SCU—that is, for many of them, until they die.

3.     It is well recognized by both numerous cases and mental health experts that this form of isolated confinement imposed on prisoners causes severe psychological and emotional harm that is unwarranted. Defendants are well aware that the solitary confinement used in the SCU creates a substantial risk of this harm and does in fact cause this harm, but they allow the conditions to continue.

4.     Beyond that, numerous international treaties and other instruments outlaw the use of prolonged solitary confinement or otherwise recognize its severe harm, including the International Covenant on Civil and Political Rights, the Convention Against Torture, and the Standard Minimum Rules for the Treatment of Prisoners (otherwise known as the "Nelson Mandela Rules").

5.     The conditions of confinement of Mr. Kadamovas and the other prisoners in the SCU at USP Terre Haute violate the Eighth Amendment to the United States Constitution.

Ex. 113 pg.2 of 13

Plaintiff requests the issuance of appropriate injunctive and declaratory relief on his own behalf and on behalf of a class consisting of all SCU prisoners. Additionally, Mr. Kadamovas requests his individual damages to compensate for the violation of his constitutional rights and the physical, emotional and other injuries that he has suffered.

**Jurisdiction, venue, cause of action**

6.      This Court has jurisdiction of this case pursuant to 28 U.S.C. §§ 1331, 1346.

7.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.

8.      Declaratory relief is authorized by 28 U.S.C. §§ 2201, 2202 and by Federal Rule of Civil Procedure 57.

9.      This action is brought pursuant to the Eighth Amendment to the United States Constitution. Damages are authorized by *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971).

**Parties**

10.     Jurijus Kadamovas is an adult person confined to the SCU at USP Terre Haute. He is not a U.S. citizen.

11.     The Director of the Federal Bureau of Prisons is the duly appointed head of the agency and is sued in her official capacity pursuant to Federal Rule of Civil Procedure 17(d).

12.     Steven Kallis is the current Warden of the United States Penitentiary, Terre Haute, Indiana, where the SCU is located. He is sued in his individual and official capacities.

Ex. 113 pg.3 of 13

13.     Thomas J. Watson is a past Warden of the United States Penitentiary, Terre Haute,

Indiana. He is sued in his individual capacity.

**Class action allegations**

14.     This action is brought by Plaintiff on his own behalf and on behalf of a class of

those similarly situated pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil

Procedure.

15.     The class is defined as:

> all current and future prisoners confined to death row, currently known as
> the Special Confinement Unit, at the United States Penitentiary, Terre
> Haute, Indiana.

16.     As defined, the class meets all the requirements of Rule 23(a) of the Federal Rules

of Civil Procedure. Specifically:

    a.      The class is so numerous that joinder of all members is impracticable. It is
            believed that the SCU currently contains 38 persons.

    b.      There are questions of law or fact common to the class: whether the
            conditions of isolated confinement imposed on all SCU prisoners violates
            the Eighth Amendment to the United States Constitution.

    c.      The claims of Mr. Kadamovas are typical of those of the class.

    d.      Mr. Kadamovas will fairly and adequately represent the class.

17.     The further requirements of Rule 23(b)(2) are met with regard to the class as at all

times defendants have acted and have refused to act on grounds that apply generally to

the class, thereby making final injunctive and corresponding declaratory relief appropriate with respect to the class as a whole.

18. Undersigned counsel are appropriate persons to be appointed class counsel pursuant to Federal Rule of Civil Procedure 23(g).

**Facts**

*The SCU at USP Terre Haute*

19. In the 1990s, the United States designated USP Terre Haute as the site where federal prisoners sentenced to death would be executed.

20. The SCU, the living unit where most federal prisoners sentenced to death are housed, was opened in 1999.

21. The Warden of USP Terre Haute exercises control of the SCU and the conditions there.

22. At the current time, the SCU houses approximately 38 prisoners, all of whom have been sentenced to death.

23. Prisoners are housed in individual cells that are approximately 152" x 84" (i.e., 12.67' x 7').

24. The cells have solid walls and a solid door with a small window. The door contains a cuffport, a small opening that can be closed or opened from outside the cell so that prisoners can have handcuffs put on prior to leaving the cell and removed after returning to the cell. It can also be used to pass food or other items to the prisoners.

