## The Declaration of Jurijus Kadamovas

I, Jurijus Kadamovas, under the penalties of perjury, state as follows:

1.      I am the appellant in this direct appeal from my convictions and death sentence imposed in 2007 in the United States District Court for the Central District of California.

2.      This declaration is in support of the renewed motion for an order allowing computer software, or, in the alternative, requiring the BOP to provide a location for me to both store and work with hard copies of all my case-related materials in addition to the request for an order requiring all confidential digital legal materials sent by special mail to be opened and scanned in my presence. I believe that prosecutors and the BOP have violated my First and Sixth Amendment rights on so many occasions so as to deny me access to my discovery materials and the ability to help my attorneys.

3.      I wish to list for the Court the history of the problems over the course of the last 15 years concerning protection of my discovery and my attorney-client privileged work product, both hard copy and digital:

   a.   On March 7, 2003 during a search of my cell at the Los Angeles Metropolitan Detention Center (MDC), my notes regarding co-defendant Ainar Altmanis's past crimes were seized. I was preparing them for my attorneys and investigators. On March 14, 2003, the FBI obtained Altmanis's admission that he had committed the crimes that I outlined in my privileged notes that had been seized one

1

week earlier. I believe that the Government misappropriated my notes regarding Altmanis's past crimes and used them to force Altmanis to confess to the crimes which he had previously concealed. As a result of this misappropriation, I was deprived of the opportunity to challenge Altamanis's credibility in front of the FBI and the Court.

b.  When I was at MDC, confidential attorney-client privileged correspondence to, and from my attorneys was unreasonably and excessively delayed, and even then not opened in my presence, or never received. (See attached).

c.  My notes were also misappropriated by the U.S. Marshal when, during trial, he removed and copied them without my consent. My attorney objected and the judge sustained the objection.

d.  After my trial and I moved to USP Terre Haute, on May 23, 2007, I received 10 boxes of my legal materials. When I was not allowed by the prison to keep the electronically stored discovery (CDs/DVDs) in my cell, I asked that they be returned to my attorney but was told the materials would be kept in a safe place. Prison officials checked the electronic discovery for contraband. I was notified that numerous CDs/DVDs were confiscated as contraband despite the fact that the correspondence from my attorney identified all the materials as special mail, and should not have even been opened or read outside my presence. I, however, was not present when these materials were opened.

e.  The electronic materials that were not confiscated were kept in an empty cell along with my electronic translation device. Terre Haute officials assured me that no other prisoners would have access to this cell. This, however was not so. Another prisoner damaged my translation device, and disks pertaining to my case were found in the cell of a mentally ill prisoner. When I went to compare the electronic materials I was allowed to access, I discovered that 22 disks were missing, 3 of which were clearly labeled "attorney-client privileged."

f.  Then in 2012, SCU prisoners were informed that any legal materials beyond the 3 cubic feet limit allowed by BOP policy, that were not

2

Ex. 121 pg.2 of 6

(50 of 53)

Case 2:02-cr-00220-MCS Document 2471-121 Filed 10/03/23 Page 3 of 6 Page ID
Case: 07-99009, 04/20/2018, ID: 10832300, DktEntry: 438-2, Page 30 of 35
#:18493

mailed out would be destroyed. In order to prevent my important legal materials from being destroyed, my attorneys sent me the funds to cover the cost of shipping three banker's boxes of legal materials to my attorney. This was not what I wanted to do, but felt I had no choice. So, on September 11, 2012, I sent the three boxes of legal materials to attorney Margaret O'Donnell, but she only ever received two of the boxes, and one of the boxes that arrived was clearly not in the original box in which it had been packed. On September 20, 2012, I started receiving individual pieces of old mail which I knew had been in one of the boxes I had sent out. The BOP never apologized or provided an explanation about what had happened to my legal materials.

g. More recently, my attorneys have sent me hard drives containing digital legal materials in boxes clearly marked "Special Mail." BOP officials have held the hard drives for days before giving them to me, and, have scanned them outside my presence which I believe is contrary to BOP policy concerning "special mail.

i. The first hard drive sent by my attorneys and containing discovery, transcripts, clerk's record, and work product arrived on or about April 14, 2017. SCU Counselor Sutton brought the mail to me in the attorney visiting room where I was with my attorneys. He opened the box in my presence, and then took it. I did not receive the hard drive for 8 days, and it was not scanned in my presence.

