## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## TERRE HAUTE DIVISION

| | | |
|---|---|---|
| JURIJUS KADAMOVAS | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA and | ) | |
| FEDERAL BUREAU OF PRISONS and | ) | Case No: 2:2023-cv-00270 |
| COLETTE PETERS, DIRECTOR, | ) | |
| FEDERAL BUREAU OF PRISONS, | ) | |
| in her official capacity, and | ) | |
| STEVEN KALLIS, WARDEN, UNITED | ) | |
| STATES PENITENTIARY, TERRE HAUTE, | ) | |
| INDIANA, in his official capacity, and | ) | |
| UNKNOWN DEFENDANTS JOHN & | ) | |
| JANE DOE, in their official capacities | ) | |
| | ) | |
| Defendants. | ) | |

### AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff Jurijus Kadamovas, by and through his undersigned counsel, for his Complaint

against Defendants United States of America, United States Federal Bureau of Prisons ("BOP"),

Director Colette Peters, Warden Steven Kallis, and Unknown Defendants John and Jane Doe,

alleges as follows:

### INTRODUCTION

1.  The ability to review discovery, legal materials, and other documents, is critical to one's

    ability to challenge their conviction and to seek post-conviction relief, especially when

    under a sentence of death.

2.  The attorney-client privilege forms the bedrock of any attorney-client relationship. The

    privilege is premised on the notion that attorneys and clients will be able to freely

Ex. 131 pg.1 of 18

communicate without fear that others—particularly the government—will intrude on their private communications.

3. Absent that privilege, accused and incarcerated individuals have no ability to discuss their case, including discovery and court transcripts, freely and openly with their lawyers. It is as if they are litigating their case pro se even though they are technically represented by counsel. *See* AMERICAN BAR ASS'N, Standards for Criminal Justice, Defense Function, Standard 4-3.1(c) (3d ed. 1993) ("Personnel of jails, prisons, and custodial institutions should be prohibited by law or administrative regulations from examining or otherwise interfering with any communication or correspondence between client and defense counsel relating to legal action arising out of charges or incarceration.").

4. Plaintiff Jurijus Kadamovas has been housed in the United States Penitentiary in Terre Haute, Indiana ("USP Terre Haute") on death row, referred to as the Special Confinement Unit ("SCU"), since 2007, having been sentenced to death that year.

5. Throughout the duration of Mr. Kadamovas' more than 15 years of incarceration, BOP officials have continuously and repeatedly intruded on Mr. Kadamovas' protected and confidential attorney-client communications by opening his legal mail outside of his presence, scanning his legal materials outside of his presence, destroying important discovery from his case, and preventing him having full and meaningful access to the discovery and legal materials that he needs.

6. Each of these intrusions individually and cumulatively has interfered and continues to interfere with Mr. Kadamovas' ability to seek relief from his conviction and death sentence, as he is unable to have confidential attorney-client relationships.

Ex. 131 pg.2 of 18

## JURISDICTION AND VENUE

7. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 702, as Mr. Kadamovas seeks relief "under the Constitution, laws, [and] treaties of the United States." Mr. Kadamovas seeks declaratory and injunctive relief pursuant to 5 U.S.C. § 706 and 28 U.S.C. §§ 2201 and 2202.

8. Venue is proper under 28 U.S.C. § 1391(b)(1), (2) and (e)(1) because a substantial part of the events and/or omissions giving rise to the claims asserted herein occurred within this District, and Defendants are officers, employees, or agencies of the United States acting in their official capacity.

## THE PARTIES

9. Plaintiff Jurijus Kadamovas is a Lithuanian citizen under a sentence of death confined to the SCU at USP Terre Haute and has appointed counsel pursuant to 18 U.S.C. § 3599(e) to pursue post-conviction relief.

10. Defendant United States of America oversees the United States Department of Justice.

11. Defendant BOP is a component of the United States Department of Justice. It is the federal agency that administers federal jail and prison facilities. It is responsible for the custody and care of approximately 160,000 inmates nationwide.

12. Defendant Colette Peters is the duly appointed director of the BOP. As such, she is responsible for the conduct of BOP officials and employees at USP Terre Haute. She is sued in her official capacity.

13. Defendant Steven Kallis is the current Warden of USP Terre Haute. As such, he is responsible for the conduct of BOP officials and employees at USP Terre Haute. He is sued in his official capacity.

