## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JURIJUS KADAMOVAS,<br><br>Defendant. | No. CR 02-00220-MCS<br><br>**DEATH PENALTY CASE**<br><br>**ORDER FILED** *UNDER SEAL* |

On June 29, 2023, Defendant/Petitioner Juris Kadamovas filed a Motion for Order Allowing Unrestrained Contact Visit with Videographer at USP Terre Haute for the purpose of creating a video to be used for Kadamovas' executive clemency application. [Dkt. No. 2449.]  In the motion, Kadamovas indicated that the government objected to his request on grounds that this Court did not have jurisdiction to order injunctive relief against the warden in Indiana.  In light of (1) this Court's continuing jurisdiction over Kadamovas' § 2255 federal habeas corpus proceedings, necessarily including consideration of requests for orders directing the prison to allow contact visits with expert witnesses, and (2) counsels' CJA appointment which includes representing Kadamovas in executive

1

clemency proceedings,[1] this Court found no jurisdictional issue with Kadamovas's motion and granted it.  *See* 18 U.S.C. § 3599(e), (f).  [Dkt. No. 2450.]

On July 10, 2023, the government filed a Motion [for Order] Restricting Circulation of Clemency Video, asking this Court to limit Kadamovas' dissemination of his clemency video to members of his defense team and any government officials who are involved in the clemency determination.[2]  [Dkt. Nos. 2452, 2454.]  The motion and accompanying declaration cited concerns that videos filmed at the U.S.P. Terre Haute have the potential to pose security risks to the institution, staff, and other inmates.

In his July 14, 2023, opposition to the government's motion, Kadamovas represented that the clemency video filmed at Terre Haute on July 11 and 12, 2023, did not implicate any of the security concerns raised in the motion.  Further, he discussed his "strategy of gathering support for his clemency application from faith-leaders, organizations focused on reforming the criminal justice system, and artists who find common cause with Mr. Kadamovas[;]" (2) offered to provide the finished video to the government, for review by Bureau of Prison officials; and (3) suggested that before Kadamovas shared the video with anyone outside of his legal team, the government be given an opportunity to petition this Court for an order seeking to prevent release of the video based on any identified security concerns.  [Dkt. No. 2458.]

Because the government's motion focused on security concerns, and Kadamovas responded to those concerns with a compromise solution, the Court offered the government the opportunity to file a reply.  In its reply, the government slightly shifted its argument, arguing that "[a]llowing unrestricted distribution of a video of one inmate in the SCU would have a disruptive influence on the other inmates confined in the SCU as well

---

[1] CJA Guidelines §680.10

[2] The government acknowledges that, having filed this motion, it "arguably submitted to this Court's jurisdiction on this matter."  [Dkt. No. 2486 at 9.]

as possibly throughout the Penitentiary." [Dkt. No. 2466 at 2.] The government's focus in the reply appeared to be security concerns surrounding the public release of "a video with unknown content." [Dkt. No. 2466 at 3.]

On August 1, 2023, this Court issued an order deferring ruling on the government's motion. [Dkt. No. 2468.] The Court noted that the government's reply suggested alternative motivations for its initial filing (i.e., circumscribing Kadamovas' access to media and worries about burdens on prison officials) and found the government had not sufficiently demonstrated that dissemination of the video implicated any security concerns at U.S.P. Terre Haute, or that the Court's denial of the government's motion would constitute court interference with prison administration. The Court ordered Kadamovas not to disseminate the video beyond the defense team and clemency officials unless and until the Court issued a final order on the government's motion. Further, the order directed that, should Kadamovas seek wider dissemination of the video, he must first provide the government/prison with a copy of the final video and the Court would allow the government to file "a brief including fact-based arguments addressing any security concerns identified by prison officials as well as any arguments addressing whether wider distribution of the video goes beyond the scope of a normal clemency campaign." [Dkt. No. 2468 at 3.]

On December 6, 2023, Kadamovas provided a copy of his clemency video to the government, [Dkt. No. 2482] and on January 26, 2024, the government filed a response to the video, renewing its request that this Court "restrict dissemination of the video to the official clemency process[.]" [Dkt. No. 2486 at 2-3.] In the response, the government abandons the argument that originated the motion, that anything in the clemency video poses a security risk to the prison. [Dkt. No. 2486 at 2, 7, 10.] Further, it acknowledges that a Capital Case Specialist with United States Office of the Pardon Attorney advised the government that (1) "he has seen materials in the public space from inmates seeking clemency[;]" and (2) "the Office of the Pardon Attorney takes no position on whether a court may restrict any person convicted of a federal offense from disseminating to the

public at large any materials submitted to the Office of the Pardon Attorney in connection with a request for executive clemency." [Dkt. No. 2486 at 7 & n.1.]  Rather, the government contends that this Court should issue an order restricting dissemination of the video "in order to preserve consistency and equality of treatment among federal death row inmates housed in the Secure Commitment Unit at Terre Haute Correctional Complex in Terre Haute, Indiana." [Dkt. No. 2486 at 2-3.]  The government suggests that a decision from this Court "*may* directly contravene decisions issued from the federal district court in the Southern District of Indiana[,] *may* be inconsistent with common practice at the Terre Haute SCU, . . . [and] *may* . . . lead to the disruption of the smooth operation of the SCU[.]" [Dkt. No. 2486 at 7 (emphasis added).]  These arguments are pure speculation.

Other than appointing counsel therefor, as the government properly points out, "clemency has not traditionally been the business of the courts." *Ohio Adult Parole Authority v. Woodard*, 523 U.S. 272, 284 (1998) (internal quotation marks and citation omitted); *see also Cavazos v. Smith*, 565 U.S. 1, 8-9 (2011) (per curiam) (clemency power is "a prerogative granted to executive authorities. . . .  It is not for the Judicial Branch to determine the standards for this discretion."); *U.S. v. Missio*, 597 F.2d 60, 62 (5th Cir. 1979) ("The Judiciary has no authority in matters of clemency.").  "The pardoning power is one which the Constitution expressly vests in the President" and must "be free of judicial control[.]" *Yelvington v. Presidential Pardon & Parole Attys*, 211 F.2d 642, 643-44 (D.C. Cir. 1954) (declining to exercise "judicial control" over the clemency process by compelling "the President's assistances in this field . . . to submit to him documents [o]n behalf of a particular suitor for clemency" because it was for the President – not the courts – to "correct them" "[i]f they have erred" in so acting); *cf Malcom v. Payne*, 281 F.3d 951, 960 (9th Cir. 2002) ("A state clemency petition . . . is directed to and acted on by the state's executive branch wholly separate from the state judiciary, its judgments, and its appellate review process.").  While "some *minimal* procedural safeguards apply to [capital] clemency proceedings[,]" judicial intervention in such proceedings is warranted only in rare, extreme cases where a due process violation is demonstrated.  *Woodard*, 523 U.S. at 289 (O'Connor,

J., concurring) (emphasis in original).  This Court was pulled into this matter because Terre Haute required a court order to permit Kadamovas' videographers to enter the prison, and Kadamovas' attorneys, whose appointment in the Central District of California covers clemency, requested an order from this Court.  This was essentially an administrative matter.  In fact, had the video not been filmed in the prison, this Court undoubtedly never would have been looped in.  After due consideration, because it is not within this Court's purview to control or dictate how Kadamovas proceeds in his clemency campaign, the government's motion is **DENIED**.

**IT IS SO ORDERED.**

DATED:  February 26, 2024

HONORABLE MARK C. SCARSI
United States District Judges

5