**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JURIJUS KADAMOVAS,<br><br>Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | Case No. 2:23-cv-08289-MCS<br>2:02-cr-00220-MCS-2<br>**ORDER DENYING PETITIONER'S MOTION FOR DISCOVERY (ECF No. 7)** |

## I.   BACKGROUND

On January 17, 2007, Petitioner Jurijus Kadamovas ("Petitioner") was convicted of several federal crimes, including multiple counts of hostage taking resulting in death, conspiracy to take hostages resulting in death, conspiracy to launder monetary instruments, conspiracy to escape from custody, and criminal forfeiture. [Criminal Case No. 02-CR-0220 "Cr. Dkt." No. 1481.]  On February 13, 2007, the jury unanimously recommended that a sentence of death should be imposed.  [Cr. Dkt. No. 1541.]  The district court sentenced Petitioner to death on March 12, 2007, and he timely filed his notice of appeal on March 19, 2007.  [Cr. Dkt. Nos. 1639, 1641, 1606.]  Petitioner and his codefendant Iouri Mikhel filed a joint opening brief on appeal, and individual opening briefs, in May and June 2013.  [Ninth Circuit Case No. 07-99009

1

"Ninth Cir. Dkt." Nos. 255, 268, 270.]  On May 9, 2018, the Ninth Circuit denied the appeal.  *United States v. Mikhel*, 889 F.3d 1003 (9th Cir. 2018).  His petition for certiorari in the United States Supreme Court was denied on October 7, 2019.  *Kadamovas v. United States*, 140 S.Ct. 157 (2019).

After multiple timeliness waivers, based in large part on the effects of the COVID-19 epidemic, Petitioner officially initiated federal habeas corpus proceedings by filing his 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct the Conviction and Sentence ("petition") on October 3, 2023.[1]  [Dkt. No. 1 ("Pet.").]  Pursuant to the parties' November 3, 2023, stipulation, this Court issued an order setting a briefing schedule on November 8, 2023.  [Dkt. Nos. 4, 5.]  Respondent's opposition is currently due on or before October 7, 2025, and Petitioner's reply is due on or before October 7, 2026.

On October 31, 2024, Petitioner filed three motions: a Motion for Discovery [Dkt. No. 7]; a Motion for Limited Release of Juror Names [Dkt. No. 8]; and a Motion for Order Directing the Bureau of Prisons to Allow Petitioner to Have a Computer in His Cell[2] [Dkt. No. 9].  On December 23, 2024, before Respondent filed oppositions to the motions on January 17, 2025 [Dkt. Nos. 14-16], and Petitioner filed replies on January 31, 2025 [Dkt. Nos. 17-19], President Joseph Biden issued executive grants of clemency to Petitioner and Mikhel, commuting their sentences to life without possibility of parole.  [Dkt. No. 22, Exh. 136.]  On January 13, 2025, this Court issued an Order Requiring Status Report, instructing the parties to file a joint status report outlining their positions concerning the effect of the clemency grants on the petitions and proposing a plan for further proceedings.  [Dkt. No. 13.]  On February 3, 2025, the parties filed a Joint Status Report stating their agreement that it is appropriate for

---

[1] Under the 1996 Antiterrorism and Effective Death Penalty Act's one-year statute of limitations, Kadamovas' 28 U.S.C. § 2255 Motion to Vacate, Set Aside or Correct Sentence was originally due on October 7, 2020. 28 U.S.C. § 2255(f).  Respondent agreed to six six-month timeliness waivers until October 7, 2023.  [Cr. Dkt. Nos. 2380, 2406, 2414, 2417, 2427, 2445.]

[2] While Petitioner titled his motion "Motion for Access to Legal Materials," this Court has opted to more accurately title the motion to reflect what is being requested.

2

Respondent to identify in its oppositions to the petitions claims that it contends are no longer at issue due to the sentence commutations, and petitioners can then respond in their replies.  [Dkt. No. 20.]

This Order addresses Petitioner's Motion for Discovery [Dkt. Nos. 7 ("Mot.") and 7-1 ("Mem.")], which requests production of 22 categories of documents [Mot. at 2-4] corresponding to seven broader categories of documents [Mem. at 2-8].  In support of his requests, Petitioner argues that "[t]he allegations set forth in [his] § 2255 Motion establish [the] 'good cause' [required] to conduct discovery pursuant to Rule 6(a)." [Mem. at 2.]  Respondent counters that Petitioner "has done little more than make speculative assertions in support of his claims for discovery."  [Dkt. No. 14 ("Opp.") at 6.]  This Court finds that discovery is not warranted at this time.

