**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JURIJUS KADAMOVAS, | Case Nos. 2:23-cv-08289-MCS |
| Petitioner, | 2:02-cr-00220-MCS-2 |
| v. | **ORDER DENYING PETITIONER'S MOTION FOR LIMITED RELEASE OF JUROR NAMES (ECF No. 8)** |
| UNITED STATES OF AMERICA, | |
| Respondent. | |

## I.    BACKGROUND

On January 17, 2007, Petitioner Jurijus Kadamovas ("Petitioner") was convicted of several federal crimes, including multiple counts of hostage taking resulting in death, conspiracy to take hostages resulting in death, conspiracy to launder monetary instruments, conspiracy to escape from custody, and criminal forfeiture. [Criminal Case No. 02-CR-0220 "Cr. Dkt." No. 1481.]  On February 13, 2007, the jury unanimously recommended that a sentence of death should be imposed.  [Cr. Dkt. No. 1541.]  The district court sentenced Petitioner to death on March 12, 2007, and he

timely filed his notice of appeal on March 19, 2007.  [Cr. Dkt. Nos. 1639, 1641, 1606.] Petitioner and his codefendant Iouri Mikhel filed a joint opening brief on appeal, and individual opening briefs, in May and June 2013.  [Ninth Circuit Case No. 07-99009 "Ninth Cir. Dkt." Nos. 255, 268, 270.]  On May 9, 2018, the Ninth Circuit denied the appeal.  *United States v. Mikhel*, 889 F.3d 1003 (9th Cir. 2018).  His petition for certiorari in the United States Supreme Court was denied on October 7, 2019. *Kadamovas v. United States*, 140 S.Ct. 157 (2019).

After multiple timeliness waivers, based in large part on the effects of the COVID-19 epidemic, Petitioner officially initiated federal habeas corpus proceedings by filing his 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct the Conviction and Sentence ("petition") on October 3, 2023.[1]  [Dkt. No. 1 ("Pet.").]  Pursuant to the parties' November 3, 2023, stipulation, this Court issued an order setting a briefing schedule on November 8, 2023.  [Dkt. Nos. 4, 5.]  Respondent's opposition is currently due on or before October 7, 2025, and Petitioner's reply is due on or before October 7, 2026.

On October 31, 2024, Petitioner filed three motions: a Motion for Discovery [Dkt. No. 7]; a Motion for Limited Release of Juror Names [Dkt. No. 8]; and a Motion for Order Directing the Bureau of Prisons to Allow Petitioner to Have a Computer in His Cell[2] [Dkt. No. 9].  On December 23, 2024, before Respondent filed oppositions to the motions on January 17, 2025 [Dkt. Nos. 14-16], and Petitioner filed replies on January 31, 2025 [Dkt. Nos. 17-19], President Joseph Biden issued executive grants of clemency to Petitioner and Mikhel, commuting their sentences to life without possibility of parole.  [Dkt. No. 22, Exh. 136.]  On January 13, 2025, this Court issued an Order Requiring Status Report, instructing the parties to file a joint status report

---

[1] Under the 1996 Antiterrorism and Effective Death Penalty Act's one-year statute of limitations, Kadamovas' 28 U.S.C. § 2255 Motion to Vacate, Set Aside or Correct Sentence was originally due on October 7, 2020. 28 U.S.C. § 2255(f).  Respondent agreed to six six-month timeliness waivers until October 7, 2023.  [Cr. Dkt. Nos. 2380, 2406, 2414, 2417, 2427, 2445.]

[2] While Petitioner titled his motion "Motion for Access to Legal Materials," this Court has opted to more accurately title the motion to reflect what is being requested.

