# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JURIJUS KADAMOVAS,<br><br>Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | Case Nos. 2:23-cv-08289-MCS<br>          2:02-cr-00220-MCS-2<br><br>**ORDER DENYING PETITIONER'S MOTION FOR ORDER DIRECTING THE BUREAU OF PRISONS TO ALLOW PETITIONER TO HAVE A COMPUTER IN HIS CELL (ECF No. 9)** |

## I.      BACKGROUND

On January 17, 2007, Petitioner Jurijus Kadamovas ("Petitioner") was convicted of several federal crimes, including multiple counts of hostage taking resulting in death, conspiracy to take hostages resulting in death, conspiracy to launder monetary instruments, conspiracy to escape from custody, and criminal forfeiture. [Criminal Case No. 02-CR-0220 "Cr. Dkt." No. 1481.]  On February 13, 2007, the jury unanimously recommended that a sentence of death should be imposed.  [Cr. Dkt. No. 1541.]  The district court sentenced Petitioner to death on March 12, 2007, and he timely filed his notice of appeal on March 19, 2007.  [Cr. Dkt. Nos. 1639, 1641, 1606.]

1

Petitioner and his codefendant Iouri Mikhel filed a joint opening brief on appeal, and individual opening briefs, in May and June 2013.  [Ninth Circuit Case No. 07-99009 "Ninth Cir. Dkt." Nos. 255, 268, 270.]  On May 9, 2018, the Ninth Circuit denied the appeal.  *United States v. Mikhel*, 889 F.3d 1003 (9th Cir. 2018).  His petition for certiorari in the United States Supreme Court was denied on October 7, 2019.  *Kadamovas v. United States*, 140 S.Ct. 157 (2019).

After multiple timeliness waivers, based in large part on the effects of the COVID-19 epidemic, Petitioner officially initiated federal habeas corpus proceedings by filing his 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct the Conviction and Sentence ("petition") on October 3, 2023.[1]  [Dkt. No. 1 ("Pet.").]  Pursuant to the parties' November 3, 2023, stipulation, this Court issued an order setting a briefing schedule on November 8, 2023.  [Dkt. Nos. 4, 5.]  Respondent's opposition is currently due on or before October 7, 2025, and Petitioner's reply is due on or before October 7, 2026.

On October 31, 2024, Petitioner filed three motions: a Motion for Discovery [Dkt. No. 7]; a Motion for Limited Release of Juror Names [Dkt. No. 8]; and a Motion for Order Directing the Bureau of Prisons to Allow Petitioner to Have a Computer in His Cell[2] [Dkt. No. 9].  On December 23, 2024, before Respondent filed oppositions to the motions on January 17, 2025 [Dkt. Nos. 14-16], and Petitioner filed replies on January 31, 2025 [Dkt. Nos. 17-19], President Joseph Biden issued executive grants of clemency to Petitioner and Mikhel, commuting their sentences to life without possibility of parole.  [Dkt. No. 22, Exh. 136.]  On January 13, 2025, this Court issued an Order Requiring Status Report, instructing the parties to file a joint status report outlining their positions concerning the effect of the clemency grants on the petitions

---

[1] Under the 1996 Antiterrorism and Effective Death Penalty Act's one-year statute of limitations, Kadamovas' 28 U.S.C. § 2255 Motion to Vacate, Set Aside or Correct Sentence was originally due on October 7, 2020. 28 U.S.C. § 2255(f).  Respondent agreed to six six-month timeliness waivers until October 7, 2023.  [Cr. Dkt. Nos. 2380, 2406, 2414, 2417, 2427, 2445.]

[2] While Petitioner titled his motion "Motion for Access to Legal Materials," this Court has opted to more accurately title the motion to reflect what is being requested.

and proposing a plan for further proceedings.  [Dkt. No. 13.]  On February 3, 2025, the parties filed a Joint Status Report stating their agreement that it is appropriate for Respondent to identify in its oppositions to the petitions claims that it contends are no longer at issue due to the sentence commutations, and petitioners can then respond in their replies.  [Dkt. No. 20.]  This Order addresses Petitioner's Motion for an Order from the Court Directing the Bureau of Prisons to Allow Him to Have a Computer in His Cell.  [Dkt. Nos. 9 ("Mot.") and 9-1 ("Mem.").]

