# GOVERNMENT

# EXHIBIT 39

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO:  CR-02-220(B)-DT |
| | ) | |
| Plaintiff, | ) | CRIMINAL |
| | ) | |
| vs. | ) | Los Angeles, California |
| | ) | |
| IOURI MIKHEL, | ) | Tuesday, August 15, 2006 |
| JURIJUS KADAMOVAS, | ) | (8:53 a.m. to 12:35 p.m.) |
| | ) | (1:42 p.m. to  4:13 p.m.) |
| Defendants. | ) | |

JURY TRIAL (2nd DAY)
VOLUME II

BEFORE THE HONORABLE DICKRAN TEVRIZIAN,
UNITED STATES DISTRICT JUDGE

EXCEPTIONAL REPORTING SERVICES, INC
14493 SOUTH PADRE ISLAND DRIVE
SUITE A-400
CORPUS CHRISTI, TX 78418-5940
361 949-2988

You put a note on the explanation sheet of the questionnaire regarding being paid for long jury service.

Is that a problem for you?

**PROSPECTIVE JUROR NUMBER 3:**  It's not a problem to me, but I'm not sure if my company would allow me to be out that long.  But then again, I would have to take that up with them.

**THE COURT:**  Let me advise you of this factor:  There is a law that prevents any employer from threatening you, disciplining you, harassing you, terminating you, once you're picked for a jury.  So there's nothing that they can do.

**PROSPECTIVE JUROR NUMBER 3:**  Okay.

**MR. LASTING:**  I think the question that I was going to try to get to: Would your pay situation in any way impact your attitude or the way you'd go about doing your job as a juror?

**PROSPECTIVE JUROR NUMBER 3:**  No.

**MR. LASTING:**  Even if it turns out you didn't get paid, you'd still be the same conscientious, thoughtful juror?

**PROSPECTIVE JUROR NUMBER 3:**  Absolutely.

**MR. LASTING:**  Okay.  Since filling out the questionnaire, have you had any additional thoughts -

**THE COURT:**  I have to interrupt.

You get paid when you serve on a jury.  I believe it's $40 per day.  And if you qualify, you get subsistence.

85

I believe.  There's a lot of people who do horrible things and they're in jail, and they should be executed, like I said.

You know, the jails are filled up.

MR. LASTING:  So is your view that somebody who kills a number of people, let's say, kills three people, four people, five people, that if the evidence establishes that that's true, that they're guilty beyond a reasonable doubt, that in those situations, are you always going to vote for death, or is there going to be -

PROSPECTIVE JUROR NUMBER 6:  No, not always.

MR. LASTING:  - some situation where you might not?

Pardon?

PROSPECTIVE JUROR NUMBER 6:  I said I'm not always going to vote for death.  It depends on what you prove.  You show me in the courtroom what the person did.

MR. LASTING:  Are you talking about the crime?

PROSPECTIVE JUROR NUMBER 6:  The crime, yes.

MR. LASTING:  And that's what I'm asking you.  If the evidence in the courtroom shows you that an individual did commit multiple murders, under that circumstance, what's your feeling about punishment?

PROSPECTIVE JUROR NUMBER 6:  Death.

MR. LASTING:  And why is that?

THE COURT:  Would you have the same answer without having the benefit of hearing the aggravating factors versus

86

the mitigating factors?

PROSPECTIVE JUROR NUMBER 6:  No.

MR. LASTING:  What are you thinking of, ma'am, when you answer the Judge's question like that?

PROSPECTIVE JUROR NUMBER 6:  Well, I'd have to hear what you have to, you know, the mitigating and the aggravating, and see what I think.  Right now I don't know all their crimes or anything.

MR. LASTING:  If you could look down at question 38. In that question, the question talks about - Let me ask you this: If you'd take a moment and read that question to yourself, and then, would you change any part of your answer there?

PROSPECTIVE JUROR NUMBER 6:  No.

MR. LASTING:  And why would you not change any part of your answer?

PROSPECTIVE JUROR NUMBER 6:  Because that's what I believe in.

MR. LASTING:  And so, what you believe in is that anyone who has committed multiple murders should automatically, without consideration of any other circumstances, be sentenced to death?

PROSPECTIVE JUROR NUMBER 6:  No.  They should be - When they hear other circumstances, I could change my mind.

MR. LASTING:  And -

**PROSPECTIVE JUROR NUMBER 6:**  But the way the question is, that's how I answered it.  That's what I believe in.

**MR. LASTING:**  And you checked 'yes', and then you wrote your feelings of, 'Like I said above, taking a life to me is bad.  Why should the taxpayers pay to keep them in jail?'

