# GOVERNMENT EXHIBIT 42

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO:  CR-02-220(B)-DT |
| | ) | |
| Plaintiff, | ) | CRIMINAL |
| | ) | |
| vs. | ) | Los Angeles, California |
| | ) | |
| IOURI MIKHEL, | ) | Tuesday, August 22, 2006 |
| JURIJUS KADAMOVAS, | ) | (8:58 a.m. to 10:51 a.m.) |
| | ) | (1:39 p.m. to  4:17 p.m.) |
| Defendants. | ) | |

JURY TRIAL (6TH DAY)
VOLUME VI

BEFORE THE HONORABLE DICKRAN TEVRIZIAN,
UNITED STATES DISTRICT JUDGE

EXCEPTIONAL REPORTING SERVICES, INC
14493 SOUTH PADRE ISLAND DRIVE
SUITE A-400
CORPUS CHRISTI, TX 78418-5940
361 949-2988

23

PROSPECTIVE JUROR NUMBER 104:  Right.

MR. RUBIN:  And that's despite the fact that you think that you can't bring the victims back to life and this person deserves the death penalty in your mind?

PROSPECTIVE JUROR NUMBER 104:  Right.

MR. RUBIN:  Is that correct?

PROSPECTIVE JUROR NUMBER 104:  Yes.

MR. RUBIN:  Thank you, ma'am.

MS. CHAHIN:  Thank you, your Honor.

THE COURT:  Ms. Chahin?

MS. CHAHIN:  Good morning.

You've told us that you have strong feelings about the death penalty.  Is that true?

PROSPECTIVE JUROR NUMBER 104:  Right.

MS. CHAHIN:  Are there any cases where you think the death penalty should always be imposed?

PROSPECTIVE JUROR NUMBER 104:  Be imposed?  Is that what I heard?

MS. CHAHIN:  Yes.

MR. DUGDALE:  Objection.  Calls for a pre-commitment, your Honor.

THE COURT:  No.

Did you understand her question?

PROSPECTIVE JUROR NUMBER 104:  I really couldn't hear.  I'm sorry.

EXCEPTIONAL REPORTING SERVICES, INC

24

THE COURT:  Okay.

MS. CHAHIN:  Are there any cases or any types of crimes where you think the death penalty should always be imposed?

PROSPECTIVE JUROR NUMBER 104:  No.

MS. CHAHIN:  You've told us that you would be willing to listen to the evidence.

Well, let me talk to you about your feelings on the death penalty.  You've expressed here the way you feel about the death penalty.  Have you always felt that way about the death penalty?

PROSPECTIVE JUROR NUMBER 104:  Yes.

MS. CHAHIN:  And because of the strong feelings that you have for the death penalty, even after going through the process that the Judge explained - If you don't understand me, just let me know and I'll re-ask the question in a different way.  Okay?  We're just trying to find out what your feelings are.

After you go through the process that the Judge explained, because of the strong feelings that you have about the death penalty, would it be difficult for you to return a sentence of life without release for someone who had been convicted of a murder?

PROSPECTIVE JUROR NUMBER 104:  I'm sorry, could you just rephrase that where I could -

25

**MS. CHAHIN:** Sure.  Sure.

The Judge has explained to you that the trial here proceeds in two phases.  In the first phase, the jury is going to decide whether one or more defendants is guilty of murder.

Do you understand that?

**PROSPECTIVE JUROR NUMBER 104:**  Yes.

**MS. CHAHIN:**  After that takes place, if in fact any of the defendants are convicted of murder, then we're going to have what they call a 'penalty phase'.  And that's what the Judge explained to you, where you'll asked to consider and weigh certain mitigating factors and aggravating factors, and you'll also have to make some findings of whether special circumstances exist.

**PROSPECTIVE JUROR NUMBER 104:**  Right.

**MS. CHAHIN:**  Because of your strong feelings on the death penalty, assuming that we got to that second phase, okay, because of the way you feel about it, even after hearing the aggravators and the mitigators, would it be difficult for you to return a verdict of life without release for someone who had been convicted of murder?

