# GOVERNMENT EXHIBIT 44

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO:  CR-02-220(B)-DT |
| | ) | |
| Plaintiff, | ) | CRIMINAL |
| | ) | |
| vs. | ) | Los Angeles, California |
| | ) | |
| IOURI MIKHEL, | ) | Wednesday, August 16, 2006 |
| JURIJUS KADAMOVAS, | ) | (9:01 a.m. to 12:31 p.m.) |
| | ) | (1:40 p.m. to  4:16 p.m.) |
| Defendants. | ) | |

JURY TRIAL (3rd DAY)
VOLUME III

BEFORE THE HONORABLE DICKRAN TEVRIZIAN,
UNITED STATES DISTRICT JUDGE

EXCEPTIONAL REPORTING SERVICES, INC
14493 SOUTH PADRE ISLAND DRIVE
SUITE A-400
CORPUS CHRISTI, TX 78418-5940
361 949-2988

THE COURT:  Now, I have four specific questions I want to ask you.

Because of your attitude toward the death penalty, would you automatically vote not guilty to avoid the question of penalty?

PROSPECTIVE JUROR NUMBER 31:  No.

THE COURT:  Because of your attitude toward the death penalty, would you automatically vote to find any special circumstances not true?

PROSPECTIVE JUROR NUMBER 31:  No.

THE COURT:  Because of your attitude toward the death penalty, would you automatically vote to impose life without possibility of release regardless of any penalty phase evidence?

PROSPECTIVE JUROR NUMBER 31:  No.

THE COURT:  Because of your attitude toward the death penalty, would you automatically vote for imposition of the death penalty regardless of any penalty phase evidence?

PROSPECTIVE JUROR NUMBER 31:  No.

THE COURT:  Mr. Dugdale?

MR. DUGDALE:  Thank you, your Honor.

Good morning, ma'am.

PROSPECTIVE JUROR NUMBER 31:  Hello.

MR. DUGDALE:  You indicate in response to Question Number 26 about your general feelings on the death penalty you

27

PROSPECTIVE JUROR NUMBER 31:  I think there were three of us.

MR. RUBIN:  Did you do that by your -- did you do that on that just one case, or did you do that as part of your job?

PROSPECTIVE JUROR NUMBER 31:  No.  That was just a kind of auxiliary duty --

MR. RUBIN:  I see.

PROSPECTIVE JUROR NUMBER 31:  -- they assigned us.

MR. RUBIN:  All right.  Thank you very much.

PROSPECTIVE JUROR NUMBER 31:  Uh-huh.

THE COURT:  Mr. Lasting?

MR. LASTING:  Your Honor, Ms. Chahin.

THE COURT:  Ms. Chahin?

MS. CHAHIN:  Thank you, your Honor.

Good morning, ma'am.

PROSPECTIVE JUROR NUMBER 31:  Hello.

MS. CHAHIN:  You've indicated that you're pretty much neutral regarding the death penalty.  Are there any circumstances that you can conceive of under which you would always impose a sentence of death?

PROSPECTIVE JUROR NUMBER 31:  No.

MS. CHAHIN:  And in a case, for example, where -- if it involved multiple murders, more than one murder, is that a case where you would always impose a sentence of death?

52

MR. CALLAHAN:  -- as the judge has described it, and you had found a Defendant guilty beyond a reasonable doubt, at that point, would you consider yourself a fair and impartial juror going into a penalty phase?

PROSPECTIVE JUROR NUMBER 33:  Yes.

MR. CALLAHAN:  You would.  All right.  Thank you.

THE COURT:  All right.  Ms. Chahin?

MS. CHAHIN:  Thank you, your Honor.

Ma'am, I'd also like to direct you to Question Number 26.  Can you describe -- maybe give us some further information on what you meant when you said, "If the prosecution presents evidence which shows true guilt, the penalty should apply"?

PROSPECTIVE JUROR NUMBER 33:  I'm sorry.  What page again?

Oh, here.

MS. CHAHIN:  It's Page 6, and it's Question Number 26.

PROSPECTIVE JUROR NUMBER 33:  It says general feelings regarding the death penalty.

Would you mind repeating your question?

MS. CHAHIN:  Yeah.  I just wanted to see if you could expand for us what you meant in your answer in Question Number 26.

