# GOVERNMENT

# EXHIBIT 50

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

- - -

THE HONORABLE DICKRAN TEVRIZIAN, JUDGE PRESIDING

- - -

U.S.A.,                          )
                                 )
            PLAINTIFF(S),  )
                                 )
      VS.                        ) CR02-220(B)-DT
                                 )
IOURI MIKHEL; JURIJUS KADAMOVAS,)
                                 )
            DEFENDANT(S).  )
_____)

REPORTER'S TRANSCRIPT OF PROCEEDINGS

JURY TRIAL - DAY 9

LOS ANGELES, CALIFORNIA

FRIDAY, AUGUST 25, 2006

GAIL PEEPLES,CSR
CONTRACT COURT REPORTER
100 UNITED STATES COURTHOUSE
312 NORTH SPRING STREET
LOS ANGELES, CALIFORNIA 90012
(213) 894-3013

MR. RUBIN: -- THAT'S ALL --

THE COURT: OKAY. WE'LL BRING HER IN, MR. RUBIN, FOR YOU.

MR. RUBIN: I APPRECIATE IT.

THE COURT: ALL RIGHT.

MR. LASTING, WHAT'S YOUR POSITION?

MR. LASTING: YOUR HONOR, MY POSITION IS IF SHE COMES IN AND WE TALK TO HER AND SHE'S GOT A PROBLEM, I DON'T HAVE AN OBJECTION TO EXCUSE HER. I'D JUST LIKE TO SPEAK TO HER PERSONALLY.

THE COURT: ALL RIGHT. I'LL BRING HER IN FOR YOU AND MR. RUBIN.

MR. RUBIN: THANK YOU.

THE COURT: NOW, WITH REGARD TO ANOTHER ONE OF THE JURORS, 186 IS IN A WALKER, HAS A CYST ON HER LEG, IS GOING TO HAVE TO HAVE SURGERY. SHE'S HERE TODAY. I WAS GOING TO HAVE HER STAY FIRST SO THAT SHE CAN BE EXAMINED. AND IF SHE PASSES, I DON'T KNOW WHAT YOU'RE GOING TO DO.

DO YOU WANT TO EXCUSE HER, MR. RUBIN, OR DO YOU WANT TO TORTURE HER AS WELL?

MR. RUBIN: WELL, YOUR HONOR, I DID SEE HER OUT IN THE HALLWAY, AND I SAW THE PROBLEM SHE WAS HAVING. AND I DO NOT WANT TO TORTURE ANYONE. I DON'T KNOW WHAT TORTURE IS FOR SOMEONE THAT'S WORKING A JOB, THAT CAN GO TO THEIR JOB, TO COME IN AND GIVE US SOME QUESTIONS.

THAT'S ALL.

THE COURT:  YOU DIDN'T HEAR THE LETTER THAT THE LADY WROTE.  SHE HAD BEEN ON DISABILITY LEAVE FOR THREE MONTHS PRIOR TO THIS TIME.  MEDICAL DISABILITY --

MR. RUBIN:  YOUR HONOR, I CAN TELL THAT THE COURT WANTS ME TO CHANGE MY MIND.  AND IF YOU WANT ME TO STIPULATE TO 1 -- WAS IT 136?

THE COURT:  136.

MR. RUBIN:  I'LL STIPULATE TO 136 WITHOUT --

THE COURT:  I APPRECIATE IT.

MR. RUBIN:  I'LL ALSO STIPULATE TO 186 BECAUSE I COULD TELL THAT FOR HER IT WAS TORTURE.

AGAIN, I WAS JUST -- I WANT YOU TO KNOW I WALKED IN THE COURT, I WAS COURTEOUS TO MR. DUGDALE THIS MORNING.  I KNEW THAT WAS A MISTAKE.  NOW I'M BEING COURTEOUS AND DOING THINGS FOR THE COURT.  AND I KNOW IT'S ALL GOING TO COME BACK AND BITE ME RIGHT IN THE BACK END.  I JUST KNOW THAT.

BUT I WILL DO THAT.

THE COURT:  WHEN THE LADY WRITES TO YOU, JUROR 136, AND SAYS THAT SHE HAD BEEN ON MEDICAL DISABILITY, SHE'S CLEARED TO GO TO WORK, SHE WAS OUT FOR THREE MONTHS AND NOW SHE -- SHE'S GOING BACK, YOU KNOW WHAT THEY'RE GOING TO DO TO HER.  THEY'RE NOT GOING TO FIRE HER BECAUSE OF JURY DUTY. BUT THEY'RE REALLY GOING TO MAKE IT DIFFICULT FOR HER, ESPECIALLY IF SHE'S PICKED ON THIS JURY AND IT GOES FOUR OR

FIVE MONTHS.

