# GOVERNMENT EXHIBIT 51

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO:  CR-02-220(B)-DT |
| | ) | |
| Plaintiff, | ) | CRIMINAL |
| | ) | |
| vs. | ) | Los Angeles, California |
| | ) | |
| IOURI MIKHEL, | ) | Wednesday, August 30, 2006 |
| JURIJUS KADAMOVAS, | ) | (10:53 a.m. to 11:59 a.m.) |
| | ) | (1:35 p.m. to  4:16 p.m.) |
| Defendants. | ) | |

JURY TRIAL (11th DAY)
VOLUME XI

BEFORE THE HONORABLE DICKRAN TEVRIZIAN,
UNITED STATES DISTRICT JUDGE

EXCEPTIONAL REPORTING SERVICES, INC
14493 SOUTH PADRE ISLAND DRIVE
SUITE A-400
CORPUS CHRISTI, TX 78418-5940
361 949-2988

112

penalty, would you automatically vote for the imposition of the death penalty regardless of any penalty-phase evidence introduced?

PROSPECTIVE JUROR NUMBER 239:  No.

THE COURT:  And because of your attitude toward the death penalty, would you automatically vote to impose the penalty of life without the possibility of release regardless of any penalty-phase evidence introduced?

PROSPECTIVE JUROR NUMBER 239:  No, I would not.

THE COURT:  Ms. DeWitt.

MS. DeWITT:  Good morning, ma'am.

PROSPECTIVE JUROR NUMBER 239:  Good morning.

MS. DeWITT:  Could you turn to page six of your jury questionnaire and, specifically, to question 26.

PROSPECTIVE JUROR NUMBER 239:  May I pull my glasses out, please?

THE COURT:  Sure.

MS. DeWITT:  Yes, please.

PROSPECTIVE JUROR NUMBER 239:  Okay, you said -- where should I turn?

MS. DeWITT:  Question number 26.

PROSPECTIVE JUROR NUMBER 239:  All right.

MS. DeWITT:  This is the question that asks about your general feelings regarding the death penalty.  To begin with, ma'am, could you tell the Court and the parties what your

238

PROSPECTIVE JUROR NUMBER 256:  No.

THE COURT:  Because of your attitude toward the death penalty, would you automatically vote for the imposition of the death penalty regardless of any penalty-phase evidence introduced?

PROSPECTIVE JUROR NUMBER 256:  No.

THE COURT:  And finally, because of your attitude toward the death penalty, would you automatically vote to impose a penalty of life without the possibility of release regardless of any penalty-phase evidence introduced?

PROSPECTIVE JUROR NUMBER 256:  No.

THE COURT:  Ms. Meyer.

MS. MEYER:  Thank you, your Honor, just briefly.

Good afternoon, ma'am.

PROSPECTIVE JUROR NUMBER 256:  Hi.

MS. MEYER:  Could you just turn to your answer to question ten.  I believe it's on page two.  You noted there that you're currently unemployed?

PROSPECTIVE JUROR NUMBER 256:  Yes.

MS. MEYER:  Can you just tell me what types of jobs or the principal type of job you held as an adult?

PROSPECTIVE JUROR NUMBER 256:  I've been secretary to attorney's office; I've been an officer manager for a machine repair shop.

MS. MEYER:  Thank you.  Oh, sorry.  Were you done?

262

- until the Indictment was read when I was here on the 11th, I hadn't remembered it until I heard the Indictment.  Then I remembered hearing a few things.

THE COURT:  I'll give you this back.  Who's going to question?  Ms. DeWitt.

MS. DeWITT:  Just briefly, your Honor.

MS. DeWITT:  Good afternoon, ma'am.

PROSPECTIVE JUROR NUMBER 261:  Good afternoon.

MS. DeWITT:  Could you turn to page six of your jury questionnaire and, specifically, to question number 26?  In response to the question about your general feelings about the death penalty, you said that you don't think you can have general feelings.  Rather than feelings, maybe a better way to ask you is do you have any opinions or thoughts that you could share with us about your attitude toward the death penalty either whether you're for or against it?

