# GOVERNMENT

# EXHIBIT 53

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO:  CR-02-220(B)-DT |
| | ) | |
| Plaintiff, | ) | CRIMINAL |
| | ) | |
| vs. | ) | Los Angeles, California |
| | ) | |
| IOURI MIKHEL, | ) | Wednesday, September 6, 2006 |
| JURIJUS KADAMOVAS, | ) | (9:34 a.m. to 1:57 p.m.) |
| | ) | |
| Defendants. | ) | |

JURY TRIAL (15th DAY)
(Volume XV)

** PARTIAL TRANSCRIPT OF PROCEEDING **
(OPENING STATEMENTS)

BEFORE THE HONORABLE DICKRAN TEVRIZIAN,
UNITED STATES DISTRICT JUDGE

EXCEPTIONAL REPORTING SERVICES, INC
14493 SOUTH PADRE ISLAND DRIVE
SUITE A-400
CORPUS CHRISTI, TX 78418-5940
361 949-2988

4

**Los Angeles, CA; Wednesday, September 6, 2006; 9:34 a.m.**

**(Interpreters utilized for translation)**

**(Entire Proceeding Recorded; Partially Transcribed)**

**(Jurors enter courtroom at 9:34 a.m.)**

**THE COURT:** Good morning, ladies and gentlemen of the jury.

The record will indicate all jurors are present, all counsel are present, and all parties are present.

Each side has an opportunity at this time to make an opening statement. Opening statements are merely a roadmap, it's not evidence, it's a roadmap of what the attorneys intend to prove in this case.

Now, I do not want you to take any notes during opening statements, so please close your notebooks. The reason for this is that opening statements is not evidence and I don't want to confuse you with opening statements being evidence in the case. After the opening statements have been concluded then you may open your notebooks and take notes as the testimony is elicited from the witness stand.

All right, at this time the Government has indicated they're going to make an opening statement. Ms. DeWitt is going to make the opening statement on behalf of the Government.

//

//

**EXCEPTIONAL REPORTING SERVICES, INC**

Defendant Kadamovas and this message said, in essence, "The plan is still on. We have a week to coordinate. We've made enough mistakes. This could be our last chance for a while." Fortunately this message was intercepted by an alert correctional officer and it never got to Defendant Kadamovas.

So, despite their best efforts, Iouri Mikhel and Jurijus Kadamovas are still in custody and they still have to face trial. This trial.

So now, ladies and gentlemen, we begin that trial. The trial that these Defendants tried so desperately to avoid by escaping from custody.

Thank you.

THE COURT: All right, I think we're going to break for lunch at this time, returning at 1:25 in the jury room, 1:30 in the courtroom. Remember the admonition.

We'll stand in recess.

(Jurors exit courtroom at 11:59 a.m.)

(Lunch recess from 11:59 a.m. to 1:30 p.m.; parties present)

(Outside the presence of the jury)

THE COURT: All right, let's go back on the record outside the presence of the jury.

I received your report that you sent to me, Mr. Rubin.

MR. RUBIN: Thank you, your Honor.

87

**MR. DUGDALE:** I think somebody did that up there. Somebody may have pressed the button. The problem is that the disk is a copy of a disk, so apparently the DVD player is such that it won't play a copy of the disk, it will only play an original disk for some reason. The tech person explained this to me.

**THE COURT:** All right.

**MR. DUGDALE:** So we're having a DVD player brought over. It should take five minutes to set up. We just ask for a brief five minutes.

**THE COURT:** That's fine.

**MR. DUGDALE:** Thank you, your Honor.

**THE COURT:** But get him over here as soon as possible, because I don't want to have any down time.

**MR. DUGDALE:** There won't be any down time. Thank you.

**THE COURT:** All right. With regard to Defendant Mikhel, anything Mr. Callahan?

**MR. CALLAHAN:** Nothing further, your Honor.

**THE COURT:** Anything with regard to Defendant Kadamovas?

**MR. LASTING:** Not at this time, your Honor.

**THE COURT:** All right. Then we'll bring the jury out and, Mr. Callahan, you may make an opening statement on behalf of your client.

88

(Jurors enter courtroom at 1:33 p.m.)

THE COURT:  All right, the record will indicate all jurors are present, all counsel are present, and all parties are present.

At this time, Mr. Richard Callahan, you may make an opening statement on behalf of your client, Mr. Mikhel.

