# GOVERNMENT EXHIBIT 55

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

# DRAFT COPY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO:  CR-02-220(B)-DT |
| | ) | |
| Plaintiff, | ) | CRIMINAL |
| | ) | |
| vs. | ) | Los Angeles, California |
| | ) | |
| IOURI MIKHEL, | ) | Wednesday, January 24, 2007 |
| JURIJUS KADAMOVAS, | ) | ( 9:05 a.m. to 11:56 a.m.) |
| | ) | ( 1:31 p.m. to  4:12 p.m.) |
| Defendants. | ) | |

JURY TRIAL (65th DAY)
(VOLUME LXV)

BEFORE THE HONORABLE DICKRAN TEVRIZIAN,
UNITED STATES DISTRICT JUDGE

EXCEPTIONAL REPORTING SERVICES, INC
14493 SOUTH PADRE ISLAND DRIVE
SUITE A-400
CORPUS CHRISTI, TX 78418-5940
361 949-2988

10

**THE COURT:**  Are you going to make an opening statement this morning?

**MR. RUBIN:**  Yes.

**THE COURT:**  Well, I think you have an obligation to tell the Government what points you're going to cover and ask the jury that you're going to show evidence with regard to mitigating factors.

Look.  You know after yesterday I went back and I had given to me information from Mr. Randall Schnack (phonetic).  It indicates that through September the 30th, 2006, Mr. Callahan was paid $715,440.65 -- I'm sorry -- and $.05.  Through 11/27, November 27th, 2006, you were paid $956,463.32.  Ms. Chahin was paid through July 31st, 2006, $142,553.21.  Mr. Lasting was paid through August 31st, 2006, $677,392.35.

When you stand up here and say you're not prepared; you can't go forward -- I mean I look at what's gone on here with regard to the billings.  And in order to get these billings, you've got to do work and all the work has to be documented.

**MR. RUBIN:**  As I have told this Court numerous times in the past, I am willing to bring in every billing and sit down with the Court --

**THE COURT:**  No. This is not a billing issue.

**MR. RUBIN:**  -- and explain --

**THE COURT:**  Wait.

**DRAFT COPY**

14

**THE COURT:** All right.  I want you to turn over now what your mitigating circumstances that you're going to be utilizing so that the Government is prepared.

Now, anything that you want to bring up, Mr. Lasting?

The clerk tells me there was a problem with a telephone order that I signed.

**MR. LASTING:** There was, your Honor.

I believe that the special administrative --

**(Pause)**

I believe the special administrative measures that have been imposed upon Mr. Kadamovas preclude him from making a telephone call unless it's monitored by, I think, someone from the FBI or someone that speaks the language that he's going to be speaking into the telephone.  The other problem with it is he was hoping to call the Lithuanian Embassy in Washington D.C. And the time difference I guess presents a problem, because that embassy shuts down Eastern Standard Time, which is two o'clock in the afternoon here.

**THE COURT:** Well, the consular notification and access is provided by treaty I believe.  And I don't know if Lithuania is a signatory to the treaty.  But in this case, I believe when I first got it I had the Government re-verify that the consular notification was in fact made.

But the telephone call -- I permitted two telephone calls to be made to the Lithuanian Consulate.  Now, there is no

15

attorney-client privilege.  So the telephone calls under the special administrative order can be monitored by the FBI.

So I do think that Mr. Dugdale or Ms. DeWitt can assist you to get those telephone calls completed.

MS. DEWITT:  Just two things, your Honor.

One is in addition to not only giving consular notification, we did it twice just to sort of belt and suspender the issue.  We also made special arrangements for somebody from the consulate to actually come in and visit Mr. Kadamovas at an earlier date.  So he's had full access to consulate members and anything relating to consular notification and contact.

With respect to this telephone call, I think what Mr. Lasting is saying is not that he has been in any way inhibited from having this or making this phone call, but that he doesn't want the FBI to monitor it.  There's nothing I can do about that.  We have a right to monitor these calls.  And unless he's telling me that there's some other problem other than that, I would be happy to help him work out any problems.  But I think that's what the problem is not that anybody's stopping him from doing the call.

MR. LASTING:  That's not what I was saying, your Honor.  I wasn't saying that he objects to having somebody monitor.  That's provided under the SAMS.  I think the problem is because somebody has to monitor it, there have to be

**DRAFT COPY**

16

arrangements made.  They have to schedule it in advance and then trying to work that out around the time when the embassy's open.  It was my perception of what the problem is.

I found out this morning that he didn't get the call.  Perhaps the thing to do is to let me confer further with Mr. Kadamovas about it.  I'll talk to Ms. DeWitt.

It appears to me it's something that can be worked out and that the Court's order will be honored.  And if we can't work it out in a reasonable fashion, I'll bring it back to the Court's attention.

**THE COURT:**  All right.  Because under the treaty -- I'm looking at the documentation that I have.

It says, "Summary of requirements pertaining to foreign nationals:

One.  When foreign nationals are arrested or detained, they must be advised of the right to have their consular officials notified.

Two.  In some cases the nearest consular officials must be notified of the arrest or detention of a foreign national regardless of the national's wishes.

Third.  Consular officials are entitled to access their nationals in detention and are entitled to provide consular assistance."

And there're some others that are not applicable.  And then I'm looking over at the mandatory notification, and

**DRAFT COPY**

17

I'm looking for Lithuania.  It's not one of the countries that's on the list.

But if you'll report back to me regarding what efforts you've made and where the problem is, either I can assist you or the Government can assist you.

MR. LASTING:  I appreciate that, your Honor.  I'm cautiously optimistic we can resolve this without having to burden the Court with it further.

THE COURT:  It appears that they are -- Lithuania is a party to the VCCR, whatever that is.

Yeah.  Vienna Convention on Consular Relations.  So they are a signatory to the Vienna Convention on Consular Relations.

MR. LASTING:  Can I raise one other issue, your Honor, unrelated to that?

Your Honor, is the Court going to give the jury instructions this morning?

THE COURT:  I'm going to give -- not all of them, obviously.  But I am going to give the three preliminary instructions that the Government first -- yesterday.  They basically restate certain of the information that was given to the jury at the initial selection process.

MR. LASTING:  I'm looking at the Government's proposed instructions for the penalty phase.  I'm looking at Instruction Number 10 --

DRAFT COPY