# GOVERNMENT EXHIBIT 60

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


# DRAFT COPY


| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO:  CR-02-220(B)-DT |
| | ) | |
| Plaintiff, | ) | CRIMINAL |
| | ) | |
| vs. | ) | Los Angeles, California |
| | ) | |
| IOURI MIKHEL, | ) | Friday, December 15, 2006 |
| JURIJUS KADAMOVAS, | ) | ( 9:28 a.m. to 11:41 a.m.) |
| | ) | ( 1:22 p.m. to  1:29 p.m.) |
| Defendants. | ) | |

JURY TRIAL (55th DAY)
(VOLUME LV)


BEFORE THE HONORABLE DICKRAN TEVRIZIAN,
UNITED STATES DISTRICT JUDGE


EXCEPTIONAL REPORTING SERVICES, INC
14493 SOUTH PADRE ISLAND DRIVE
SUITE A-400
CORPUS CHRISTI, TX 78418-5940
361 949-2988

3

**INDEX**

| WITNESSES FOR THE DEFENSE | DIRECT | CROSS | REDIRECT | RECROSS |
|---|---|---|---|---|
| Louis Perez | | 33 | | |
| By Mr. Lasting | 6 | | 39 | |
| By Mr. Rubin | 26 | | 43 | |
| James Davidson | | 66 | | -- |
| By Mr. Lasting | 45/63 | | -- | |
| Jose Gonzalez | | 80 | | -- |
| By Mr. Lasting | 78 | | -- | |

| DEFENSE EXHIBIT | RECEIVED |
|---|---|
| Number 2070 | 5 |

Davidson - Cross / By Mr. Dugdale               77

possession of a tape-recording of Mr. Safiev's voice after Mr.

Altmanis gave you that information during that debriefing?

A    Yes.

Q    And do you know where that was found at?

A    I do.

Q    And where was it found at?

A    Mr. Mikhel's residence.

Q    Are you sure it was Mr. Mikhel's residence and not Mr.

Kadamovas's residence?

A    I'm sorry.  It was Mr. Kadamovas's residence.  Yes.

          **MR. DUGDALE:**  Thank you.  I have no further

questions, your Honor.

          **MR. LASTING:**  No additional questions, your Honor.

Thank you.

          **MR. RUBIN:**  No, sir.  Thank you.

          **THE COURT:**  You may stand down.

     **(The witness is excused)**

          **THE COURT:**  Mr. Lasting?

          **MR. LASTING:**  Yes, your Honor.  We call Special Agent

Jose Gonzalez.

     **(Witness sworn)**

          **THE CLERK:**  Please be seated.  And please state your

full name for the record.

          **THE WITNESS:**  Jose Gonzalez.

//

**DRAFT COPY**

Gonzalez - Direct / By Mr. Lasting          78

**DIRECT EXAMINATION**

**BY MR. LASTING:**

Q    Sir, can you tell the Jury what your occupation is?

A    Special Agent with IRS Criminal Investigation.

Q    And in connection with your duties, did you participate in interviews with Sabrina Tuinan in July of 2006?

A    That's correct.

Q    Were you personally present?

A    Yes.

Q    And was there an interview of Ms. Tuinan that - were there two separate interviews?

A    Yeah.  It was a two-day interview, but the second interview happened two days later.

Q    So the first interview, was that on July the 20th, 2006?

A    Yes.

Q    And among the subjects that were discussed with Ms. Tuinan on that occasion, did the subject of her purchasing cellular telephones come up?

A    Yes.

Q    And did Ms. Tuinan tell you how many cellular telephones she had purchased?

A    Yes.

Q    And how many did she say she bought?

A    She said she purchased four cellular phones.

Q    Was she asked who these telephones were for?

**DRAFT COPY**

Gonzalez - Direct / By Mr. Lasting          79

A     Yes.

Q     Did she answer that question?

A     Yes.

Q     And the first time she ever answered that question, what did she say?

A     She said that they were for Michael Tuinan, Thomas Tuinan, Iouri Mikhel, and one of Mikhel's co-defendants whose English name was 'Peter'.

Q     And did she tell you how many of those cellular telephones had been delivered to the Metropolitan Detention Center?

A     Yes.

Q     How many?

A     Two.

Q     Did she tell you - Did the subject of the telephones come up again two days later on July the 22nd, 2006?

A     Yes, it did.

Q     And at this time, did she change her story about who the phones were for?

          **MS. DeWITT:**  Objection.  Argumentative.

          **THE COURT:**  The form of the question is argumentative.

          **MR. LASTING:**  I'm sorry.

**BY MR. LASTING:**

Q     At this time, did she make a different statement as to who the telephones were for?

**DRAFT COPY**

Gonzalez - Cross / By Ms. DeWitt          80

A     Yes.

Q     Now, two days later, July 22nd, who did she say the two telephones that went to the MDC were for?

A     One was for Iouri Mikhel and the second was for either the person she referred to as 'Peter', one of Mikhel's co-defendants, or Mikhel's other co-defendant whom she referred to as 'the other Yuri'.

          MR. LASTING:  I have no further questions.

