# GOVERNMENT EXHIBIT 73

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

# DRAFT COPY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO:  CR-02-220(B)-DT |
| | ) | |
| Plaintiff, | ) | CRIMINAL |
| | ) | |
| vs. | ) | Los Angeles, California |
| | ) | |
| IOURI MIKHEL, | ) | Friday, January 12, 2007 |
| JURIJUS KADAMOVAS, | ) | ( 9:35 a.m. to 11:54 a.m.) |
| | ) | ( 1:28 p.m. to  4:15 p.m.) |
| Defendants. | ) | |

JURY TRIAL (63rd DAY)
(VOLUME LXIII)

BEFORE THE HONORABLE DICKRAN TEVRIZIAN,
UNITED STATES DISTRICT JUDGE

EXCEPTIONAL REPORTING SERVICES, INC
14493 SOUTH PADRE ISLAND DRIVE
SUITE A-400
CORPUS CHRISTI, TX 78418-5940
361 949-2988

31

Russian.'

So, that is the identification by Svetlana Korogodska of Mr. Kadamovas as Volodya. You think about it, and you evaluate it, and you consider whether that establishes beyond a reasonable doubt that Mr. Kadamovas is Volodya.

I'd like to talk to you about the purchase, you know, this is another example of how, in the Government's argument to you, it's the defendants do this and the defendants do that, as though they're acting together, and that if Mikhel did it, Mr. Kadamovas must have done it. And they use that the defendants bought these cell phones, the defendants bought the Polack - the Victor Polacki (sic) phone, the defendants bought the John Miller phone, the defendants bought the Ian Polack phone.

When you know, you know that Mr. Kadamovas didn't buy those phones. You know who bought the phones. Iouri Mikhel. It's not the defendants who bought the Victor Polack phone. It's not the defendants that bought the Ian Polack phone, it's not the defendants that bought the John Miller phone. It's Iouri Mikhel who bought those phones.

So, the Government tells you that Mr. Kadamovas bought a SIM card at Affordable Portables on January the 12th, 2002, and I'd like to talk to you about that, because it's another aspect of the case that I think you need to look at and consider.

And, you know, I would just say or suggest to you

32

that in some sense, it really doesn't matter if he did, because I think what you're going to find, and I hope this point will become clear as I go on, that Mr. Kadamovas, if Mr. Mikhel asked him to do something for him, like 'Write this down', or 'Get me this', or 'Go do that'.  I mean, you heard on the phone, some of the recorded phone calls, 'I want you to go to Seven-Eleven and get me a phone card', he does it.

I mean, remember the situation here.  Mr. Mikhel meets Mr. Kadamovas when he's working as a mover.  I mentioned before, he's selling vacuum cleaners, working as a mover, working at the Glendale nightclub setting up lights, and he's trying to get his aquarium business started out of his apartment there in Hollywood.  And Mr. Mikhel tells him, 'I'm going to be an investor, I'm going to finance his business.'  So, under those circumstances, I would suggest to you that it may not be an uncommon thing that if the person that you have that relationship with says to you, 'Go get me a phone card', or 'Go photocopy this', or 'Write these numbers down', that he's not going to interrogate him, 'What's this all about?  Explain it to me.  I need to know what's going on here'.  It's not going to happen.  He's just going to do it.

So, if he was told to go get a SIM card, okay.  If he's told to have Natalya Solovyeva contact Nick Kharabadze, he's going to do it.  He's going to do it.  He's not going to get into all the details of what's going on here.

**DRAFT COPY**

33

But I would suggest to you that, in spite of the similarity in appearance and clothing that the Government has established about the purchase of this SIM card, that there's a question as to whether it's Mr. Kadamovas.  And I think the question arises, again, from the phone records and from the videotape that was acquired from Affordable Portables.

You remember Joe Moran came in and testified about the videotape, and the testimony that you heard from Ms. Castellanos and Ms. Yanez, who we asked to come in and testify.

I've got some pictures that I'd ask you to look at with me that relate to the activities on the day this phone was purchased.  Not this phone, this SIM card was purchased at Affordable Portables.  These pictures all come off - Thank you, your Honor.  These pictures all come off of the videotape.  And if you're willing to do it, I'd ask you to look at the video clips, I'm not going to play them now, that we marked as exhibits, and I'll try to explain why.  And this is going to involve some math on my part, so forgive me if I don't explain it too well.

But this picture here shows the two people that the Government says bought this SIM card entering the Affordable Portables store.  And you'll notice the time here, 15:51:59. That is what's referred to as 'military time', I guess, but in Pacific Standard Time, it's 3:51:59.  It's about 3:52 in the afternoon.  To get from military time to standard time, you

**DRAFT COPY**

34

subtract 12.  So, it's 3:51:59, 3:52.