25. Each cell has a small, slit-like window to the outside. The window may not be opened.

26. Each cell contains a table and stool affixed to the floor, a metal sink/toilet unit, and a shower.

27. Prisoners are not provided regular out-of-cell programming and are generally confined to their cells at all times.

28. All meals are eaten in the cells.

29. Prisoners are not removed for showers as there are showers in each cell.

30. SCU prisoners in "Phase I" are allowed out of their cells for solitary recreation five days a week for one hour each day, with an allowed expanded recreation time of two hours one of those days. The recreation takes place either in a small indoor area where there is some exercise equipment or in individual outdoor recreation cages, each one of which contains a basketball net.

31. When prisoners are granted "Phase II" status, they are allowed to participate in the above recreation opportunities with one other assigned prisoner. They are also allowed to meet with that assigned prisoner two days a week for 90 minutes in the "leisure room," a small room in the SCU that contains books, hot water to make drinks, and a television.

32.     Phase II prisoners must go to recreation and the "leisure room" with the same prisoner. If that prisoner refuses, the prisoners will have solitary recreation and will be alone in the "leisure room" if they choose to go.

33.     Prisoners may also be allowed out of their cells, one hour a day, to use the "law library" on the SCU, which is one of five small rooms containing a computer terminal.

34.     Only one prisoner at a time is allowed in each of the "law library" rooms.

35.     There is also one area in the SCU with six cages that prisoners may occasionally use for religious services. The prisoners are locked into each cage individually and an outside religious leader will stay in the open area outside of the cages.

36.     Of the 38 prisoners on the SCU, only three have jobs on the unit.

37.     Other than the recreation provided to all prisoners, the time provided in the "leisure room" for Phase II prisoners, and any law library or religious service time, the prisoners who do not have jobs on the SCU are confined to their cells. There is no congregate programming, either structured or unstructured.

38.     Recreation and "leisure room" visits for Phase II prisoners are often cancelled. When they are cancelled, they are not rescheduled.

39.     SCU prisoners are not allowed contact visits. Instead, they are allowed only non-contact visits.

40.     While in their cells, prisoners are forced to yell to try to communicate with other prisoners on the unit. As a result, the unit is often quite noisy.

Ex. 113 pg.7 of 13

41. Correctional officers on the SCU are supposed to make rounds to check on the prisoners every 30 minutes. When that occurs, there is limited to no interaction between the correctional officer and the prisoners.

42. A mental health professional will visit each SCU prisoner at his cell front once a month and may remove the prisoner to meet with the prisoner in a more private setting.

43. Prisoners in the SCU will therefore spend most of their days in complete isolation.

44. Aside from granting some SCU prisoners Phase II status, no attempt is made by defendants to determine whether SCU prisoners pose a threat to other prisoners that justifies their near-total isolation. SCU prisoners are placed in these conditions solely because of their placement in the SCU, and not because of their in-prison behavior.

*Jurijus Kadamovas*

45. Jurijus Kadamovas was sentenced to death in 2007 by the United States District Court for the Central District of California after being convicted of kidnapping and murder.

46. Mr. Kadamovas has been in the SCU since 2007.

47. Mr. Kadamovas is confined in a cell as described above.

48. He has been a Phase II prisoner since 2014.

49. As a Phase II prisoner he is afforded the opportunity to have recreation with one other prisoner five times a week and an opportunity to spend 90 minutes, two times a week, with that prisoner in the "leisure room."

Ex. 113 pg.8 of 13

50.     Recreation and "leisure room" times are frequently cancelled because of lockdowns or other institutional concerns.

51.     Mr. Kadamovas is only able to engage in recreation with one specific prisoner.

52.     The prisoner with whom he has been assigned to have joint recreation or "leisure room" time frequently refuses to go to recreation or to the "leisure room."

53.     When this occurs Mr. Kadamovas will go to recreation by himself, but on occasion, Mr. Kadamovas refuses to go the "leisure room," as being in the "leisure room" by himself is very little different than being in his cell by himself.

54.     Mr. Kadamovas is not regularly allowed out of his cell for any other reason.

55.     Every month he is visited by a mental health professional who speaks to him at his cell front about his mental health needs. He has been removed from his cell occasionally to talk to the mental health professional in the past year.

56.     Mr. Kadamovas suffers from a host of physical problems, including Crohn's disease, high-blood pressure, asthma, sleep apnea, and severe pulmonary problems. These are aggravated by his conditions of confinement and cause him physical injury and harm.