ii. The second hard drive sent by my attorneys containing all the files of one of my trial attorneys, including our communications, my request for investigation, financial charts, and my work on telephone records, arrived on November 27, 2017. Mr. Sutton brought the box marked "special mail" to me. (See attached photographs). When I told him that the hard drive must be scanned in my presence, he took the unopened box and left. The next day in the recreation room, BOP attorney Katherine Siereveld came with the legal mail and opened the box in my presence and which box contained this Court's June 12, 2017 order which directed that the government remind prison officials at Terre Haute to open properly designated "special mail" sent to

3

Ex. 121 pg.3 of 6

me by my counsel in my presence. I told Ms. Siereveld that this meant the contents of the hard drive had to be scanned in my presence as well. She told me she had to consult with my prosecutor and left. I protested but Ms. Siereveld asked me what I was going to do about it since I already lost my lawsuit. Approximately 12 days later, I was brought to the room with the discovery computer. Present were Ms. Siereveld, the Unit Manager and two corrections officers. Ms. Siereveld opened only one file on the hard drive and then gave the hard drive to me. I have no idea what happened with the hard drive in the prior 12 days. It's my opinion, however that the prison staff had already checked the entire hard drive outside my presence.

iii. After that incident, I was just handed a package marked "special mail" which contained the DVD of the January 10, 2018 oral argument in my criminal case, and allowed to keep it without it even being scanned because I believe they knew that this DVD had no information that interested them.

iv. I also on December 14, 2017, filed a grievance seeking to ensure that my digital materials are scanned in my presence. The warden responded but what he stated in the response is not true. (See attached grievance and response). First, the warden confused the November 27, 2017 incident with the delivery of my January 10, 2018 oral argument (which I was not concerned about). And, further, the warden is wrong in that the date Ms. Siereveld told me that she had to consult with my prosecutor, there was no one using the discovery computer, and, in any event, even if the computer was in use, she did not have to open the package and could have returned when the computer was available. Also, it is unacceptable that anyone in the BOP would keep my legal materials for 12 days.

4. I do not believe that the BOP is scanning the contents of my hard drive for viruses or contraband. I believe they are making copies of my hard drive or worse, deleting, extracting or even correcting the contents, and that I will never

4

know because I am not provided full access to my discovery materials. BOP officials also claim they scan for contraband like pornography and music when pornography and music were part of the discovery provided by the government in my case, and which was listed by identification number in the Government's Master List of discovery (See District Court Docket Entry 339, pp. 18-20]. I believe if the discovery was provided by the prosecutor, it is not the prison's responsibility to decide what part of discovery I can and cannot have. I believe that the ongoing loss of my legal materials and nefarious acts by the government and prison officials are not mere negligence, but are intentional acts intended to stop me from challenging my convictions and death sentence. For example, the government continues to claim that my fingerprints and DNA were found on handcuffs associated with specific murders (See Reply Brief, p. 48, Footnote 17), and that I made telephone calls that telephone records do not support. During the recent oral argument, a catchphrase was the "overwhelming evidence" of guilt. I respectfully disagree. I am the only one on my legal team who knows what really happened or, more importantly, what did not happen. Yet, I continue to be denied meaningful access to work on my case and challenge the government narrative.

5. All I ever wanted was a chance to have a fair trial as guaranteed by the United States Constitution and International Law. Despite the outcome of my direct

Ex. 121 pg.5 of 6

appeal, I still need to work on preparing for my retrial or my 28 U.S.C. 2255 proceedings, and without meaningful access to all legal materials, I will simply be unable to do so. I pray this Court to grant my attorney's motion. I want my laptop and necessary software. And, I want this Court to enter an order to the effect that my case related digital materials sent to me by my attorneys in packages marked "special mail" are entitled to the same First and Sixth Amendment protections as are written correspondence sent to me by my attorneys in envelopes marked "special mail" and that they are to be promptly opened and scanned in my presence and then given to me.

I declare under the penalty of perjury that the following is true and correct to the best of my knowledge.

Jurijus Kadamovas

3 Apr. 2018

6

Ex. 121 pg.6 of 6