3

14. Unknown Defendants John and Jane Doe are Bureau of Prisons employees at USP Terre Haute who have unlawfully opened and scanned Mr. Kadamovas' legal materials outside of his presence. They are sued in their official capacities.

**STATEMENT OF FACTS**

15. BOP regulations classify attorney-client privileged legal mail, as well as mail from consulates and embassies, as "special mail." 28 C.F.R. § 540.12(b).

16. BOP regulations require that "'Special Mail' . . . . may be opened only in [the inmate's] presence to check for contraband." 28 C.F.R. §§ 540.12(b). Moreover, special mail "may not be read or copied if the sender is adequately identified on the envelope, and the front of the envelope is marked 'Special Mail—Open only in the presence of the inmate.'" 28 C.F.R. § 540.18(a).

17. Mail from government officials "should be given special handling even if it does not have a special mail marking on the envelope." Program Statement 5265.14, Federal Bureau of Prisons, Apr. 5, 2011, at 14, https://www.bop.gov/policy/progstat/5265_014.pdf. The program statement provides "mail from the chambers of a Federal judge or from a Member of Congress" as examples of correspondence that should be handled as special mail even if not marked as such. *Id.* Correspondence from an embassy or consulate should fall into that same category.

18. Defendants recognize there is no legitimate penological purpose to opening an incarcerated individual's special mail outside of their presence, as their own regulations provide that such mail may not be opened outside of the inmate's presence.

Ex. 131 pg.4 of 18

19. As set forth below, on multiple occasions, BOP officials at USP Terre Haute have illegally opened and scanned Mr. Kadamovas' properly marked special mail, including hard drives and discs, outside of his presence.

20. Scanning hard drives or discs which are properly marked as "special mail" outside of Mr. Kadamovas' presence violates 28 C.F.R. §§ 540.12(b) and 540.18(a) as much as opening hard-copy special mail outside of his presence. In fact, the violation is even more acute, given that hard drives and discs contain thousands of times the volume of information that individual pieces of legal mail contain.

21. Moreover, by scanning hard drives or discs outside of Mr. Kadamovas' presence, there is the possibility that BOP officials deleted a substantial volume of materials, whether negligently or intentionally. This leaves Mr. Kadamovas without any recourse as items could have gone missing without either Mr. Kadamovas or counsel knowing.

22. Each of these violations has individually and cumulatively frustrated Mr. Kadamovas' right to counsel, forcing him into a Hobson's choice: have a relationship with counsel that is not purely confidential or have confidentiality absent a relationship with counsel.

23. Moreover, without the attorney-client privilege, Mr. Kadamovas is impeded in sharing his full knowledge of the case with his legal team, preventing attorneys at each stage of the legal proceedings from asserting the most fulsome version of any potentially meritorious legal claims.

## I.  April 14, 2017 Hard Drive

24. On or about April 14, 2017, Mr. Kadamovas received a two-terabyte hard drive from his attorney Margaret O'Donnell, marked as:

Ex. 131 pg.5 of 18

Case 2:02-cr-00220-MCS     Document 2471-131     Filed 10/03/23     Page 6 of 18   Page
ID #:18910
Case 2:23-cv-00270-MPB-MJD   Document 8   Filed 08/02/23   Page 6 of 18 PageID #: 73

SPECIAL/LEGAL MAIL FROM ATTORNEY
OPEN ONLY IN THE PRESENCE OF THE PRISONER.
PERSON ENTITLED TO INVOKE PROTECTION OF
SPECIAL MAIL, 28 C.F.R. § 540.18

containing approximately 95,000 pages of discovery, including Mr. Kadamovas' handwritten notes. A BOP official, John or Jane Doe, opened the box in Mr. Kadamovas' presence, but then took the hard drive for inspection and scanning outside of his presence.

25. Mr. Kadamovas knows that the hard drive was scanned outside of his presence, because in a May 18, 2017 filing before the Ninth Circuit, federal prosecutors asserted that "USP Terre Haute Officials scan the storage devices" when they are received, in reference to the April 14, 2017 hard drive.

26. In his May 25, 2017, response, Mr. Kadamovas asserted his "position . . . that the hard drive should have been inspected in his presence."