## II. LEGAL STANDARD

"A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997).  Rather, a party requesting discovery must show good cause.  Rule 6(a), Fed. R. Governing Section 2255 Proceedings for the United States District Courts. Good cause under Rule 6(a) exists "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief."  *Bracy,* 520 U.S. at 908-09 (*quoting Harris v. Nelson*, 394 U.S. 286, 300 (1969)).

It is not the role or obligation of the Court to search a petitioner's petition to find good cause for his discovery requests.  Rather, "[a] party requesting discovery must provide reasons for the request," including "any proposed interrogatories and requests for admission" and "any requested documents."  Rule 6(a)–(b) Fed. R. Governing Section 2255 Proceedings for the United States District Courts.  Rule 6 permits discovery only if the Petitioner offers "specific allegations" that give the court "reason to believe" the Petitioner could show he would be "entitled to relief" if the record were "fully developed."  *Bracy*, 520 U.S. at 908-09.  Habeas petitioners may not

"use federal discovery for fishing expeditions to investigate mere speculation." *Calderon v. U.S. Dist. Court*, 98 F.3d 1102, 1106 (9th Cir. 1996); *see also Rich v. Calderon*, 187 F.3d 1064, 1067 (9th Cir. 1999).  "Just as bald assertions and conclusory allegations do not afford a sufficient ground for an evidentiary hearing, neither do they provide a basis for imposing upon the state the burden of responding in discovery to every habeas petitioner who wishes to seek such discovery." *Earp v. Davis*, 881 F.3d 1135, 1142-43 (9th Cir. 2018) (internal citations omitted).

III.   **PETITIONER'S REQUESTS**

**A. Documents Related to the Conspiracy to Escape and Informant Testimony**

Petitioner proffers that seven of his § 2255 claims challenge his conspiracy to escape conviction – Claims 12, 13, 15, 16, 17, 20 and 21.  In requesting documents related to the escape conspiracy and Confidential Informant J.A., Petitioner argues that "there was *minimal evidence* tying [him] to a conspiracy to escape," that "the government misused and withheld information regarding J.A.," and that the prosecution "submitted misleading evidence regarding the escape conspiracy."  [Mem. at 2-3 (emphasis added).]  These are speculative and conclusory allegations.

As Respondent notes in its Opposition, in rejecting Petitioner's appeal, the Ninth Circuit found that "there was *extensive evidence* linking Kadamovas to the escape conspiracy."  *Mikhel*, 889 F.3d at 1019 (emphasis added).  "The law in this circuit is clear that when a matter has been decided adversely on appeal from a conviction, it cannot be litigated again on a 2255 motion."  *Odom v. United States*, 455 F.2d 159 160 (9th Cir. 1972); *United States v. Hayes*, 231 F.3d 1132, 1139 (9th Cir. 2000) ("When a defendant has raised a claim and has been given a full and fair opportunity to litigate it on direct appeal, that claim may not be used as a basis for a subsequent § 2255 petition.").

Petitioner has not provided "specific allegations" that give the court "reason to believe" that he could show he would be "entitled to relief" if the record were "fully

developed." *Bracy*, 520 U.S. at 908-09.  Petitioner has not demonstrated good cause to permit discovery of these documents at this time.

**B. Records related to the Special Administrative Measures (SAMs) imposed on Petitioner at the Metropolitan Detention Center (MDC) in Los Angeles**

In his § 2255 Motion, Petitioner argues that he was designated a SAM prisoner -- and thereby was subject to extreme oversight and limitations on communications, as well as special detention and other heightened security measures – "without notice, due process, a hearing, or the ability to object." [Pet. at 86.]  In his discovery motion, Petitioner seeks records related to these security measures suggesting these documents "would shed light" on issues relevant to his shackling claims (Claims 5, 18) and his claims that the denial of access to case materials undermined his ability to participate in his own defense and hampered his ability to speak with the Lithuanian embassy (Claims 10, 29).  [Mem. at 4.]