2

outlining their positions concerning the effect of the clemency grants on the petitions and proposing a plan for further proceedings. [Dkt. No. 13.] On February 3, 2025, the parties filed a Joint Status Report stating their agreement that it is appropriate for Respondent to identify in its oppositions to the petitions claims that it contends are no longer at issue due to the sentence commutations, and petitioners can then respond in their replies. [Dkt. No. 20.] This Order addresses Petitioner's Motion for Limited Release of Juror Names [Dkt. Nos. 8 ("Mot.") and 8-1 ("Mem.")], the basis for which is Petitioner's claim that his convictions and sentence are unlawful and unconstitutionally imposed because his jury was not fair and impartial. [Pet. at 60-70.]

As Petitioner necessarily acknowledges, he previously filed a Motion for Limited Release of Juror Names in the trial court on June 15, 2020. [Cr. Dkt. No. 2337.] He was subsequently joined in the motion by Mikhel. [Cr. Dkt. No. 2338.] The government filed an opposition on July 6, 2020; Petitioner and Mikhel filed separate replies on July 15, 2020; Petitioner filed supplemental authorities in support of the motion on July 16, 2020; and the government filed an opposition and response on July 28, 2020. [Cr. Dkt. Nos. 2347, 2356-58, 2371, 2374.] On July 30, 2020, Judge Gutierrez denied the Motion for Limited Release of Juror Names in a comprehensive minute order, the reasoning of which is still applicable and therefore repeated here. [Cr. Dkt. No. 2375.]

II.    DISCUSSION

A. Facts

The jury in Petitioner's trial case was anonymous, which is a central fact to the present motion. Before the trial commenced in 2006, the government filed an unopposed motion to empanel an anonymous jury based on: (1) the seriousness of the crimes the defendants were charged with; (2) evidence linking the defendants to organized crime; (3) the lack of respect the defendants exhibited for the judicial process as demonstrated by their participation in escape attempts prior to trial; (4) the seriousness of the sentence the defendants faced; and (5) the likelihood of extensive

trial publicity. [Cr. Dkt. No. 1002.] On June 12, 2006, the trial court granted the government's motion, noting that it would utilize a juror numbering system to identify jurors during voir dire, and then once the jury was selected, jurors would be identified as "Juror Number 1, Juror Number 2, Juror Number 3, all the way through 12, and then Alternate 1, Alternate 2, Alternate 3." [Cr. Dkt. No. 1076, transcript page 66.]

At every step of their jury service, the jurors selected to hear Petitioner's case were informed that their names and personal information would be confidential. Upon arrival for jury duty, before ever entering the courtroom, prospective jurors were informed that they would not be asked for their name but would be known by the number given to them in the jury room. [Cr. Dkt. No. 2356 at 9.] In the courtroom, "[t]he district court did not instruct the jury on the reasons for their anonymity but simply informed them that they would be referred to by number rather than name." *Mikhel*, 889 F.3d at 1031. When passing out juror questionnaires, court personnel reminded potential jurors numerous times to write their juror number, not their name, on the pages of the questionnaire. [*See* Cr. Dkt. No. 2356 at 10.] The questionnaires themselves contained a written advisement that potential jurors' information would be "kept confidential" and that "[n]either [their] identities nor [their] answers [would] be released to the general public or the media." *Mikhel,* 889 F.3d at 1031. Rather, the information in the questionnaires would be "reviewed only by the court and the attorneys on each side." [*See* Cr. Dkt. No. 2356 at 10.] Finally, at the conclusion of the trial proceedings, the district court instructed the jurors that "whether they should speak with any of the attorneys . . . [was] a personal decision left entirely up to [the individual jurors]." [*See* Cr. Dkt. No. 2357 at 6 (quoting Feb. 21, 2007 Transcript at 42).] The court continued, "I do remind you that this jury was anonymous and you could compromise or sacrifice your anonymity by speaking with counsel. This is also true with regard to speaking with members of the press." [*See* Cr. Dkt. No. 2357 at 6 (quoting Feb. 21, 2007 Transcript at 43).]