As Petitioner acknowledges, this Court previously denied his June 29, 2022, Motion for Order Directing the Bureau of Prisons ("BOP") to Permit Access to Legal Materials, in which he asked this Court to order the BOP and the officials in charge of the Special Confinement Unit ("SCU") at FCC Terre Haute in Indiana to provide him unique access to legal materials, including his specific request that he be permitted to have a personal computer in his cell, so that he could assist his § 2255 counsel.  [Cr. Dkt. Nos. 2420, 2430.]  In this new motion, Petitioner again "move[s] for an order directing the Bureau of Prisons to allow him to have a computer in his cell with full time access to that computer and the drives containing all materials related to his case, along with all the necessary software to review the materials relevant to his case, including the ability to translate all documents from English to Russian and to create new documents and transfer his work product to his attorneys."  [Mot. at 2.]  Petitioner argues "[t]he situation has changed since the previous motion," not because the situation at the prison has changed,[3] but because the § 2255 Motion has been filed. [Mem. at 2.]  He contends that (1) access to legal materials is integral to his ability to assist counsel; and (2) the current situation is an infringement of his right to access the courts because (a) Petitioner is not a native English speaker and problems with translations have plagued the case from the start; and (b) computer access at Terre

---

[3] In arguing that the BOP "continues to deny Mr. Kadamovas reasonable access to a computer in his cell[,]" Petitioner cites "[t]he factual assertions and the description of the situation at the prison set forth in the previous motion for access[.]"  [Mem. at 1, n.2.]

3

Haute is inadequate because Petitioner has Crohn's disease and needs access to a toilet while he is using the computer.[4]  [Mem. at 8.]  He suggests his request is a "small accommodation," and the BOP's refusal to allow it is "unreasonable."  [Mem. at 8.] This Court finds no reason to revisit or upset its prior rationale and order denying Petitioner's Motion for Order Directing the Bureau of Prisons to Permit Access to Legal Materials.  [*See,* Cr. Dkt. No. 2430.]

**II.    DISCUSSION**

Once again, assuming without finding that this Court has jurisdiction to issue the type of order Petitioner seeks, this Court notes that Petitioner's request fails on the merits.  It is well established that "prisoners have a constitutional right of access to the courts."  *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *see also Murray v. Giarratano*, 492 U.S. 1, 6 (1989) ("Whether the right of access at issue in *Bounds* is primarily one of due process or equal protection, in either case it rests on a constitutional theory[.]"). Such access must be "adequate, effective, and meaningful."  *Bounds,* 430 U.S. at 822. This fundamental right requires prison authorities to enable prisoners in preparing and filing meaningful legal papers, by providing "adequate law libraries[5] *or* adequate assistance from persons trained in the law."  *Id.* at 828 (emphasis added); *Casey v. Lewis*, 4 F.3d 1516, 1520 (9th Cir. 1993).  It is designed to ensure that a prisoner's grievance will reach a court for consideration.  *Bounds,* 430 U.S. at 828 & n. 17 (in discussing the "constitutional right of access to the courts" the Court said its "main

---

[4] According to Complex Warden S. Merendino, though Petitioner spends hours in the law library each day, his claim that he needs a restroom in the same room he uses the computer has never been raised with the SCU team nor any of the correctional officers in the law library.  [Dkt. No. 16-1, Exh. A at 2.]  Moreover, "[i]n the event that he would need the restroom, [Petitioner] would be escorted back to his cell immediately."  [Dkt. No. 16-1, Exh. A at 2.]  As such, his unsupported and conclusory allegation will not be addressed further.