And that's a view -

**PROSPECTIVE JUROR NUMBER 6:**  That's right.

**MR. LASTING:**  - that you've expressed several times here -

**PROSPECTIVE JUROR NUMBER 6:**  Yes.

**MR. LASTING:**  - this morning.

What type of circumstances, if any, do you feel would justify or support a decision by you for a sentence of life in prison for somebody that committed multiple murders?

**MS. DeWITT:**  Objection.  Calls for pre-commitment and also speculation on the part of the juror.

**THE COURT:**  Sustained.  She has not been instructed by the Court as to the applicable standards to use in considering mitigating versus aggravating factors.

**MR. LASTING:**  Are there any factors that could cause you to vote a sentence of life in prison as opposed to death to somebody that had committed multiple murders?

**PROSPECTIVE JUROR NUMBER 6:**  Yes.

**MR. LASTING:**  And is that true even if the evidence proved the person to be guilty beyond a reasonable doubt?

**PROSPECTIVE JUROR NUMBER 6:**  I think I can be fair.

**MR. LASTING:**  Does that mean that under some circumstances that you would not vote for death of somebody who had been proved guilty beyond a reasonable doubt of multiple murders?

**PROSPECTIVE JUROR NUMBER 6:**  Well, I'd have to hear the whole case and see how I felt and how - No.  Right now, I do feel for the death penalty.

**MR. LASTING:**  I don't want to put words in your mouth, but my sense is that you feel pretty strongly about it, because of the way you formulated your answers on the questionnaire and what you've said here in court.

Is that a fair assessment?

**PROSPECTIVE JUROR NUMBER 6:**  Yes, it is.

**THE COURT:**  Let's take that to the next level.

Because of your attitude, the strong attitude that you have toward the death penalty, would you automatically vote for imposition of the death penalty regardless of penalty phase evidence?

**PROSPECTIVE JUROR NUMBER 6:**  No.

**THE COURT:**  Would you follow the instructions of the Court and apply those instructions to the evidence that you hear during the penalty phase to arrive at your decision?

**PROSPECTIVE JUROR NUMBER 6:**  Yes.

**MR. LASTING:**  So, ma'am, if you look back at question

122

mitigating factors outweigh the aggravating factors, then you don't have to, and should not, impose the death penalty.

So, having that in mind, let me re-ask the question.

**PROSPECTIVE JUROR NUMBER 8:**  Thank you.

**THE COURT:**  Because of your attitude toward the death penalty, would you automatically vote for imposition of the death penalty regardless of penalty phase evidence?

**PROSPECTIVE JUROR NUMBER 8:**  No.

**THE COURT:**  Ms. DeWitt?

**MS. DeWITT:**  Your Honor, I have an inquiry with respect to question number 21.

**THE COURT:**  All right.

**MS. DeWITT:**  If you would -

**THE COURT:**  Let me look at question number 21.

**MS. DeWITT:**  And I don't know whether your Honor would like me to take that up at this time or after.  Other than that, your Honor, the Government has -

**THE COURT:**  Let me just -

**MS. DeWITT:**  - no questions of this witness (sic).  Excuse me, this juror.

**THE COURT:**  All right.  You can ask that question.

**MS. DeWITT:**  Would you like me to do it now or after questions regarding the -

**THE COURT:**  Let me ask the question.

With regard to that answer that was given on the

EXCEPTIONAL REPORTING SERVICES, INC

123

questionnaire to question number 21.  Was there any criminal prosecution that took place as a result of that incident?

**PROSPECTIVE JUROR NUMBER 8:**  Yes.  It was assault, and I put down here 'spousal abuse', because it was violence to my wife.

**THE COURT:**  And were you the victim or were you the perpetrator?

**PROSPECTIVE JUROR NUMBER 8:**  No.  I slapped her.

**THE COURT:**  As a result of that incident, did you go into the court system, the judicial system?

**PROSPECTIVE JUROR NUMBER 8:**  Yes.

**THE COURT:**  As a result of that incident, do you have any feelings that you would use either for or against the prosecution, or for or against the defense in this case?

**PROSPECTIVE JUROR NUMBER 8:**  No.  I pled guilty to, I think, misdemeanor assault, and I deserved it.  I got what I deserved.

**THE COURT:**  Anything about that incident that you think would prevent you from being a fair and impartial trial juror should your (sic) selected in this case?

**PROSPECTIVE JUROR NUMBER 8:**  No.

**THE COURT:**  If you're selected as a trial juror, would you follow the law that the Court gives you, and apply the law to the facts of this case in order to reach a verdict?