**PROSPECTIVE JUROR NUMBER 104:**  Yes.

**MS. CHAHIN:**  And if someone had been convicted of more than one murder, would that also be difficult for you to return a sentence of life without release for that person?

**PROSPECTIVE JUROR NUMBER 104:**  No.  No.

26

**MS. CHAHIN:** I'm sorry. Let me ask you the question again. When I asked you if it would be hard for you, after going through the process that the Judge explained, to return a sentence of life without release for someone who had already been convicted of murder, you said, 'yes', is that right?

**PROSPECTIVE JUROR NUMBER 104:** Right.

**MS. CHAHIN:** Okay. What if it was more than one murder? Would it also be difficult in that situation or even more difficult?

**PROSPECTIVE JUROR NUMBER 104:** Actually, yes. I'm sorry. Yes.

**MS. CHAHIN:** I have nothing further, your Honor.

**THE COURT:** Would it be - Could you follow the procedure with these feelings, these strong feelings that you have regarding the imposition of the death penalty, could you follow the law as I give it to you?

**PROSPECTIVE JUROR NUMBER 104:** Yes.

**THE COURT:** Could you put aside your personal feelings and judge the penalty phase of this trial using the evidence - hearing the evidence that you hear in this courtroom and the law as I give it to you?

**PROSPECTIVE JUROR NUMBER 104:** Yes.

**THE COURT:** Would you put your feelings aside and decide this case without any emotion and listen to the evidence as I give it to you?

**PROSPECTIVE JUROR NUMBER 104:**  Yes.

**MS. CHAHIN:**  May I proceed, your Honor?

**THE COURT:**  Go ahead.

**MS. CHAHIN:**  I want to give you - If we were to get to a penalty phase in this case, because of the way that you feel about the death penalty, could you see yourself returning a verdict of life without release, even after considering the circumstances that the Judge explained to you?

**PROSPECTIVE JUROR NUMBER 104:**  Yes.

**MS. CHAHIN:**  I have nothing further, your Honor.

**THE COURT:**  All right.  I'll let you go back into the jury room.  Let me have your questionnaire back.  Thank you. Do not discuss the questions we asked or the answers you gave.

**PROSPECTIVE JUROR NUMBER 104:**  Okay.

**(Pause)**

**THE COURT:**  Mr. Dugdale?

**MR. DUGDALE:**  Pass for cause, your Honor.

**THE COURT:**  Mr. Rubin?

**MR. RUBIN:**  Thank you, your Honor.

Once again, your Honor, what we have is an individual with very strong beliefs regarding the death penalty and when it should be used.  We also have a 22-year-old young woman with a high school education who, as I have said before and have objected before, I object to the leading nature of the Government's questioning, which in essence is designed to

44

THE COURT:  Would you also, similarly, consider the option of life imprisonment without possibility of release?

PROSPECTIVE JUROR NUMBER 106:  Well, I'd have to consider that, because that's one of the options.

MR. RUBIN:  The whole idea of the question is that, at the second trial where you determine punishment -

PROSPECTIVE JUROR NUMBER 106:  Uh-huh.

MR. RUBIN:  - do I have a burden of taking you, as a juror who thinks, 'Well, I'm willing to listen, but I think the proper punishment is death', is that the situation I'm in, and I have to convince you?

PROSPECTIVE JUROR NUMBER 106:  Yeah, I guess so.

MR. RUBIN:  And again, we're still worried about, or you're still going to have concerns about the taxpayers paying for someone to stay in custody for the rest of their life, right?

PROSPECTIVE JUROR NUMBER 106:  Right.

MR. RUBIN:  And in - That's it.  Thank you, your Honor.

MS. CHAHIN:  Good morning, sir.

THE COURT:  Mr. Rubin asked you about do you think that he has the burden.  If I instruct you as to who has the burden, would you follow my instructions and not have any preconceived ideas as to whose burden it is?

PROSPECTIVE JUROR NUMBER 106:  Of course.

45

**MS. CHAHIN:** Sir, you've described in your questionnaire and in the answer to the other attorney that one of your concerns is about the burden on the taxpayers.