PROSPECTIVE JUROR NUMBER 33:  I would have to look at the evidence and see what they brought forward.

53

MS. CHAHIN:  When you're talking about evidence, are you talking about evidence as to whether or not the person is guilty or not guilty?

PROSPECTIVE JUROR NUMBER 33:  Well, you look at everything.  This is a person's life I have in my hands, and I would have to see both sides.

MS. CHAHIN:  Now, do you understand that, as the judge just explained to you, there would be two phases or potentially two phases to these proceedings?

PROSPECTIVE JUROR NUMBER 33:  Now, I understand that.

MS. CHAHIN:  And --

PROSPECTIVE JUROR NUMBER 33:  At the time I wrote that answer, I didn't know there were two phases.  But --

MS. CHAHIN:  And --

PROSPECTIVE JUROR NUMBER 33:  But --

MS. CHAHIN:  I'm sorry.  Go ahead.

PROSPECTIVE JUROR NUMBER 33:  Once, again, I just feel that I'd have to hear everything.

MS. CHAHIN:  Do you understand that before you ever got to the question of determining whether one punishment, that of death or that of life without release, would it be appropriate by that point you would have already determined that a person was guilty of murder?

PROSPECTIVE JUROR NUMBER 33:  Yes.

MS. CHAHIN:  And after you'd already made that

54

determination that a person was guilty of murder, could you still be open to both penalties?

**PROSPECTIVE JUROR NUMBER 33:**  I believe so.

**MS. CHAHIN:**  And would your answer be the same if the person had been convicted of more than one murder?

**PROSPECTIVE JUROR NUMBER 33:**  Yes.

**MS. CHAHIN:**  I have nothing further, your Honor.

**THE COURT:**  All right.  I'm going to take back your jury questionnaire, have you go back in the jury room.  Please do not discuss your answers or the questions that we asked.

**(Pause)**

**MR. DUGDALE:**  The Government would pass for cause, your Honor.

**MR. CALLAHAN:**  Pass for cause, your Honor.

**MS. CHAHIN:**  Pass, your Honor.

**THE COURT:**  All right.  Let's bring out Juror Number 34 I believe is next.

**MS. DeWITT:**  Your Honor, with respect to this juror if you wouldn't mind asking some follow-up questions about Question Number 14.  This juror indicated that they'd been on three juries, but then only list one has being criminal.  So I just wanted some follow up on what the breakdown was, because it's not clear from the jury questionnaire but more to the point that there was no verdict reached.

I think that it would be appropriate for the Court to

75

THE COURT:  Yes.

Is there a challenge?

MS. DeWITT:  Yes.  We challenge.

THE COURT:  I will grant the --

MS. DeWITT:  I thought that was already understood, your Honor.  That's why I was confused by your question.  I apologize.

THE COURT:  All right.  He will be excused for cause.

All right.  Juror Number 36 is next.

THE CLERK:  Okay.  Juror Number 36.

(Pause)

THE COURT:  Good morning.

PROSPECTIVE JUROR NUMBER 36:  Good morning.

THE COURT:  Have a seat, sir and state your name into the record.

PROSPECTIVE JUROR NUMBER 36:  My name?

THE COURT:  No.  Your Juror Number.  I misspoke.

PROSPECTIVE JUROR NUMBER 36:  Good morning.

Juror Number 36.

THE COURT:  All right.  I'm going to give you a photocopy of the jury questionnaire that has Number 36 on the pages and ask you whether or not this is a photocopy of the jury questionnaire that you filled out.

(Pause)

PROSPECTIVE JUROR NUMBER 36:  Yes.  This is my

about what's in that jury questionnaire.

Question number one. Because of your attitude toward the death penalty, would you automatically vote not guilty to avoid facing the question of penalty?

**PROSPECTIVE JUROR NUMBER 39:** No.

**THE COURT:** Question number two. Because of your attitude toward the death penalty, would you automatically vote to find any special circumstances not true?

**PROSPECTIVE JUROR NUMBER 39:** No.

**THE COURT:** Question three. Because of your attitude toward the death penalty, would you automatically vote to impose life without possibility of release regardless of any penalty phase evidence?

**PROSPECTIVE JUROR NUMBER 39:** No.

**THE COURT:** Question number four. Because of your attitude toward the death penalty, would you automatically vote for imposition of the death penalty regardless of any penalty phase evidence?