MR. RUBIN:  I WILL STIPULATE, YOUR HONOR --

MS. DE WITT:  YOUR HONOR, CAN I ADDRESS 186?  I'M CERTAINLY GREATRUL.  BUT I --

THE COURT:  YOU PEOPLE HAVE NO HEART.

MS. DE WITT:  I JUST WANTED TO CLARIFY WHAT THE SITUATION WAS WITH 186.  IS IT SOMETHING THAT'S JUST A PROBLEM FOR TODAY?

THE COURT:  NO --

MS. DE WITT:  I JUST DIDN'T UNDERSTAND.

THE COURT:  THE LADY IS IN AGONY.  BUT SHE'S A TROOPER.  SHE CAME HERE.

MS. DE WITT:  BUT THIS IS NOT SOMETHING -- DO WE KNOW --

THE COURT:  SHE'S GOING TO HAVE SURGERY.  SHE CANNOT SIT.

THESE ARE ALL OF THE THINGS THAT HAVE BEEN REPORTED TO ME.

MS. DE WITT:  THAT'S FINE, YOUR HONOR.  I JUST WANTED TO CLARIFY IT.

THE COURT:  SHE'S IN A WALKER.

MR. LASTING:  YOUR HONOR, WE'LL STIPULATE TO THE EXCUSAL OF BOTH JURORS 136 AND 186.

THE COURT:  ALL RIGHT.  136 AND 186 ARE EXCUSED.

MR. RUBIN:  HOW ABOUT 188?  IS THERE ANYTHING WRONG

Q.    TURNING THE OTHER CHEEK?

A.    YES.

Q.    THANK YOU VERY MUCH, MA'AM.

A.    SURE.

        THE COURT:  MS. CHAHIN.

                        EXAMINATION

BY MS. CHAHIN:

Q.    GOOD MORNING, MA'AM.

A.    GOOD MORNING.

Q.    YOU'VE DESCRIBED TO US THAT YOU HAVE SOME STRONG RELIGIOUS VIEWS.  HOW DO THOSE FACTOR INTO THE WAY THAT YOU LOOK AT THIS CASE, IF THEY WOULD AT ALL?

A.    I CAN ONLY -- AT THIS MOMENT I DON'T HAVE A LOT OF INFORMATION.  I CANNOT MAKE A DECISION BASED ON WHAT I HAVE. SO...

Q.    BASED ON YOUR RELIGIOUS VIEWS, WOULD YOU BE PREDISPOSED TO VOTE ONE WAY OR THE OTHER, EITHER FOR LIFE OR FOR DEATH?

A.    NO.

Q.    YOU COULD BE IMPARTIAL AND CONSIDER BOTH PENALTIES?

A.    YES.

Q.    I ALSO WOULD LIKE TO ASK YOU ABOUT YOUR RESPONSE TO QUESTION NUMBER 15 ON PAGE 3.  AND IT SAYS THAT A FEW OF YOUR COUSINS ARE LOS ANGELES COUNTY SHERIFFS.

A.    YES.

Q.    HOW MANY?

PAGE: 46 OF 201

A.   AT LEAST TWO OF THEM.

Q.   ARE THESE PEOPLE THAT YOU HAVE A CLOSE RELATIONSHIP WITH?

A.   UNFORTUNATELY, NOT.

Q.   I'M SORRY?

A.   UNFORTUNATELY NOT.

Q.   IS THERE ANYTHING ABOUT THAT, THE NATURE OF THAT RELATIONSHIP, THAT WOULD CAUSE YOU TO FAVOR ONE SIDE OR THE OTHER IN THIS CASE?

A.   NO.

Q.   AND IT SAYS THAT YOU ALSO -- YOU AND YOUR HUSBAND SERVE IN YOUR CHURCH IN THE ALCOHOL COUNSELING MINISTRY.

A.   YES.

Q.   AND IN THAT CAPACITY DO YOU COME INTO CONTACT WITH LAW ENFORCEMENT --

A.   NO.

Q.   -- PEOPLE?

A.   NONE.

Q.   IS THERE ANYTHING ABOUT THAT SERVICE THAT YOU PROVIDE THROUGH YOUR CHURCH THAT WOULD CAUSE YOU TO FAVOR ONE SIDE OR THE OTHER IN THIS CASE?

A.   NO.

Q.   THANK YOU VERY MUCH, MA'AM.

     THE COURT:  ALL RIGHT.  I'M GOING TO TAKE BACK YOUR JURY QUESTIONNAIRE.