PROSPECTIVE JUROR NUMBER 261:  I think it would depend on the circumstances.  Sometimes you hear on the news of certain murders being committed, children or whatever, and then you think to yourself oh that person should go.  That person should be gone.  And then other times you hear of cases where it could be gang related, where you know the person suspected of the murder comes from a bad home or whatever.  It all depends, to me, as to the circumstances of the occurrence.

MS. DeWITT:  So are you a person who, if selected as

266

opinion I have at this point, you know.

MR. RUBIN:  Okay.  You haven't thought about it since July 11th?

PROSPECTIVE JUROR NUMBER 261:  I have -- well, I have gone to a psychiatrist or psychologist I guess you would say after my divorce.  And I have utilized their services, but I can't say they're good, they're bad or they didn't help me. They did help me at that point.

MR. RUBIN:  My -- my question is that if a psychologist, psychiatrist or mental health professional comes into court and testifies, do you have any opinion about their testimony?

PROSPECTIVE JUROR NUMBER 261:  I would have to hear their testimony.

MR. RUBIN:  Okay.  So in order words, they start out at the same level as all other witnesses?

PROSPECTIVE JUROR NUMBER 261:  Yes.

MR. RUBIN:  Okay.  And except for the police officers?

(Laughter)

PROSPECTIVE JUROR NUMBER 261:  They would all start out at the same level.

MR. RUBIN:  All right, ma'am.  Thank you very much.

PROSPECTIVE JUROR NUMBER 261:    You're welcome.

THE COURT:  Mr. Lasting.

267

MR. LASTING:  Yes, thank you, your Honor.  But I think the questions have been fully covered.  I don't have anything else.

THE COURT:  All right.  Let me have your jury questionnaire back.

PROSPECTIVE JUROR NUMBER 261:  Okay.

THE COURT:  Please do not discuss your answers or any of the questions we asked.

PROSPECTIVE JUROR NUMBER 261:  Okay.

THE COURT:  You can go into the jury room.

PROSPECTIVE JUROR NUMBER 261:  Thank you.

(Prospective Juror 261 was excused)

THE COURT:  All right.  With regard to Juror Number 261?

MS. DeWITT:  Pass for cause, your Honor.

THE COURT:  Mr. Rubin.

MR. RUBIN:  Thank you, your Honor.  I have no cause.

THE COURT:  Mr. Lasting.

MR. LASTING:  Pass for cause.

THE COURT:  All right, 261 will be invited back.

That concludes our questioning for today.  I'll tell you who's scheduled to be here tomorrow.  And with the exception of the one juror that's coming on Friday, after tomorrow that will conclude our jury examination.  In the a.m., we have 59, 206, 262, 264, 265, 266, 267, 268, 269, 270, 271,

269

wish this to happen.  Franklin ain't going to watch the whole trial.  He's going to watch the opening statement.  If they present money laundering, expert evidence, he'll watch that and that's it basically.

THE COURT:  What's your opinion -- what's your feeling, Mr. Rubin?

MR. RUBIN:  The case agents are allowed to be here if they --

THE COURT:  I know that.  But we've got two case agents.

MR. RUBIN:  That's right.  And I don't think they need any more support or show of support for the jury.

THE COURT:  Mr. Lasting?

MR. LASTING:  I'm going to object, your Honor.

MR. DUGDALE:  Thank's fine, your Honor.  Thank you.

THE COURT:  Yeah, you've got two designated.  I think that's sufficient.

MR. DUGDALE:  Thank you.

MR. LASTING:  Thank you, your Honor.

THE COURT:  Plus, you're getting a copy of the daily in this case anyway as I understand it, so he can read the transcript.

MR. DUGDALE:  That'll be good reading.  Thank you.

**(This proceeding was adjourned at 4:16 p.m.)**