MR. CALLAHAN:  Thank you, your Honor.

Ladies and gentlemen, we are about to enter a world with which we really have no ability to fathom or relate to. It is a world of finance.  It is a world of international money transactions.  It is a case about money manipulation.  It is a world filled with luxury, mansions, money, travel.  It was the world until early 2002 of Iouri Mikhel.  It is no longer that world obviously.  But the Government wants to make the world of Iouri Mikhel into something beyond this.  They want to make his world about murder.  And that is why we're here.

Good afternoon and thanks again for your participation.  I'm Richard Callahan.  Along with Dale Rubin I represent Iouri Mikhel.

The Prosecution has laid out its evidence this morning in exhausting detail, which took over two hours.  And for everybody's benefit I'm going to ask for only about ten minutes of your time.

The story of this case really begins before Iouri Mikhel left Russia and came to the United States in 1996 at the

95

Mr. Altmanis is going to get up on that witness stand and he's going to try to sell you a bill of goods.  Don't buy it.

Thank you.

THE COURT:  Ms. Chahin?

MS. CHAHIN:  Thank you, your Honor.

Ladies and gentlemen, we've spent the better part of this morning listening to the Government's opening statement. And as the Court explained to you, opening statements are not evidence.  Similarly, what I am going to be stating to you in my opening statement is also not evidence.  And the reason it's important to remember that is because just because the Government stood here and made certain allegations about Mr. Kadamovas and what they expect the evidence will show, the fact that they said it simply does not make it so.

This is where all of you come into the process.  As the Court explained to you yesterday and here this morning, you serve a very important function in this process, because this will be a very lengthy case and it may be as long as a couple of months.  Your role will be here to sit here and listen to the evidence, sort through the evidence, assess the credibility of the witnesses, view the numerous exhibits, and arrive at the truth of what really happened in this case.  My role and that of my cocounsel, Mr. Lasting, will hopefully be to help you sort through that evidence and through our examinations, through the questions that we ask, to direct you to what we

believe is important for you to focus on and look at as you are determining the evidence in this case.

And what I intend to do in my opening statement is just a little bit to outline for you what I believe the truth is that is going to be shown to you over the course of this case, and that is that Mr. Kadamovas is not guilty of any of the charges alleged against him. He was not involved in any hostage takings, he did not participate in killing anyone, he did not knowingly or willfully participate in any money laundering activity, and he did not conspire with anyone to escape from the Metropolitan Detention Center.

Now, Mr. Callahan here in his opening statement told you about his client, Mr. Mikhel, and he admitted to you that Mr. Mikhel was a money mover, that he was involved in money laundering activity. And at this point it's important for me to bring up a very important point. I need you to understand that this is two separate trials going on at the very same time for the conveniences of the parties, for the convenience of the Court. But it's very important for you to compartmentalize and make an individualized determination of what the evidence shows with regard to each Defendant. Mr. Callahan explained to you that you will hear evidence of false corporate documents, bank accounts, aliases, but with respect to Mr. Kadamovas you will hear no such evidence.

Now, this brings me to another point, and that is

97

that this morning when Ms. -- and this also goes to the fact that I need you to make an individualized determination of the evidence in this case.  This morning when Ms. DeWitt was making her opening statement countless times she referred to the Defendants, in the plural sense, or she referred to Mr. Mikhel and Mr. Kadamovas did such and such.  It's important for you, when you're listening to and evaluating the evidence, look at precisely and exactly what the evidence was with respect to each Defendant.

And I'll just give you one brief example of that, and that was, for example, when Ms. DeWitt was referring to a purported escape attempt from the MDC and she said in their cells they had a virtual hardware store of tools to escape from the Detention Center.  After you hear all of the evidence you will see that with respect to Mr. Kadamovas there was no such evidence found in his cell.  And I highlight this for you just so that you can make sure that you compartmentalize and not lump the Defendants together, but consider the evidence as to each of them individually and separately.

Now, you heard a little bit -- Ms. DeWitt talked this morning a little bit of Designed Water World.  And this was a business that was set up to make custom aquariums.  You saw a picture of it earlier.  In order to understand what that business is about I need to backtrack a little bit and to talk to you about what the evidence will show about Mr. Kadamovas

98

and his interest in this exotic aquarium business.