          Thank you, sir.

          MS. DeWITT:  You guys have questions?

          MR. CALLAHAN:  No questions, your Honor.

                    CROSS EXAMINATION

BY MS. DeWITT:

Q     Special Agent Gonzalez, you testified about two interviews that you participated in, and they occurred approximately two days apart?

A     Yes.  That's correct.

Q     Is the reason that you went back the second time because you weren't able to complete the interview the first time?

A     Yes.

Q     And you testified that in that second interview, when you had a chance to talk to Ms. Tuinan again, that she told you who she understood the cell phones were for, is that correct?

A     That's correct.

Q     And again, who did she tell you she understood the cell

**DRAFT COPY**

Gonzalez - Cross / By Ms. DeWitt          81

phones were intended to be for, the ones that she had purchased?

A    She said that one was for Michael Tuinan, one was for Thomas Tuinan, one was for Iouri Mikhel, and the last one was for either Mikhel's co-defendant whom she referred to as 'Peter', or Mikhel's other co-defendant whom she referred to as 'the other Yuri'.

Q    And during the course of that second interview, did the subject matter of the cell phones in fact come up more than once?

A    That's correct.

Q    And what did she tell you the second time that that subject came up with respect to who was supposed to get the cell phones?

A    She said the exact same thing.

Q    And, Special Agent Gonzalez, during the course of these two interviews, did Ms. Tuinan tell you who she understood was going to be involved in this escape attempt?

A    Yes.

Q    Who did she tell you she understood was going to be involved in this escape attempt?

A    It was Iouri Mikhel and his two co-defendants, the person she referred to as 'Peter', and the other person she referred to as 'the other Yuri'.

          **MS. DeWITT:**  No further questions, your Honor.

**DRAFT COPY**

82

MR. LASTING:  I have no further questions, your Honor.

THE COURT:  You may stand down.

**(The witness is excused)**

MR. LASTING:  Your Honor, on behalf of Mr. Kadamovas, the defense rests.

THE COURT:  All right.  Let me see you at sidebar.

**(Sidebar begins at 11:23 a.m.)**

THE COURT:  All right.  For the record, do both defendants, Mikhel and Kadamovas, renew their motion for judgment of acquittal pursuant to Rule 29?

MR. CALLAHAN:  Yes, your Honor.

MR. LASTING:  Yes, your Honor.

THE COURT:  All right.  The motions are deemed made and denied for purposes of preserving the record.

You have a rebuttal witness?

MR. DUGDALE:  Yes, your Honor.  We have one who is subpoenaed for the 3rd, based upon the Court's earlier instructions, who we may or may not call.

We have two that we potentially could call, Special Agent Gogley, to testify about the origin of the insurance checks that were talked about in the defendant's case, and Special Agent Davidson to talk about the video, the Affordable Portables video.  Dear Lord, I don't want to play that whole thing for them again, and we would cut that down substantially.

**DRAFT COPY**

104

going to have the jury.

MR. SPEAKER:  Okay.

MR. SPEAKER:  Oh, okay.

THE COURT:  Yeah, we have to come back because I have to tell -

MR. SPEAKER:  1:15.

THE COURT:  - them about their admonition not to form or express any opinion.

MR. SPEAKER:  Fair enough.

MR. SPEAKER:  Okay.

THE COURT:  All right.

MS. CHAHIN:  Your Honor, would it be all right if I left and Mr. Lasting was just here for that?

THE COURT:  That's fine.

MS. CHAHIN:  Thank you.

**(Recess from 11:50 a.m. to 1:22 p.m.; parties present)**

**(Outside the presence of the jury)**

THE CLERK:  Please come to order.  This Court is again in session.

THE COURT:  All right, outside the presence of the jury.  The record will indicate all parties and counsel are present.

Based upon Mr. Mikhel's statement to the Court that he's desirous of testifying on his own behalf and the fact that the Court is going to be in recess from today, the 15th of

**DRAFT COPY**

105

December, through January the 2nd, returning on January the 3rd, I am not going to have the Government put on its rebuttal case at this time, the Government's rebuttal case to be put on after the Defendants have in fact rested.

So to avoid additional surprise I am not going to have the Government call any witnesses today.  I will simply bring the jury in, inform them that we finished a little earlier and we've run into a witnesses scheduling program.  And in that way we'll put the matter over till January the 3rd, with the Court admonishing the jury.  And now Mr. Mikhel can prepare for his examination and the Government can prepare for its cross examination, to take place on January the 3rd.

So I'll bring the jury out at this time.

**(Pause)**

**(Jurors enter courtroom at 1:24 p.m.)**

**THE COURT:**  All right, ladies and gentlemen of the jury, we ran out of witnesses today.  We concluded a little bit earlier than I anticipated.  We tried to get some witnesses in this afternoon, but we were unable to do so.  So what I'm going to do is I'm going to recess for the day, bring you back on January the 3rd as we discussed.  And I imagine the case will conclude sometime next week.

Because there is a long gap here I'm going to admonish you once again you're not to form or express any opinion in this case until the entire case is finally submitted

**DRAFT COPY**