This is the person they say is Mr. Kadamovas, this is the person that they say is Mr. Krylov, going into the store. Here is a picture at 3:58, and what you see is the person that they say is Mr. Kadamovas, at the table here, the person they say is Mr. Krylov's right here.

Stop for a second and let me ask you to recall what this table is for, from the testimony that you heard from the witnesses.  And if you remember, this table here is a place where a customer could sit down and fill out an application. Like, if you're buying a SIM card, you don't need an application, but if you're buying a phone, you do.

So, they're sitting here at the table, and if you look at the video, the person they say is Mr. Krylov here, when you look at that thing, looks like he's filling out something, which you wouldn't do for a SIM card.

And then here's a picture taken from the store's video surveillance at 16:30 and a few odd seconds.  That's 4:30 in the afternoon, and you can see them leaving.  And this is the picture that the Government says, you know, that they showed another picture and they say, 'That's him.  That's Mr. Kadamovas'.  And over here is the person that the Government says is Mr. Krylov.

Well, first of all, it doesn't look like the guy they say is Mr. Kadamovas bought anything.  And it sure looks like

**DRAFT COPY**

35

the person they say is Mr. Krylov bought something, because he's got this big bag in his hand.  And look at the video that was take of that.  You don't need a bag like that for a SIM card, because a SIM card's that little bitty chip which goes in the back of the phone.

And these - this is part of the Exhibit 702-A that is Mr. Kadamovas' cell phone records, and these records relate to January the 12th, 2002.  And I'm going to ask you to take a look at four calls on these phone records.  I invite you to get this exhibit and look at it in the Jury room, because it's just, it's so difficult to see it here, in spite of my best efforts.

But there is a call here that I'm pointing at (indicating) that looks like 3:53 p.m. that's an incoming call. Now, that call, if you look at Mr. Krylov's records, you'll see that that's a telephone call that Mr. Krylov made to Mr. Kadamovas' cell phone.  So, if you go back and look at the entry into the store here at 3:52, what's Mr. Krylov going to be doing calling Mr. Kadamovas if he's right next to him?

And then, let me just say in passing make this comment: When you look at the tape, I would suggest to you you're not going to see the person that the Government says is Mr. Kadamovas ever on the telephone.  And so, you know, one of the things that I guess I could, or one of the thoughts that comes to my mind is that, you know, here's the first example of

**DRAFT COPY**

36

a telephone call that, if it's him, you ought to see him on the

phone at 3:53.  But that's not really true, because an incoming

call, I think, if I understood the testimony correctly, can

show up on your bill even if you don't answer it.  I think that

was the testimony.  So, you could get an incoming call and not

be seen on the phone, and that, to my mind, would not

necessarily prove that it wasn't you, because you may have just

not answered the phone.

But look at these next two calls.  I highlighted the

first one in yellow, and it looks like it's at either 3:58 or

3:59.  This is a call placed by Mr. Kadamovas' telephone to

this number here, 818-730-7403.  Now, unlike the incoming call

that could show up on your phone bill that you never talked

because you just didn't bother to answer the phone, this is a

call that's made by this phone, so you gotta be using it.

So, I would ask you to look at the video, and look at

the time of 3:58, 3:59 p.m.  What you're going to find is the

person that they say is Mr. Kadamovas is seated at this table.

You can see him pretty well in the video, and you know what

you're going to see?  He's not making a phone call.  Not making

a phone call.

And then there's a call here, right below it, 4:06,

and again, this is a call placed from this phone.  That means

the person that had the phone had to be using it.  And you look

at the video, and I don't even remember if the person they say

37

is Mr. Kadamovas is in view at 4:06, but you're not going to see the person they claim is him using the phone at that time either.

But here's where this gets muddy, and I'm going to try to offer my thoughts about this in as simple a fashion as possible, because you remember the Affordable Portables records show that the phone transaction was actually entered into their store computer at, I think it was 4:38 in the afternoon. And there's the picture that shows these two guys, one of whom they're saying is Mr. Kadamovas, leaving at 4:30, and there is the testimony about how transactions are entered into the store computer. So, conceivably, if the transaction was entered right when it's supposed to be, the store video is off by eight minutes. Are you following me? Am I making sense here? I'm not trying to be too confusing, but hopefully I can explain this.

So, a couple of questions that I would ask you to think about. Number one is: Was this transaction entered at the time of the purchase, being 4:38, or did somebody wait a few minutes? Because, remember the testimony from Angela Yanez and Veronica Castellanos was that sometimes, if it's a cash transaction, they don't have the customer sign and they'll just do it when they get a minute.