57.     Mr. Kadamovas recognizes that his isolated confinement in the SCU for 15 years has caused him, and is causing him, severe emotional and psychological problems including depression, stress, heightened anxiety, difficulty in concentration, and memory difficulties.

Ex. 113 pg.9 of 13

58.     Mr. Kadamovas has not been disciplined by the Bureau of Prisons for any violation of rules or for any other reason since 2010.

59.     Mr. Kadamovas has fully exhausted the Bureau of Prisons' grievance procedure to challenge the psychological and physical injury and harm caused by the isolated conditions in the SCU, but he has not been provided relief through the grievance process. (*See* Ex. 1, attached).

*Conclusion*

60.     It is well known that prolonged isolation and solitary confinement can cause, and predictably will cause, prisoners to suffer serious emotional and psychological injuries.

61.     These negative consequences are not in any way ameliorated by allowing prisoners out for brief recreation periods or brief periods where they can be with one other prisoner as is afforded to Phase II prisoners in the SCU.

62.     While there may be circumstances where short-term solitary confinement can be justified because of a prisoner's behavior while incarcerated, there is no legitimate penological justification for a blanket rule that places all SCU prisoners in isolated confinement merely because they are on death row.

63.     There is no justification for placing Mr. Kadamovas into the solitary confinement that he has had to endure for 15 years in the SCU.

Ex. 113 pg.10 of 13

64. Because of the nature of the SCU and the implementation of the death penalty in the federal system, it is anticipated that once a prisoner is placed on the unit, he is likely to be there for decades.

65. The risk of harm that the isolated confinement imposes on Mr. Kadamovas and the putative class are obvious and well documented, and the defendants are deliberately indifferent to the risk of harm, and the harm being caused, to Mr. Kadamovas and the putative class because of the conditions of confinement in the SCU.

66. Mr. Kadamovas and the putative class are being caused irreparable harm for which there is no adequate remedy at law.

67. While Warden of USP Terre Haute, Thomas J. Watson was fully aware of the isolated, dangerous, and harmful conditions that existed in the SCU, was responsible for the conditions there, and allowed them to exist and continue.

68. Steven Kallis, the current Warden of USP Terre Haute, is fully aware of the isolated, dangerous, and harmful conditions that exist in the SCU, is responsible for the conditions there, and allows them to exist and continue.

69. Mr. Kadamovas has suffered physical, mental, and emotional injuries and harm by the isolated, dangerous, and harmful conditions that exist in the SCU.

70. During the course of his isolated confinement, Mr. Kadamovas has been deprived meaningful human contact, the ability to easily communicate with others, lack of

programming, and diminished quality of life, all of which represent compensable injuries.

**Legal claim**

71.     The isolated conditions imposed on all prisoners in the Secure Confinement Unit in the United States Penitentiary, Terre Haute, violate the Eighth Amendment to the United States Constitution.

**Request for relief**

WHEREFORE, Plaintiff requests that this Court:

1.     Accept jurisdiction of this case and set it for hearing at the earliest opportunity.

2.     Certify this case as a class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure, with the class as defined above and with Plaintiff as the class representative.

3.     Declare that the defendants have violated the Eighth Amendment to the United States Constitution for the reasons noted above.

4.     Enter a preliminary injunction, later to be made permanent, enjoining the defendants to allow plaintiff and the class to be out of their cells for multiple hours a day and to engage in congregate activities.

5.     Award Plaintiff his individual damages against the individual defendants for the violation of his constitutional rights and the injuries caused by the violation.

6.     Award Plaintiff his costs and attorneys' fees pursuant to 28 U.S.C. § 2412.

7.     Award all other proper relief.

Kenneth J. Falk
Gavin M. Rose
Stevie J. Pactor
ACLU of Indiana
1031 E. Washington St.
Indianapolis, IN 46202
317/635-4059
fax: 317/635-4105
kfalk@aclu-in.org
grose@aclu-in.org
spactor@aclu-in.org


Daniel E. Pulliam
Matthew E. Burkhart
Matthew R. Elliott
Faegre Drinker Biddle & Reath LLP
300 N. Meridian St.
Suite 2500
Indianapolis, IN 46204
317/237-0300
fax: 317/237-1000
daniel.pulliam@faegredrinker.com
matthew.burkhart@faegredrinker.com
matthew.elliott@faegredrinker.com

Attorneys for Plaintiff and the Putative
Class