27. In response, the Ninth Circuit admonished government counsel on June 12, 2017, to "remind prison officials at Terre Haute to open properly designated 'special mail' sent to Kadamovas by his counsel in Kadamovas's presence."

28. Scanning a properly marked hard drive outside of the presence of Mr. Kadamovas is not reasonably related to any legitimate penological interest.

**II. November 27, 2017 Hard Drive**

29. On or about November 27, 2017, Mr. Kadamovas received a second one-terabyte hard drive from attorney Margaret O'Donnell, marked as:

SPECIAL/LEGAL MAIL FROM ATTORNEY
OPEN ONLY IN THE PRESENCE OF THE PRISONER.
PERSON ENTITLED TO INVOKE PROTECTION OF
SPECIAL MAIL, 28 C.F.R. § 540.18

6

30. Defendants John or Jane Doe did not provide the hard drive to Mr. Kadamovas until December 8, 2017.

31. Mr. Kadamovas filed an informal grievance. On or about February 9, 2018, then-Warden Krueger responded that when the hard drive was received "the discovery computer was in use by another inmate and [Mr. Kadamovas] refused to have it scanned outside of [his] presence." The hard drive was then delivered only "[a]fter [it] was able to be scanned."

32. Scanning a properly marked hard drive outside of the presence of Mr. Kadamovas is not reasonably related to any legitimate penological interest.

### III.   March 27, 2019 Consular Correspondence

33. On or about March 27, 2019, Mr. Kadamovas received a letter from the Lithuanian Embassy.

34. The mail from the Lithuanian Embassy was clearly marked as: "Consular Correspondence Sent in Accordance with Articles 3 and 36.1(A) of the Vienna Convention on Consular Relations (Done at Vienna on April 24, 1963)."

35. On multiple occasions, the Lithuanian Embassy previously sent mail with this same stamp, and the mail room processed it as special mail each time.

36. This time, however, the letter was opened outside of Mr. Kadamovas' presence.

38. Mr. Kadamovas filed an informal grievance. On or about May 9, 2019, then-Warden Watson responded, stating that the envelope was properly processed as it omitted "the required special mail language," despite clearly being marked as Consular Correspondence.

37. Opening properly marked special mail outside of the presence of Mr. Kadamovas is not reasonably related to any legitimate penological interest.

## IV.   July 5, 2019 Harton Legal Mail and Discs

38. On or about July 5, 2019, Mr. Kadamovas received a box of legal materials from attorney Oni Harton, which included two discs. Apart from these two discs, the package was processed as special mail.

39. It was not until on or about July 9, 2019, that he received two discs that were in the box, these discs having been scanned outside of his presence.

40.  On or about July 31, 2019, then-Warden Watson respond to a grievance filed by Mr. Kadamovas that Mr. Kadamovas was "provided the legal documents with the exception of the computer discs . . . . [which] were further inspected by institutional staff" outside of Mr. Kadamovas' presence.

41. Scanning properly marked discs outside of the presence of Mr. Kadamovas is not reasonably related to any legitimate penological interest.

## V.   August 10, 2020 Mazdra Legal Mail

42. On or about August 10, 2020, Mr. Kadamovas received mail from Judith Mazdra, legal representative of attorney Tim Foley.

43. Consistent with BOP regulations, the mail from Ms. Mazdra was clearly marked:

Special Mail – Open Only In The Presence of the Inmate
Entitled to Invoke Protection of Special Mail 28 C.F.R. § 540.18

The envelope also identified Ms. Mazdra as "Legal Representative of Attorney Tim Foley" and noted that it was "Attorney/Client Mail."

44. Mr. Kadamovas received this letter from Ms. Mazdra as regular mail stamped with: "This Mail Does Not Qualify As Special/Legal Mail As Defined By BOP PS 5625.14 Correspondence."

45. Mr. Kadamovas filed an informal grievance. On or about August 19, 2020, John or Jane Doe responded: "Your mail was opened in error. This issue has been addressed and will not be a problem moving forward."

46. Opening properly marked legal mail outside of the presence of Mr. Kadamovas is not reasonably related to any legitimate penological interest.

## VI.   October 25, 2021 Lasting Legal Mail

47. On or about October 25, 2021, Mr. Kadamovas received mail from attorney Richard Lasting.

48. Consistent with BOP regulations, the mail from attorney Lasting was clearly marked: "Special Mail Open Only in Presence of Inmate 28 C.F.R. 540.18(b)."