Under 28 C.F.R. § 501.3(a),

> Upon direction of the Attorney General, the Director, Bureau of Prisons, may authorize the Warden to implement special administrative measures that are reasonably necessary to protect persons against the risk of death or serious bodily injury.  These procedures may be implemented upon written notification to the Director, Bureau of Prisons, by the Attorney General or, at the Attorney General's direction, by the head of a federal law enforcement agency, or the head of a member agency of the United States intelligence community, that there is a substantial risk that a prisoner's communications or contacts with persons could result in death or serious bodily injury to persons, or substantial damage to property that would entail the risk of death or serious bodily injury to persons. These special administrative measures ordinarily may include housing the

inmate in administrative detention and/or limiting certain privileges,
including, but not limited to, correspondence, visiting, interviews with
representatives of the news media, and use of the telephone, as is
reasonably necessary to protect persons against the risk of acts of
violence or terrorism. The authority of the Director under this
paragraph may not be delegated below the level of Acting Director.

28 C.F.R. § 501.3(a).

Under 28 C.F.R. § 501.3(b), Petitioner should have received "written notification of the restrictions imposed *and the basis for these restrictions*" and should have "sign[ed] for and receive[d] a copy of the notification."  28 C.F.R. § 501.3(b) (emphasis added).  "The notice's statement as to the basis may [have been] limited in the interest of prison security or safety or to protect against acts of violence or terrorism."  *Id.*

On the current record, Petitioner has not demonstrated good cause for his request under Rule 6(a).  He seeks records related to the security measures, conclusively arguing that they "apparently influenced the decision to shackle," and "would shed light" on issues relevant to his shackling claims.  [Mem. at 4.]  SAMs restrictions apply to the Bureau of Prisons – housing, correspondence, visiting, etc. – and Petitioner has not made specific allegations linking the SAMs to the shackling.  *See* 28 C.F.R. § 501.3(a).  "[C]onclusory allegations do not afford a sufficient . . . basis for imposing upon the state the burden of responding in discovery[.]"  *Earp*, 881 F.3d at 1142-43.

While *the fact* that Petitioner was subject to SAMs is potentially relevant to his claims that he was denied access to case materials (Claim 10) and was hampered in his efforts to speak with the Lithuanian embassy (Claim 29), the documents he seeks in discovery – documents supporting the decisions to impose and maintain SAMs – are, at best, tangential to his claims.

Petitioner has not demonstrated good cause to permit discovery of these documents at this time.

### C. Documents Related to the Denial of Visas to Petitioner's Family Members

Claim 23 of Petitioner's § 2255 motion challenges his death sentence, alleging that the government committed misconduct by interfering with penalty phase defense witness visa applications and suppressing evidence in violation of *Brady v. Maryland,* 373 U.S. 83 (1963).  In his discovery motion, Petitioner seeks documents about his family members' visa applications, arguing they are relevant to the factual dispute regarding why visas were denied.  [Mem. at 5.]  Because Claim 23 challenges Petitioner's death sentence, Respondent will undoubtedly argue that it has been mooted by President Biden's December 2024 executive grant of clemency, commuting the sentence.  On the current record, Petitioner lacks good cause to permit discovery of these documents at this time.

### D. Correspondence Between the Governments of the United States and Lithuania

In his discovery motion, Petitioner seeks "All correspondence between the Lithuanian government and the U.S. government relating to Mr. Kadamovas and/or the prosecution of this case."  [Mem. at 6.]  The motion conclusively argues that Petitioner's "ability to communicate with the Lithuanian embassy was . . . unreasonably restricted," citing Claim 29 of his § 2255 Motion – "Violations of International Law." [Mem. at 6.]  This request is a classic "fishing expedition[] to investigate mere speculation" and offers the Court neither "specific allegations" nor "reason to believe" Petitioner could show he would be "entitled to relief" if the record were "fully developed."  *Calderon*, 98 F.3d at 1106; *Bracy*, 520 U.S. at 908-09.  As such, Petitioner has not demonstrated good cause to permit discovery of these documents at this time.

/ / /

### E. Documents Relating to Natalya Solovyeva's Diary

In Claim 14 of his § 2255 petition, Petitioner alleges that the prosecution suppressed favorable material evidence in violation of *Brady*, 373 U.S. 83, when it failed to disclose Natalya Solovyeva's diary, Ainar Altmanis' diary, and Aleksejus Markovskis' day planner to the defense. [Pet. at 180.] In his discovery motion, Petitioner seeks a full copy of Solovyeva's diary; translations and summaries of the diary created for use by government agents; and documentation of when, and under what circumstances, the diary first was delivered to, and translated for use by, government agents. [Mem. at 7.]