On direct appeal, Petitioner did not challenge the finding that an anonymous jury was appropriate, but argued, among other things, that "it was plain error for the court not to sua sponte disclose potential jurors' identities to defense counsel under a protective order." *Mikhel*, 889 F.3d at 1032  The Ninth Circuit held that the "district court committed no error, and certainly no plain error, in empaneling an anonymous jury as it did," because no Ninth Circuit case suggested or required providing jurors' identities to defense counsel under such circumstances. *Id.*  Further, the Ninth Circuit noted that 18 U.S.C. § 3432[3] did not "require disclosing jurors' identifying information to counsel when the 'life or safety' exception applies, as it undisputedly did here." *Id.*

Now, nearly twenty years after the trial, Petitioner requests limited disclosure of the juror names so that post-conviction counsel may "investigate the jurors and gather evidence to support the claims alleged" in his § 2255 petition.  [Mem. at 2.]  He argues that the need for this investigation outweighs any need for the continued anonymity of the jurors, which he suggests was "overstated at the time of trial" and has now "disappeared."  [Mem. at 2.]

### B. Analysis

#### 1. Petitioner Has Not Established That He Has a Constitutional Right to Interview Jurors

In Claim 2 of his § 2255 petition, Petitioner contends that his convictions and sentence are unlawful and unconstitutionally imposed because his jury was not fair and impartial.  He notes that the parties were extremely limited in their abilities to investigate the jurors due to their anonymity.  Voir dire was also restricted.  Petitioner repeats the arguments he made in his 2020 Motion for Limited Release of Juror Names -- that his jury was infected with bias and prejudice because (1) three of the jurors served in the armed forces during the Cold War era; (2) much of the community at the

---

[3] Section 3432 requires a "list of the veniremen . . . stating the place of abode of each venireman" to be provided to a capital defendant, unless "the court finds by a preponderance of the evidence that providing the list may jeopardize the life or safety of any person."  18 U.S.C. § 3432.

5

time of trial was infected by hostility and bias against recent immigrants from Russia and the Soviet Union; (3) Juror 57 was likely distracted and partial due to threats by his employer with the loss of his job, and the trial court failed in its duty to properly inquire into the possibility of juror misconduct, distraction and impropriety; and (4) Juror 67 encountered Mikhel's defense counsel and an expert witness working on the case in a hotel bar during the trial and the encounter could have influenced the juror. He further argues that Juror 31 had "continuing family medical issues" that led to a request for scheduling changes and the trial court failed to conduct an inquiry into these issues. [Pet. at 63-70.] He suggests that "[f]ull presentation of the allegations of bias and prejudice . . . have been subverted and prevented by the withholding of the jurors' names and information." [Pet. at 63.]

The Ninth Circuit has "long imposed restrictions on lawyers seeking access to jurors." *Mitchell v. United States*, 958 F.3d 775, 787 (9th Cir. 2020). "Rules restricting lawyers' access to jurors '(1) encourage freedom of discussion in the jury room; (2) reduce the number of meritless post-trial motions; (3) increase the finality of verdicts; and (4) further Federal Rule of Evidence 606(b) by protecting jurors from harassment and the jury system from post-verdict scrutiny.'" *Id.* (quoting *Cuevas v. United States*, 317 F.3d 751, 753 (7th Cir. 2003)). Yet, despite discouragement of the practice, "there is no absolute prohibition of post-verdict interviews of jurors in the Ninth Circuit." *Carlson v. Thornell*, No. CV-23-00522 TUC-RM, 2024 WL 3653058, at *2 (D. Ariz. Aug. 5, 2024) (citing *Hard v. Burlington Northern R.R.*, 812 F.2d 482, 485 (9th Cir. 1987), *abrogated on other grounds by Warger v. Shauers*, 574 U.S. 40 (2014)).