[5] To provide adequate access to the courts, a prison library must meet minimal constitutional standards, and inmates must be allowed a reasonable amount of time to use the library.  *Oltarzewski v. Ruggiero*, 830 F.2d 136, 138 (9th Cir. 1987).  The Constitution does not require a prisoner have unlimited access to the law library, any denial of access claim must focus on the impairment of access *to the courts*.  *Walker v. Mintzes*, 771 F.2d 920, 932 (6th Cir. 1985); *Twyman v. Crisp*, 584 F.2d 352, 357 (10th Cir. 1978).

concern here is 'protecting the *ability* of an inmate to prepare a petition or complaint.'" (Citation omitted) (emphasis added)).  As the Ninth Circuit has determined, the right of access under *Bounds* is clearly not equivalent to the Sixth Amendment right to counsel. *Cornett v. Donovan*, 51 F.3d 894, 899 (9th Cir. 1995) ("The right of access is designed to ensure that a habeas petition or a civil rights complaint of a person in [] custody will reach a court for consideration.").

The fact that Petitioner is represented by counsel in his habeas corpus proceedings satisfies the right of access to the courts as guaranteed by the Constitution and interpreted by the Supreme Court.  Officials need not provide a prisoner with access to legal materials in a case where he is represented by an attorney.  *See United States v. Robinson*, 913 F.2d 712, 717 (9th Cir. 1990) (finding that "[t]he district court ruled correctly that a defendant who is represented by counsel has no constitutional right of access to legal materials."); *Bourdon v. Loughren*, 386 F.3d 88, 93-95 (2d Cir. 2004) (holding that appointment of counsel was a valid means of satisfying prisoner's right of access to the courts, without consideration of whether counsel's representation fell below effective assistance, and the defendant's right of access therefore was not violated when defendant was denied access to the jail library); *Schrier v. Halford*, 60 F.3d 1309, 1313 (8th Cir. 1995) (concluding that provision of legal assistance satisfies the right of meaningful access to the courts and relieves the state from having to provide access to a law library or its equivalent); *Martin v. Tyson*, 845 F.2d 1451, 1456 (7th Cir.1988) (finding no Constitutional violation where jail officials denied a prisoner access to legal materials in his criminal case where he was represented by counsel on his criminal charges); *Morrow v. Harwell*, 768 F.2d 619, 623 (5th Cir.1985) (concluding that *Bounds* created a "right of access [that] includes the ability to file a legally sufficient claim" and finding the Court was "firm in its command that the right [of access] be met with books *or* legal assistance *or* both[.]" (emphasis added)).

Here, Petitioner has been provided *both* adequate access to legal materials *and* legal representation.  As Petitioner notes, his current counsel provided him with

computer hard drives, which he keeps in his cell, that he can access on a prison computer outside of his cell.  [Mem. at 1.]  Moreover, as Respondent represented in prior proceedings, Petitioner has an electronic handheld translation device.  [Cr. Dkt. No. 2425 at 5, 9, 13.]  Like the other prisoners housed in the SCU, Petitioner may sign up to use the law library's discovery computer for an hour at a time, seven days a week, but if he has a need to use the library for additional time, he may make a request for longer access.  [Cr. Dkt. No. 2425 at 5, 14-15.]  While Petitioner conclusively alleges that he "has continued to have difficulty meaningfully accessing his legal materials" [Mem. at 2], and "is being denied his right to participate in the proceedings" [Dkt. No. 19 at 4], he has not demonstrated that the denial of his request to have a computer in his cell is preventing him from pursuing a legal claim.  *See Lewis v. Casey*, 518 U.S. 343, 351 (1996) (holding that an inmate must demonstrate that the alleged shortcomings in legal materials hindered his efforts to pursue a legal claim).