**PROSPECTIVE JUROR NUMBER 8:**  Absolutely.

124

THE COURT:  All right.  Ms. DeWitt, you may question any -

MS. DeWITT:  No, your Honor.  Thank you very much.

I have no questions for you, sir.  Thank you.

THE COURT:  Mr. Rubin?

MR. RUBIN:  No questions.

THE COURT:  Mr. Lasting?

MR. LASTING:  Yes, your Honor.  Thank you.

Good morning, sir.

PROSPECTIVE JUROR NUMBER 8:  Good morning.

MR. LASTING:  Can you tell us what your beliefs are with regard to the death penalty?

PROSPECTIVE JUROR NUMBER 8:  I believe in the death penalty.

MR. LASTING:  And you believe in it under what circumstances, or could you expand upon that at all?

PROSPECTIVE JUROR NUMBER 8:  I think that in the state of California, it's part of the judicial system as far as, what would they call that, your Honor?  The death penalty as far as -

THE COURT:  It's one method of -

PROSPECTIVE JUROR NUMBER 8:  Punishment?

THE COURT:  - punishment.

PROSPECTIVE JUROR NUMBER 8:  Yeah.

MR. LASTING:  And what about life without release?

125

How do you feel about that?

PROSPECTIVE JUROR NUMBER 8:  I believe that that's a form of punishment also.

MR. LASTING:  Okay.  And as you start out, for someone that was convicted of murder or several murders, do you favor one of those penalties over the other?

PROSPECTIVE JUROR NUMBER 8:  Again -

MS. DeWITT:  Objection.  Calls for a predisposition, your Honor.

THE COURT:  No.  I'm going to overrule the objection.

PROSPECTIVE JUROR NUMBER 8:  Yeah, I think you'd have to take each crime separately.

MR. LASTING:  I'm sorry?

PROSPECTIVE JUROR NUMBER 8:  I don't know.  That's - My answer is, 'I don't know.'

MR. LASTING:  Okay.  You don't know which - You don't have a strong feeling, or do you, for one of those potential punishments over the other?

PROSPECTIVE JUROR NUMBER 8:  I would have to make that call after I had all the evidence in front of me, and how the Judge would tell me to apply it.

MR. LASTING:  Is there anything that's come to mind since you filled out the questionnaire that you'd like to tell us with regard to your feelings or attitudes about capital punishment?

126

**PROSPECTIVE JUROR NUMBER 8:**  No, that might change my - My feelings about capital punishment is that I do believe in capital punishment.  I've never had any other view.

**MR. LASTING:**  Do you believe that there are any circumstances where, regardless of whatever else you may hear, if someone were convicted of murder, they should always receive the death penalty?

**MS. DeWITT:**  Objection.  Again, calling for pre-commitment, your Honor.

**THE COURT:**  No.

**PROSPECTIVE JUROR NUMBER 8:**  What was that, your Honor?

**THE COURT:**  He's asking you, I think, the question: Because of your attitude toward the death penalty, would you automatically vote for imposition of the death penalty regardless of any penalty phase evidence?

**PROSPECTIVE JUROR NUMBER 8:**  Absolutely not.

**MR. LASTING:**  All right.  Thank you very much, sir.

**PROSPECTIVE JUROR NUMBER 8:**  Thank you.

**THE COURT:**  All right.  I'm going to excuse you.  If you'll give me this back.  Please don't discuss what we've talked about here in the courtroom with the other jurors.

**PROSPECTIVE JUROR NUMBER 8:**  Thank you.

**(Prospective juror exits courtroom)**

**THE COURT:**  Ms. DeWitt?

127

**MS. DeWITT:** Not for cause, your Honor.

**THE COURT:** Mr. Rubin?

**MR. RUBIN:** Nothing, your Honor.

**THE COURT:** Mr. Lasting?

**MR. LASTING:** Pass for cause, your Honor.

**THE COURT:** All right. We'll bring out juror number - Is it -

**THE CLERK:** 10.

**THE COURT:** 10.

**MR. DUGDALE:** Your Honor, Ms. Meyer will ask the questions of the next four jurors.

**THE COURT:** Okay.

**(The Clerk calls prospective juror number 10)**

**THE COURT:** All right. Have a seat. Please state your juror number for the record.

**PROSPECTIVE JUROR NUMBER 10:** Number 10.

**THE COURT:** I'm going to give you a juror questionnaire that's numbered '10', and ask you - and place it before you, and ask you if that is the questionnaire that you filled out?

**PROSPECTIVE JUROR NUMBER 10:** Yes, it is.

**THE COURT:** I have a series of questions I'm going to ask you.

**PROSPECTIVE JUROR NUMBER 10:** Okay.

**THE COURT:** The first question is as follows: Based