**PROSPECTIVE JUROR NUMBER 106:** Correct.

**MS. CHAHIN:** Is that something that you would factor into your determination of what sentence should be imposed?

**PROSPECTIVE JUROR NUMBER 106:** I would have to say 'yes', I would believe. I mean, I would have to take in my own feelings and all the evidence. I'm being honest. I don't know what else. I mean, I can't say 'no', if I'm, you know.

**MS. CHAHIN:** That's all we're asking for –

**PROSPECTIVE JUROR NUMBER 106:** Oh, yeah, I understand.

**MS. CHAHIN:** – is your views. Is your views.

**PROSPECTIVE JUROR NUMBER 16:** Right. I've never been in this position before, so, you know, I'm thinking of all these different things and, you know.

**THE COURT:** But let me ask you this question. You just answered that you would take in your personal beliefs. If I told you not to take in your personal beliefs but follow the law –

**PROSPECTIVE JUROR NUMBER 106:** Well, yeah, of course.

**THE COURT:** – and I would give you a standard, can you put out of your deliberation your personal beliefs and decide this solely on what instructions I give you, based upon

46

the evidence that you hear in this courtroom?

**PROSPECTIVE JUROR NUMBER 106:**  To the best of my ability.

**MS. CHAHIN:**  Sir, when you're interpreting the Court's instructions, will part of your beliefs form a part of the decision and the way that you weigh and consider the way that the Judge tells you to interpret the law?

**PROSPECTIVE JUROR NUMBER 106:**  Well, no.  To the best of my ability, I would put all my beliefs aside and just go with the instructions before me.

**MS. CHAHIN:**  The Court's explained to you that, and it's kind of unusual because here we're talking about a possible penalty before we've even had a trial.

**PROSPECTIVE JUROR NUMBER 106:**  Right.

**MS. CHAHIN:**  But the lawyers are not allowed to ask you questions at a later time, which is why we're trying to talk about this now.

**PROSPECTIVE JUROR NUMBER 106:**  Uh-huh.

**MS. CHAHIN:**  The trial proceeds in two stages.

Do you understand that?

**PROSPECTIVE JUROR NUMBER 106:**  Yes.

**MS. CHAHIN:**  And that we may not even get to the second stage, depending upon what happens at the first stage.

**PROSPECTIVE JUROR NUMBER 106:**  Right.

**MS. CHAHIN:**  Okay.  So at the first stage, the jury

47

would be asked to determine whether the defendants were guilty of the charges.

Do you understand that?

PROSPECTIVE JUROR NUMBER 106:  Yes.

MS. CHAHIN:  Okay.  And at the second phase of the trial, the jury would consider, if we got to that point, the issue of punishment.

PROSPECTIVE JUROR NUMBER 106:  Correct.

MS. CHAHIN:  Okay.  Now, you've indicated that you have strong views on the death penalty, is that right?

PROSPECTIVE JUROR NUMBER 106:  Fairly strong, yes.

MS. CHAHIN:  Have you always felt that way about the death penalty?

PROSPECTIVE JUROR NUMBER 106:  You know, I didn't really think about it that much, you know, just when I hear things in the news about the death penalty, it just conjures up different feelings.

MS. CHAHIN:  After hearing the Judge explain to you the way that the second phase would work and that you weigh and consider aggravators and mitigators.

PROSPECTIVE JUROR NUMBER 106:  Uh-huh.

MS. CHAHIN:  Because of the way that you feel about the death penalty, if someone were convicted of an intentional, deliberate, and premeditated murder, do you believe it would be difficult for you to return a sentence of life without release?

48

**PROSPECTIVE JUROR NUMBER 106:** I don't think it would be difficult. You know, it's hard to say, of course, we're not hearing any of the evidence, and, you know, whether it's guilty or innocent, so I don't know if it'd be difficult. It would take some concentration, I guess is the word. I don't know.

**MS. CHAHIN:** Thank you, your Honor.

**THE COURT:** All right. I'm going to let you go back into the -

**PROSPECTIVE JUROR NUMBER 106:** Okay.

**THE COURT:** - room. Give me your jury questionnaire back again. Do not discuss any questions we asked or any answers you gave.