**PROSPECTIVE JUROR NUMBER 39:** No.

**THE COURT:** Let's look at Question Number 18 in the jury questionnaire that you answered.

**(Pause)**

In your answer to Question Number 18 you indicated an event that took place in an incident regarding your son, who was charged with first-degree murder and then pled guilty

96

pursuant to a plea bargain to second-degree murder.

Anything about that incident that you feel would influence your decision in this case?

**PROSPECTIVE JUROR NUMBER 39:**  No.

**THE COURT:**  Could you put that incident out of your mind and listen to the evidence in this case and follow the law as I give it to you and reach a verdict?

**PROSPECTIVE JUROR NUMBER 39:**  Yes.

**THE COURT:**  Anything about that incident that left a bad taste in your mouth regarding the criminal justice system?

**PROSPECTIVE JUROR NUMBER 39:**  That's a hard one for me to answer, because the circumstances that happened with my son.  He was in custody, and he was in a jail cell.  And he was involved with another prisoner, and they got into some kind of a fight over something.  And the other one was injured, had a severe head injury and died in the hospital 12 hours later.

And it would appear to me that it was manslaughter. But I subsequently learned that the District Attorney automatically filed first-degree murder charges and then, I think, left it up to the jury to decide whether it was first, second, or manslaughter.

And my son had a lawyer.  And his lawyer advised him to plead not guilty.  And against the advice of his lawyer, he entered into this plea bargain.  And the judge questioned him extensively in my presence and asked him he said, "Are you

97

pleading guilty to second-degree murder for a plea bargain to get a light sentence, because you're afraid of the death penalty?"  And his answer was yes.

And my own personal opinion was that I didn't think he should've done that.  But he didn't ask my advice, and he didn't take the lawyer's advice.  He didn't ask the advice of my wife or anyone else.  So --

THE COURT:  How old was your son at the time?

PROSPECTIVE JUROR NUMBER 39:  At the time, he was 19 years old.

THE COURT:  All right.  Now, you've explained almost in detail what took place with regard to the experience that your son had in the criminal justice system.

Anything about that experience that you think would affect your ability to be a fair and impartial trial juror in this case?

PROSPECTIVE JUROR NUMBER 39:  No.

THE COURT:  All right.  Ms. Meyer?

MS. MEYER:  Just briefly, your Honor.

Good morning, sir.

PROSPECTIVE JUROR NUMBER 39:  Good morning.

MS. MEYER:  Could you please take a look at the first explanation sheet at the end of the questionnaire.

PROSPECTIVE JUROR NUMBER 39:  Which question?

MS. MEYER:  It's at the very end.  There were two

sheets that were entitled explanation sheet.  And you wrote something on the first explanation sheet.  It would be on Page 10.

**PROSPECTIVE JUROR NUMBER 39:**  I think that -- where I said I think the question's covered well.  I said that "I would only add that if the charges are so bad that they tend to make one sick, it does take some reminding about the process.  I can wait for the evidence and hear both sides before deliberating."

**MS. MEYER:**  Sir, just one question.  So depending on the evidence in this case, can you consider either the death penalty or life imprisonment without release as an appropriate punishment?

**PROSPECTIVE JUROR NUMBER 39:**  Yes.

**MS. MEYER:**  No further questions, your Honor.

**THE COURT:**  Mr. Rubin?

**MR. RUBIN:**  I have no questions.

**THE COURT:**  Mr. Lasting?

**MR. LASTING:**  (***).  Thank you, your Honor.

Good morning, sir.

**PROSPECTIVE JUROR NUMBER 39:**  Morning, sir.

**MR. LASTING:**  Just to follow up on the questions the Judge was asking you about your son.  You said that you were present in court when he entered the guilty plea?

**PROSPECTIVE JUROR NUMBER 39:**  Yeah.  I was present in the courtroom during the proceeding.

99

MR. LASTING:  Do you remember what sentence your son actually received?

PROSPECTIVE JUROR NUMBER 39:  What the charge was?

MR. LASTING:  No, sir.  What sentence?  How much time was he sentenced to spend in prison?

PROSPECTIVE JUROR NUMBER 39:  My best recollection, he was sentenced to seven years, but didn't serve quite that much time.

MR. LASTING:  He was sentenced to serve a prison sentence of seven years.  And I think you wrote in the questionnaire he actually spent about five years in prison?