QUESTIONNAIRE.  BUT IT WASN'T.

THE CLERK:  OKAY?  191?

THE COURT:  YES.

MS. MEYER:  YOUR HONOR, COULD YOU PLEASE INQUIRE WITH RESPECT TO QUESTION 128.

EXAMINATION

BY THE COURT:

Q.   GOOD MORNING.

A.   GOOD MORNING, YOUR HONOR.

Q.   PLEASE STATE YOUR JUROR NUMBER FOR THE RECORD.

A.   191.

Q.   ALL RIGHT.  I'M GOING TO HAND YOU A COPY OF A JURY QUESTIONNAIRE, IT'S MARKED 191, AND ASK YOU TO LOOK AT IT AND TELL ME WHETHER OR NOT THAT'S A PHOTOCOPY OF THE JURY QUESTIONNAIRE THAT YOU FILLED OUT ON A PRIOR OCCASION.

A.   IT APPEARS TO BE.

Q.   OKAY.  I'VE GOT SOME QUESTIONS I'M GOING TO ASK YOU. THERE'S NO RIGHT ANSWERS, NO WRONG ANSWERS.  IF YOU DON'T UNDERSTAND MY QUESTIONS OR ANY OF THE FOLLOW-UP QUESTIONS, LET ME KNOW.

BASED UPON YOUR VIEWS ON CAPITAL PUNISHMENT, WHETHER YOU'RE IN FAVOR OF IT OR WHETHER YOU'RE OPPOSED TO IT, DO YOU HAVE ANY VIEWS, BELIEFS, OR OPINIONS THAT WOULD SUBSTANTIALLY IMPAIR YOUR ABILITY TO FOLLOW THE LAW AS GIVEN TO YOU BY COURT?

Q.   AND BECAUSE OF YOUR ATTITUDE TOWARD THE DEATH PENALTY, WOULD YOU AUTOMATICALLY VOTE FOR THE IMPOSITION OF THE DEATH PENALTY REGARDLESS OF ANY PENALTY PHASE EVIDENCE INTRODUCED?

A.   NO.

THE COURT:  MS. MEYER.

MS. MEYER:  THANK YOU, YOUR HONOR.  JUST BRIEFLY --

BY THE COURT:

Q.   OH.  THERE WAS ONE QUESTION I WAS GOING TO ASK YOU.  I BELIEVE IT WAS QUESTION 18.  LOOK AT IT IN THE JURY QUESTIONNAIRE.

YOU HAD A NEPHEW THAT HAD A INCIDENT WITH LAW ENFORCEMENT?

A.   YES.

Q.   ANYTHING ABOUT THAT INCIDENT THAT YOU FEEL WOULD INFLUENCE YOUR DECISION AT ALL IN THIS CASE?

A.   NO.

Q.   CAN YOU PUT THAT INCIDENT OUT OF YOUR MIND AND DECIDE THIS CASE SOLELY ON THE EVIDENCE THAT YOU HEAR IN THIS COURTROOM AND THE LAW AS I GIVE IT TO YOU?

A.   YES.

MS. MEYER:  THANK YOU, YOUR HONOR.

EXAMINATION

BY MS. MEYER:

Q.   GOOD MORNING, SIR.

A.   GOOD MORNING.

Q.   GOOD AFTERNOON, SIR.

A.   GOOD AFTERNOON.

Q.   PLEASE STATE YOUR JUROR NUMBER FOR THE RECORD.

A.   197.

Q.   I'M GOING TO PLACE BEFORE YOU A COPY OF A JURY QUESTIONNAIRE THAT HAS "197" ON IT, ASK YOU TO TAKE A LOOK AT IT AND TELL ME WHETHER OR NOT THAT'S A PHOTOCOPY OF A JURY QUESTIONNAIRE THAT YOU FILLED OUT ON A PRIOR OCCASION.

A.   YES, SIR, IT IS.

Q.   OKAY.  I'VE GOT SOME QUESTIONS FOR YOU.

A.   OKAY.

Q.   QUESTION NUMBER ONE.  BASED UPON YOUR VIEWS ON CAPITAL PUNISHMENT, WHETHER YOU'RE IN FAVOR OF IT OR WHETHER YOU'RE OPPOSED TO IT, DO YOU HAVE ANY VIEWS, BELIEFS, OR OPINIONS THAT WOULD SUBSTANTIALLY IMPAIR YOUR ABILITY TO FOLLOW THE LAW AS GIVEN TO YOU BY THE COURT?