Mr. Kadamovas had an exotic aquarium business before he even came to this country.  He's always had an interest in fish and he had innovative and creative designs where he believed that aquariums were not simply, you know, like the Mom and Pop aquarium that you buy, just a standard 10-gallon aquarium boxy frame that you buy at the local pet shop, but he had designs that were innovative and creative and these were aquariums that were really considered to be -- by himself and by other people to be pieces of art.  They would hang on a wall and they would be framed.  And this was a vision that he had for himself and he had this dream of setting up this store.

Now, when he came to this country, he came to this country in approximately 1998, and when he did so the evidence will show that he worked very hard.  He had at least three separate jobs, the first of which was he was working in a dinner theater doing lighting.  It was called Beyond the Stars and it was in Glendale and he worked there doing lighting.  He also worked as a mover in a moving company, engaging in physical labor, helping people transport their articles of personal effects within California and even outside of the state.  And he also worked selling vacuum cleaners.

And all the while he had those jobs he also had this interest in setting up this aquarium business.  And what he would do is he would place advertisements in the local Russian

EXCEPTIONAL REPORTING SERVICES, INC

newspaper and he would advertise about these exotic aquariums that he would like to sell.  And it was through these ads that he met his first business partner, who was a Mr. Chernykh (phonetic).  Mr. Chernykh and Mr. Kadamovas tried to get this business underway and while Mr. Kadamovas was partners with Mr. Chernykh he met Mr. Mikhel.  He met him through the moving company.  And Mr. Mikhel shared his vision and shared his desire to pursue this aquarium store.  And it was at that point that Mr. Mikhel bought out Mr. Chernykh and became Mr. Kadamovas's business partner and they opened Designed Water World.

The evidence is going to show that Mr. Kadamovas, once he had this financial backer he worked very hard to try and get this business off the ground.  From the beginning they performed significant manual labor and they bought this -- you've seen pictures of what the shop looked like during the Government's opening statement, and you will hear that they spent significant efforts to bring it to that stage where they were going to be able to show and present these innovative designs that they had.

Now, again, my statements in opening are not evidence, so I am going to address the points that I'd like you to focus on.  Mr. Callahan talked about the fact that the Government's case is heavily going to rely on the testimony of Ainar Altmanis and a couple of other witnesses who have also

100

been promised favorable treatment in this case.  What I ask you to consider is something that Mr. Callahan has already alluded to in his opening, and that is that these are witnesses whose credibility has to be seriously questioned.  And the reason for that is because these are witnesses who are coming to testify based on the expectation of receiving favorable treatment, treatment that they have already received, treatment that has been received and expects to be received by their family members, and also because this treatment or this favorable expectation that they have has not been fully accomplished yet. You will hear that these individuals have not been sentenced yet on their own cases and have an expectation of receiving a severely reduced sentence based on the testimony that they will be giving in this court.

Mr. Altmanis's payment for his testimony comes in several forms; a reduced sentence for himself, his family receiving and being permitted to retain proceeds of criminal activity, and also his expectation not only of receiving a significantly reduced sentence, but of not being faced with the possibility of a death sentence or even life in prison in a case where he has personally participated, admitted to participating in the murder of at least five people.  When he comes in here to testify before you he still doesn't know yet what the full extent of his payment will be and he will be here and he's going to be trying to earn the rest of his payment.

And he's going to come in here and we submit that the testimony that he is going to give you are lies.

As I indicated, there will also be other witness whose testimony must also be cautiously considered and questioned.  These include Aleksejus Markovskis and Natalya Solovyeva.

And as I stated to you, this will be a long trial.  There will be a lot of evidence.  I ask you to listen to all of the evidence carefully, not just that elicited during the direct examination of the witnesses, but also during the cross-examination of the witnesses.  And I submit to you that once you do that the evidence is going to show you that Mr. Kadamovas is not guilty of these charges.

Yesterday when we started and undertook this process the Judge told you something very important and he told you that you are about to undertake one of the most important responsibilities of citizenship, and that is the determination of justice.  And that is what we are asking you to do as well and we will ask you to return a verdict of not guilty as to Mr. Kadamovas.

Thank you.

**THE COURT:**  Thank you.

We're going to take a short recess.  There are some technical things that we have to set up in your absence, so I'm going to let you go into the jury deliberation room for about

102

five minutes.

        **(Jurors exit courtroom at 1:56 p.m.)**

        **(Discussion off the record)**

        **(This portion of the proceeding concluded at 1:57:38)**

EXCEPTIONAL REPORTING SERVICES, INC