And you also remember the testimony, or perhaps you do, that the person, this bill or this receipt from the store

**DRAFT COPY**

shows that Angela Yanez is the salesperson, but she didn't remember making the sale.  And she said, 'Well, sometimes, because I got a commission and Ms. Castellanos didn't, that if Ms. Castellanos made the sale or if somebody else made the sale, they'd put my name down there.'  So, they do, or they did, at the Affordable Portables store, not adhere with a devoutly religious aspect to the store rules about these transactions, because sometimes you put somebody else's name down even though that person didn't make the sale, so they'll get the commission.

And the signature line here, that could be something that somebody just scratched in there when they entered this transaction eight minutes after it was made.

I would suggest to you that the store video camera is correct in terms of the time.  And my sense, I don't know, but my sense was the Government was concerned about that, about whether this video is accurate, because they brought out, in their examination of Mr. Moran, the fact that, well, whereas the computer that generates these receipts is set off the Atomic Clock in Colorado, the store video is set off of the driver of the watch and, so, we're not real sure that that's accurate.

That's why I made those video clips, which I presented to you in our case.  And I started with the video clip because Veronica Castellanos told you what time the store

39

opens.  Do you remember?  It opens at 10:00 a.m.  And look at the videotape and you see, I think his name was Darren, opening up the Affordable Portables store.  Look at that video clip please, and look at the time that he's opening the store, and compare it with the time that's on the store's readout, you know, the thing that generated this 3:58 here on this particular picture, and you'll see that it appears to be accurate.  That when the video camera's showing 10:00 o'clock, he's opening the store, which would suggest to me that it's, and I would hope suggest to you, that it's accurate.

But let's just say that it's not, that it's off by eight minutes, or any variation up to eight minutes, based on the creation of this receipt here at 4:38.  So, I made a chart here, and I guess I should apologize because my charts aren't as fancy as some of the others here, but I hope that the information is just as worthy of consideration, even though it's not real glitzy.

And I had a lot of problems with this, because I'm really not good in math, and then somebody told me, 'Well, it's not a math problem, it's a logic problem', and that didn't help me but I guess, if I can explain this, that if, you know from the - if you look at Mr. Kadamovas' cell phone bill, there is a call at 3:58 and 4:06 that are made from his phone, that if he's in the store, if that's him in the blue denim shirt and the jeans, then you ought to see him on the phone.

**DRAFT COPY**

40

And so, we presented to you two other video clips to try to cover all the contingencies here about the timing. And so, if the video is off by one minute, then the call at 3:58 is really at 3:59, and the call at 4:06 is really at 4:07, and that's sort of the progression here that I tried to demonstrate, that if the video is off by one minute, two minutes, up to eight minutes, then these calls that were 3:58 and 4:06, you know that, but the video time of those calls is not going to be 3:58 or 4:06, it's going to be, 'move each one up a minute or two minutes'. Does that make sense?

And what you're going to find if you look at the video clips, is that the video clips encompass one or the other of the times of those calls that you can always see the person that's Mr. Kadamovas, according to the Government, and what you'll see is he's not making a phone call.

So, I would ask you to look at this and consider it in your analysis as to whether or not the Government's contention that Mr. Kadamovas bought a SIM card is accurate. Is it correct? Is it true? Has it been proved beyond a reasonable doubt?

**THE COURT:** I want to take a recess. You think this is an appropriate time to break?

**MR. LASTING:** It is, your Honor, and I'm going to try to quicken it.

**THE COURT:** All right. Let's take our morning

DRAFT COPY

60

So now he testifies at trial, because he wants to get this deportation thing worked out so he doesn't get deported.  He's fighting that.

One time he was going to voluntary agree to deportation if they whacked some time of his sentence.  But that didn't work out.  So now he's still working on his deportation angle.

And what you know about Mr. Avila is that he wants to avoid deportation.  You know he testifies here at the trial. And you know that he's not truthful when he tells you "I told Polsey this stuff."  So how can you trust him given what you know about this guy and the period of time that he was even up there where Mr. Kadamovas is where he doesn't even speak Russian?  He's no more truthful about Mr. Kadamovas then he was truthful about Polsey.  He's a liar.

And then you get Sabrina Tynan to come in about the escape.  And she was involved in it.  And she testifies that she purchased two cell phones to go into the MDC.  And her first statement is the phones were for -- that says Mikhel and Peter, Peter Krylov.

The next day she changes.  And then she sticks with the change here for the trial.  The phones were for Mikhel and Peter Oryer (phonetic).

And then there's this letter that's written by Mikhel.  After his escape plan has fallen apart on March the

**DRAFT COPY**