49. Mr. Kadamovas received this letter from attorney Lasting as regular mail stamped with: "This Mail Does Not Qualify As Special/Legal Mail As Defined By BOP PS 5625.11 Correspondence."

50. Mr. Kadamovas filed an informal grievance. On or about November 17, 2021, John or Jane Doe responded: "A review of your complaint reveals your legal mail was opened in error. This issue has been addressed and has been corrected."

51. Opening properly marked legal mail outside of the presence of Mr. Kadamovas is not reasonably related to any legitimate penological interest.

## VII.   March 16, 2022 Kouros Legal Mail

52. On or about March 16, 2022, Mr. Kadamovas received mail from attorney George Kouros.

53. Consistent with BOP regulations, the mail from attorney Kouros was clearly marked: "Special Mail Open Only in Presence of The Inmate – Person Entitled to Invoke Protection of Special Mail, 28 C.F.R. 540.18."

54.  Mr. Kadamovas received this letter from attorney Kouros as regular mail stamped with: "This Mail Does Not Qualify As Special/Legal Mail As Defined By BOP PS 5625.11 Correspondence."

55. Mr. Kadamovas filed an informal grievance. On or about May 18, 2022, defendant Kallis responded: "The example you provided with your BP-8 was opened in error. The issue has been identified and corrected."

56. Opening properly marked legal mail outside of the presence of Mr. Kadamovas is not reasonably related to any legitimate penological interest.

**VIII.   September 27, 2022 Giles Legal Mail**

57. On or about September 27, 2022, Mr. Kadamovas received mail from attorney Jean Giles.

58. Consistent with BOP regulations, the mail from attorney Giles was clearly marked:

> Special Mail: Open Only
> in Presence of Inmate
> Jean Giles, Attorney

59.  Mr. Kadamovas received this letter from attorney Giles as regular mail, stamped with: "Opened in Error Mailroom USP Terre Haute."

60. Mr. Kadamovas filed an informal grievance. On or about November 29, 2022, defendant Kallis responded: "A review of your request reveals the stamp on your envelope shows the legal mail was opened in error in the mail room. The Correctional Systems Department staff makes every effort to identify all legal mail and process accordingly. Your issue has been addressed and has been remedied."

Ex. 131 pg.10 of 18

61. Opening properly marked legal mail outside of the presence of Mr. Kadamovas is not reasonably related to any legitimate penological interest.

## IX.  March 24, 2023 Consular Correspondence

62. On or about March 24, 2023, the Lithuanian Embassy sent Mr. Kadamovas a letter marked as: "Consular Correspondence Sent in Accordance with Articles 3 and 36.1(A) of the Vienna Convention on Consular Relations (Done at Vienna on April 24, 1963)."

63. Mr. Kadamovas never received the letter, never received a rejection notice, and it was not returned to sender.

64. On or about April 27, 2023, the Lithuanian Embassy sent Mr. Kadamovas another copy of this same letter, again marked as: as: "Consular Correspondence Sent in Accordance with Articles 3 and 36.1(A) of the Vienna Convention on Consular Relations (Done at Vienna on April 24, 1963)." This time, defendants John or Jane Doe returned the letter to sender without any rejection notice.

65. Defendants' failure to provide a rejection notice to the Lithuanian Embassy violates 28 C.F.R. § 540.13, which provides that, "When correspondence is rejected, the Warden shall notify the sender in writing of the rejection and the reasons for the rejection." *See also* BOP Program Statement 5265.11(10).

66. Rejecting properly marked special mail without sending a rejection notice is not reasonably related to any legitimate penological interest.

## X.  May 30, 2023 Falk Legal Mail

67. On or about May 30, 2023, Mr. Kadamovas received mail from attorney Ken Falk.

68. Consistent with BOP regulations, the mail from attorney Falk was clearly marked: "Special Mail—Open only in the presence of the inmate."

11

69. Mr. Kadamovas received this mail as regular mail.

70. Mr. Kadamovas filed an informal grievance. On or about June 12, 2023, he received a response from Defendant John or Jane Doe: "I cannot do anything about the mail that has already been opened. I have spoken with each mailroom staff member and they will make every effort to make sure this doesn't happen in the future."