Under *Brady*, "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. Thus, there are three components of a *Brady* violation: (1) the evidence must have been suppressed by the government; (2) it must have been favorable to the accused, either because it is exculpatory or impeaching; and (3) the defendant/petitioner must have suffered prejudice as a result of the suppression. *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

To establish good cause for his discovery requests, Petitioner must offer "specific allegations" that give the court "reason to believe" that, if the record were "fully developed," Petitioner could show he would be "entitled to relief." *Bracy*, 520 U.S. at 908-09. According to Petitioner's allegations, Solovyeva's diary was *partially* suppressed – the government's disclosure was late and incomplete. As to favorability, citing the diary evidence that *was* disclosed, Petitioner argues that the diary "contained information that could have been used to impeach Solovyeva, and also contained important mitigating evidence and inferences that would have impacted the penalty phase presentation and deliberations." [Pet. at 190.] Petitioner further contends the diary "provides evidence that Solovyeva was involved in criminal activity unrelated to Mr. Kadamovas" and harbored a "desperate desire for money." [Pet. at 190.]

Petitioner's allegations regarding the existence of undisclosed impeachment evidence are speculative. *See Earp*, 881 F.3d at 1142-43 ("[B]ald assertions and conclusory allegations do not . . . provide a basis for imposing upon the state the burden of responding in discovery[.]" (quoting *Mayberry v. Petsock*, 821 F.2d 179, 185 (3d Cir. 1987.))  As to any undisclosed mitigating evidence, Petitioner's claim has likely been mooted by President Biden's December 2024 executive grant of clemency, commuting Petitioner's death sentence.

With respect to Petitioner's requests for documentation of when, and under what circumstances the diary was first delivered to, and translated for use by, government agents, this request is a classic "fishing expedition[] to investigate mere speculation" and offers the Court neither "specific allegations" nor "reason to believe" Petitioner could show he would be "entitled to relief" if the record were "fully developed." *Calderon*, 98 F.3d at 1106; *Bracy*, 520 U.S. at 908-09.

Petitioner has not demonstrated good cause to permit discovery of these documents at this time.

### F. Documents Related to DOJ's Decision to Pursue the Death Penalty, Including Documents About Defense Counsel's Presentation

Petitioner's discovery motion requests documents related to the Department of Justice's decision to pursue the death penalty.  [Mem. at 7.]  He argues that these documents support his claim that he was improperly denied resources necessary for a mitigation investigation until after the government made the final decision to seek the death penalty against him (Claim 22).  [Mem. at 7.]  Because Claim 22 challenges Petitioner's death sentence, Respondent will undoubtedly argue that it has been mooted by President Biden's December 2024 executive grant of clemency, commuting the sentence.  On the current record, Petitioner lacks good cause to permit discovery of these documents at this time.

///

**G. Documents Related to the Government's Jury Selection Procedures**

In Claim 4 of his § 2255 petition [Pet. at 78-84], Petitioner argues that the government violated the Equal Protection Clause of the United States Constitution in disproportionately striking women during jury selection. *See J.E.B. v. Alabama*, 511 U.S. 127 (1994). In his discovery motion, he "requests production of all documents relating to the government's jury selection procedures in this case[,]" as well as "DOJ training materials about jury selection in criminal cases utilized or made available to attorneys in the Central District of California between 2001 and 2006[.]" [Mem. at 8.] This claim was not raised in the trial court. In opposing the § 2255 petition, Respondent will undoubtedly argue Claim 4 is procedurally defaulted and, therefore, lacking in good cause under Rule 6(a) because there is no reason to believe that Petitioner will be able to demonstrate that he is entitled to relief. *Bracy,* 520 U.S. at 908-09; *see Windham v. Merkle*, 163 F.3d 1092, 1101 (9th Cir. 1998) (Trial counsel's failure to object "deprived the trial court of the opportunity to take remedial action to preserve the equal protection rights of potential women jurors" and "the prosecutor was not given the opportunity to carry his burden of providing a gender-neutral explanation."). While Petitioner suggests the trial court had an independent duty to raise the issue, trial counsel was ineffective, and the jury selection in this case was plain error, Petitioner lacks good cause to permit discovery of these documents at this time.

**IV.    CONCLUSION**

For the foregoing reasons, Petitioner's Motion for Discovery is DENIED as premature.

**IT IS SO ORDERED**

DATED: April 23, 2025

_____
MARK C. SCARSI
UNITED STATES DISTRICT JUDGE

10