While the Ninth Circuit has not prohibited post-verdict interviews of jurors, it has been clear that a court's "'denial of a motion to interrogate jurors' does not raise a constitutional problem where 'there has been no specific claim of jury misconduct.'" *Mitchell*, 958 F.3d at 782 (quoting *Smith v. Cupp*, 457 F.2d 1098, 1100 (9th Cir. 1972)); *see also United States v. Eldred*, 588 F.2d 746, 752 (9th Cir. 1978) (finding no abuse of discretion in refusing to allow post-verdict interrogation of jurors where there

had been no showing of juror misconduct).  Although petitioner is not necessarily requesting leave of the Court to conduct post-verdict interviews of jurors, the basis for the pending motion is the need to conduct such interviews to investigate his supposition that juror bias and misconduct may have infected the trial.  Petitioner contends that juror interviews are "crucial to the examination of the claims brought in the § 2255 Motion."  [Mem. at 6.]

Petitioner's allegations are substantially similar to those raised in his pre-petition motion and the Court's findings thereon have not changed.  Petitioner has not pled with the type of specificity that would entitle him to conduct the interviews he proposes.  Although he argues in his reply that the § 2255 motion "raises specific allegations that require inquiry into the juror's observations" [Dkt. No. 8 at 4], Petitioner's contentions that his jury was infected with bias and prejudice are speculative.  *See Mitchell*, 958 F.3d at 790-92 (district court correctly denied a motion to interview jurors regarding racial bias when the motion was based on mere speculation and lacked any specific showing of jury misconduct or any other basis for good cause); *see also Pha v. Swarthout*, 658 F. App'x 849, 851 (9th Cir. 2016) (habeas relief unavailable based on trial court's refusal to provide juror contact information; petitioner identified "no Supreme Court decision addressing a defendant's entitlement to written discovery upon suggestion of juror misconduct").  They do not allege a specific claim of jury misconduct or bias.

In the present motion, Petitioner suggests that the Court should disturb the anonymity afforded the jurors so that he may search for evidence he supposes *might* exist to support claims he suggests *might* be meritorious.  First, with respect to his shackling claim, Petitioner argues that he must investigate whether jurors were aware of the physical restraints used on the defendants during trial.  [Mem. at 6-7 ("To determine whether jurors observed the shackles, someone needs to ask them.").]  Second, Petitioner suggests that interviews must be done to support his allegations in Claim 8 that his motion for severance or a mistrial should have been granted after

Mikhel's testimony was stricken from the record; he argues that "to determine whether the jurors actually followed the limiting instructions, someone needs to ask them." [Mem. at 7.]  Finally, Petitioner contends that juror interviews are crucial to support his multi-part claim that juror misconduct or bias impacted the verdict.  [Mem. at 7.]  He points to allegations that (i) Juror 57 had financial and work-related pressures during the trial that triggered the court's intervention with his employment; (2) Juror 67 encountered defense counsel and an expert at a hotel bar during the penalty phase; and (3) it was possible that racial and ethnic bias influenced the jury due to the defendants' nationalities and connections to the Soviet Union.  [Mem. at 7-8.]  Crucially, Petitioner still does not make a specific claim of jury misconduct.  Instead, he proffers supposition, suggesting opportunities existed for misconduct to have occurred.  The evidence cited by Petitioner does not rise to the level of a colorable claim of juror bias or misconduct. *See Dyer v. Calderon*, 151 F.3d 970, 974 (9th Cir. 1998) ("A court confronted with a colorable claim of juror bias must undertake an investigation of the relevant facts and circumstances.").

As he did in his prior motion, Petitioner discusses the facts of *Peña-Rodriguez v. Colorado*, 580 U.S. 206 (2017), but he fails to argue or demonstrate that his case is comparable.  [Mem. at 4.]  In *Peña-Rodriguez,* the Supreme Court held "where a juror makes a clear statement that indicates he or she relied on racial stereotypes or animus to convict a criminal defendant, the Sixth Amendment requires that the no-impeachment rule give way in order to permit the trial court to consider the evidence of the juror's statement and any resulting denial of the jury trial guarantee."  580 U.S. at 225.  To warrant judicial inquiry into the matter, "there must be a showing that one or more jurors made statements exhibiting overt racial bias that cast serious doubt on the fairness and impartiality of the jury's deliberations and resulting verdict." *Id.* Although *Peña-Rodriguez* established a new exception to the no impeachment rule, it "left untouched the law governing investigating and interviewing jurors." *Mitchell*, 958 F.3d at 790.  Accordingly, Petitioner must still make a preliminary showing of