While Petitioner asserts that "[n]o legitimate security concern prevents [the] accommodation" he seeks [Mem. at 8], Warden Merendino explains that "Terre Haute FCC Wardens have always denied this request on the basis of institutional security and sound correctional practices." [Dkt. No. 16-1, Exh. A.]  Citing Bureau of Prisons Program Statement 1237.16, *Information Security*, sections 14.2 and 14.4, Warden Merendino states that to permit Petitioner to have a computer in his cell "would create an untenable burden on our staff and resources to provide around the clock monitoring of one cell[.]" [Dkt. No. 16-1, Exh. A.]  None of the prisoners at FCC Terre Haute are permitted such equipment for security reasons, and to permit Petitioner to be excepted from the prison's policy would undermine "the orderly management of the institution." [Cr. Dkt. No. 2425 at 6, 13.]  According to Todd R. Royer, the Camp Administrator and Acting Unit Manager for the SCU, the rationale for the prison's policy is as follows:

> Special treatment toward one inmate or permitting a prisoner to have access to a computer device that the prison cannot frequently monitor

6

creates a risk to the safe, secure, and orderly management of FCC Terre Haute, as an inmate given unfettered access to such a device could load unauthorized software and hardware on such a computer; could alter the computer to use it as an unauthorized communication device; could possibly use the computer to tamper with the computer systems in place at the facility; and could remove, substitute, or tamper with the computer's parts for any number of nefarious purposes, including creating weapons.

[Cr. Dkt. No. 2425 at 13.]  As Warden Merendo notes,

[s]ince Kadamovas has been housed at Terre Haute FCC, he has had the same[6] capabilities to meaningfully engage counsel that all other SCU inmates have had.  [¶]  This includes sending and receiving special mail to his attorneys, participating in legal calls and visits as needed, and utilizing the law library computer for research and review of his legal documents. The discovery computer contained in the SCU law library is equipped with the software necessary to view documents and pictures.  That computer can read a wide variety of file types including Word, PDF formats, and Windows Media Player.

[Dkt. No. 16-1, Exh. A.]

As this Court previously found, Courts have limited authority to direct the daily management of detention facilities.  *Bell v. Wolfish*, 441 U.S. 520, 547 (1979) ("Prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.").  Judicial deference

---

[6] In his declaration filed in support of the government's opposition to Petitioner's prior motion, Todd R. Royer reported that Petitioner has actually received *more* accommodations than other inmates.

In the past, inmate Kadamovas received more accommodations to assist him in his legal efforts than any of the other inmates at FCC Terre Haute including all of the other death row inmates at FCC Terre Haute and other inmates for whom English is not their first language, accommodations that he did not avail himself of.

[Cr. Dkt. No. 2425 at 16.]

is generally accorded to prison administrators because the administrator will typically have a better grasp of his or her domain than the court, and also because the operation of our correctional facilities is peculiarly the province of the Legislative and Executive Branches of our government, not the Judicial. *Id.* at 548.  This Court will not disturb the limits placed on accessing legal materials by the BOP and officials at the SCU at Terre Haute.

While incarcerated *pro se* defendants have a Sixth Amendment right to reasonable access to legal materials to prepare a defense, the Court is aware of no authority providing that this right extends to the physical possession of computers by prisoners who are represented by counsel.  Moreover, a prisoner's right to legal materials "must be balanced against the legitimate security needs or resource constraints of the prison." *United States v. Sarno*, 73 F.3d 1470, 1491 (9th Cir. 1995). In *United States v. Youker*, the Ninth Circuit cited *Sarno* in holding that the district court did not abuse its discretion in denying a *pro se* defendant's "numerous requests for 'complete access' to discovery.'" 718 Fed.Appx. 492, 495 (9th Cir. 2017).  The Court of Appeals noted that "given safety concerns" with the defendant's requests, the district court was rightfully reluctant to " 'micromanage jail officials,' whose prevailing policy did not permit detainees to keep discovery in their cells." *Id.*

Here, the denial of Petitioner's request for access to a computer in his cell under prison's security policies neither violates his constitutional right to access the courts nor denies him his right to participate in § 2255 proceedings.

///

///

8

### III.   CONCLUSION

For the foregoing reasons, Petitioner's Motion for Order Directing the Bureau of Prisons to Allow Petitioner to Have a Computer in His Cell is DENIED.

**IT IS SO ORDERED**

DATED:   April 23, 2025

_____

MARK C. SCARSI
UNITED STATES DISTRICT JUDGE

cc:  BOP