**PROSPECTIVE JUROR NUMBER 106:** Okay.

**(Pause)**

**THE COURT:** Mr. Dugdale?

**MR. DUGDALE:** The Government passes for cause, your Honor.

**THE COURT:** Mr. Rubin?

**MR. RUBIN:** Once again, we have an individual who said that the death penalty should be reserved for the worst of the worst, which he says that first-degree murder or multiple murders is, and that the taxpayers shouldn't pay for someone to live in prison the rest of their life.

I did object several times to leading, because the juror, nowhere in his questionnaire, put anything about the

85

consultant for the Department of Defense, focusing specifically on SATCOM systems, so, satellite communication for military, presidents, so on and so forth.

MR. RUBIN:  And -

PROSPECTIVE JUROR NUMBER 113:  So I basically do program management for one of the terminal engineering groups that we have.

MR. RUBIN:  I see.  Is that similar to what you did when you were in the Air Force?

PROSPECTIVE JUROR NUMBER 113:  Very, very similar. I'm now back consulting to the same people that - basically the people that had my job.

MR. RUBIN:  Okay.  All right.  Thanks a lot.

PROSPECTIVE JUROR NUMBER 113:  Okay.

THE COURT:  Ms. Chahin?

MS. CHAHIN:  Thank you, your Honor.

Good morning, sir.

PROSPECTIVE JUROR NUMBER 113:  Good morning.

MS. CHAHIN:  Sir, in your questionnaire you indicate that you have traveled to Russia and Latvia and Lithuania?

PROSPECTIVE JUROR NUMBER 113:  Correct.

MS. CHAHIN:  Can you tell us how long you were there?

PROSPECTIVE JUROR NUMBER 113:  I was there for three weeks.  That was back in summer of '89.  It was between my junior and senior years in high school as a student ambassador.

MS. CHAHIN:  And what did you do as a student ambassador?

PROSPECTIVE JUROR NUMBER 113:  Basically we traveled around to some of the different cities, met a lot of the people, participated in some of their cultural events.  It was basically a good-will tour of high school students from the United States to those over in the Soviet Union, or now, the former Soviet Union.

MS. CHAHIN:  Is there anything about that experience that you had that you think would affect your ability to judge this case fairly to both sides?

PROSPECTIVE JUROR NUMBER 113:  I don't think so.  All the experiences were good.  There was nothing that stood out as saying it was terrible.  It was a place I would actually like to go back and visit again some day.

MS. CHAHIN:  Sir, you also indicated that, I believe that you do some consulting for the Department of Defense, is that correct?

PROSPECTIVE JUROR NUMBER 113:  Correct.

MS. CHAHIN:  In that capacity, do you have the opportunity to have any interaction, let's say, with any, like federal law enforcement people?

PROSPECTIVE JUROR NUMBER 113:  Not through my employment, no.

MS. CHAHIN:  Okay.  Through any other circumstances?

87

PROSPECTIVE JUROR NUMBER 113:  I have relatives that are members of sheriff's departments, but nothing that's federal.

MS. CHAHIN:  Okay.  Anything about the nature of those relationships that would impact your ability to be fair to both sides?

PROSPECTIVE JUROR NUMBER 113:  Don't believe so.

MS. CHAHIN:  Okay.  Sir, if we were to reach a penalty phase in this case, and, again, we're asking you questions without knowing that we'll ever get to that point. At the commencement of that phase, do you believe that you would be equally open to imposing either a sentence of life without release or a sentence of death in this case?

PROSPECTIVE JUROR NUMBER 113:  Yes, I do.

MS. CHAHIN:  Thank you, your Honor.  Thank you.

THE COURT:  Thank you.  You can return to the jury deliberation room.  Do not discuss any questions we asked -

PROSPECTIVE JUROR NUMBER 113:  Okay.

THE COURT:  - or answers that you gave.

(Pause)

THE COURT:  All right.  With regard to 113, Ms. Meyer?

MS. MEYER:  Pass for cause, your Honor.

THE COURT:  Mr. Rubin?

MR. RUBIN:  No cause.