PROSPECTIVE JUROR NUMBER 39:  Yeah, I think that was it.

MR. LASTING:  Did you ever go visit him at the prison?

PROSPECTIVE JUROR NUMBER 39:  Let's see.  Yes, I did once.  He was in Vacaville, and I visited him there.  And he was later transferred to Atascadero, I think, up near San Luis Obispo.  And I visited him once there.

MR. LASTING:  He was transferred --

PROSPECTIVE JUROR NUMBER 39: I might have visited him twice up there and twice in Atascadero.  I probably visited him at least four times.

MR. LASTING:  Can you tell us generally what your views are about the death penalty?

100

**PROSPECTIVE JUROR NUMBER 39:**  What my views are about the death penalty?

**MR. LASTING:**  Yes, sir.

**PROSPECTIVE JUROR NUMBER 39:**  Well, I am Catholic. And personally, I am against the death penalty, because I think it's a bad example if somebody -- if someone kills something, somebody and then we're going to kill them; we're acting just like they did.

However, the law -- if the law states it that it's the death penalty I think that we should follow the law. Because we have to follow the law.

**MR. LASTING:**  And with regard to the answer --

**(Pause)**

I'm sorry.  I thought I had another question, but I don't.

Thank you very much, your Honor.

**PROSPECTIVE JUROR NUMBER 39:**  You're welcome, sir.

**THE COURT:**  All right.  Thank you very much.  Be careful when you go down.  Do not discussion any questions or the answers that you gave.

**(Pause)**

Ms. Meyer?

**MS. MEYER:**  Pass for cause, your Honor.

**THE COURT:**  Mr. Rubin?

**MR. RUBIN:**  Nothing for cause, your Honor.

101

THE COURT:  Mr. Lasting?

MR. LASTING:  Pass for cause, your Honor.

THE COURT:  All right.  We'll bring out Juror Number 40.

THE CLERK:  Juror Number 40?

(Pause)

THE COURT:  Good morning.

PROSPECTIVE JUROR NUMBER 40:  Good morning.

THE COURT:  Please state your Juror Number on the record.

PROSPECTIVE JUROR NUMBER 40:  Juror Number 40.

THE COURT:  I'm going to place before you a copy of a jury questionnaire, a photocopy --

PROSPECTIVE JUROR NUMBER 40:  Uh-huh.

THE COURT:  -- that bears the Number 40 on each page and ask you if that is in fact a copy of the jury questionnaire that you filled out.

(Pause)

PROSPECTIVE JUROR NUMBER 40:  Okay.

THE COURT:  All right.  You're going to have to answer out loud for us.

PROSPECTIVE JUROR NUMBER 40:  Yes.

THE COURT:  I have some questions that I'm going to ask of you.  There is no right answer.  There's no wrong answer.

148

And so I want to get you to embellish on this a little bit for me if you would.  Do you sense, as you sit here today, that if someone was convicted of five murders in cold blood that they should automatically be sentenced to death?

PROSPECTIVE JUROR NUMBER 45:  No.

MR. CALLAHAN:  You would look at the facts and circumstances of the case?

PROSPECTIVE JUROR NUMBER 45:  Yes.

MR. CALLAHAN:  And you would listen to the mitigation evidence that was presented in the penalty phase?

PROSPECTIVE JUROR NUMBER 45:  Yes.

MR. CALLAHAN:  I have nothing further, your Honor. Thank you.

THE COURT:  Ms. Chahin?

MS. CHAHIN:  Just briefly, your Honor.

Good afternoon.

PROSPECTIVE JUROR NUMBER 45:  Good afternoon.

MS. CHAHIN:  In response to Mr. Callahan's questions regarding your feelings on the death penalty, I believe that you said that it would depend upon what the person did.

Can you envision any circumstances under which you would always impose a sentence of death?

PROSPECTIVE JUROR NUMBER 45:  I can say right now I don't know the circumstances of the whole case.

MS. CHAHIN:  Okay.  Well, here we're talking about

149

penalty before we've even had a trial, which is a little bit unusual.  As the judge explained to you, there are going to be two phases to the proceedings and before you -- if we even got to that point of reaching the penalty phase, you would have had to necessarily made a finding of guilt first.