A.   NO, SIR.

Q.   BASED UPON YOUR VIEWS ON CAPITAL PUNISHMENT, DO YOU HOLD ANY VIEWS OR OPINIONS THAT WOULD PREVENT OR SUBSTANTIALLY IMPAIR YOU FROM THE PERFORMANCE OF YOUR DUTY AS A JUROR IN ACCORDANCE WITH THE INSTRUCTIONS GIVEN TO YOU BY THE COURT AND THE OATH THAT YOU TOOK AS JUROR?

A.   NO, SIR.

Q.   WERE YOU PRESENT THIS AFTERNOON WHEN THE COURT OUTLINED THE PROCEDURE THAT MIGHT BE FOLLOWED IN THIS CASE?

MS. MEYER:  OBJECTION, YOUR HONOR, AS ASKING FOR PRE-COMMITTMENT.

THE COURT:  NO.  OVERRULED.

MR. RUBIN:  I HAVE NOTHING FURTHER.

THE COURT:  MS. CHAHIN.

EXAMINATION

BY MS. CHAHIN:

Q.   THANK YOU, MA'AM.

GOOD AFTERNOON, MA'AM.

A.   YES.

Q.   I WANTED TO ASK YOU ON THE ANSWER ON PAGE 5 TO QUESTION NUMBER 24.  THE QUESTION ASKS IF YOU HAVE ANY MEDICAL CONDITIONS --

A.   RIGHT.

Q.   -- THAT MIGHT MAKE IT HARD FOR YOU TO SERVE AS A JUROR --

THE COURT:  I ASKED ABOUT THAT.  YOU GOING BACK TO THAT?

MS. CHAHIN:  I'M SORRY.  YOUR HONOR ASKED HER ABOUT MEDICATION.  COULD YOUR HONOR ASK HER ABOUT HER MEDICAL CONDITIONS.

THE COURT:  YOU CAN ASK.  I'M SORRY.

BY MS. CHAHIN:

Q.   MA'AM, IT INDICATES HERE -- YOU CHECKED YES AND YOU CHECKED THAT YOU HAVE HIGH BLOOD PRESSURE AND ARTHRITIS.

IS THERE ANYTHING ABOUT THAT THAT MIGHT MAKE IT DIFFICULT FOR YOU TO BE A JUROR IN THIS CASE?

A.   WELL, USUALLY SOMETIMES MY FEET SWELL AND THEN I CAN'T WALK ON IT.

Q.   WOULD THAT -- IF YOU WERE ABLE TO STAND IN THE JURY BOX OR WALK AROUND, WOULD THAT HELP RELIEVE THAT?  OR WOULD THAT MAKE IT DIFFICULT FOR YOU TO COME IN ON A DAILY BASIS?

HOW WOULD THAT AFFECT YOU AS A JUROR IN THIS CASE?

A.   USUALLY I DON'T NEVER KNOW WHEN IT'S GOING TO SWELL, MY FEET.  SO I HAD ASKED MY DOCTOR FOR AN EXCUSE.  BUT SHE SAY I WOULD HAVE TO GET A THING FROM THE JURY.

Q.   SO YOU ASKED THE DOCTOR TO GIVE AN EXCUSE BECAUSE OF YOUR FEET CONDITION?

A.   RIGHT.

Q.   WHEN YOUR FEET SWELL, DOES THAT HINDER YOUR ABILITY TO WALK?

A.   YES.

Q.   WOULD THAT MAKE IT DIFFICULT FOR YOU TO COME IN EVERY DAY?

A.   YES.

Q.   AND IF -- FOR EXAMPLE, IF YOU WERE JUST TO BE CHOSEN AS A JUROR AND IF ONE DAY YOUR FEET WERE TO SWELL, WHAT WOULD YOU HAVE TO DO?  WOULD YOU HAVE TO STAY HOME?

A.   WELL, I WOULD HAVE TO BRING MY CANE IN.  YOU KNOW, JUST HOP ON IT THEN.

Q.   AND IS THAT SOMETHING YOU WOULD BE ABLE TO DO?

A.   IT'S KIND OF DIFFICULT WHEN IT'S SWOLLEN.  IT'S ONLY THE RIGHT FOOT THAT'S SWOLLEN.

Q.   HOW OFTEN DOES THAT HAPPEN?

A.   I NEVER KNOW.  LIKE, IT WAS SWOLE TWO WEEKS AGO.  NOW THE SWELLING HAS GONE DOWN.

Q.   LET ME ASK YOU SOME QUESTIONS IN ANOTHER AREA.

DID YOU -- I'M -- OR I'M GOING TO GO BACK TO YOUR MEDICAL CONDITION FOR A MOMENT.