71. Opening properly marked legal mail outside of the presence of Mr. Kadamovas is not reasonably related to any legitimate penological interest.

**XI.   June 11, 2023 Outgoing Legal Mail to Joshua Pickar**

72. On or about June 11, 2023, Mr. Kadamovas attempted to send a package of legal materials to attorney Joshua Pickar. Mr. Kadamovas marked the package as "Special— Legal Mail" and identified Mr. Pickar as a "Attorney at Law."

73. Defendant John or Jane Doe prevented Mr. Kadamovas from sealing his legal mail without showing the employee the contents of his legal mail.

74. Only once defendant John or Jane Doe inspected the entire contents of the package, they permitted Mr. Kadamovas to seal the legal and send it to attorney Pickar.

75. This contravenes 28 C.F.R. § 540-18(c)(1), which provides that, "outgoing special mail may be sealed by the inmate and is not subject to inspection."

76. Preventing Mr. Kadamovas from sealing properly marked special mail without inspection does not further an important or substantial governmental interest and this intrusion on Mr. Kadamovas' First Amendment rights was greater than is necessary or essential to the protection of any penological or government interest.

Ex. 131 pg.12 of 18

## XII.   June 14, 2023 Outgoing Legal Mail to Joshua Pickar

77. On or about June 14, 2023, Mr. Kadamovas attempted to send another package to his attorney, Joshua Pickar.

78. This time, Mr. Kadamovas was allowed to seal the package without showing defendant John or Jane Doe the contents of his special mail.

79. However, defendants John and Jane Doe did not send the mail promptly. Mr. Kadamovas later received a receipt demonstrating that defendants John and Jane Doe withheld the package until June 22, 2023, a full week later.

80. Withholding Mr. Kadamovas' legal mail for a full week before sending it to his lawyer does not further an important or substantial governmental interest and this intrusion on Mr. Kadamovas' First Amendment rights was greater than is necessary or essential to the protection of any penological interest.

81. Each of these repeated instances of defendants intruding on Mr. Kadamovas' ability to have confidential and privileged correspondence with his lawyers and private correspondence with the Lithuanian embassy amount to a pattern or practice of interference with Mr. Kadamovas' special mail.

82. Mr. Kadamovas' motion for relief under 28 U.S.C. § 2255 has not been fully briefed and is due on October 7, 2023. Due to the repeated infringements on his confidential attorney-client relationships, there are several non-frivolous legal claims he will be hampered in bringing absent an injunction from this Court prohibiting Defendants from further interference with his special mail. These include potentially meritorious claims related to:

   a.   Forensic evidence presented at trial;

   b.   Prosecutorial misconduct;

13

    c. Access to courts; and

    d. Ineffective assistance of counsel

## <u>CLAIMS</u>

### FIRST CAUSE OF ACTION
**(Violation of the First Amendment)**

83. Mr. Kadamovas incorporates all the preceding paragraphs as if fully set forth herein.

84. The First Amendment guarantees the right of access to courts.

85. Defendants' repeated opening of Mr. Kadamovas' special mail is not reasonably related to any legitimate penological interest.

86. Defendants John and Jane Doe's repeated intrusions on Mr. Kadamovas' confidential attorney-client relationships constitute a pattern or practice of behavior sanctioned by Defendants United States of America, Federal Bureau of Prisons, Peters, and Kallis, which has denied him his First Amendment right of access to courts. Defendants have been repeatedly informed of these intrusions—in some instances admitting fault—and have not remedied the situation.

87. Defendants' repeated intrusions of Mr. Kadamovas' confidential attorney-client relationship have denied him of his right of access to courts by preventing him from collaborating with his defense team to seek remedies for violations of his constitutional rights.

### SECOND CAUSE OF ACTION
**(Violation of the Fifth Amendment)**

88. Mr. Kadamovas incorporates all the preceding paragraphs as if fully set forth herein.

89. The Fifth Amendment guarantees the right of a criminal defendant to participate in their own defense, and Mr. Kadamovas has liberty and privacy interests in being able to

communicate with his attorneys and embassy without having those confidential communications read by government officials.

90. Defendants' opening of Mr. Kadamovas special mail prejudiced Mr. Kadamovas, preventing him from having a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to courts.