misconduct to establish good cause to conduct juror interviews, which he has not done. Petitioner does not argue he has satisfied the standard in *Peña-Rodriguez* that would warrant judicial inquiry into the matter.

Criminal defendants indisputably have a constitutional right to an impartial jury, and that right "is nowhere as precious as when a defendant is on trial for his life." *Sampson v. United States*, 724 F.3d 150, 163 (1st Cir. 2013). Petitioner is correct, that counsel in a federal habeas corpus proceeding have a duty to "conduct a reasonable and diligent investigation aimed at including all relevant claims and grounds for relief in the first federal habeas petition." *McCleskey v. Zant*, 499 U.S. 467, 498 (1991). However, Petitioner provides no authority, and the Court has found none, for concluding that a defendant's right to an impartial jury or the obligation of habeas counsel mandates the allowance of post-verdict interviewing of jurors, absent a specific claim of jury misconduct.[4] *See Carter v. Ayers*, No. 06CV1343 BEN(CABx), 2007 WL 433246, at *1-3 (S.D. Cal. Jan. 25, 2007) (rejecting petitioner's request to interview jurors on the grounds that such interviews were a necessary step in the habeas investigation where petitioner made no specific claim of jury misconduct). Rather and in fact, "[d]istrict courts have 'wide discretion' to restrict contact with jurors to protect jurors from 'fishing expeditions' by losing attorneys." *United States v. Wright*, 506 F.3d 1293, 1303 (10th Cir. 2007); *see also United States v. Brown,* 250 F.3d 907, 922 (5th Cir. 2001) (affirming district court's post-verdict order maintaining juror confidentiality); *United States v. Harrelson,* 713 F.2d 1114, 1118 (5th Cir.1983) ("[J]urors, even after completing their duty, are entitled to privacy and to protection against harassment." (quoting *In re Express-News Corp.,* 695 F.2d 807, 810 (5th Cir. 1982)). For the Court to authorize such a post-verdict inquiry, Petitioner must make "a proper preliminary

[4] Similarly, Petitioner fails to offer any authority to support his brief reference to an equal protection and fundamental fairness argument. [Mem. at 2.]

9

showing[.]" *Economou v. Little*, 850 F.Supp. 849, 852-53 (N.D.Cal.1994) (citing *United States v. Eagle*, 539 F.2d 1166, 1170-71 (8th Cir.1976)).

In filing this motion, Petitioner has "essentially requested leave to interview jurors for the purpose of discovering possible grounds" for Petitioner's § 2255 motion. *Economou*, 850 F.Supp. at 853. "[W]ithout a threshold showing . . ., defendant's request is a mere fishing expedition." *Gravely*, 840 F.2d 1156, 1159 (4th Cir. 1988). Accordingly, Petitioner has not established that he is entitled under the Constitution to conduct post-verdict interviews of jurors. *See, e.g.*, *Smith*, 457 F.2d at 1100 (finding no constitutional violation where the court refused to allow post-verdict questioning of jurors "for the purpose of discovering possible, but unspecified, jury misconduct").

2. Petitioner Has Not Provided a Basis to Disturb the Anonymity
Afforded to Jurors

Petitioner argues that the original basis for an anonymous jury was overstated and, in any event, any need for juror anonymity has disappeared due to the passage of time. [Mem. at 8.] Petitioner notes that the government conceded in a co-defendant's case that that there was no evidence the defendants were part of the Russian mafia. [Mem. at 8, n.7.] He contends that "[t]here is no basis to conclude that [the] jurors' security would be threatened by revealing their identities to defense counsel (and, again, not the public)." [Mem. at 8.]