124

penalty, would you automatically vote 'not guilty' to avoid facing the question of imposing a penalty?

PROSPECTIVE JUROR NUMBER 120:  No, I wouldn't.

THE COURT:  Because of your attitude toward the death penalty, would you automatically vote to find any special circumstances or threshold factors not true?

PROSPECTIVE JUROR NUMBER 120:  I guess that's accordance with the evidence that's produced and your instructions.

THE COURT:  Are you predisposed to vote one way or the other?

PROSPECTIVE JUROR NUMBER 120:  No.

THE COURT:  Because of your attitude toward the death penalty, would you automatically vote to impose a penalty of life without possibility of release regardless of any penalty phase evidence introduced?

PROSPECTIVE JUROR NUMBER 120:  No.

THE COURT:  Because of your attitude toward the death penalty, would you automatically vote for imposition of the death penalty regardless of any penalty phase evidence introduced?

PROSPECTIVE JUROR NUMBER 120:  No.

THE COURT:  Ms. DeWitt?

MS. DeWITT:  Thank you, your Honor.

Good afternoon, sir.

EXCEPTIONAL REPORTING SERVICES, INC

135

have to just –

THE COURT: No, wait, wait. You don't have to answer the question.

MR. CALLAHAN: Nothing further, your Honor. Thank you.

MS. CHAHIN: Just briefly, your Honor.

Good afternoon, sir.

Sir, you understand, as the Judge has explained to you, that there could potentially be two phases to the trial?

PROSPECTIVE JUROR NUMBER 120: Yes.

MS. CHAHIN: In the first phase, the jury would decide whether one or more of the defendants are guilty of the charges against them.

PROSPECTIVE JUROR NUMBER 120: Yes.

MS. CHAHIN: Okay. And so you also understand that it's possible that we may never get to the second phase of the trial?

PROSPECTIVE JUROR NUMBER 120: Yes.

MS. CHAHIN: If no one was found guilty. So it's kind of unusual for us to be asking you questions about penalty before we've even had a trial in this case.

PROSPECTIVE JUROR NUMBER 120: Yeah.

MS. CHAHIN: Having had those questions asked of you, could you still be fair and impartial to both sides if we were to get to a penalty phase in this case?

136

PROSPECTIVE JUROR NUMBER 120:  Yes.

MS. CHAHIN:  Okay.  Nothing further, your Honor.  Thank you.

THE COURT:  Thank you.

All right.  Do not discuss any questions that were asked of you or the answers that you gave.  You're to retire back to the jury room now.

PROSPECTIVE JUROR NUMBER 120:  Thank you.

THE COURT:  With regard to juror number 120?

MS. DeWITT:  Pass for cause, your Honor.

THE COURT:  Mr. Callahan?

MR. CALLAHAN:  Pass for cause.

THE COURT:  Ms. Chahin?

MS. CHAHIN:  Pass, your Honor.

THE COURT:  All right.  120 will be invited back.

121 is next.

(The Clerk calls prospective juror number 121)

THE COURT:  Good afternoon.  Please have a seat.  State your jury number for the record.

PROSPECTIVE JUROR NUMBER 121:  Number 121.

THE COURT:  I'm going to hand you a jury questionnaire that has number '121' on it, ask you to look at it and tell me whether or not that's a photocopy of the jury questionnaire that you filled out on a prior occasion.

PROSPECTIVE JUROR NUMBER 121:  Yes, it is.

172

THE COURT:  I don't think she should answer -

PROSPECTIVE JUROR NUMBER 123:  I don't know.

THE COURT:  - that question because she's not a lawyer.

MR. RUBIN:  I'm asking for her opinion.  I'm not asking her for law.

THE COURT:  No.  You're asking her to prejudge evidence in a hypothetical sense, coming up with factors that may or may not be relevant or admissible.

MR. RUBIN:  Well, the Court has already indicated that I can't ask any questions about specific -

THE COURT:  All right.  Let's not argue in front of the juror.

MR. RUBIN:  I have nothing further.  Thank you very much, ma'am.

PROSPECTIVE JUROR NUMBER 123:  Thank you.