If at some point you were called to make a penalty decision in a case that was a murder case, would you still at that point be open to both penalties, either life without release or the death penalty?

**PROSPECTIVE JUROR NUMBER 45:**  Yes.

**MS. CHAHIN:**  Okay.  And you would consider all circumstances before making that decision?

**PROSPECTIVE JUROR NUMBER 45:**  Yes.

**MS. CHAHIN:**  Thank you, your Honor.

**THE COURT:**  All right.  I'm going to have you go back into the jury room.  Just hand me your questionnaire.  Thank you.  Do not discuss any questions we asked or any answers you gave.

**PROSPECTIVE JUROR NUMBER 45:**  Okay.

**(Pause)**

**THE COURT:**  All right.  With regard to Juror Number 45?

Mr. Dugdale?

**MR. DUGDALE:**  The Government would pass for cause.

**THE COURT:**  Mr. Callahan?

196

THE COURT:  Sustained.

MR. CALLAHAN:  As you sit here today, after hearing the evidence and voting guilty at the guilt phase, is there anything in your mind right now that would prevent you from imposing the death penalty?

PROSPECTIVE JUROR NUMBER 49:  No.

MS. DeWITT:  Same objection, your Honor.

THE COURT:  I would sustain the objection.

MR. CALLAHAN:  I'll respectfully -- that question's been asked several times.  Nothing further.

THE COURT:  Ms. Chahin?

MS. CHAHIN:  Yes, your Honor.

THE COURT:  Before you ask a question, let me re-ask another question.

Because of your attitude toward the death penalty, would you automatically vote for the imposition of the death penalty regardless of any penalty phase evidence?

PROSPECTIVE JUROR NUMBER 49:  No.

MS. CHAHIN:  Sir, we've tried to explain to you today that there are two steps to these proceedings.

Do you understand that?

PROSPECTIVE JUROR NUMBER 49:  Yeah.

MS. CHAHIN:  Okay.  And at the first phase, it would be the jury's job to determine if the Defendants were guilty beyond a reasonable doubt.

197

Do you understand that?

**PROSPECTIVE JUROR NUMBER 49:**  Yes.  The first phase.

**MS. CHAHIN:**  And during the guilt phase if they were to reach a verdict of not guilty, we would never get to a penalty phase.

Do you understand that?

**PROSPECTIVE JUROR NUMBER 49:**  Right.

**MS. CHAHIN:**  So that before the jury would even decide a question of what the sentence should be, whether it should be life without release or death, they would have already had to make a finding that at least one murder was committed.

Do you understand that?

**PROSPECTIVE JUROR NUMBER 49:**  Yeah.

**MS. CHAHIN:**  Okay.  And they may make a finding that five murders were committed.

Do you understand that?

**PROSPECTIVE JUROR NUMBER 49:**  Right.

**MS. CHAHIN:**  Okay.  Now, if you were at that point, is that the type of crime where you would believe that a sentence of death would be the only appropriate sentence?

**MS. DeWITT:**  Objection.  Asking for pre-commitment.

**THE COURT:**  Sustain as to the form of the question.

**MS. CHAHIN:**  Sir, do you believe that there are certain crimes that would always require a death sentence?

198

PROSPECTIVE JUROR NUMBER 49:  Yeah.  Yes.

MS. CHAHIN:  And do you believe that if a person were convicted of committing five intentional, deliberate, premeditated murders that a sentence of death would be the appropriate sentence?

MS. DeWITT:  Objection.  Asking for pre-commitment, as well as an incomplete hypothetical.

THE COURT:  Sustained.

MS. CHAHIN:  Sir, could you, if we were to reach the penalty phase in this trial and if the jury had convicted the Defendants of having committed five intentional, premeditated, murders; could you consider imposing a sentence of life under those circumstances?

PROSPECTIVE JUROR NUMBER 49:  No.

MS. CHAHIN:  I have nothing further, your Honor.

MS. DeWITT:  I'm sorry.  It's a little belated.  But I think that's also an incomplete hypothetical, your Honor. And I would ask maybe that you could do some -- follow-up question on it.

THE COURT:  I'll give you a follow-up question.

MS. DeWITT:  I believe your answer was no.  But is that no in respect to that last answer without taking into consideration all the mitigating and aggravating factors?  Or would you have to weigh all the mitigating and aggravating factors before you reach a decision about whether life or death