DID YOUR DOCTOR SAY HE WOULD WRITE AN EXCUSE FOR YOU OR DID HE ASK YOU TO ASK THE COURT ABOUT THAT?

A.   SHE WOULD WRITE IT BUT I WOULD HAVE TO BRING THE PAPERS FROM THE COURT FOR HER TO FILL OUT TO BRING BACK TO YOU.

Q.   IS THAT SOMETHING THAT YOU PLAN TO DO?

A.   IF I HAVE TO SERVE, PERHAPS.

Q.   MA'AM, IN REGARD TO YOUR VIEWS ON THE DEATH PENALTY, IF I COULD ASK YOU TO LOOK AT QUESTION NUMBER 39.  AND THE QUESTION IS "DO YOU FEEL THAT THE DEATH PENALTY IS USED FAIRLY OR UNFAIRLY."

YOU CHECKED YES.  AND YOU PUT "EVERYONE SHOULD PAY FOR THEIR CRIME, WHATEVER IT IS."

DO YOU UNDERSTAND THAT THIS TRIAL COULD POTENTIALLY HAVE TWO PHASES TO IT?  ONE WOULD BE TO DETERMINE THE GUILT OR INNOCENCE OF THE DEFENDANT -- GUILT OR -- WHETHER DEFENDANTS ARE GUILTY OR NOT OF THE CRIME AND THE SECOND

WOULD BE TO DETERMINE THE PENALTY?

A.   YES.

Q.   SO DO YOU UNDERSTAND THAT WE WOULDN'T EVEN GET TO THE QUESTION OF PENALTY, IF, FOR EXAMPLE, DEFENDANTS WERE NOT FOUND GUILTY?

A.   YES.

Q.   SO MY QUESTION TO YOU IS IF WE WERE TO GET TO THAT POINT WHERE THE DEFENDANTS WERE FOUND GUILTY OF ONE OR MORE MURDERS IN THIS CASE, BASED UPON THE WAY YOU FEEL ABOUT THE DEATH PENALTY WOULD YOU BE PREDISPOSED TO VOTE IN A CERTAIN WAY OR A CERTAIN MANNER BEFORE WE GO ON TO THE SECOND PHASE OF THE TRIAL?

A.   YES.

Q.   AND HOW WOULD YOU BE PREDISPOSED TO VOTE?

A.   OH, NO.  I WOULDN'T BE PREDISPOSED TO VOTE.

Q.   LET ME ASK YOU THE QUESTION A DIFFERENT WAY.

IF WE GOT TO THE SECOND PHASE OF THE TRIAL, AT THE BEGINNING OF THE SECOND PHASE OF THE TRIAL WOULD YOU ALREADY HAVE A PREFERENCE FOR, LET'S SAY, THE DEATH PENALTY OVER LIFE WITHOUT RELEASE OR CONVERSELY FOR LIFE WITHOUT RELEASE OVER THE DEATH PENALTY?

A.   I WOULD HAVE TO WAIT UNTIL THE VERDICT IS IN ON BOTH SIDES.

Q.   SO AT THE START OF THE SECOND PHASE OF THE TRIAL WOULD YOU BE OPEN AND IMPARTIAL TO CONSIDER BOTH PENALTIES?

A.    YES.

MS. CHAHIN:  I HAVE NOTHING FURTHER, YOUR HONOR.

THE COURT:  ALL RIGHT.  I'LL TAKE YOUR JURY QUESTIONNAIRE BACK.

DO NOT DISCUSS ANY QUESTIONS THAT WERE ASKED OR ANY ANSWERS YOU GAVE.

PROSPECTIVE JUROR:  OKAY.

(PROSPECTIVE JUROR NUMBER 202 EXITED THE COURTROOM.)

THE COURT:  ALL RIGHT.  WITH REGARD TO JUROR NUMBER 202?

MS. MEYER:  PASS FOR CAUSE, YOUR HONOR.

THE COURT:  MR. RUBIN?

MR. RUBIN:  YES.  I CHALLENGE THE JUROR FOR CAUSE.

THE COURT:  MS. CHAHIN?

MR. CHAHIN:  NO, YOUR HONOR.  I WOULD NOT JOIN THE CHALLENGE FOR CAUSE.

THE COURT:  ALL RIGHT.

MR. RUBIN?

MR. RUBIN:  DID YOU WANT TO HEAR FROM ME, YOUR HONOR?

THE COURT:  I NEED YOUR GROUNDS.  I DON'T NEED A SPEECH.  BUT JUST THE GROUNDS.

MR. RUBIN:  YOUR HONOR, IT'S, I THINK, APPARENT THAT THIS LADY BELIEVES THAT THERE'S ONLY ONE POSSIBLE