91. Defendants John and Jane Doe's repeated intrusions on Mr. Kadamovas' confidential attorney-client relationship constitute a pattern or practice of behavior sanctioned by Defendants United States of America, Federal Bureau of Prisons, Peters, and Kallis. Defendants have been repeatedly informed of these intrusions—in some instances admitting fault—and have not remedied the situation.

92. Defendants have frustrated Mr. Kadamovas' ability to participate in his own defense and have impeded his actions in pursuit of various non-frivolous post-conviction claims in violation of the Due Process Clause of the Fifth Amendment.

## THIRD CAUSE OF ACTION
### (Violation of the Sixth Amendment)

93. Mr. Kadamovas incorporates all the preceding paragraphs as if fully set forth herein.

94. The Sixth Amendment guarantees the right to counsel.

95. Defendants have deliberately interfered with the confidential relationship between Mr. Kadamovas and counsel.

96. Defendant's interference has substantially prejudiced Mr. Kadamovas.

97. Defendants John and Jane Doe's repeated intrusions on Mr. Kadamovas' confidential attorney-client relationship constitute a pattern or practice of behavior sanctioned by Defendants United States of America, Federal Bureau of Prisons, Peters, and Kallis, which has denied him the right to counsel. Defendants have been repeatedly informed of

15

these intrusions—in some instances admitting fault—and have done nothing to remedy the situation.

98. Defendants have frustrated and denied Mr. Kadamovas his right to counsel.

## FOURTH CAUSE OF ACTION
### (Violation of International Covenant on Civil and Political Rights)

99. Mr. Kadamovas incorporates all the preceding paragraphs as if fully set forth herein.

100. The United States is a signatory of the International Covenant on Civil and Political Rights.

101. Article 14 of the ICCPR guarantees the right to a fair trial. General Comment No. 36 paragraph 40 elucidates that guarantee, providing that, "the inability to access legal documents essential for conducting the legal defence or appeal" violates Article 14.

102. Defendants John and Jane Doe's repeated intrusions on Mr. Kadamovas' confidential attorney-client relationship constitute a pattern or practice of behavior sanctioned by Defendants United States of America, Federal Bureau of Prisons, Peters, and Kallis, which has denied him the right to a fair trial.

103. Defendants have denied Mr. Kadamovas his right to a fair trial.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

a. Declare that Defendants' opening of Mr. Kadamovas' mail outside of his presence arbitrarily and capriciously fails to comply with the BOP's own regulations, in violation the First, Fifth and Sixth Amendments to the United States Constitution, and the United States' treaty obligations.

b. Declare that Defendants' actions individually and cumulatively have deprived Mr. Kadamovas of his right to attorney-client privilege.

16

Ex. 131 pg.16 of 18

c.  Declare that Defendants' denial of Mr. Kadamovas' attorney-client privilege has prevented him from participating in his defense, deprived him of his right to counsel and of his right to due process of law, and violated his right of access to the courts, all of which has frustrated his ability to seek post-conviction relief.

d.  Preliminarily and permanently enjoin Defendants and their officers, agents, employees, attorneys, and all persons acting in concert or participation with them, from opening any legal mail outside of the presence of Mr. Kadamovas.

e.  Award plaintiffs their reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1998.

f.  All other relief that the Court deems appropriate.

Dated: Frankfort, Kentucky
     August 1, 2023

> Respectfully submitted,
> s/ Margaret O'Donnell
> Margaret O'Donnell
> Margaret O'Donnell, Attorney at Law
> P.O. Box 4815
> Frankfort, KY 40604
> mod@dcr.net
> (502) 320-1837
> *Counsel for Plaintiff*
> *Jurijus Kadamovas*

17

Case 2:02-cr-00220-MCS  Document 2471-131  Filed 10/03/23  Page 18 of 18  Page
ID #:18922
Case 2:23-cv-00270-MPB-MJD  Document 8  Filed 08/02/23  Page 18 of 18 PageID #: 85

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was served on this 1st day of August 2023 through the Court's case management/electronic case filing system.

/s/ Margaret O'Donnell
Margaret O'Donnell
Margaret O'Donnell, Attorney at Law
P.O. Box 4815
Frankfort, KY 40604
mod@dcr.net
(502) 320-1837
*Counsel for Plaintiff*
*Jurijus Kadamovas*

Ex. 131 pg.18 of 18