In *United States v. Shryock*, 342 F.3d 948 (9th Cir. 2003), the Ninth Circuit held that "[a] trial court may empanel an anonymous jury 'where (1) there is a strong reason for concluding that it is necessary to enable the jury to perform its factfinding function, or to ensure juror protection; and (2) reasonable safeguards are adopted by the trial court to minimize any risk of infringement upon the fundamental rights of the accused.'" *Id.* at 971 (quoting *United States v. DeLuca*, 137 F.3d 24, 31 (1st Cir. 1998)); *see also* 18 U.S.C. § 3432. It noted that "[c]ourts have recognized the need for jury protection based on some combination of factors, including: (1) the defendants' involvement with organized crime; (2) the defendants' participation in a group with the

10

capacity to harm jurors; (3) the defendants' past attempts to interfere with the judicial process or witnesses; (4) the potential that the defendants will suffer a lengthy incarceration if convicted; and (5) extensive publicity that could enhance the possibility that jurors' names would become public and expose them to intimidation and harassment." *Shryock*, 342 F.3d at 971. Because "[t]hese factors are neither exclusive nor dispositive," a trial court "should make its decision based on the totality of the circumstances." *Id.* (citing *United States v. Brown*, 303 F.3d 582, 602 (5th Cir. 2002).

The task in post-conviction is not to revisit the pre-trial order. As the First Circuit noted, albeit in the context of the press requesting juror names, post-trial requests for juror names raise a "different mix of issues" than pre-trial requests. *In re Globe Newspaper Co.*, 920 F.2d 88, 93 (1st Cir. 1990). It "involves a clash of constitutionally protected interests[,]" including "the press's First Amending right of access to criminal trials[;] . . . the defendant's Sixth Amendment right to a fair trial[;] . . . [and] the jurors['] . . . interest in having their privacy protected." *Id.* at 93. With respect to the latter, in cases where jurors "may reasonably fear retaliation from criminal defendants, juror anonymity promotes impartial decision-making . . .[and] implicates the integrity and reputation of the judicial process[.]" *Id*. at 95, 91 (noting that "[w]ere jurors to feel that their personal safety was at risk, they might not only be reluctant to serve but might tailor verdicts to forestall harm to themselves, thus depriving the parties of an impartial jury").

Jurors were provided anonymity in this matter. Neither party cites to any portion of the transcript where the district court defined for the jury precisely what "anonymous" meant or expressly promised the jurors that their names would never be revealed to counsel. However, by instructing jurors to use their juror numbers, rather than their names, and by admonishing jurors at the conclusion of trial that speaking to counsel could compromise their anonymity, the district court conveyed to jurors that they could elect to remain anonymous. Although the continued anonymity of the jurors may be an obstacle to post-conviction counsel's investigation into potential

11

constitutional deficiencies in Petitioner's convictions and sentences, this situation is necessarily contemplated when empaneling an anonymous jury. Moreover, as discussed above, Petitioner has not established a constitutional right to interview jurors. And, he does not otherwise provide any authority for the Court to pull back the cloak of anonymity. Accordingly, because Petitioner has not provided a basis for the Court to disturb the anonymity afforded to jurors, the Court declines to do so. *See United States v. Ruggiero*, 850 F. Supp. 186, 188 (E.D.N.Y.), *dismissed*, 48 F.3d 1212 (2d Cir. 1994) (denying defendants' post-trial motion for disclosure of the names of anonymous jurors, because, among other reasons, there was no reason to breach the condition of anonymity under which jurors agreed to serve).

## III.    CONCLUSION

For the foregoing reasons, Petitioner's Motion for Limited Release of Juror Names is DENIED.

**IT IS SO ORDERED**

DATED:  April 23, 2025

_____
MARK C. SCARSI
UNITED STATES DISTRICT JUDGE