THE COURT:  Ms. Chahin?

MS. CHAHIN:  Thank you, your Honor.

Good afternoon, ma'am.

PROSPECTIVE JUROR NUMBER 123:  Hi.

MS. CHAHIN:  Hi.  You indicated that you work for the Department of Transportation.

PROSPECTIVE JUROR NUMBER 123:  Yes.

MS. CHAHIN:  And that's a branch of the federal government?

173

**PROSPECTIVE JUROR NUMBER 123:**  Correct.

**MS. CHAHIN:**  Okay.  You understand that the case here is being put on by the federal government?

**PROSPECTIVE JUROR NUMBER 123:**  Yes.

**MS. CHAHIN:**  Okay.  Does the fact that the case is being put on for the federal government and you're an employee of the federal government, does that bias you or lead you to be in favor of one side or the other in this case?

**PROSPECTIVE JUROR NUMBER 123:**  No.

**MS. CHAHIN:**  Okay.  Despite your employment with the federal government, could you be impartial and weigh the evidence on behalf of the defendants as well as on behalf of the prosecution?

**PROSPECTIVE JUROR NUMBER 123:**  Yes.

**MS. CHAHIN:**  Okay.  I wanted to talk to you a little bit about your aunt.  I believe you said that she worked for the sheriff's department?

**PROSPECTIVE JUROR NUMBER 123:**  Yes.

**MS. CHAHIN:**  Is she someone that you're close to?

**PROSPECTIVE JUROR NUMBER 123:**  Yes.

**MS. CHAHIN:**  Okay.  Do you see her frequently?

**PROSPECTIVE JUROR NUMBER 123:**  Yes.

**MS. CHAHIN:**  Okay.  Could you tell us maybe with what frequency you see her?

**PROSPECTIVE JUROR NUMBER 123:**  Maybe every other

174

week.

MS. CHAHIN:  And do you know, does she work in one specific type of case?

PROSPECTIVE JUROR NUMBER 123:  Not that I know of.

MS. CHAHIN:  If you know.

PROSPECTIVE JUROR NUMBER 123:  No.

MS. CHAHIN:  Do you discuss her work with her?

PROSPECTIVE JUROR NUMBER 123:  Sometimes, but not often.

MS. CHAHIN:  Okay.  And is there anything about your relationship with her and the knowledge that you've gained from talking to her that would pre-judge you in this case in one way or the other?

PROSPECTIVE JUROR NUMBER 123:  No.

MS. CHAHIN:  Okay.  Now this is the same aunt who also had the incident involving the kidnapping, is that right?

PROSPECTIVE JUROR NUMBER 123:  Yes.

MS. CHAHIN:  Okay.  In this case you may hear evidence of people being kidnapped.  Does the fact that this incident with your aunt took place, would that affect the way that you look at this case or judge the evidence?

PROSPECTIVE JUROR NUMBER 123:  No.

MS. CHAHIN:  So you could be fair and impartial to both sides in this case despite this experience that you had with your aunt, is that correct?

175

PROSPECTIVE JUROR NUMBER 123:  Yes.  Yes.

MS. CHAHIN:  Okay.  I think in your questionnaire you also talked about having relatives and friends who are also correctional officers, is that correct?

PROSPECTIVE JUROR NUMBER 123:  Yes.

MS. CHAHIN:  Is that more than one person?

PROSPECTIVE JUROR NUMBER 123:  Yes.

MS. CHAHIN:  How many people?

PROSPECTIVE JUROR NUMBER 123:  Two.

MS. CHAHIN:  Are they in the state of California?

PROSPECTIVE JUROR NUMBER 123:  Yes.

MS. CHAHIN:  And are they people that you have a close relationship with as well?

PROSPECTIVE JUROR NUMBER 123:  Not that close.

MS. CHAHIN:  Do you talk to them about your work, their work?

PROSPECTIVE JUROR NUMBER 123:  Sometimes, maybe.  I mean, not often, again, I mean.

MS. CHAHIN:  Is there anything about the nature of that relationship which would cause you to favor one side or the other in this case?

PROSPECTIVE JUROR NUMBER 123:  No.

MS. CHAHIN:  Okay.  I want to ask you one more question about your aunt.  If you were to hear testimony from law enforcement witnesses, would you give them more credibility

EXCEPTIONAL REPORTING SERVICES, INC

176

because of this relationship that you have with your aunt?

PROSPECTIVE JUROR NUMBER 123:  No.

MS. CHAHIN:  So you could judge the witnesses impartially?

PROSPECTIVE JUROR NUMBER 123:  Yes.

MS. CHAHIN:  Okay.  I want to ask you a couple of questions about your feeling on the death penalty.

Would it be fair to say that you have strong feelings regarding the death penalty?

PROSPECTIVE JUROR NUMBER 123:  I wouldn't say 'strong'.  I don't know; in between.

MS. CHAHIN:  You've expressed some views in your questionnaire about feeling that it's appropriate in most murder cases.  Is that a view that you've always held?

PROSPECTIVE JUROR NUMBER 123:  Yes.

MS. CHAHIN:  And because of those views, do you believe it would be difficult for you, if we got to a penalty phase, to return a verdict of life without release for someone who was convicted of murder?

PROSPECTIVE JUROR NUMBER 123:  No.

MS. CHAHIN:  Do you understand the Judge has explained to you that the trial could potentially proceed in two phases?

PROSPECTIVE JUROR NUMBER 123:  Correct.  Yes.

MS. CHAHIN:  Okay.  And before we even get to the

177

questionnaire of penalty, if we ever get there, the jury would have to make a finding that one or more of the defendants were guilty in this case.

Do you understand that?

**PROSPECTIVE JUROR NUMBER 123:**  Yes.

**MS. CHAHIN:**  Okay.  So before you were even asked to make a decision of penalty, if we get there, you would have already convicted the defendants of one or more murders in this case.

Do you understand that?

**PROSPECTIVE JUROR NUMBER 123:**  Yes.

**MS. CHAHIN:**  Okay.  So at that time, would you still be open to weighing and considering the aggravating and the mitigating factors and not - Let me withdraw that question.

Would you still be open to considering a sentence of life without release even after you had potentially convicted one or more of the defendants in this case?

**PROSPECTIVE JUROR NUMBER 123:**  Yes.

**MS. CHAHIN:**  I have nothing further, your Honor.

**THE COURT:**  All right.  You may retire back into the jury room.  Do not talk about any of the questions we asked or the answers that you gave.

**MS. DeWITT:**  Pass for cause, your Honor.

**THE COURT:**  Mr. Rubin?

**MR. RUBIN:**  Yes.  Thank you, your Honor.

193

asked me -

**MR. LASTING:**  - to express them.

**PROSPECTIVE JUROR NUMBER 125:**  - do I believe in the death penalty, yes, I do, but I've never, I don't know, have it, anyway.  Sorry.

**MR. LASTING:**  That's okay.  Thank you.

**PROSPECTIVE JUROR NUMBER 125:**  Uh-huh.  You're welcome.

**THE COURT:**  Thank you.  Let me have your jury questionnaire back again.

**PROSPECTIVE JUROR NUMBER 125:**  Sure.

**THE COURT:**  Please do not discuss any of the questions asked of you -

**PROSPECTIVE JUROR NUMBER 125:**  Okay.

**THE COURT:**  - or any of your answers that you gave.

**PROSPECTIVE JUROR NUMBER 125:**  Okay, I won't.

**THE COURT:**  You can go back into the jury room.

**PROSPECTIVE JUROR NUMBER 125:**  Thank you.

**(Pause)**

**THE COURT:**  All right.  With regard to, I believe it's juror number 125?

**MS. MEYER:**  Pass for cause, your Honor.  Reserve the right to argue.

**THE COURT:**  Mr. Rubin?

**MR. RUBIN:**  Yes, sir.  I have to admit, your Honor,

194

that based on this juror's questionnaire, her answers did surprise me today.  I didn't think that she was adamant in favor of the death penalty as she ended up coming off on the stand.

Her feelings are and her beliefs are is that if someone commits murder, they get the death penalty.  And they are doubly sure that if someone commits multiple murders, they get the death penalty, because she believes in an eye-for-an-eye.  And, again, she was very adamant about it.

I would point out, again, in the *Morgan* case that answering closed-ended *Witt-Witherspoon* questions about 'can you follow the law and set aside your beliefs' is not sufficient in this situation, because a juror's belief that the death penalty should be imposed *ipso facto* upon conviction reflects the juror's inability to follow the law.

I don't think it could be any clearer.  I understand that she said she could set it aside.  I think that we have to talk about what's the truth and what's reality and whether this lady, with her beliefs, in hearing any death penalty case, if found the defendant guilty of first-degree murder, could ever come back on anything but death.  Thank you.

**THE COURT:**  Mr. Lasting?

**MR. LASTING:**  Your Honor, I would submit to the Court that prospective juror number 125 is substantially impaired in her ability.  I think she conceded a predisposition to return a

195

verdict of death for anyone who's convicted of murder or multiple murders.

THE COURT:  But unfortunately, when you asked the question 'Are you predisposed', she answered 'no'.

MR. LASTING:  But she also said that she believed in an eye-for-an-eye, and I think that -

THE COURT:  But again, we went through that, I think, last Friday or last Thursday.  That's a Judeo-Christian doctrine that's taught to you, you know, when you first go to Saturday school or Sunday school.

MR. LASTING:  I think that when someone uses that phrase and then explains what they mean, that they're reflecting their personal beliefs.

I would submit to the Court that she does hold personal beliefs that would make it very difficult, if not impossible, for her to return a verdict of life without release.

The one area in which there was some equivocation, at least in my sense of what prospective juror 125 was saying, was that she could go with the flow, that she could, I mean, the Court asked her some questions about that, and she then seemed to understand that she's got to stick by her beliefs.  But my sense of where all that would come out in the jury room is that she'd go back to those 'eye-for-an-eye' beliefs.

It seems to me that when you take her concern for

196

deterrence, her eye-for-an-eye beliefs, her answer to question 38 on the questionnaire in which she said, 'no, she didn't believe that multiple murderers should automatically be sentenced to death', and then she gave the example 'they could be mentally ill'.  And my sense of it is that's the kind of thing she's thinking about when she might not vote for that for the penalty of death, but I think the totality of her answers, her demeanor here in court is such that she is substantially impaired.  I'd ask the Court to excuse her.

THE COURT:  Ms. Meyer?

MS. MEYER:  Thank you, your Honor.

The 'eye-for-an-eye' Judeo-Christian principle is not the end of the inquiry, it's only the beginning.

As the Court has repeatedly said, both last week and this week, jurors are not expected to come in with absolutely no views at all.  The question is whether they can put those views aside and consider the evidence.  And I believe that with respect to two questions the Court asked about, you know, her views with respect to premeditated, intentional, first-degree murder, she said that her judgment would not be substantially impaired.

And in fact, in response to Mr. Lasting's question, which the Court already noted, she said she would not be predisposed to imposing the death penalty.

So, for those reasons, the Government believes that

197

she should not be struck for cause.

THE COURT:  All right.  For the record, the challenge for cause will be made by both defendants, and denied.

125 will be invited back.

126 is the next juror to be invited in.

MS. MEYER:  Your Honor, could the Court please inquire with respect to questions 18, 19, and 21?

(No audible response)

(Pause)

(The Clerk calls prospective juror number 126)

THE COURT:  All right, sir.  Please state your jury number for the record.

PROSPECTIVE JUROR NUMBER 126:  Okay.  My jury number is 126.

THE COURT:  I'm going to hand you a copy of a jury questionnaire that has '126' on it.  Would you look it over and tell me whether or not that's a copy of the jury questionnaire that you filled out on a prior occasion?

PROSPECTIVE JUROR NUMBER 126:  (Reviewing jury questionnaire 126)  Yes, it is.

THE COURT:  Okay.  I've got some questions I'm going to ask you.  There's no right answer, and there's no wrong answer.

PROSPECTIVE JUROR NUMBER 126:  Okay.

THE COURT:  If you don't understand any of the